1 | Thomas R. Hogan, Esq., California State Bar No. 042048
Denise T. Murphy, Esq., California State Bar No. 152289
2 | LAW OFFICES OF THOMAS R. HOGAN
60 South Market Street, Suite 1125
3 | San Jose, CA 95113-2332
Telephone: (408) 292-7600

**FILED**

**SEP 06 1994**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

4

5 | Attorneys for Defendant
PUBLIC KEY PARTNERS

6

7

8 | UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | ROGER SCHLAFLY,                    )   No. C 94 20512 PVT
                                    )
12 |         Plaintiff,                )   MEMORANDUM IN SUPPORT OF
                                    )   MOTION OF DEFENDANT PUBLIC KEY
13 | v.                                 )   PARTNERS TO DISMISS FOR
                                    )   FAILURE TO STATE A CLAIM OR,
14 | PUBLIC KEY PARTNERS and            )   IN THE ALTERNATIVE, FOR A MORE
RSA DATA SECURITY, INC.,           )   DEFINITE STATEMENT
15 |                                    )   (FRCP RULE 12(b)(6) & 12(e))
        Defendants.                 )
16 | _____)   Date:
                                        Time:
17

18 |                    I.   PRELIMINARY STATEMENT

19 |      This dispute arises in the field of cryptography, the

20 | enciperhing and deciphering of communications in secret code, a

21 | scientific endeavor involving governments, businesses and non-

22 | commercial users.  This action appears to consist of the personal

23 | dissatisfaction and/or frustration by the Pro Se plaintiff, Roger

24 | Schlafly, with certain actions, not clearly identified, taken by

25 | either or both of the defendants, PUBLIC KEY PARTNERS ("PKP") and

26 | RSA DATA SECURITY, INC. ("RSA").  As service of the Summons and

27

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT

1  Complaint herein has not been properly effected upon RSA, this

2  motion is submitted on behalf of PKP only.

3      The plaintiff purports to allege claims against one or more of

4  these defendants "for unfair business practices, including libel,

5  interference with contractual relationships, patent misuse, fraud,

6  monopolization, and, racketeering." Compl. at page 1. The

7  complaint also seems to raise additional claims, evidenced by

8  conclusionary catchphrases sprinkled throughout the complaint, for

9  mail fraud (Compl. at ¶¶ 61 and 62), interference with commerce

10 (Compl. at ¶¶ 63 and 65) and extortion (Compl. at ¶¶ 64 and 65).

11     PKP has given the complaint numerous readings and attempted to

12 find a valid legal claim, any legal claim, somewhere in the

13 verbiage.  In its present form, no meritorious legal claim has been

14 stated.  The first twelve pages consist largely of a recitation of

15 "facts," wholly lacking chronological or logical order.  Pages 13

16 and 14 consist of a string of conclusionary allegations purporting

17 to state the aforementioned legal claims against the defendants,

18 but without stating which of the facts enumerated on the previous

19 twelve pages somehow fit with each of those theories or to which of

20 the two defendants those legal claims, and/or their allegedly

21 supporting facts, are directed.  Finally, the plaintiff has

22 attached some twenty-six exhibits, together numbering hundreds of

23 pages, purporting to support his factual allegations and/or his

24 legal theories in some way.

25     Reconstructing the factual background, as gleaned from the

26 exhibits, the complaint proves to be fatally flawed for several

27 reasons.  First and most fundamentally, the exhibits contradict

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    2

1 many of the allegations of the plaintiff's complaint.  Many of
2 those same allegations, together with others, are stated in
3 conclusory terms, without sufficient elaboration to indicate either
4 what facts might support those allegations or why.

5       Were one to remove from the complaint allegations contradicted
6 by the exhibits, along with the unsupported conclusionary
7 allegations no meritorious legal claim would remain.  Accordingly,
8 the complaint should be dismissed, in its entirely, under Federal
9 Rule of Civil Procedure, Section 12(b)(6) and PKP hereby so moves.

10      In the alternative, PKP moves for a more definite statement
11 under Federal Rule of Civil Procedure 12(e).  As the following
12 discussion indicates, PKP has sifted through the stacks of
13 correspondence, newspaper and magazine articles, patent
14 documentation, court pleadings and all manner of other
15 documentation contained in the complaint exhibits, as well as each
16 statement made in the complaint itself.  PKP attempts, below, to
17 provide a clear statement of the true facts, as they are
18 discernable from the complaint exhibits.  If this court is not
19 inclined to grant PKP's motion to dismiss on any of the grounds
20 outlined herein, PKP would ask, in the alternative, that this court
21 order that the plaintiff provide a complaint, with or without
22 exhibits, that is, at minimum, intelligible, and, further, specific
23 enough to apprise both defendants of the substance of each of the
24 claims respectively asserted against each by the plaintiff.

25      Below, PKP provides a "detailed statement of facts" which
26 comprehensively details each of the twenty-six exhibits attached to
27 the plaintiff's complaint.  PKP's argument follows.

