Thomas R. Hogan, Esq., California State Bar No. 042048
Denise T. Murphy, Esq., California State Bar No. 152248
LAW OFFICES OF THOMAS R. HOGAN
60 South Market Street, Suite 1125
San Jose, CA  95113-2332
Telephone:  (408) 292-7600


Attorneys for Defendant
PUBLIC KEY PARTNERS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER SCHLAFLY,<br><br>        Plaintiff,<br><br>v.<br><br>PUBLIC KEY PARTNERS and<br>RSA DATA SECURITY, INC.,<br><br>        Defendants. | No. CV 94 20512 PVT<br><br>REPLY MEMORANDUM OF DEFENDANT<br>PUBLIC KEY PARTNERS<br><br>Date:  11/23/94<br>Time:  10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . .   ii

I.    PRELIMINARY STATEMENT  . . . . . . . . . . . . .   2

II.   PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION  . . . . . . . . .   5

      A.   The Plaintiff's Fraud Cause Of Action  . . . . . . .   5

      B.   The Plaintiff's Mail Fraud Cause of Action  . . . . .   8

      C.   The Plaintiff's Extortion Cause of Action  . . . . .  10

      D.   The Plaintiff's RICO Cause of Action  . . . . . . .  11

      E.   The Plaintiff's Libel Cause of Action  . . . . . . .  14

      F.   The Plaintiff's Antitrust Cause of Action  . . . . .  15

      G.   The Plaintiff's Patent Misuse Cause of Action  . . .  19

      H.   The Plaintiff's Unfair Business Practices Cause of
           Action  . . . . . . . . . . . . . . . . . . . .  20

      I.   The Plaintiff's Interference With Contracts Cause of
           Action  . . . . . . . . . . . . . . . . . . . .  21

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . .  21

i

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

4   Abbott Laboratories v. Brennan (Fed. Cir. 1991)
    952 Fed. 2d 1346 . . . . . . . . . . . . . . . . . . 17, 18
5

6   Atari Games Corp. v. Nintendo of America, Inc. (Fed. Cir 1990)
    897 F.2d 1572 . . . . . . . . . . . . . . . . . . . . . . 19
7

8   Bennett v. Berg (8th Cir. 1982)
    685 F.2d 1053 . . . . . . . . . . . . . . . . . . . . . 14
9

10  Cohen v. Avco Corp. (D.C. N.Y. 1953)
    113 F. Supp. 244 . . . . . . . . . . . . . . . . . . . 15
11

12  Comwest Inc v. American Operators Services, Inc. (C.D. Cal. 1991)
    765 F. Supp. 1467 . . . . . . . . . . . . . . . . . . 7, 13
13

14  Copperweld Corp. v. Independence Tube Corp. (1984)
    467 U.S. 752 . . . . . . . . . . . . . . . . . . . . . 16
15

16  Elliott v. Foufas (5th Cir. 1989)
    867 F.2d 877 . . . . . . . . . . . . . . . . . . . . . 13
17

18  Handgards, Inc. v. Ethicon, Inc. (9th Cir. 1979)
    601 F.2d 986 . . . . . . . . . . . . . . . . . . . . 17, 18
19

20  Hokama v. E.F. Hutton & Company, Inc. (C.D. Cal. 1983)
    566 F. Supp. 636 . . . . . . . . . . . . . . . . . . . 7, 8
21

22  In re Worlds of Wonder Securities Litigation (N.D. Cal. 1988)
    694 F. Supp. 1427 . . . . . . . . . . . . . . . . . . . 8
23

24  Jefferson Parish Hospital District Number 2 v. Hyde (1984)
    466 U.S. 237 . . . . . . . . . . . . . . . . . . . . . 17
25

26  Loctite Corp. v. Ultraseal, Ltd. (Fed. Cir. 1985)
    781 F.2d 861 . . . . . . . . . . . . . . . . . . . . 17, 18

27

28

ii

Lopez v. Dean Witter Reynolds, Inc. (N.D. Cal. 1984)
591 F. Supp. 581  . . . . . . . . . . . . . . . . . . . 14

McFarland v. Memorex Corp (N.D. Cal. 1980)
493 F. Supp. 631  . . . . . . . . . . . . . . . . . . . 7

Paulik v. Rizkalla (Fed. Cir. 1985)
760 F.2d 1279  . . . . . . . . . . . . . . . . . . . . 17

Rae v. Union Bank (9th Cir. 1984)
725 F.2d 478  . . . . . . . . . . . . . . . . . . . . . 13

Schreiber Distributing Company v. Serv-well Furniture Company,
Inc. (9th Cir. 1986) 806 F.2d 1393  . . . . . . . . . . 7

United States v. Benny (9th Cir. 1986)
786 F.2d 1410  . . . . . . . . . . . . . . . . . . . . 13