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                3

## II.   DETAILED STATEMENT OF ALLEGED FACTS

Defendant PKP is a partnership formed by Caro-Kann Corporation of Sunnyvale and defendant RSA, which does business in Sunnyvale, California.  Compl. ¶1.  Defendant RSA is a Delaware corporation with its principal place of business in Redwood City, California. Compl. ¶1; Compl. Ex. A.  Individual plaintiff, Roger Schlafly, is a resident of California.  Compl. ¶2.

On June 3, 1986 and again on September 16, 1986, then-vice-president of Defendant RSA, James Bizdos, wrote to the plaintiff, as partner of a company known as Digital Signature, regarding the use of and licensing for technology known as the RSA Public Key Cryptosystem.  Compl. Exs. J8 and J9.

On November 15, 1988, judgment was entered against the plaintiff and his then-general partner in Digital Signature, in a patent infringement action brought by the Massachusetts Institute of Technology ("MIT") and RSA.  RSA and MIT contended that they held an exclusive license, together with the right to sue infringers, effective September 29, 1983, to U.S. Patent number 4,405,829, also known as the RSA public key cryptosystem.  RSA and MIT further argued that the plaintiff's computer program "Crypt Master" improperly implemented the RSA system, without prior license or similar authorization from RSA.  The Illinois District Court which heard the matter enjoined the plaintiffs, inter alia, from making, using or selling its "Crypt Master" program or from infringing in any way on the RSA patent.  Compl. Ex. C.

On April 6, 1990, Caro-Kann Corporation and RSA formed the partnership, PKP, for the purpose of jointly licensing certain of

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    4

1 their respective patents in the field of encryption and decoding of

2 telecommunications transmissions, and specifically including the

3 RSA patent, to third parties. Compl. Ex. A.

4      On April 20, 1990, PKP wrote to the National Institute of

5 Standards ("NIST") announcing the formation of PKP and simultaneous

6 accumulation of four patents (including the RSA patent) which

7 collectively comprised "all known methods of practicing the art of

8 Public Key, including the variations collectively known as El

9 Gamal."  The letter also urged that the RSA digital signature,

10 given its broad acceptance throughout the international community,

11 be incorporated in a digital signature standard.  Finally, the

12 letter provided assurances that licenses to practice RSA signatures

13 would be available "under reasonable terms and conditions on a non-

14 discriminatory basis."  Compl. Ex. R; see also Compl. Ex. B (the

15 actual patent documentation for each of the four referenced

16 patents, together with that for patent number 4995082, subsequently

17 (2/19/91) acquired by PKP).

18      On September 24, 1990, PKP wrote to the plaintiff to reiterate

19 its patent licensing policies.  Compl. Ex. J4.

20      On March 13, 1991, PKP wrote to Information Security

21 Corporation, ("ISC"), apparent successor in interest to the

22 plaintiff's earlier partnership, Digital Signature.  PKP noted that

23 ISC's resurrected project "Crypt Master" used public key

24 technology.  PKP reminded ISC of PKP's exclusive sublicensing

25 rights to the four patents then covering all known methods of

26 practicing such technology and specifically including the RSA

27 patent.  PKP further noted that ISC did not have a license to

28

1 practice public key technology and, accordingly requested that ISC

2 contact PKP as soon as possible to discuss such a license.  Compl.

3 Ex. S.

4     On March 15, 1991, PKP wrote to the American Bankers'

5 Association, a standards board, apparently, to outline its

6 licensing policies.  PKP noted that since its inception, the

7 company had not denied a license to any party.  Compl. Ex. K.

8     On September 2, 1991, Federal Computer Week published an

9 article regarding a new standard (DSS) for digital signatures

10 proposed by NIST and for which NIST had filed a patent application.

11 According to the article, there was industry chatter that NIST's

12 proposed new standard was based on recommendations from the

13 National Security Agency.  RSA's President, James Bidzos, voiced

14 his concerns, in quotes throughout the article, about NIST's

15 motivations in proposing a standard over his own company's

16 analogous system, and about the National Security Agency's related

17 influence over NIST in this regard.  A NIST spokesperson is quoted

18 as saying that the company frankly expected a lot of comments as a

19 result of its proposal and planned to evaluate and respond to each

20 such comment before issuing a final standard.  Compl. Ex. Y.

21     On November 7, 1991, PKP again wrote to ISC to reiterate its

22 licensing policies.  Compl. Ex. J7.

23     On November 20, 1991, PKP again wrote to NIST, this time to

24 note that NIST's proposed "DSS" system threatened to violate one of

25 the group of public key patents owned by PKP.  PKP reiterated its

26 offer to issue a license to NIST and voiced its upset at NIST's

27

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    6

1 apparent confrontational attempts to sidestep PKP's good faith

2 efforts to discuss and resolve the matter.  Compl. Ex. O.

3     On August 25, 1993, PKP again wrote to ISC, to request

4 confirmation that ISC had not, to date, sold any public key

5 products (including those covered by its RSA patent) to non-

6 governmental parties.  Compl. Ex. J6.

7     On January 12, 1994, PKP wrote to AT&T, a customer of both PKP

8 and ISC, apparently, to note that the "Secret Agent" program and

9 software modules licensed by AT&T from ISC went beyond the scope of

10 AT&T's existing license (dated July 1, 1992) with PKP and, further,

11 breached the November 1988 judgment against ISC.  PKP protested the

12 combined actions of AT&T and ISC and demanded that AT&T cease any

13 further distribution and sale of the infringing product.  PKP did,

14 nonetheless, offer to modify AT&T's existing license to include the

15 federal government's DSA technology, pursuant to a cross license

16 held by PKP.  Compl. Ex. D.