United States v. Computer Sciences (4th Cir. 1982)
689 F.2d 1181  . . . . . . . . . . . . . . . . . . . . 13

United States v. Grinnel Corp. (1966)
384 U.S. 563  . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES**

18 U.S.C. 1951  . . . . . . . . . . . . . . . . . . . . 10

iii

## I.  **PRELIMINARY STATEMENT**

The plaintiff, Roger Schlafly, has failed to address any of the arguments asserted by defendant Public Key Partners (hereinafter "PKP"), in its moving papers.  Rather, the plaintiff has simply regurgitated the garbled, vague, ambiguous, mischaracterized and unsupported allegations of his complaint and argued that what factual statements and corresponding legal theories can be gleaned from those allegations are somehow self evident.  Plaintiff has failed to cite a single legal authority. Moreover, he has failed to address, much less distinguish, any of the authorities cited against his various positions in PKP's moving papers.

PKP has made no secret of the fact that time and page length limitations prevent PKP from separately and comprehensively attacking each of the infirmities with which the plaintiff's complaint is rife.  Thus, for instance, PKP has not and cannot elaborate on every contradiction between the plaintiff's complaint and the complaint exhibits.  Without waiving the right to do so, however, PKP again submits that the arguments which are outlined in it's moving paper are sufficient to establish that the plaintiff has failed to state any claim and, therefore, that his complaint should be dismissed, in it entirety, under Federal Rule of Civil Procedure 12(b)(6).

Of particular note however, after reading plaintiff's opposition papers, is a fundamental, pervasive and fatal defect in both the plaintiff's complaint and those opposition papers:  the legal theories which the plaintiff is pursuing are based on facts which, as shown by the contradictory complaint exhibits, are

plainly wrong.  Without rehashing the Detailed Statement of
Alleged Facts of PKP's moving papers, it is important to recognize
that the complaint exhibits establish several basic, critical
facts in blatant and fatal contradiction to the plaintiff's
allegations.  These are as follows.

The Massachusetts Institute of Technology ("MIT") held all
rights, title and interest in U.S. Patent 4,405,829 (the "RSA
Patent") (with the exception of a non-exclusive license held by
the United States Government).  Complaint Ex. C.  In September of
1983, MIT granted to RSA Data ("RSA") an exclusive license to the
RSA Patent and the right to sue infringers.  Complaint Ex. C.

On November 15, 1988, the plaintiff, his original partnership
(Digital Signature) and his then-partner in that partnership were
enjoined *inter alia* from making, using or selling the
partnership's "Crypt Master" program or from infringing in any way
on the RSA patent, except under prior written approval or under
license, from RSA Data (or the United States Government).
Complaint Ex. C.

On April 6, 1990, Caro-Kann Corporation and RSA formed PKP
partnership for the purpose of jointly licensing certain of their
respective patents in the field of encryption and decoding of
telecommunications transmissions, and specifically including the
RSA patent, to third parties.  Complaint Ex. A.

PKP offered to license its RSA technology to Digital
Signature and/or its successor, Information Security Corporation
("ISC"), on at least four (4) separate occasions, by
correspondence alone.  Complaint Exs.  J-8, J-9, J-4 and J-7.
Rather than follow lawful channels, however, ISC sought to use the

3

patented PKP technology without having to pay license fees, in clear violation of both patent laws and the injunction expressly prohibiting such infringement. Specifically, in fewer than three (3) years after the injunction had issued, PKP learned that the plaintiff had resurrected the very "Crypt Master" project that was specifically addressed in the injunction and which incorporated, and therefore infringed on PKP's patented technology. Complaint Ex. S. More recently, PKP learned that ISC and American Telephone and Telegraph Corporation ("AT&T") had co-participated in the development of, and thereafter attempted to distribute and to sell, another product which infringed on PKP's technology. Complaint Ex. D.

The plaintiff now claims that PKP has committed all manner of wrongdoings because it has never licensed its technology to ISC. The plaintiff seeks, therefore, to have PKP's patents declared invalid and, apparently, to recover compensation for the period during which those patents were not lawfully available to him.

What the plaintiff's opposition papers make clear is that, after the plaintiff has had the opportunity to correct or explain the ambiguities, mischaracterizations and garbled allegations of his complaint, as itemized in some detail in PKP's moving papers, no actionable facts, to support any of his claims, can be truthfully or credibly stated. Accordingly, PKP again urges this court to dismiss the plaintiff's complaint, in its entirety, under Federal Rule of Civil Procedure 12(b)(6).

## II.   PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION

### A.   The Plaintiff's Fraud Cause Of Action.

The gist of the plaintiff's fraud claim (¶¶ 19, 25, 26, 61, 65) is an alleged fraudulent inducement of standards-making bodies, including ANSI and IEEE, to draft standards based on RSA and other PKP patents by fraudulently promising a reasonable and non-discriminatory licensing policy when, according to the plaintiff, no such policy exists.  Complaint ¶ 19.  The plaintiff also refers, in his opposition papers, to "exhibits" in support of this argument but has failed to identify those exhibits.