17     On February 6, 1994, the plaintiff wrote to PKP, to request

18 licensing information.  Mr. Schlafly stated that he would like a

19 copy of any PKP licensing policies and would assume that if no

20 response was received within two (2) weeks, no such policies

21 existed. Compl. Ex. J1.

22     On March 28, 1994, PKP wrote to the American Bankers'

23 Association and to the IEEE Computer Society to respond to their

24 respective requests for clarification of PKP licensing policies.

25 In the letter, PKP stated that any such clarification would have to

26 wait pending its continuing discussions with the United States

27 government regarding the DSS technology.  Specifically, the

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT       7

1  government had apparently withdrawn a prior settlement proposal

2  regarding that technology and now sought to regulate PKP's

3  licensing policies, contending that RSA's technology should be

4  practiced on a royalty free basis for both government and private

5  use, worldwide.  However, the letter notes, this issue with the

6  government had not yet been finally resolved.  Compl. Ex. Q.

7      A Government News Article, (Compl. Ex. P), sheds further light

8  on the PKP/Government negotiations.  According to this article, in

9  the Summer of 1993, NIST and PKP had agreed that governmental

10  agencies would use the DSS technology which PKP claimed was covered

11  by its patents, free but that private sector users would pay the

12  company a royalty fee.  NIST later reneged on its agreement,

13  asserted that its product did not infringe on any known patents and

14  claimed that if NIST held the patent rights to its own product.

15  Compl. Ex. P; see also, Compl. Ex. N (Government's patent for its

16  "DSA" product).

17      On April 4, 1994, the plaintiff wrote to PKP noting that PKP

18  was "telling people that [he] had breached a consent judgment or

19  that he had infringed patents."  He demanded that PKP cease and

20  desist such conduct and, further, that it provide him with a list

21  of all persons contacted in this regard.  Finally, the plaintiff

22  requested retractions of PKP's statements to all affected parties.

23  Compl. Ex. G.

24      On the same date, April 4, 1994, PKP wrote to ISC.  PKP stated

25  that in light of the renewed vacillation by the government, PKP had

26  necessarily postponed resolution of its patent licensing policies.

27  As further clarification for its position, PKP included a copy of

28

1  its March 28, 1994 letter to the American Bankers' Association and

2  the IEEE Computer Society (Compl. Ex. Q).  PKP further noted, in

3  this letter, however, that it was not inclined to discuss the

4  licensing of RSA technology for ISC because of ISC's apparent

5  recent disregard of the 1988 judgment against it, citing ISC's

6  dealings with AT&T.  (Compl. Ex. F).

7       On April 4, 1994, PKP also responded to the plaintiff's

8  earlier requests for licensing information, enclosing yet another

9  copy of PKP's policies in this regard and another copy of its

10 3/28/94 letter to the American Bankers' Association and the IEEE

11 Computer Society (Compl. Ex. Q). Compl. Ex. J3.

12      On April 11, 1994, the plaintiff wrote to PKP stating that he

13 had been told in 1990 that PKP had no licensing policy.  He stated

14 that if PKP could tell him of any such policy, he would report same

15 to the IEEE committee (of which he was apparently a member).

16 Compl. Ex. J2.

17      On April 18, 1994, PKP responded to the plaintiff's April 4,

18 1994 letter.  PKP noted that the plaintiff had officially admitted

19 in a court action recently filed by the plaintiff against NIST that

20 he was marketing a commercial application of PKP-patented

21 technology and that this constituted unlicensed use of PKP's still-

22 standing patents in disregard of the 1988 judgment against him and

23 his company.  PKP further noted that the plaintiff's statements

24 that he "[had] heard" that PKP had made general allegations to

25 unspecified people was defectively vague.  Accordingly, PKP asked

26 for clarification.  Compl. Ex. H.

27

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                9

1    On April 21, 1994, Plaintiff wrote to PKP, in response.

2 Mr. Schlafly stated in pertinent part that:

3    My letter was not "defectively vague." To be precise, I
     object to you telling ANYONE that I infringed ANY patents at
4    ANY time.  Any such statement by you is a tort.  How I might
     learn of such statements is irrelevant.

5

6    He further stated that "Any use that [Schlafly] might be

7 making of RSA technology complie[d] with applicable laws, and that

8 is all [PKP] need[ed] to know."  The plaintiff concluded by

9 reiterating the demands of his April 4, 1994 letter (Compl. Ex . G.

10 Compl. Ex. I.

11    On May 19, 1994, NIST announced in the Federal Register that

12 its DSA/DSS product had been officially approved as the Federal

13 Information Processing Standard, effective December 1, 1994, and

14 was to be henceforth used, royalty-free by anyone.  Compl. Ex. M.

15    On May 26, 1994, Plaintiff wrote again to PKP regarding the

16 continuing validity of the PKP patents and, further, requesting,

17 without any time guidelines, detailed explanation as to how each

18 had been infringed.  He concluded by threatening to "inform others

19 that [the PKP patent] technologies are in the public domain".