There are at least two (2) basic defects with the plaintiff's argument.  First, PKP did indeed have reasonable and non-discriminatory licensing policies, evidence of which the plaintiff, through Digital Signature and/or ISC, presumably received in writing, on at least two (2) separate occasions by letters from PKP dated respectively, September 24, 1990 (Complaint Ex. J-4) and November 7, 1991 (Complaint Ex. J-7).

Further, PKP followed its reasonable and non-discriminatory licensing policies until it was forced to put all such licensing on hold by late March 1994, pending resolution of its continuing discussions with the United States Government regarding the DSS technology (Complaint Ex. Q (3/28/94 PKP letter to American Bankers Association and IEEE)).  PKP immediately thereafter notified ISC, in writing, of this situation and included a copy of its March 28, 1994 letter to the American Bankers Association and IEEE (Complaint Ex. Q).  Because ISC had, however, apparently violated the 1988 judgment in its recent dealings with AT&T (actions which are discussed in more detail below), PKP was

5

1  naturally disinclined to grant ISC a license for RSA technology

2  and so indicated to ISC in PKP's April 4, 1994 letter to ISC

3  (Complaint Ex. F).  In any event, however, as of April 4, 1994,

4  the date of PKP's letter to ISC, PKP was not, giving pending

5  resolution of the matter with the government, in a position to do

6  so and, accordingly, so notified ISC.

7      In short, PKP made no "fraudulent promises" in this regard.

8  It made its reasonable and non-discriminatory licensing policies

9  available to the plaintiff, over the course of two (2) separate

10  mailings beginning in September of 1990 and immediately notified

11  ISC of its need to tentatively hold off on further licensing as

12  soon as that became necessary.

13      A second, basic defect with the plaintiff' reasoning is that

14  he is not the real party in interest and has no standing to pursue

15  this claim.  Whether or not the plaintiff is in fact, as he has

16  contended, "a member of the IEEE," "an active participant" or

17  merely "one with an interest in" the development of an IEEE

18  standard, the plaintiff has clearly sued as an individual and not

19  on behalf of IEEE, or in IEEE's name.  IEEE is not a party,

20  therefore, to any extent.  Similarly, whether or not the plaintiff

21  is in fact, as he further contends, "affiliated with ANSI" or

22  "cooperates with" that entity in adopting standards, the plaintiff

23  has simply not sued on behalf of ANSI, or in ANSI's name, but as

24  an individual, in pursuit of his own, private claims.

25      Further, the plaintiff's unusual argument that he is somehow

26  entitled to recompense, regardless of his alleged IEEE membership

27  and simply as a member of the general public, for PKP's promotion

28

6

1  of a standard "that is not generally available," is without legal

2  support.   Further, how such action by PKP would shut the plaintiff

3  "out of the market" and legitimately give rise to an unfair

4  monopoly claim is not explained; nor, of course, is it supported

5  in any way.   In any event, to the extent that the allegation is

6  cited in support of any credible fraud claim, it wholly fails.

7       Finally, aside from these more specific defects, the

8  plaintiff has also failed to remedy the legally insufficient

9  particularity of this cause of action.   Federal Rule of Civil

10  Procedure 9(b) requires a plaintiff to "state with particularity"

11  the "circumstances surrounding the fraud."  Comwest Inc. v.

12  American Operators Services, Inc. (C.D. Cal. 1991) 765 F.Supp.

13  1467, 1470.   The Ninth Circuit has interpreted this rule to

14  require a statement of "the time, place, and specific content of

15  the false representations as well as the identities of the parties

16  to the misrepresentations."  Schreiber Distributing Company v.

17  Serv-well Furniture Company, Inc. (9th Cir. 1986) 806 F.2d 1393,

18  1400-1401.   Further, given that allegations of fraud are

19  particularly injurious to business and professional reputations, a

20  fraud claim may withstand a Rule 9(b) challenge only if it states

21  "the manner in which [the alleged misrepresentations] are false,

22  and the facts that support an inference of fraud by each

23  defendant."  Comwest, supra, at p. 1471 citing McFarland v.

24  Memorex Corp. (N.D. Cal. 1980) 493 F.Supp. 631, 639.

25       Rule 9(b) also requires identification of the "source of the

26  fraud" and specification of the "role of each defendant in the

27  fraud."  Hokama v. E.F. Hutton & Company, Inc. (C.D. Cal. 1983)

28  566 F.Supp. 636, 645 (emphasis in original).   Thus, "it is not

7

enough for plaintiffs to make group allegations in such a situation because collective responsibility is not self-evident. Each defendant is entitled to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." In re Worlds of Wonder Securities Litigation (N.D. Cal. 1988) 694 F.Supp. 1427, 1433.  In order to satisfy Rule 9(b), fraud claims "must allege the roles of defendants in sufficient detail to permit each to assess and answer the various claims of . . . liability asserted in the complaint." Hokama, supra, at p. 646.