20 Compl. Ex. J5.

21    On May 30, 1994, Government Computer News published an article

22 discussing a possible patent suit by PKP and RSA to fight free use

23 of the DSS standard, because, according to PKP and RSA, the DSA

24 algorithm used in DSS infringed certain of PKP's patents.  Compl.

25 Ex. P.

26    On June 30, 1994, Cylink Corporation filed suit against RSA

27 for declaratory and injunctive relief, claiming that RSA had

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT            10

1   threatened action alleging infringement by Cylink of the RSA

2   patent.   Compl. Ex. X.

3       The July 1994 "letter to the editor" section of Scientific

4   American magazine included a letter from Mr. Bidzos, RSA President.

5   Mr. Bidzos disputed the allegations of a March 1994 article in that

6   publication that RSA jealously guarded its patent rights to public-

7   key encryption and that people could not use the widely published

8   technology without risking infringement.   Mr. Bidzos, in this

9   article, clarified that licenses to the RSA patents were provided

10  at reasonable rates, that RSA promoted widespread use of public-key

11  technology and explained its technology was available royalty-free

12  for non-commercial and educational use.   Thus, Mr. Bidzos

13  concluded, although patented, only those ignorant of or in

14  disregard of the patent(s) ran the risk of being denied a license.

15  Compl. Ex. E.

16      At some time in 1994, apparently, RSA had an advertising

17  poster published.   The poster urged boycott of a product called a

18  "clipper chip," an encryption technology developed by the United

19  States government and, further, urged sales of RSA's own products.

20  Compl. Ex. Z.[1]

21

22      [1]The foregoing detailed factual analysis does not include discussion of
        the four remaining exhibits attached to plaintiff's complaint, all of which
23      appear to be of highly questionable relevance.   They are as follows:   Exhibit T
        is a 1976 National Computer Conference article entitled "Multiuser
24      Cryptographic Techniques" by authors W. Diffie and M. Hellman, two of the
        inventors of one of the four PKP patents.   Exhibit U is a November 1976 article
25      written by the same authors, and entitled "New Directions in Cryptography," in
        a publication entitled IEEE Transactions on Information Theory.   Exhibit W
26      consists of miscellaneous official papers dated, respectively, March 2, 1979
        and May 23, 1979, and apparently filed with the United States Patent and
27      Trademark Office by the inventors of one of the PKP patents (the RSA patent)
        regarding their application for that patent.   Finally, Exhibit V is a May 1988
        article by W. Diffie, "The First Ten Years of Public-Key Cryptography," in a
28      publication entitled "Proceedings of the IEEE."

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT              11

### III. ARGUMENT

**A.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ITS <u>ENTIRETY</u> <u>UNDER F.R.C.P. 12(B)(6)</u>**

Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable theory" or "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dept</u> (9th Cir. 1990) 901 F.2d 696, 699. Material submitted with the complaint, i.e., exhibits under Federal Rule of Civil Procedure 10(c), may be considered as part of the complaint for purposes of a 12(b)(6) motion to dismiss. <u>Hal Roach Studios v. Richard Feiner & Co.</u> (9th Cir. 1990) 896 F.2d 1542, 1555.

PKP is mindful that many courts view 12(b)(6) motions with disfavor because of the lesser role pleadings play in federal practice and the liberal policy re amendment. See, eg., <u>United States v. Redwood City</u> (9th Cir. 1981) 640 F2d 963, 966. PKP is further aware that a complaint, and its exhibits, will be construed in the light most favorable to the plaintiff. <u>Russell v. Landrieu</u> (9th Cir. 1980) 621 F.2d 1037, 1039. Moreover, PKP is aware of the particular leniency granted for "inartful pleading" by parties appearing <u>pro se</u>. <u>Hughes v. Rowe</u> (1980) 449 U.S. 5, 9.

However, the plaintiff has failed to meet, and will be unable to meet, even these threshold standards. Specifically, the general rule that a court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them does not apply here, for several, recurring reasons.

1    First, the complaint is replete with conclusionary

2  allegations.  A court need not accept as true conclusionary

3  allegations or legal characterizations; nor need it accept

4  unreasonable inferences or unwarranted deductions of fact. <u>Western</u>

5  <u>Mining Council v. Watt</u> (9th Cir. 1981) 643 F.2d 618, 624.

6  Secondly, the complaint exhibits contradict many of the complaint

7  allegations.  A court may disregard allegations in a complaint if

8  contradicted by facts established by reference to documents

9  attached as exhibits to the complaint.  <u>Durning v. First Boston</u>

10  <u>Corp.</u> (9th Cir. 1987) 815 F.2d 1265.

11    As the following set of arguments indicates, allegations which

12  are conclusionary and/or contradicted by the complaint exhibits

13  form the common themes of plaintiff's complaint, and should,

14  therefore, be disregarded.[2]  In addition, a number of substantive

15  arguments, not fully aired here because of time and page length

16  limitations, apply to invalidate each of the plaintiff's purported

17  claims.

18      1.    **Plaintiff's Purported Claim For Fraud Should Be**
             **Dismissed**

19

20    Federal Rule of Civil Procedure Rule 9(b) provides:

21    In all averments of fraud or mistake, the circumstances
      constituting fraud or mistake shall be stated with

22    particularity.  FRCP 9(b).