In light of these authorities, the plaintiff's fraud allegations are patently inadequate.[1]

**B.   The Plaintiff's Mail Fraud Cause of Action.**

Again, as stated in PKP's moving papers, this fraud claim is alleged with insufficient particularity, as well.

It appears, from the plaintiff's opposition papers, that the basis of this brief, two-paragraph claim (Complaint ¶¶ 61 and 62) is stated in three (3) letters, Complaint Exs. R, K, and Q.

Exhibit R consists of an April 20, 1990 letter from PKP to the National Institute of Standards ("NIST") announcing the formation of PKP and simultaneous accumulation of four (4) patents (including the RSA patent). *Inter alia*, the letter provided assurances that licenses to practice RSA signatures would be

---

[1]The plaintiff's opposition papers also contain a throw-away one sentence "argument" that "the claim that El Gamal is covered by PKP patents . . . is also fraudulent."  While nothing in the complaint exhibits or in the plaintiff's convoluted complaint lends any credible support to this "argument," more fundamentally, the plaintiff neither alleges nor appears to have been damaged, or even affected, in any way by operation or non-operation of the El Gamal system.  Therefore, this argument, too, is without merit.

1    available "under reasonable terms and conditions on a non-

2    discriminatory basis."  Complaint Ex. R.

3        Exhibit K consists of a March 15, 1991 letter from PKP to the

4    American Bankers Association, a standards board, to outline its

5    licensing policies.  PKP notes, in this letter, that since its

6    inception, the company had not denied a license to any party.

7    Complaint Ex. K.

8        Finally, Exhibit Q, referred to above, consists of a March

9    28, 1994 letter from PKP to the American Bankers Association and

10   the IEEE Computer Society in response to their respective requests

11   for clarification of PKP's licensing policies.  In this letter,

12   PKP stated that any such clarification would have to wait pending

13   resolution of its continuing discussions with the United States

14   government regarding the DSS technology.

15       The common subject of all three (3) letters is, in other

16   words, the nature of PKP's licensing policies.  It appears,

17   therefore, that the plaintiff is again arguing that the "fraud"

18   for purposes of this claim lies in PKP's promise of reasonable and

19   non-discriminatory licensing policies.  As stated above, however,

20   PKP did operate under reasonable and non-discriminatory policies

21   until March of 1994 or so, when it was forced to tentatively place

22   all licensing on hold.  Thus, there is nothing false or fraudulent

23   in any of the three (3) letters or in any other of the plaintiff's

24   complaint exhibits.  No other letters, other exhibits or other

25   factual allegations are cited in support of this claim.  Thus,

26   again, this claim is without merit as well.

27

28

C.   **The Plaintiff's Extortion Cause of Action.**

PKP has not "obtain[ed] . . . property from another," or done
so "by wrongful use . . . force, violence or fear or under color
of official right." 18 U.S.C. 1951. Further, contrary to the
plaintiff's vague assertions, there are no patents which PKP has
licensed that PKP "knows to be invalid." PKP has never extracted
license fees "from any such invalid patents" nor indeed has it
ever extracted license fees of any sort from ISC because ISC has
never held a PKP license. This, however, is what is stated in
paragraph 64 of the plaintiff's complaint and what the plaintiff
claims "explains" his extortion claim.

The plaintiff refers, in support of this claim, to Complaint
Exhibits P, S, X, U and V. Complaint Exhibit P is a copy of a May
30, 1994, Government News article, written by a Government News
staff member, regarding NIST's changing position with regard to
intellectual property rights in the DSS technology. The article
refers to NIST/PKP negotiations on the issue and is entitled "NIST
approves DSS despite threat of a patent lawsuit." Complaint
Ex. P. PKP fails to see how PKP's continuing assertion to patent
rights to the DSS technology and its determination to enforce any
such rights, all in the normal course of its business, somehow
works an extortion on the plaintiff. The plaintiff claims,
however, that the subject extortion "threats" against him are
"explained in" and "substantiated" by this and the other cited
exhibits.

Similarly, Exhibit S, also cited by the plaintiff and to
which he refers as a "threatening letter", consists of a March 13,
1991 letter from PKP to ISC noting that ISC's resurrected project

1   "Crypt Master," used Public Key technology, reminded ISC of PKP's

2   exclusive sublicensing rights to the four (4) patents then

3   covering all known methods of practicing public key technology,

4   further noted that ISC did not have a license to practice such

5   technology and, finally, requested that ISC contact PKP as soon as

6   possible to discuss such a license.  Complaint Ex. S.