23

24    [2]Because of its convoluted nature and failure to enumerate any discrete
      claims, the plaintiff's complaint also fails to satisfy the requirements of

25    Federal Rule of Civil Procedure 10, which reads in pertinent part as follows:
      <u>All averments of claim</u> or defense <u>shall be made in numbered paragraphs, the</u>

26    <u>contents of each of which shall be limited as far as practicable to a statement</u>
      <u>of a single set of circumstances;</u> . . .  <u>Each claim founded upon a separate</u>

27    <u>transaction or occurrence</u> . . . <u>shall be stated in a separate count</u> or defense
      <u>whenever a separation facilitates the clear presentation of the matters set</u>

28    <u>forth.</u> FRCP 10(b) (emphasis added).

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    13

1  This "particularity" requirement "serves to provide defendants with

2  adequate notice of both the nature an.! the grounds of the claim, to

3  protect defendants from the reputational harm associated with fraud

4  claims, and to prevent the filing of claims merely to discover

5  unknown wrongs." <u>In re GlenFed, Inc. Secur. Litig.</u> (9th Cir. 1993)

6  11 F.3d 843, <i>re hrg granted</i> 2/25/94.  A pleading must, in other

7  words, "identif[y] the circumstances constituting fraud (or

8  mistake) so that the defendants can prepare an adequate answer from

9  its allegations." <u>Moore v. Kayport Package Express, Inc.</u> (9th Cir.

10 1989) 885 F.2d 531, 540.  The allegations must be "specific enough

11 to give defendants notice of the particular misconduct which is

12 alleged to constitute the fraud (or mistake), so that they can

13 defend against the charge and not just deny that they have done

14 anything wrong." <u>Smegen v. Weidner</u> (9th Cir. 1985) 780 F.2d 727,

15 731; <u>Neubronner v. Milken</u> (9th Cir. 1993) 6 F.3d 666.  Accordingly,

16 allegations that are vague or conclusory are insufficient to

17 satisfy the "particularity" required by Rule 9(b). <u>Moore</u>, <u>supra</u>,

18 at 540; <u>Wool v. Tandem Computers, Inc.</u> (9th Cir. 1987) 818 F.2d

19 1433, 1439.

20     The necessary allegations have generally been found to include

21 the time, place and content of the alleged fraudulent

22 representation as well as the identity of the person engaged in the

23 fraud.  See, <u>Wool</u>, <u>supra</u>, at 1439; <u>Miscellaneous Service Workers v.</u>

24 <u>Philco-Ford Company</u> (9th Cir. 1981) 661 F.2d 776, 782.

25 Additionally, in fraud cases involving more than one defendant, the

26 complaint should set forth the respective role of each such

27 defendant in the fraud. <u>Neubronner</u>, <u>supra</u>, at 671.  Each defendant

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT          14

1    is entitled to be informed of the specific acts or omissions

2    against which it must defend.   Id.

3        In this case, aside from the more particularized fraud claims

4    made by the plaintiff and discussed in detail below, the only

5    general references to fraud appear to be contained in the

6    conclusionary allegations of paragraphs 19, 25, 26, 61 and 65 of

7    the plaintiff's complaint.

8        Paragraph 19 alleges a purported fraud on ANSI and IEEE, but

9    not on the plaintiff, who, therefore is not the real party in

10   interest and had no standing on this issue.  See, generally

11   FRCP 17(a).  Further, paragraph 19's statements regarding

12   "defendants'" alleged failure to provide a reasonable and non-

13   discriminatory licensing policy is contradicted by the exhibits.

14       All five of these paragraphs, moreover, are conclusorly

15   stated.  Paragraph 19 refers to "fraudulent induce[ment] but fails

16   to describe what exactly constituted that misconduct.  Paragraphs

17   25 and 26 refer to "fraudulent promises" but fail to state what

18   those promises were.  Similarly, paragraph 61 refers to "fraudulent

19   patent claims" but fails to precisely define those claims.

20       Most fundamentally, however, the plaintiff has failed and will

21   be unable to credibly allege fraud of any sort by PKP because, as

22   indicated by the exhibits themselves, PKP engaged in no wrongdoing

23   whatsoever with regard to its patents or in its relations with the

24   plaintiff.

25            2.    Plaintiff's Purported Claim For Mail Fraud And/Or
                   Violation Of 18 U.S.C. §1341 Should Be Dismissed
26

27       The plaintiff specifically refers to 18 U.S.C. §1341 in

28   purporting to establish federal jurisdiction in this matter.

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    15

1 Complaint, ¶5.   The only factual allegations which appear to

2 relate, even tangentially, to this claim appear at paragraphs 61

3 and 62.[3]

4     The critical element of Section 1341[4], of course, is fraud

5 and/or artifice.   As indicated above, the plaintiff has failed to

6 plead fraud against PKP with the particularity required by Rule

7 9(b); thus, this purported claim should also be dismissed.

8     **3.   Plaintiff's Purported Claims For Interference With
        Commerce, Extortion and/or Violation Of 18 U.S.C.**

9        **§1951**

10     The plaintiff loosely refers, throughout his complaint, to

11 apparent claims for interference with commerce and/or extortion.