7        Exhibits U and V, also cited by the plaintiff in support of

8   this claim, consist of two (2) other articles, the first written

9   by W. Diffie and M. Hellman, two of the inventors of one of the

10  PKP patents, published in November of 1976 and entitled "New

11  Directions in Cryptography," and the second written by W. Diffie,

12  published in May of 1988 and entitled "The First Ten Years of

13  Public Key Cryptography."  Specifically, the plaintiff claims that

14  these articles "back up" his claim that threats allegedly made by

15  PKP were "unwarranted" because the patents referenced in both

16  articles were, according to the plaintiff's calculations and in

17  the plaintiff's mind only, invalid.

18       Finally, the plaintiff cites Exhibit X, a copy of a complaint

19  for Declaratory and Injunctive Relief filed by Cylink Corporation

20  against RSA on June 30, 1994, apparently in support of the

21  proposition that PKP somehow knew that the RSA license was

22  invalid.  That declaratory relief action, seeking a judicial

23  determination of, inter alia, patent rights has no relevance to

24  plaintiff's claims here.  It certainly does not evidence PKP's

25  knowledge concerning the validity or invalidity of any patent.

26       **D.   The Plaintiff's RICO Cause of Action.**

27       As noted above, and earlier, in PKP's moving papers, there is

28  no conceivable basis here for either an 18 U.S.C. § 1341 claim

11

(pertaining to mail fraud) or a § 1951 claim (pertaining to interference with commerce, robbery or extortion).  Thus, again, there is no conceivable basis for the plaintiff's purported RICO claim, which, as the plaintiff acknowledges in his opposition papers, rests upon establishment of a violation of either of those two (2) code sections.

There are additional reasons why this claim must fail.  Briefly, to address the relevant points raised by the plaintiff in his opposition papers, those reasons include the following.

The plaintiff states in his opposition papers that the requisite RICO "enterprise" "is alleged in paragraph 59" of his complaint.  Paragraph 59 reads as follows:

> Defendants concocted a joint scheme to fraudulently exaggerate the scope of their patents and deceived standards making bodies into drafting an RSA standard on or about April 6, 1990, the day the PKP partnership agreement in Exhibit A was consummated.  Defendants formed an association in-fact that constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  Plaintiff's Complaint, ¶ 59.

This paragraphs amorphously suggests that PKP and, more specifically, its formation by co-partners RSA and Caro-Kann Corporation constituted the requisite enterprise.

The plaintiff seems to vary this interpretation somewhat in his opposition papers where he states that the "enterprise" "is a conspiracy between PKP and RSA to control the Public Key market."  This passage suggest that PKP and RSA together constituted the requisite enterprise.

Whether the plaintiff can articulate his own theory consistently, however, is irrelevant.  Under either interpretation, the plaintiff's claim fails because, as stated by the Ninth Circuit, a RICO defendant cannot also serve as a RICO

12

1  enterprise. Rae v. Union Bank (9th Cir. 1984) 725 F.2d 478, 480.

2  The same court later reasoned that "a corporate [or partnership]

3  defendant cannot be employed by itself or associate with itself."

4  United States v. Benny (9th Cir. 1986) 786 F.2d 1410, 1415.

5      Put another way, an "enterprise" "was meant to refer to a

6  being different from, not the same as or part of, the person whose

7  behavior the act was designed to prohibit, and, failing that, to

8  punish." United States v. Computer Sciences (4th Cir. 1982) 689

9  F.2d 1181, 1190. A contrary reading would amount to an assertion

10  that "a defendant could conspire with his right arm, which held,

11  aimed and fired the fatal weapon," a reading no court would "take

12  seriously, in the absence, at least, of very explicit statutory

13  language" to that effect. Id.

14      The plaintiff's claim must fail for other reasons, as well.

15  In order to avoid dismissal for failure to state a claim, "a

16  [RICO] plaintiff must plead specific facts, not mere conclusory

17  allegations, which establish the existence of an enterprise."

18  Comwest, supra at p. 1475 citing Elliott v. Foufas (5th Cir. 1989)

19  867 F.2d 877, 881. The plaintiff has plainly failed to do so. In

20  particular, he refers without elaboration in his complaint, to "an

21  association-in-fact." However, "if the enterprise alleged is an

22  "association-in-fact" enterprise, the plaintiff must show some

23  evidence of an ongoing organization, formal or informal, that

24  functions as a continuing unit over time through a hiarchical or

25  consensual decision-making structure." Comwest, supra at p. 1476

26  citing Elliott, supra at p. 881. The plaintiff has failed, and

27  will be unable to allege any such factors. Thus his "association-

28  in-fact" enterprise theory is also fatally deficient.