12 He also makes specific reference to 18 U.S.C. §1951, "interference

13 with commerce by threats or violence," which includes a statutory

14 definition of "extortion."   Section 1951 reads in pertinent part,

15 as follows:

16 _____

17 [3]Paragraphs 61 and 62 of plaintiff's complaint are based on
complaint exhibits R (4/20/90 PKP letter to NIST), K (3/15/91 PKP letter to
ABA) and Q (3/28/94 PKP letter to ABA).   Detailed discussion of the contents of

18 these exhibits is provided in the Detailed Statement of Facts, above.

19 [4]18 U.S.C. §1341 reads as follows:

20     Whoever, having devised or intending to devise any scheme or
    artifice to defraud, or for obtaining money or property by means of
    false or fraudulent pretenses, representations, or promises, or to

21    sell, dispose of, loan, exchange, alter, give away, distribute,
    supply, or furnish or procure for unlawful use any counterfeit or

22    spurious coin, obligation, security, or other article, or anything
    represented to be or intimated or held out to be such counterfeit
    or spurious article, for the purpose of executing such scheme or

23    artifice or attempting so to do, places in any post office or
    authorized depository for mail matter, any matter or thing whatever

24    to be sent or delivered by the Postal Service, or takes or receives
    therefrom, any such matter or thing, or knowingly causes to be
    delivered by mail according to the direction thereon, or at the

25    place at which it is directed to be delivered by the person to whom
    it is addressed, any such matter or thing, shall be fined not more

26    than $1,000 or imprisoned not more than five years, or both.   If
    the violation affects a financial institution, such person shall be

27    fined not more than $1,000,000 or imprisoned not more than 30
    years, or both.

28
MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT              16

1  　Whoever in any way or degree obstructs, delays, or affects
2  commerce with the movement of any article or commodity in
   commerce, by robbery or extortion or attempts or conspires so
3  to do, or commits or threatens physical violence to any person
   or property in furtherance of a plan or a purpose to do
4  anything in violation of this section shall be fined not more
   than $10,000 or imprisoned not more than 20 years, or both.
5  18 U.S.C. §1951

6  　"Extortion" is in turn defined as "the obtaining of property

7  from another, with his consent, induced by wrongful use of actual

8  or threatened force, violence or fear, or under color of official

9  right."  Id.

10 　The only even tangentially relevant references of the

11 plaintiff's complaint appear to be at paragraphs 6, 25 through 35,

12 53, 54, 61, 63, 64 and 65.  However, as with the plaintiff's other

13 claims, this one includes conclusory, factually unsupported and

14 totally unexplained catch phrases.  For instance, paragraph 63

15 refers, without elaboration, to unspecified "predatory tactics" and

16 "unwarranted threats."

17 　More fundamentally, however, the plaintiff has failed and will

18 be unable to credibly allege threatening or extortionist conduct of

19 any sort because, as indicated by the exhibits themselves, PKP has

20 engaged in no wrongdoing whatsoever with regard to its patents or

21 in its relations with the plaintiff.

22 　　　4.　Plaintiff's Purported RICO Claim Should Be Dismissed

23 　The plaintiff purports to allege violations of the RICO

24 statutes, 18 U.S.C. §§1961 through 1965.  Section 1962(c) provides

25 that:

26 　It shall be unlawful for any person employed by or associated
   with any enterprise engaged in, or the activities of which
27 affect, interstate or foreign commerce, to conduct or
   participate, directly or indirectly, in the conduct of such

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT　　　　17

1    enterprise's affairs through a pattern of racketeering
     activity or collection of unlawful debt.   18 U.S.C. 1962(c).
2

3    "Racketeering Activity" is in turn defined in 18 U.S.C. §1961

4    as any number of enumerated acts, including mail fraud (violation

5    of Section 1341) and interference with commerce, robbery or

6    extortion (violation of Section 1951), both of which have been

7    cited by the plaintiff and upon which the plaintiff relies.

8    As noted above, however, there is no conceivable basis here

9    for either a Section 1341 claim or a Section 1951 claim.   Thus,

10   there is also no conceivable basis for the plaintiff's purported

11   RICO claim, which rests upon establishment of a violation of either

12   of those two code sections.

13   Further, the plaintiff has not alleged a RICO "enterprise"

14   separate and distinct from any activity engaged in by the named

15   defendants, as required under <u>Medallion TV Enterprises, Inc. v.</u>

16   <u>SelecTV of Calif., Inc.</u> (1986) 627 F.Supp. 1290, affirmed 833 F.2d.

17   1360, and other cases in this and other federal jurisdictions.

18   Rather, the alleged "enterprise" was apparently comprised of the

19   standard, ongoing business of RSA and/or PKP, the partnership of

20   which RSA is a partner.