13

1    Finally, and more generally, where, as here, a pattern of

2   racketeering activity is based on an alleged series of frauds, a

3   plaintiff "must allege with particularity such matters as the

4   time, place, and contents of the false representations and the

5   identity of the person making the misrepresentations." Lopez v.

6   Dean Witter Reynolds, Inc. (N.D. Cal. 1984) 591 F.Supp. 581, 585

7   citing Bennett v. Berg (8th Cir. 1982) 685 F.2d 1053, 1062.  The

8   plaintiff has failed, and will be unable to allege any such

9   factors.

10      **E.    The Plaintiff's Libel Cause of Action.**

11      The plaintiff apparently acknowledges that the gist of his

12  libel claim is embodied in complaint Exhibit D, a January 12, 1994

13  letter from PKP to AT&T regarding recent dealings between ISC and

14  AT&T which, according to press releases, appeared to involve

15  unauthorized use of the DSA program and, therefore, a violation by

16  ISC of the November 15, 1988 injunction against it on this issue.

17  However, the plaintiff has still not identified the libel.  The

18  letter cites to and attaches press releases announcing a joint

19  AT&T/ISC licensing program, accurately quotes the applicable

20  injunction language from the November 1988 judgment, inquires as

21  to whether AT&T was informed of this injunction before dealing

22  with ISC and demands that AT&T cease further distribution and sale

23  of any products "to the extent [such products] are tainted by

24  ISC's violation of this injunction."  Finally, the letter offers

25  to amend AT&T's existing license to include the desired DSA

26  technology so that AT&T could, in fact, be authorized to use the

27  technology.  The plaintiff cannot identify the libel, of course,

28

14

1  because there is none; the statements are based on fact and

2  contain nothing false.

3      Further, the plaintiff misses another fundamental point with

4  regard to the real party in interest issue.  The subject PKP

5  letter to AT&T refers to potential violation by ISC of the

6  November of 1988 injunction against it.  Whether the same

7  injunction was also directed against other parties is irrelevant

8  as none of those other parties are referred to as violating or

9  potentially violating parties, or even referred to all, in this

10  letter.  ISC is, therefore, the only real party in interest and

11  the only party who can bring a claim on this issue.  ISC has not

12  done so.  The plaintiff's claim, in any event, lacks any merit.

13      **F.   The Plaintiff's Antitrust Cause of Action**.

14      It remains unclear on what anti-trust law the plaintiff is or

15  will be relying.  Indeed, the plaintiff himself apparently does

16  not know; though PKP alerted him to this defect in its moving

17  papers, he has wholly failed to address the issue in his

18  opposition papers.  At a minimum, PKP urges this court to follow

19  the reasoning of cases such as Cohen v. Avco Corp. (D.C. NY 1953)

20  113 F.Supp. 244, which hold that a complaint must set forth

21  specifically each section of the antitrust laws relied upon as the

22  basis for the relief requested, so as to establish jurisdiction

23  and provide notice to the defendant as to whether the proceeding

24  is under the Clayton, Sherman or Robinson-Patman Act.  Cohen,

25  supra.

26      Furthermore, it remains unclear what precisely the plaintiff

27  is alleging each defendant did in the way of, or contributing to,

28  an anti-trust violation.  The plaintiff restates only that PKP's

1 formation was largely for the express purpose of jointly licensing
2 certain of the partners' respective patents in the field of
3 encryption and decoding of telecommunications' transmissions.   In
4 support of this claim, the plaintiff cites only Exhibit A (the PKP
5 General Partnership Agreement).   He fails to allege, however, how
6 this "very formation" (of PKP) or any other activities engaged in
7 by either defendant constituted an antitrust violation.

8     For the same reasons cited above with respect to the
9 plaintiff's fraud claim, PKP urges the court to require,
10 analogously, that, at a minimum, the plaintiff specify the role of
11 each defendant in the alleged "antitrust scheme", with sufficient
12 detail, so that each defendant can assess and answer the
13 respective claims against it.

14     Further, even if the plaintiff could remedy these procedural
15 defects, he will be unable, for more substantive reasons, to
16 credibly allege any antitrust violation.

17     Were the plaintiff to attempt to proceed under Section 1 of
18 the Sherman Act, he would fail, for reasons analogous to those
19 alleged above with regard to the plaintiff's RICO claim,
20 specifically, that the requisite concerted conduct ("conduct,
21 combination . . . conspiracy") cannot exist between one company
22 and another company of which it is a part.   See, generally,
23 Copperweld Corp. v. Independence Tube Corp. (1984) 467 U.S. 752,
24 766-770 (rejecting "intra-enterprise conspiracy" theory for
25 Section 1 antitrust claims).