21   In addition, Federal Rule of Civil Procedure 9(b) applies to

22   RICO claims to require that a plaintiff plead the circumstances

23   constituting the alleged fraud, with particularity.   <u>Alan Neuman</u>

24   <u>Productions, Inc. v. Albright</u> (1988) 862 F.2d 1388; <u>Lewis on behalf</u>

25   <u>of National Semiconductor Corp. v. Sporck</u> (1985 N.D. Cal.) 612

26   F.Supp. 1316.   Here, the only allegations which appear to relate,

27   even tangentially, to a RICO claim (aside from those claims

28

1 pertaining, e.g. to Sections 1341 and 1951, addressed above) are
2 stated at paragraphs 5, 59 and 66 of the plaintiff's complaint.
3 All three paragraphs contain incorrigibly conclusory allegations.
4 Paragraph 59 refers to "an association-in-fact that constituted an
5 "enterprise"", without further elaboration. Paragraph 66 alleges
6 "a pattern of racketeering", again, without elaboration.

7 Therefore, the discussion in Section III.A.1 above relating to
8 the insufficiency of the plaintiff's fraud claim under Federal Rule
9 of Civil Procedure 9(b) bars a RICO claim as well.

10 **5. Plaintiff's Purported Claim For Libel Should Be Dismissed**
11

12 As a general rule, with exceptions not applicable here, the
13 locus of a tort of defamation will, for choice of law purposes, be
14 the place of publication. LaMontagne v. Craig (9th Cir. 1987) 817
15 F.2d 556, 557. Thus, California law will govern the instant
16 dispute.

17 In California, "libel is a false and unprivileged publication
18 by writing, printing, picture, effigy, or other fixed
19 representation to the eye, which exposes any person to hatred,
20 contempt, ridicule, or obloquy, or which causes him to be shunned
21 or avoided, or which has a tendency to injure him in his
22 occupation." Cal. Code Civ. Proc. §45. To be defamatory, a
23 defendant's words must be understood as defamatory. Polygram
24 Records v. Superior Court (1985) 170 Cal.App.3d 543, 555.

25 The only paragraphs of the plaintiff's complaint even
26 tangentially relevant to such a claim here are paragraph numbers 12
27 through 17, and 58. Referenced in those paragraphs are Complaint

28
MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                19

1   exhibits D (PKP letter to AT&T), F (PKP letter to ISC), and H (PKP

2   latter to Digital Signature).   These complaint allegations and

3   purportedly supportive exhibits generally refer to patent

4   infringement and/or breach of the 1988 Judgment by either or both

5   of the companies, ISC and/or Digital Signature, with which the

6   plaintiff has been affiliated.   Notably, therefore, because no

7   alleged libel was leveled against the plaintiff individually, he is

8   not the real party in interest and has no right to sue on this

9   issue.   See, generally, FRCP 17(a).[5]

10       In addition, the words constituting an alleged libel must be

11   specifically identified, if not pleaded verbatim, in the complaint.

12   Kahn v. Bower (1991) 232 Cal.App.3d 1599.   The plaintiff has

13   plainly failed to do so, relying, again, instead, on unclear and

14   unsupported conlusionary allegations.

15       Finally, of course, an essential element of  libel is that the

16   publication must contain a false statement of fact.   Gregory v.

17   McDonnell Douglas Corp. (1976) 17 Cal.3d 596.   Here, as noted

18   above, the complaint exhibits indicate that any allegations by PKP

19   as to patent infringement and/or breach of the 1988 Judgment by ISC

20   and/or Digital Signature were grounded in fact.

21       **6.  Plaintiff's Purported Claim For Antitrust Violations
          And/Or Other Violations Of Monopoly Laws Should Be**

22           **Dismissed**

23       The plaintiff appears to be alleging here that either or both

24   of the defendants somehow violated the Sherman Act, specifically,

25

26       [5]Further, Exhibit D to the plaintiff's complaint is the only one of these
  three letters published to a third party (AT&T), and surely falls within the

27   qualified privilege of California Code of Civil Procedure sec. 47(c),
  communications between interested parties.

28

1  15 U.S.C. sec. 1 (Trusts, etc. in restraint of trade) and/or sec. 2
2  (Monopolizing trade).  A monopolization claim under either section
3  requires allegation (and proof) of (1) possession of monopoly power
4  in the relevant market; (2) willful acquisition or maintenance of
5  such power; and (3) causal "antitrust injury". <u>Hunt-Wesson Foods v.</u>
6  <u>Ragu Foods, Inc.</u> (1980) 627 F.2d 919.  "Monopoly power" has been
7  defined as the power to control prices or exclude competition in
8  the relevant market.  <u>Bhan v. NME Hospitals</u> (1987) 669 F.Supp. 998,
9  affirmed 929 F.2d 1404.  Notably, market share alone does not
10 determine the presence or absence of monopoly power.  <u>ILC</u>
11 <u>Peripherals Leasing Corp. v. International Business Machines, Corp.</u>
12 (1978) 458 F.Supp. 423, affirmed 636 F.2d 1188.

13    The applicable Complaint references to such a claim here
14 appear to be at Paragraph numbers 5, 6, 24, 33, 51, 52, 56, 57, and
15 60.  Aside from the convoluted, unsupported and conclusionary
16 nature of these allegations as well, this claim is incurably flawed
17 in other respects.

18    Plaintiff has failed and will be unable to legitimately allege
19 a Title 15 violation here, primarily, as the complaint exhibits
20 indicate, because the United States Government has long acted as a
21 competitor in the field of public key encryption technology.