26     The plaintiff would also be unable to allege a credible claim
27 under Section 2 of the Sherman Act.   The plaintiff's own
28 opposition papers confirm, by their failure to cite any relevant

facts, that there are no facts to support such a claim.  It seems, rather, that the plaintiff is equating the mere existence and enforcement of a patent with market (or monopoly) power. In deference to the plaintiff, this is a common misconception. See, Jefferson Parish Hospital District Number 2 v. Hyde (1984) 466 U.S. 2, 37 (Justice O'Connor's concurrence).  However, the United States Supreme Court has distinguished the "growth or development [of a company] as a consequence of a superior product, business acumen, or historic accident" from the wilful acquisition or maintenance of monopoly power.  United States v. Grinnell Corp. (1966) 384 U.S. 563, 570-571.  "The commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibitive monopolist," in other words.  Abbott Laboratories v. Brennan (Fed. Cir. 1991) 952 Fed.2d 1346, 1354.

Instead, determination of whether the patentee meets the Sherman Act elements of monopolization or attempt to monopolize is governed by the rules of application of the antitrust laws to market participants, "with due consideration to the exclusivity that inheres in the patent grant."  Abbott, supra at p. 1355, citing Loctite Corp. v. Ultraseal, Ltd. (Fed. Cir. 1985) 781 F.2d 861, 876-877.  As the Ninth Circuit recognized in Handgards, Inc. v. Ethicon, Inc. (9th Cir. 1979) 601 F.2d 986, the patent system, which is rooted in the United States Constitution (Article I, Section 8, Clause 8), serves a very positive function in our system of competition, i.e., by encouraging "innovation and its fruits; new jobs and new industries, new consumer goods and trade benefits."  Loctite, supra at p. 876-877, citing Paulik v.

1  Rizkalla (Fed. Cir. 1985) (en banc) 760 F.2d 1270, 1276; see also,

2  generally, Handgards, supra.  Consequently, as the court in

3  Loctite Corp, supra, stated, "the treble damage threat of

4  antitrust liability should not be used to thwart good faith

5  efforts at patent enforcement."

6      In short, PKP submits that the plaintiff's focus should not

7  be, as it is, on the mere existence of a patent or set of patents

8  held by either or both of the defendants, but on supernormal

9  profits, barriers to entry, consumer preferences, absence of

10  adequate substitutes, or other factors truly relevant to the

11  question of whether a particular product or set of products has

12  "market power."  Abbott Laboratories, supra at p. 1355 citing W.

13  Montgomery, The Presumption of Economic Power for Patented and

14  Copyrighted Products in Tying Arrangements, 85 Columbia Law

15  Review, 1140, 1150-1151 (1985).

16      As to the plaintiff's claimed ignorance of competition by the

17  United States Government of Public Key Encryption Technology,

18  Complaint Exhibit C (the 1988 Consent Judgment) makes clear that

19  at the time that the Massachusetts Institute of Technology granted

20  RSA an exclusive license to the RSA patent together with the right

21  to sue infringers, the United States Government already held its

22  own license to the same patent.  Complaint Ex. C.  The court ruled

23  that, notwithstanding its injunction against the plaintiff's then-

24  company (Digital Signature) from infringing on the RSA patent

25  without prior written approval or under license from RSA, the

26  plaintiff's company was permitted "to manufacture and design

27  products in accordance with the license of the United States

28  Government."  Id.

1      **G.    The Plaintiff's Patent Misuse Cause of Action.**

2      "Patent misuse" is generally considered to be a breed of

3  antitrust misconduct, typically based on fraud, and governed,

4  therefore, by antitrust laws.  See e.g., Atari Games Corp. v.

5  Nintendo of America, Inc. (Fed. Cir. 1990) 897 F.2d 1572.

6  Assuming this is how the plaintiff has intended to use the term,

7  his claim for patent misuse must fail for the same reasons alleged

8  above with regard his antitrust claim.  In addition, however, PKP

9  briefly addresses the individual points raised by the plaintiff in

10 his opposition papers, below.

11     In support of this claim, the plaintiff refers to "patent

12 threats" and cites, in support, complaint Exhibits R (4/20/90

13 letter from PKP to NIST) and Q (3/28/94 letter from PKP to

14 American Bankers Association and IEEE).  Both complaint exhibits

15 were cited by the plaintiff and discussed above in the context of

16 his mail fraud cause of action.  As indicated in that section,

17 there is nothing false or fraudulent in the letters.  There is

18 clearly also nothing "threatening" or otherwise evincing of an

19 improper use of PKP's patents stated in the letters or

20 demonstrated elsewhere.

21     Further, PKP reiterates its argument that the plaintiff is

22 not the real party in interest on this issue.  Any patent issues

23 raised by the plaintiff including, in particular, whether PKP's

24 patents have been or threaten to be infringed concern ISC and/or

25 Digital Signature, the two companies with which the plaintiff has

26 been affiliated but notably, neither of which has been a made a

27 party to this suit.  Nothing that PKP has done in pursuit of its

28 patents has been directed at the plaintiff individually.  Thus, as

19

1   with his fraud and libel claims, the plaintiff is not the real
2   party in interest and has no right to sue, individually, on this
3   issue, notwithstanding the claimed damages to his business and
4   earning abilities, and his expressed desire to protect the
5   "security of our nation's information infrastructure."  See
6   generally, F.R.C.P 17(a).