22    A more basic failure of this claim, however, lies in the
23 plaintiff's failure to specify which of the two defendants were
24 involved in any antitrust scheme, or to identify each such
25 agreement by date, parties and whether it was oral or written.

26
27
28

7.   **Plaintiff's Purported Claim For "Patent Misuse"**
     **Should Be Dismissed**

Plaintiff's claim for "patent misuse" appears to be a broad
and all-encompassing claim referenced, even tangentially, in
Complaint paragraph numbers 5, 8, 9, 10, 11, 25, 26, 29, and 30
through 49.  The claim appears to generally concern the past,
present and future validity of "Defendants'" patents and their
related licensing rights and obligations.  Any patent issues here,
however, including, in particular, whether PKP's patents have been
or threaten to be infringed concern ISC and/or Digital Signature,
the two companies with which the plaintiff has been affiliated but
notably, neither of which have been made a party to this suit.  The
plaintiff is, therefore, not the real party in interest and has no
right to sue, individually, on this issue.  See generally FRCP
17(a).

Further, as with plaintiff's other claims, this one includes
conclusionary, factually unsupported and wholly unexplained catch
phrases.  Paragraph numbers 25 and 26, for instance, refer, without
elaboration, to "patent threats."

Admittedly, this claim also appears to include a hefty, if
garbled, recitation of "facts,"  in particular, those found in
paragraph numbers 31 through 49.  However, as noted above, the
clear state of factual affairs is stated in the exhibits, which, to
the extent the complaint is comprehensible, largely contradict the
allegations of the complaint.  Those exhibits indicate that PKP has
engaged in no wrongdoing whatsoever with regard to its patents or
in its relations with the plaintiff.

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                22

8.   **Plaintiff's Purported Claim For "Unfair Business Practices" Should Be Dismissed**

The plaintiff appears to state his claim for "unfair business practices" as a catch-all claim, a theory broad enough to cover what his other claims do not.  The relevant, if one can call them that, allegations appear to be at paragraphs 18, 20 through 23, 58 and 63.

Paragraphs 58 and 63 simply contain conclusory references to "unfair business practices."

Again, most fundamentally, the clear state of factual affairs is stated in the complaint exhibits which, to the extent the complaint in comprehensible, largely contradict those allegations. Those exhibits indicate that PKP has engaged in no wrongdoing whatsoever with regard to its patents, its relations with the plaintiff and/or its relations with others in the business arena.

9.   **Plaintiff's Purported Claim For Interference With Contractual and/or Other Business Relationships Should Be Dismissed**

The only complaint references which appear to be even tangentially related to the plaintiff's purported claims for interference with contractual and/or other business relationships appear at paragraphs 7, 12, 13 and 14 of the plaintiff's complaint and concern PKP's January 12, 1994, letter to AT&T (Compl. Ex. D).

However, as noted above, the clear state of factual affairs is stated in the exhibits which, to the extent that the complaint is comprehensible, largely contradict those allegations.  Those exhibits indicate that PKP has engaged in no wrongdoing whatsoever

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    23

1  with regard to its patents, its relations with the plaintiff or its
2  relations with others in the business arena.

3      **B.    IN THE ALTERNATIVE, THE PLAINTIFF SHOULD BE ORDERED TO
          PROVIDE A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e)**
4

5          "If a pleading to which a responsive pleading is permitted is
6  so vague or ambiguous that a party cannot reasonably be required to
7  frame a responsive pleading, the party may move for a more definite
8  statement before interposing a responsive pleading."    FRCP 12(e).

9          A motion made pursuant to Rule 12(e) is proper where a
10 complaint is so indefinite that the defendant cannot ascertain the
11 nature of the claim being asserted.    In such cases, the defendant
12 cannot reasonably be expected to frame a proper response.    <u>See</u>,
13 <u>Famolare, Inc. v. Edison Brothers Stores, Inc.</u> (E.D. Cal. 1981) 525
14 F. Supp. 940, 949.

15         In the instant case, for the reasons outlined in detail above
16 with regard to defendants' 12(b)(6) argument, the plaintiff should,
17 at a minimum, be required to provide a more definite statement
18 pursuant to Federal Rule of Civil Procedure 12(e).

19                        **V.    CONCLUSION**

20         Due to time and page length limitations, PKP cannot separately
21 attack each of the infirmities with which the plaintiff's complaint
22 is rife.    However, without waiving any rights to comprehensively
23 attack each of the plaintiff's purported claims, PKP submits that
24 the foregoing is sufficient to establish that the plaintiff has
25 failed to state any claim and, therefore, that the plaintiff's
26 complaint should be dismissed, in its entirety, under Federal Rule
27 of Civil Procedure 12(b)(6).

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT                    24

1    PKP requests, in the alternative, that the plaintiff be

2 ordered to provide a more definite statement, pursuant to Federal

3 Rule of Civil Procedure 12(e).

4

5 Dated: *9-6-94*                      Respectfully submitted,

6

7                                      *Denise T. Murphy*

8                                      THOMAS R. HOGAN
                                       DENISE T. MURPHY

9                                      Attorneys for Defendant
                                       PUBLIC KEY PARTNERS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS, OR FOR A
MORE DEFINITE STATEMENT            25