7       Finally, this defect remains whether it is declaratory relief
8   or some other form of remedy that the plaintiff seeks by virtue of
9   this claim.

10      **H.    The Plaintiff's Unfair Business Practices Cause of
            Action.**
11

12      Again, it is impossible to discern any valid claim, including
13   one for "unfair business practices," in either the complaint
14   paragraphs which conclusorily throw out that phrase or otherwise
15   roughly seem to "support" this claim (Complaint ¶¶ 18, 20-23, 58
16   and 63) or the complaint exhibits cited in those paragraphs
17   (Complaint Exs. F, J and K).

18      The gist of the referenced paragraphs, again, is the
19   plaintiff's misfounded allegation that PKP failed to keep its
20   promise that it would issue licenses on a reasonable and non-
21   discriminatory basis.  In support of this claim, the plaintiff
22   argues that he has "never [been] able to determine even what the
23   PKP licensing policy is" (Complaint 5:12-13), although, as noted
24   above, he was sent copies of PKP's policies, over the course of
25   two (2) separate mailings, beginning in September of 1990.  The
26   plaintiff further argues that PKP denied him a RSA license in 1990
27   (Complaint ¶ 20) though the same documents referenced above
28   clearly indicate that while he was sent licensing policies on

1  numerous occasions, he never followed up with a formal request and

2  was, finally, notified by PKP in April of 1994 that, for reasons

3  detailed above, all of its licensing was tentatively, but

4  necessarily, on hold.

5      This claim, like the others, therefore, is nonsensical and

6  the plaintiff has failed to provide any clear, much less credible,

7  allegation in support of this claim.

8      **I.   The Plaintiff's Interference With Contracts Cause of
       Action.**

9

10     The plaintiff relies on Complaint Exhibit D, the January 12,

11  1994 PKP letter to AT&T discussed above, and the "related"

12  paragraphs of his complaint, 12 and 13, in support of this claim.

13     As indicated above and in PKP's moving papers, however, PKP

14  sought by this letter to protect its legitimate intellectual

15  property rights to its technology.  To the extent that any joint

16  ISC/AT&T product infringed on PKP patents, and were in violation

17  of the November 1988 injunction against ISC's predecessor company

18  (Digital Signature) regarding those patents, PKP demanded that any

19  further distribution or sale by AT&T be stopped.  This action by

20  no means constitutes interference with any legitimate contracts to

21  which the plaintiff, or ISC, were parties.

22              **III.   CONCLUSION**

23     In light of the foregoing, PKP respectfully requests that

24  this court dismiss the plaintiff's complaint in its entirety,

25  under Federal Rule of Civil Procedure 12(b)(6).

26     In the alternative, PKP respectfully requests that the

27  plaintiff be ordered to provide a more definite statement, for

28

                                21

1  each of his causes of action, pursuant to Federal Rule of Civil

2  Procedure 12(e).

3                                    Respectfully submitted,

4

5  Dated: _Nov. 14, 1994_            _Thomas R. Hogan_

6                                    THOMAS R. HOGAN
                                     DENISE T. MURPHY

7                                    Attorneys for Defendant
                                       PUBLIC KEY PARTNERS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          22

**PROOF OF SERVICE**

Leslie Holmes, declares as follows:

I am a citizen of the United States over the age of eighteen (18) years and am not a party to the above-numbered action. I am employed by the Law Offices of Thomas R. Hogan at 60 South Market Street, Suite 1125, San Jose, California 95113-2332, and am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service; pursuant to that practice, mail placed for collection at designated locations during designated hours in the ordinary course of business are deposited that same day with the United States Postal Service with first-class postage thereon fully prepaid.

On November 14, 1994, I served the attached **REPLY MEMORANDUM OF DEFENDANT PUBLIC KEY PARTNERS**

by placing a true copy thereof in a sealed envelope addressed to the persons named below at the address shown:

ATTORNEYS FOR PLAINTIFF

Roger Schlafly
Post Office Box 1680
Soquel, California   95073
(408) 476-3550

ATTORNEYS FOR DEFENDANT RSA DATA SECURITY, INC.

Mary O'Byrne, Esq.
Tomlinson, Zisko, Morosoli & Maser
200 Page Mill Road, Second Floor
Palo Alto, California   94306
(415) 325-8666

1          I declare under penalty of perjury that the foregoing is

2  true and correct.

3          San Jose, California:   November 14, 1994.

4

5                         Leslie Holmes

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28