# ORIGINAL

FILED

Nov 15  3 31 PM '95

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

116

1   JAMES R. BUSSELLE (SBN 75980)
2   THOMAS E. MOORE III (SBN 115107)
    MARY E. O'BYRNE (SBN 121067)
3   **TOMLINSON, ZISKO, MOROSOLI & MASER**
    200 Page Mill Road, Second Floor
    Palo Alto, California  94306
4   Telephone:  (415) 325-8666

5   Attorneys for Defendant
    RSA Data Security, Inc.

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  ROGER SCHLAFLY,                  )   CASE NO.: C 94 20512 SW (PVT)
                                     )
12              Plaintiff,           )   DECLARATION OF RONALD L.
                                     )   RIVEST IN OPPOSITION TO
13  vs.                              )   PLAINTIFF'S MOTION FOR
                                     )   PARTIAL SUMMARY JUDGMENT
14  PUBLIC KEY PARTNERS and RSA DATA )
    SECURITY, INC.,                  )   DATE:  December 6, 1995
15                                   )   TIME:  10:00 a.m.
                Defendants.          )   BEFORE:  Hon. Spencer
16  _____)            Williams

17

18       I, Ronald L. Rivest, declare:

19       1.   I am one of the inventors of U.S. Patent No.

20  4,405,829, "Cryptographic Communications System and Method" (the

21  "MIT Patent"), and I am one of the founders of defendant RSA Data

22  Security, Inc.  I have personal knowledge of each and every fact

23  set forth below and can competently testify thereto.

24       2.   I received a B.A. degree in Mathematics from Yale

25  University in 1969, and a Ph.D. degree in Computer Science from

26  Stanford University in 1974.  I am presently a professor of

27  computer science at the Massachusetts Institute of Technology

28  ("MIT"), and I am also the associate director of MIT's Laboratory

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

1  for Computer Science, a member of MIT's Theoretical Computer

2  Science Group and a co-founder of MIT's Cryptography and

3  Information Security Group.  I am a member of the ACM and the

4  National Academy of Engineering and I have served as a director

5  of the International Association of Cryptologic Research, the

6  organizing body for the EUROCRYPT and CRYPTO series of technical

7  conferences on cryptology for many years.  I have also published

8  numerous papers in the areas of cryptographic design and

9  cryptanalysis.

10      3.    Cryptography is the study of codes and ciphers to

11  ensure the privacy and authentication of information.  Over its

12  history, cryptographic techniques and design have evolved to meet

13  technological improvements both in communications and in methods

14  of cryptanalysis, i.e. code breaking.

15      4.    The use of secret codes for military applications goes

16  back thousands of years.  Julius Caesar is known to have used a

17  secret code involving the simple replacement of each letter of a

18  message by the letter three places down in the alphabet:  For the

19  letter "A," Caesar used the letter "D," for the letter "B,"

20  Caesar used the letter "E," etc.  The specific parameters of the

21  Caesar code, that is, the shift of three letters down the

22  alphabet, is referred to as the "key."  The original message is

23  referred to as "plaintext" and the encoded message is referred to

24  as "ciphertext."  Because the security of Caesar's key depended

25  on its not being known to Rome's enemies, such a key is referred

26  to as a "secret key."

27      5.    The Caesar key has two inherent weaknesses.  First, it

28  is a very simple letter-substitution key.  Systematic methods of

breaking such a key are almost as old as cryptography itself.
Second, Caesar's secret key was exposed to possible interception
every time the secret key was changed or new users of the secret
key were added.

6.   The first weakness of the Caesar key illustrates the
essential challenge of cryptographic design.   To ensure security,
code-makers have to stay at least one step ahead of the code-
breakers.   As a consequence, over the centuries, code design has
of necessity become increasingly complex.   This challenge was
increased with the advent of expanded communications technology.
Radio signals permitted military forces to communicate with each
other over long distances.   Radio also allowed anyone tuned in to
the right frequency to intercept numerous coded messages.   The
more coded messages available for cryptanalysis, the easier the
task of breaking the code becomes.

7.   The same problem exists for any communications signal
transmitted over an insecure channel.   Further examples are tele-
phone wires which can be tapped, cellular telephone conversations
which can be overheard, satellite signals which can be inter-
cepted and computer-to-computer communications over the Internet
which a clever hacker can retrieve.

8.   To accomplish greater complexity and to accommodate
technological improvements in communications, cryptographic
design turned to the use of encryption machines.   Perhaps the
best known encryption machine was the German "Enigma" machine of
World War II.   The Enigma used varying combinations of rotors to
encrypt and decrypt messages.   With considerable effort and some
luck, the Allies finally broke the Enigma during the war.

TOMLINSON, ZISKO, MOROSOLI & WISER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

9.   If the Enigma were in use today, however, modern computers, applying appropriate techniques, would have made short work of breaking it.  Modern cryptographic design must not only accommodate technological advances in communications, it must also accommodate the ever-increasing processing speed of computers.  Because of this, modern cryptographic design, and the machines used to implement those designs, are inextricably linked.  These machines include:  microchips designed to encrypt data sent over telephone lines, and general purpose computers using specially-designed software.

10.   Patents have been granted on encryption machines for decades.  Most of these patents describe a means of inputing plaintext (the original message) and outputing ciphertext (the encoded message), often over some form of communications channel.  The patents describe, often in mathematical terms, the internal workings of encryption machines as a key or means of creating keys (known as "key generation").  A true and correct copy of several pages of a list of cryptography patents is attached hereto as Exhibit A.

11.   The other weakness inherent in Caesar's secret key is common to all secret key systems, namely the risk of interception when secret keys are distributed.  The nature of the risk of interception has changed as the market for cryptography has grown.  The advent of computers and advanced telecommunications has expanded the market for cryptography beyond military and other governmental uses.  Private industry has developed a need to protect personal and corporate privacy because competitors can easily intercept telephone conversations (particularly over

cellular phones), electronic messages, faxes and satellite transmissions.

12.  "Public key" cryptography was invented to solve these problems.  In public key cryptography, every user has two keys (rather than one), a public key and a private key.  The public key can be published for all the world to see and use.  The private key is kept in strict confidence by its owner.  For the system to work successfully, this pair of keys must have two properties:

(a)  Anything encrypted with one key can be decrypted with the other; and

(b)  Given the knowledge of the public key, it is infeasible to discover the private key.

Thus, for Alice to send a coded message to Bob, Alice looks up Bob's public key in a directory of public keys.  Alice encrypts the message with Bob's public key.  When Bob receives the message, he decrypts the message with his own private key. Because it is infeasible for Alice or anyone else to take Bob's public key and use it to discover Bob's private key, privacy of the message is assured.

13.  Public key cryptography also allows the use of "digital signatures" that verify the identity of a sender in much the same way that a real signature validates a check or contract. Alice can "sign" her message to Bob by using her own private key to create the "signature."  Again, this private key is unique to Alice.  Bob may then use Alice's public key to confirm that the "signature" was created with Alice's private key.  This confirms that Alice sent the message.

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

40765.1

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

14.   The unique qualities of public key cryptography are expanding the cryptography market still further.   Various companies are touting electronic cash, checks and credit cards, by which ordinary consumer transactions take place via computer over the Internet.   To accomplish this, the transactions must be both secure and authenticated.   Public key cryptography provides a means for an ordinary consumer to encrypt information such as a credit card number before releasing it over telephone lines and, through digital signatures, provides a means for the recipient of the information to confirm the identity of the sender.

15.   In and around 1977, Adi Shamir, Leonard M. Adleman and I worked together at MIT.   We spent months creating the invention described in the MIT Patent, as a particular implementation of public key cryptography.

16.   We filed our application for a patent with the Patent and Trademark Office on December 14, 1977.   The patent was not issued until almost six years later, on September 20, 1983. During that period, our application was carefully scrutinized, particularly on the subject of patentability.   At one point in 1979, the patent examiner even rejected the application on the grounds that it contained a mathematical algorithm.   This rejection was later reconsidered and withdrawn.   A true and correct copy of the brief filed by our patent counsel seeking such reconsideration is attached hereto as Exhibit B.   A true and correct copy of the final, issued patent is attached to the Declaration of Thomas E. Moore III as Exhibit C.

17.   Dr. Shamir, Dr. Adleman and I assigned the patent to MIT.   At about that time, the three of us formed defendant RSA

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

Data Security, Inc. ("RSA").  The letters "RSA" come from the

first initials of our last names.  On or about September 29,

1983, MIT granted to RSA an exclusive license to the Patent,

together with the right to sue infringers of the MIT patent.  RSA

has marketed and licensed cryptographic software ever since.  I

understand that RSA's success stems in part from the perception

that the technology that Dr. Shamir, Dr. Adleman and I invented

is the most secure public key encryption and authentication

method commercially available.  In fact, in its more secure

forms, a high-speed computer could take thousands of years to

decipher a single message encrypted with the technology.

18.   The MIT Patent describes an apparatus, system and

method of public key cryptography.  In basic terms, the system is

a way of transforming plaintext message signals into ciphertext

signals using certain steps, which are described with mathe-

matical symbols.  The plaintext and ciphertext message signals

may be in the form of a telephone signal, a modem signal, a

facsimile signal, a radio signal or other form capable of being

carried over a communications channel.

19.   The system makes use of the principle that finding

prime numbers is computationally easy, but that factoring the

product of two such numbers can be computationally infeasible,

even for sophisticated computers.  The system includes a

communications channel coupled to at least one terminal having an

encoding device and to at least one terminal having a decoding

device.  The public key is created by selecting two prime

numbers, P and Q, and multiplying them together to obtain a

composite modulus N.

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8666

20.   The composite modulus N, together with a suitably chosen enciphering exponent e, is provided to the message-sender (the owner of the encoding device), or to the public.  The prime number factors, P and Q remain secret.  The message-sender's encoding device encrypts the plaintext message signal using an electronic representation of the public information, e and N, creating a ciphertext message signal.  This ciphertext message signal can only be decoded by persons in possession of the (electronic representations of) P and Q.  Usually, this will be the intended recipient's decoding device, because it is that device which stored the (electronic representations of) the secret numbers P and Q.

21.   The MIT Patent is not a "disembodied mathematical concept," "abstract idea" or a "law of nature."  The MIT Patent is limited to communications systems that use a particular transformation that turns plaintext communication signals into ciphertext signals.  Outside of encryption technology, the principles on which the MIT Patented technology depends remain available for all creative minds to use.

22.   There are many descriptions of the MIT Patented technology in published materials, some of which I have written. Often, these descriptions refer to the technology in mathematical terms.  The reason for this is that mathematic expressions provide a convenient, shorthand means of expressing the transformation that occurs to the plaintext message signal when an encoding device turns that signal into an encrypted ciphertext signal. Without the mathematical shorthand, the descriptions of the

encryption transformation would necessarily involve cumbersome descriptions of circuitry or software.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 15, 1995 at Cambridge, Massachusetts.

*Ronald L. Rivest*

Ronald L. Rivest

TOMLINSON, ZISKO, MOROSOLI & MASER
ATTORNEYS AT LAW
200 PAGE MILL ROAD, SECOND FLOOR
PALO ALTO, CALIFORNIA 94306
(415) 325-8669



# UNITED STATES
# CRYPTOGRAPHIC PATENTS
# 1861 - 1981

## JACK LEVINE

Cryptologia

Terre Haute

UNITED STATES CRYPTOGRAPHIC PATENTS:   1861-1981

by Jack Levine

This book is published by

CRYPTOLOGIA, Inc.
Rose-Hulman Institute of Technology
Terre Haute, Indiana 47803   USA.

First printing, February 1983.

Copyright 1983, by CRYPTOLOGIA, Inc.

ISBN 0-9610560-0-2.

Cover:   Illustrations from Electric Coding Machine patent issued to E. H. Hebern.

Patent number 1,510,441 granted September 30, 1924.

# UNITED STATES CRYPTOGRAPHIC PATENTS

## TABLE OF CONTENTS

Preface . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

List of primary patents 1861–1981 . . . . . . . . . . . . . . . . . . 1

List of secondary patents (by number only) . . . . . . . . . . . . . 61

List of inventors with at least five patents . . . . . . . . . . . . . 63

# UNITED STATES CRYPTOGRAPHIC PATENTS

Jan. 21, 1930.          A. VON KRYHA          1,744,347

CODING MACHINE

Filed Feb. 20, 1925        2 Sheets-Sheet  1



FIG. 5.

FIG. 6.

FIG. 3.

FIG. 1.

SPRING MOTOR

FIG. 2.

FIG. 4.

Inventor
A. von Kryha
By Marker Clark
Attys.

## UNITED STATES CRYPTOGRAPHIC PATENTS

### PREFACE

As my column on cipher equipment in Cryptologia attests, my favorite cryptologic topic is closely related to patents. Therefore, I am especially pleased to be able to add a few words to this exceptional work.

Years ago, before I was indoctrinated into the more sophisticated techniques of patent searching, I used to order patents by the dozen by picking patent numbers at random from lists of class numbers that I knew included cipher machines. When the patents arrived I was fascinated by the interesting and intricate drawings and also frustrated when I tried to decipher the descriptive material, which was written by lawyers who really did not want you to know how the device worked. I also had my disappointments when a patent turned out to be a check protection system, card validation method or in some other peripheral area.

Now, with the publication of this unique tome the veil is lifted and no longer will even the most inexperienced neophyte have to guess about the kind of patent being ordered. But more than that, this extraordinary compilation is a source-book for the study of cryptographic history, the development of cryptographic techniques and their inventors. It is the most complete listing of patents devoted to cryptology ever published and is the result of over 40 years of research by a mathematics professor who has already earned a reputation for excellence in cryptology with numerous papers in leading mathematics journals. Dr. Jack Levine's assiduous work in preparing the final manuscript can best be appreciated by one who was on the receiving end of a virtual torrent of letters which continually updated, improved and corrected what I thought was a fine job at the outset.

Only a labor of love could have produced a work of this quality and there is no doubt that it will remain the standard reference for cryptologic patents well beyond our lifetime and a lasting, well deserved tribute to Professor Jack Levine.

Louis Kruh
1 June 1982

UNITED STATES CRYPTOGRAPHIC PATENTS

2 Sheets—Sheet 2.

(Model.)

R. T. ONEY.

CIPHER CODE AND APPARATUS.

No. 266,875.                    Patented Oct. 31, 1882.

Fig. 5.



Witnesses:                                    Inventor:
Phil C. Dieterich                              R. T. Oney
Alex. Scott                                    W. W. Alexander
                                                   Attorney.

# UNITED STATES CRYPTOGRAPHIC PATENTS

## INTRODUCTION

The expression "cryptographic patent" in this paper means: (1) a device to convert intelligible information into an unintelligible form, or (2) components which are part of such devices.

Examples of information mentioned in (1) include written and spoken language, music, pictures, stock quotations, signaling. Also included in (1) are devices to prevent unauthorized television reception, and means for fraud prevention. These latter two are contained in the listings under "Cryptography" or "Secret" in the Patent Office publication Index to Patent Classification (see below).

Examples of (2) are. rotors, key tapes, pseudo-random number generators. Patents relating to the television classification usually contain the expression "subscription television" in the title. A good example is the title of the patent number 3,478,166. A large number of such patents have appeared beginning about 1950. Most of the inventions of two of the leading inventors (by frequency) have been in this television classification (see below for a list of the high-frequency inventors).

In the early years (centering around 1900) fraud prevention patents mainly dealt with protection of checks. About 1965 the idea of fraud prevention was greatly extended with patents in such areas as prevention of unauthorized use of credit cards (including automatic currency dispensing), and unauthorized computer access. These patents contain some form of encryptment. What may be considered as the development of the traditional "cipher machine" covered the approximate period 1920-1950. Some of the better known names associated with this development include Friedman, Hagelin, Hebern, Kryha, Scherbius, Vernam. Somewhat previous to this time a popular form of patent involved the construction of small-size codes. An example of this may be found in patent number 832,156, and also in 832,559.

In the patent listing which follows the expression "primary patent" indicates a patent included in items (1) or (2) above. A much smaller list called "secondary," while not a member of (1) or (2), may perhaps by some variation in operation be converted to a primary patent. Most pulse code modulation patents are considered secondary, though there are some in the primary class. The secondary patents are listed by number only. The primary patents are displayed in the form

| Patent number | Name of inventor | Date granted | Title of patent |
|---|---|---|---|

Some general information relative to publications of the Patent Office may be helpful to cryptographic patent searchers. A patent is classified by its class and subclass (CSC), and each patent is numbered. At the present time the numbers are in the four million range.

The Official Gazette of the U. S. Patent and Trademark Office (published weekly) contains a brief abstract of each patent granted for the particular week, and includes patent number, CSC, and usually a related diagram.

An Annual Index of Patents is published in two parts with an alphabetical list of patentees in Part I, and a list of patents arranged by CSC in Part II.

## UNITED STATES CRYPTOGRAPHIC PATENTS

Two other important publications are:

Index to the U. S. Patent Classification, which lists alphabetically by subject matter (and subdivisions) the various class-subclass divisions of patents. Thus, under the subject "secret" is found (as one subdivision) "Telegraph" with CSC 178-32 (which has now been subdivided into nineteen subdivisions). The Manual of Classification which lists all CSC's in numerical order, together with the corresponding subject.

Other publications are Classification Definitions, containing in some detail information on the content of the class-subclasses; the Numeric Listing, a microfilm listing of patents in numerical order with corresponding CSC's; and a microfilm listing arranged by CSC, i.e., all patents with the same CSC are listed together.

In the Index to Patent Classification (dated December 1980), under headings "Cryptography" and "Secret" are listed:

### Cryptography

| Class-subclass(es) | |
|---|---|
| Code transmitters | 178-79 |
| Code receivers | 178-89 |
| Codes | 178-113 |
| Fraud preventing | 283-11 |
| Printed matter | 283-17 |
| Typewriting | 400-89 and -90 |
| Education | 434-119 (through 125) |

### Secret

| Class-subclass(es) | |
|---|---|
| Telegraph | 178-22 |
| Telephone | 179-1.5R |
| Fiber optics | 355-1 |
| Photo copying | 355-40 |
| Television | 358-114 (through 124) |
| Facsimile | 358-259 |
| Radio, pulse or digital | 375-2 |
| Radio | 455-26 (through 30) |

The Manual also lists the following: 178-37 recorders, secret; 179-1.5C, recorder, 179-1.5E encoding, 179-1.5M masking, 179-1.5S scrambling, 179-1.5FS frequency shifting.

Remarks. The class-subclass of a patent is subject to change. For example, the cryptographic CSC of long-standing 197-4 (typewriter) is now 400-89 (mechanical) and 400-90 (electrical). The very old cryptographic CSC's 35-2, 35-3, 35-4 are now 434-119 (through 125). The CSC 325-32 (radio) is now 455-26 (through 30). The CSC 178-22 (telegraph) has now been subdivided into nineteen subclasses 178-22.01 through 178-22.19. More recent types of encipherments, such as "public-key" are included in these subdivisions.

## UNITED STATES CRYPTOGRAPHIC PATENTS

Cryptographic patents may also have CSC's  not listed above.  Those which have been noticed are:

| | |
|---|---|
| 3,361,511 | 350-96.25 |
| 3,502,793 | 178-4 |
| 3,508,205 | 340-172.5 |
| 3,519,322 | 350-3.68 |
| 3,611,294 | 349-142 |
| 3,614,780 | 343-7ED |

Any patent may be ordered from

            Commissioner of Patents and Trademarks
            Washington, D. C.  20231

at one dollar each, and should be ordered by the patent number.

The sections to follow contain the following:

      I.    List of primary patents 1861-1981
      II.   List of secondary patents (by number only)
      III.  List of inventors with at least five patents

Also figures selected from various patents are distributed throughout.

Acknowledgments.  The writer is very pleased to have this opportunity to express his thanks to Jean Porter, Head, Documents Department and to Stuart Basefsky, Assistant Head, Documents Department of the D. H. Hill Library, North Carolina State University, for their very generous help during the preparation of this work; to Dr. David Kahn whose advice many years ago was the incentive to continue with the enlargement of my then small patent collection; and to Louis Kruh whose valuable suggestions and constant encouragement made it possible to complete this difficult project.

UNITED STATES CRYPTOGRAPHIC PATENTS

W. J. ROUSSEL.
CIPHER CODE SYSTEM.
APPLICATION FILED SEPT. 1, 1908.

**916,606.**                                    Patented Mar. 30, 1909.



Inventor
*Willis J. Roussel*
By *Victor J. Evans*
Attorney

Witnesses
Jos. A. Ryan
C. Bradway

## UNITED STATES CRYPTOGRAPHIC PATENTS

### LIST OF PRIMARY PATENTS 1861 - 1981

| | | |
|---|---|---|
| 31,902 Alfred E. Parks | Apr  2 1861 | Telegraphic register |
| 32,854 Alexander Bain | Jul 23 1861 | Electric acoustic telegraph |
| 34,079 Asahel Ward | Jan  7 1862 | Improvement in telegraphing by colors |
| 37,997 Alexander Bain | Mar 24 1863 | Dial telegraph |
| 38,529 Alexander Bain | May 12 1863 | Improvement in calls for telegraphs |
| 39,016 Pierre Stanislas | Jun 23 1863 | Improvement in telegraphic signals |
| 40,744 George H. Felt | Dec  1 1863 | Improvement in signal-codes for rockets |
| 42,794 Henry J. Rogers | May 17 1864 | Improvement in semaphoric telegraphs |
| 43,763 Philip Colomb | Aug  9 1864 | Improvement in apparatus for signaling |
| 48,681 Edward H. Hawley | Jul 11 1865 | Cryptographic alphabet |
| 50,946 Albert J. Myer | Nov 14 1865 | Improvement in signals |
| 51,809 M. L. Deering | Jan  2 1866 | Annunciator |
| 58,562 F. J. Bolton | Oct  2 1866 | Improvement in signal-codes for electric telegraphs |
| 59,148 Ralph A. Jones et al. | Oct 23 1866 | Improvement in telegraphic signals |
| 68,088 Thomas W. Knox | Aug 27 1867 | Improvement in transmitting plans of battle-fields by telegraph |
| 112,836 Henry C. Nicholson | Mar 21 1871 | Improvement in telegraph apparatus |
| 156,851 Isaac Joseph et al. | Nov 17 1874 | Improvement in cryptography |
| 166,761 Anthony L. Flamm | Aug 17 1875 | Improvement in cryptography |
| 173,718 Thomas A. Edison | Feb 22 1876 | Improvement in automatic telegraphy |
| 180,096 Royal E. House | Jul 25 1876 | Improvement in telegraphic codes or alphabets |
| 185,621 Alexander Berghold | Dec 26 1876 | Improvement in devices for secret writing |
| 193,299 William A. Smith | Jul 17 1877 | Method of preventing the alteration or counterfeiting of monetary papers |
| 194,347 Fred. Grafelmann et al. | Aug 21 1877 | Improvement in apparatus for testing bank checks, etc. |
| 197,199 Frank S. Baldwin | Nov 20 1877 | Improvement in cryptographic devices |
| 217,478 David D. Gregory | Jul 15 1879 | Improvement in bank-checks |
| 238,566 Charles G. Burke | Mar  8 1881 | Cryptography |
| 251,292 James H. Rogers | Dec 20 1881 | Telephony |
| 253,060 Albert F. Johnson et al. | Jan 31 1882 | Secret message telegraph |
| 253,061 A. F. Johnson et al. | Jan 31 1882 | Apparatus for preparing and transmitting secret telgraph messages |
| 253,062 A. F. Johnson et al. | Jan 31 1882 | Secret printing telegraph |
| 253,063 A. F. Johnson et al. | Jan 31 1882 | Secret printing telegraph |
| 266,875 Robert T. Oney | Oct 31 1882 | Cipher code and apparatus |
| 268,237 A. F. Johnson et al. | Nov 28 1882 | Printing telegraph |
| 275,339 Albert F. Johnson et al. | Apr  3 1883 | Automatic printing telegraph |
| 281,006 Howard Bodey | Jul 10 1883 | Check, draft, note and etc. |
| 283,883 Timothy Gruaz | Aug 28 1883 | Combination cipher |
| 294,175 John L. Winnea | Feb 26 1884 | Cryptographical table |
| 295,855 Charles G. Burke | Mar 25 1884 | Telegraphic system |
| 312,665 David R. Smith | Feb 24 1885 | Combination cipher-machine |

## UNITED STATES CRYPTOGRAPHIC PATENTS

| | | |
|---|---|---|
| 335,929 Abram G. Hoyt | Feb  9 1886 | Telegraphic code |
| 343,044 Edward J. Mallett | Jun  1 1886 | Automatic telegraphy |
| 364,356 William A. Leggo | Jun  7 1887 | Telegraphic alphabet |
| 376,569 Samuel B. Whitehead | Jan 17 1888 | Telegraphic apparatus |
| 394,961 Mark W. Dewey | Dec 25 1888 | Telegraphic printing code |
| 396,529 Gustav Bofinger | Jan 22 1889 | Typewriter ciphograph |
| 407,425 Alexis von Simon | Jul 23 1889 | Cryptographic apparatus |
| 431,792 Frank Anderson | Jul  8 1890 | Apparatus for preparing and translating secret messages |
| 442,674 Marshall A. Wier | Dec 16 1890 | Typewriter ciphograph |
| 449,723 Marshall A. Wier | Apr  7 1891 | Device for forming and deciphering secret communications |
| 469,961 William B. Chalmers | Mar  1 1892 | Signaling apparatus |
| 470,871 C. Rymtowtt-Prince | Mar 15 1892 | Type writing machine |
| 478,294 Thomas S. Spivey | Jul  5 1892 | Method of protecting bank checks and the like from being raised |
| 492,677 Richard Harte | Feb 28 1893 | Cryptographic instrument |
| 495,744 Joseph Levi | Apr 18 1893 | Method of indicating telegraphic messages |
| 506,731 William R. Rothwell | Oct 17 1893 | Cipher device |
| 510,430 Wallace R. Kirk | Dec 12 1893 | Telegraph or telephone system |
| 527,112 Richard Harte | Oct  9 1894 | Typewriting machine attachment for writing and translating messages in cipher |
| 527,518 Alfred Weaver | Oct 16 1894 | Secret telegraphy |
| 530,082 Louis D. Bliss | Dec  4 1894 | Telegraph key |
| 533,804 Nicholas J. Halpine | Feb  5 1895 | Pyrotechnic signaling |
| 537,738 Lionel Wells | Apr 16 1895 | Signaling apparatus |
| 539,421 Roy O. Crowley | May 21 1895 | Signaling apparatus |
| 540,772 Charles Willoughby | Jun 11 1895 | Photo-telegraph |
| 546,035 Georg Strömdal | Sep 10 1895 | Cryptograph |
| 563,148 Samuel V. Essick | Jun 30 1896 | Telegraph alphabet |
| 583,026 Charles G. Burke | May 25 1897 | System of telegraphy |
| 583,359 Frederic L. Dietz | May 25 1897 | Negotiable paper and means for preventing counterfeiting thereof |
| 584,462 Alvah L. Creelman | Jun 15 1897 | Electric circuit protector |
| 597,587 James Nicolson | Jan 18 1898 | Telegraphic signal |
| 599,742 Leopold Sellner | Mar  1 1898 | Apparatus for visible signaling |
| 600,917 Joseph J. Kulage | Mar 22 1898 | Blank for negotiable instruments |
| 621,767 Frederick Hachmann | Mar 21 1899 | Check-protector |
| 625,188 Robert McKeighan | May 16 1899 | Cipher writer |
| 630,847 Eugen A. Bofinger | Aug 15 1899 | Typewriter ciphograph |
| 630,848 Eugen A. Bofinger | Aug 15 1899 | Typewriter ciphograph |
| 637,049 William C. Van Horn | Nov 14 1899 | Cryptographic chart |
| 641,004 John W. Follansbee | Jan  9 1900 | Instrument for secret writing and translating |
| 641,481 Giovanni B. Valvasori | Jan 16 1900 | Cipher apparatus |
| 642,721 Willis J. Roussel | Feb  6 1900 | Cipher code system |
| 644,165 William A. Freret, Jr. | Feb 27 1900 | Cryptographic typewriting machine |
| 644,166 William A. Freret, Jr. et al. | Feb 27 1900 | Cryptographic typewriting machine |
| 650,716 Carroll E. Gates | May 29 1900 | Method of and means for secret correspondence |
| 650,830 Bradley A. Fiske | Jun  5 1900 | Day signaling apparatus |
| 654,834 George H. Landgraf | Jul 31 1900 | Secret telegraph sounder |
| 657,586 Elmer F. Cassel | Sep 11 1900 | Cipher-code system |
| 657,587 Elmer F. Cassel | Sep 11 1900 | Cipher-code |

UNITED STATES CRYPTOGRAPHIC PATENTS

(No Model.)

## T. GRUAZ.
### COMBINATION CIPHER.

No. 283,383.                     Patented Aug. 28, 1883.



Fig. 1.          Fig. 3.

Fig. 2.          Fig. 4.

Witnesses:                       Inventor:
Wm. A. Duvall                    Timothy Gruaz
C. L. Bernhard                   per— Edson Bros.
                                 attys.

## UNITED STATES CRYPTOGRAPHIC PATENTS

| | | |
|---|---|---|
| 662,333 Joseph P. Angell | Nov 20 1900 | Type-writer |
| 665,402 John Burry | Jan 8 1901 | Cryptographic type |
| 666,176 George C. Blickensderfer | Jan 15 1901 | Type-writing machine |
| 666,520 Charles P. Hall | Jan 22 1901 | Cipher code system |
| 670,697 Frederick Bedell | Mar 26 1901 | System of telegraphy |
| 676,936 Charles G. Burke | Jun 25 1901 | Telegraphic code |
| 678,363 Adolphus W. Greely | Jul 16 1901 | Telegraph and cable code |
| 695,999 Richard Beger | Mar 25 1902 | Type-writing machine |
| 703,391 James E. Dempsey | Jul 1 1902 | Telegraphic code |
| 706,740 Reginald A. Fessenden | Aug 12 1902 | Wireless signaling |
| 715,686 Thomas D. Penniman | Dec 9 1902 | Electric telegraph |
| 717,978 Cornelius D. Ehret | Jan 6 1903 | Wireless selective signaling system |
| 723,288 Harry S. Lewis | Mar 24 1903 | Cipher key for cryptographic codes |
| 723,566 Lewis H. Weston | Mar 24 1903 | Cryptograph |
| 724,786 Stephen T. Beveridge | Apr 7 1903 | Cipher code system |
| 725,634 John S. Stone | Apr 14 1903 | Art of wireless or space telegraphy |
| 725,635 John S. Stone | Apr 14 1903 | Space telegraphy |
| 725,636 John S. Stone | Apr 14 1903 | Space telegraphy |
| 727,213 Frederick Sedgwick | May 5 1903 | Cipher type-writer |
| 727,915 George W. Dudley | May 12 1903 | Apparatus for cipher writing |
| 737,203 Charles L. Buckingham | Aug 25 1903 | Automatic printing telegraph |
| 738,725 Simon Lake | Sep 8 1903 | System of submarine communication |
| 739,398 Alfred L. Day | Sep 22 1903 | Cryptographic perforator |
| 739,399 Alfred L. Day | Sep 22 1903 | Cryptographic perforator |
| 744,041 Charles G. Burke | Nov 17 1903 | Telegraphic code |
| 751,294 Arthur T. Johnson | Feb 2 1904 | Apparatus for electrically transmitting and receiving messages |
| 756,209 Charles G. Burke | Apr 5 1904 | Code-index |
| 756,468 Charles G. Burke | Apr 5 1904 | Code-index |
| 765,456 Charles L. Buckingham et al. | Jul 19 1904 | Machine for perforating telegraph tapes |
| 770,229 Lee de Forest | Sep 13 1904 | Wireless signaling apparatus |
| 791,209 Edmund Peycke | May 30 1905 | Marginal and sub index for telegraphic cipher codes |
| 793,037 Isidor Kitsee | Jun 20 1905 | Electric telegraphy |
| 797,016 Francisco Pimental | Aug 15 1905 | Code system |
| 801,964 Joseph S. Beeman | Oct 17 1905 | Machine for coding and decoding messages |
| 802,740 Patrick B. Delany | Oct 24 1905 | Electromagnetic perforator for perforating electric-telegraph transmission-tapes |
| 823,176 Isidor Kitsee | Jun 12 1906 | Electric telegraphy |
| 826,472 Charles L. Buckingham et al. | Jul 17 1906 | Telegraphy |
| 831,061 Daniel C. Gurnee | Sep 18 1906 | Cipher code or system |
| 831,968 Charles J. Mitchell | Sep 25 1906 | Self-testing safety-code |
| 832,156 Ernest E. Peterson | Oct 2 1906 | Cipher-code |
| 832,559 Ernest E. Peterson | Oct 2 1906 | Cipher-code |
| 833,904 Daniel H. Wilcox | Oct 23 1906 | Telegraphic code |
| 841,616 Harold H. Brown | Jan 15 1907 | Signal reading device |
| 841,885 Charles W. McDonald | Jan 22 1907 | Telegraph code |
| 841,952 Alexander M. Fisher | Jan 22 1907 | Telegraphic code |
| 842,106 Charles W. McDonald | Jan 22 1907 | Code or cipher system |
| 842,763 Hubert Burg | Jan 29 1907 | Cryptographic machine |
| 845,515 Hubert Burg | Feb 26 1907 | Cryptograph |

## UNITED STATES CRYPTOGRAPHIC PATENTS

| | | |
|---|---|---|
| 847,157 Harold G. Brown et al. | Mar 12 1907 | Signaling apparatus |
| 847,767 Martin C. Harlan | Mar 19 1907 | Secret code apparatus |
| 850,091 Frederick W. Lietzow | Apr 9 1907 | Telegraph and cable cipher code |
| 875,070 Carl Haas et al. | Dec 31 1907 | Apparatus for correspondence in cipher |
| 877,555 Patrick B. Delany | Jan 28 1908 | Telegraphy |
| 877,797 Frederick Pain | Jan 28 1908 | Cable or telegraph code |
| 879,667 Henry C. Newton et al. | Feb 18 1908 | Cipher system |
| 880,905 Bedford McNeill | Mar 3 1908 | Tabulated gage for telegraphic or secret codes |
| 889,094 Michael Berardini | May 26 1908 | Code message |
| 889,095 Michael Berardini | May 26 1908 | Code message |
| 894,378 Lee de Forest | Jul 28 1908 | Wireless signaling apparatus |
| 894,820 Patrick B. Delany | Aug 4 1908 | Telegraphy |
| 901,957 Matthew B. Dickie | Oct 27 1908 | Telegraphic-code condenser |
| 906,618 Patrick B. Delany | Dec 15 1908 | Perforator for preparing telegraphic transmitting-tapes |
| 916,606 Willis J. Roussel | Mar 30 1909 | Cipher-code system |
| 916,899 Mortimer L. Sweeney | Mar 30 1909 | Cable or telegraph code |
| 927,641 John H. Cuntz | Jul 13 1909 | Wireless telegraphy |
| 933,679 Mortimer L. Sweeney | Sep 7 1909 | Telegraph or cable code |
| 935,536 Henry C. Newton et al. | Sep 28 1909 | Apparatus for use in connection with check cipher systems |
| 962,709 Isidor Kitsee | Jun 28 1910 | Telegraphy |
| 963,062 Walter P. Phillips | Jul 5 1910 | Secret telegraph system |
| 970,716 Clarence H. Keehn | Sep 20 1910 | Cable code system |
| 971,170 Charles G. Burke | Sep 27 1910 | Telegraphy |
| 981,845 Patrick B. Delany | Jan 17 1911 | Telegraphy |
| 983,482 William Coyne et al. | Feb 7 1911 | Cipher-code |
| 984,832 Frank R. McBerty | Feb 21 1911 | Cryptograph machine |
| 986,400 Charles W. McDonald | Mar 7 1911 | Telegraphic code concentrator |
| 988,879 Isidor Kitsee | Apr 4 1911 | Telegraphy |
| 990,021 Mary E. Sweeney | Apr 18 1911 | Cable or telegraph code |
| 991,837 Simon Eisenstein | May 9 1911 | Wireless signaling system |
| 997,890 Samuel M. Wilson | Jul 11 1911 | Telegraph-code system |
| 998,833 Harry W. Bodwell | Jul 25 1911 | Code-changing system |
| 1,003,361 Serge Kanschine | Sep 12 1911 | Type-writing machine |
| 1,021,189 Irving Hill | Mar 26 1912 | Alphabetical symbols |
| 1,038,556 Erwin W. Fuller | Sep 17 1912 | Machine for enciphering and deciphering messages |
| 1,048,708 Charles H. Koerner | Dec 31 1912 | Protected blank |
| 1,057,223 Sloan Danenhower | Mar 25 1913 | Visual signal for submarines |
| 1,070,342 Fred Hoffman | Aug 12 1913 | Combination code card |
| 1,084,010 Edward H. Hebern | Jan 13 1914 | Machine for forming code messages |
| 1,085,636 Frederick Sedgwick | Feb 3 1914 | Cipher type-writer |
| 1,086,586 Charles G. Burke | Feb 10 1914 | Code-forming device |
| 1,086,823 Edward H. Hebern et al. | Feb 10 1914 | Cryptographic attachment for type-writing machines |
| 1,091,768 Frederick G. Sargent | Mar 31 1914 | Method of and apparatus for selective wireless telegraphy |
| 1,093,372 James C. Allum et al. | Apr 14 1914 | Reversible typewriter key |
| 1,096,168 Edward H. Hebern | May 12 1914 | Means for interpreting code messages |
| 1,102,442 Frederick G. Sargent | Jul 7 1914 | Apparatus for selective wireless telegraphing |

## UNITED STATES CRYPTOGRAPHIC PATENTS

| | | |
|---|---|---|
| 1,106,788 Sloan Danenhower | Aug 11 1914 | Signaling apparatus |
| 1,108,147 Patrick B. Delany | Aug 25 1914 | Telegraphy |
| 1,108,148 Patrick B. Delany | Aug 25 1914 | Telegraphy |
| 1,111,695 Abraham N. Hovland | Sep 22 1914 | Type printing telegraph apparatus for line and radio telegraphy |
| 1,120,784 Karl Ammon | Dec 15 1914 | Cipher type-writer |
| 1,123,119 Lee de Forest | Dec 29 1914 | Secrecy system for wireless communication |
| 1,123,738 Edward H. Hebern et al. | Jan 5 1915 | Cryptographic attachment for typewriting machines |
| 1,126,463 Edward H. Hebern | Jan 26 1915 | Check-identifying machine |
| 1,135,452 Edward H. Hebern | Apr 13 1915 | Machine for interpreting code messages |
| 1,136,875 Edward H. Hebern | Apr 20 1915 | Cryptographic code cards |
| 1,136,876 Edward H. Hebern | Apr 20 1915 | Cipher-code device |
| 1,138,832 Ottomar F. Bamberg et al. | May 11 1915 | Writing machine |
| 1,138,851 Benjamin M. Des Jardins | May 11 1915 | Cryptograph |
| 1,141,055 Edward H. Hebern | May 25 1915 | Cipher-writing machine |
| 1,149,428 Patrick B. Delany | Aug 10 1915 | Telegraphy |
| 1,149,803 Karl Ammon | Aug 10 1915 | Cryptographic type-writing machine |
| 1,152,808 Ramón Guzmán M. | Sep 7 1915 | Cryptographic apparatus |
| 1,170,969 Reginald A. Fessenden | Feb 8 1916 | Means of transmitting intelligence |
| 1,182,179 Charles L. Krum et al. | May 9 1916 | Perforator for forming telegraphic tape |
| 1,189,277 Richard C. Martens | Jul 4 1916 | Apparatus for coding messages |
| 1,195,701 James C. H. Macbeth et al. | Aug 22 1916 | Codes, ciphers, and the like |
| 1,196,338 Harry A. Corbett et al. | Aug 29 1916 | Cryptographic machine |
| 1,201,486 Sydney T. Marye | Oct 17 1916 | Code or cipher transcribing and translating mechanism |
| 1,204,929 Henry M. Ball, Sr. | Nov 14 1916 | Printing-machine for code communication |
| 1,210,656 Samuel M. Kintner | Jan 2 1917 | Apparatus for coding and decoding |
| 1,214,022 Philip E. Edelman | Jan 30 1917 | Apparatus for wireless telegraphy and the like |
| 1,219,634 George C. Fisher | Mar 20 1917 | Draft, check, money order, and other negotiable instrument |
| 1,222,010 James E. Mack | Apr 10 1917 | Printed instrument |
| 1,233,035 Arvid G. Damm | Jul 10 1917 | Apparatus for producing series of signs |
| 1,233,715 Frederick Sedgwick | Jul 17 1917 | Cipher typewriter |
| 1,244,477 Patrick B. Delany | Oct 30 1917 | Telegraphy |
| 1,267,640 Frank W. Eagelston | May 28 1918 | Writing paper, card, tablet, or the like |
| 1,271,000 John W. Wulf | Jul 2 1918 | Code device |
| 1,276,616 Paul Bienvaux | Aug 20 1918 | Telegraphic-code apparatus |
| 1,285,567 Ramón Guzmán M. | Nov 19 1918 | Cryptographic method and apparatus |
| 1,309,459 John R. Carson | Jul 8 1919 | Wireless signaling system |
| 1,310,719 Gilbert S. Vernam | Jul 22 1919 | Secret signaling system |
| 1,311,457 Luigi Nicoletti | Jul 29 1919 | Cipher apparatus |
| 1,312,572 Ralzemond D. Parker | Aug 12 1919 | Secret-signaling system |
| 1,312,574 Ralph E. Pierce | Aug 12 1919 | Secret-signaling system |
| 1,315,406 James Powers | Sep 9 1919 | Apparatus and method for formulating and translating codes |
| 1,318,366 Cosmo Farquhar | Oct 14 1919 | Table for coding, decoding, and checking communications |
| 1,320,908 Ralzemond D. Parker | Nov 4 1919 | Ciphering and deciphering mechanism |
| 1,322,010 Olof D. Guthe | Nov 18 1919 | Telegraph system |
| 1,325,574 Harold W. Nichols | Dec 23 1919 | Secret signaling system |
| 1,326,522 Joseph Marshall | Dec 30 1919 | Signaling apparatus |

## UNITED STATES CRYPTOGRAPHIC PATENTS

| | | | |
|---|---|---|---|
| 1,332,861 | George H. Williams | Mar 2 1920 | Code record |
| 1,350,789 | Patrick B. Delany et al. | Aug 24 1920 | Apparatus for treating telegraph tape |
| 1,352,116 | George C. Cummings | Sep 7 1920 | Telegraphy |
| 1,356,277 | John C. Grant | Oct 19 1920 | Typewriting machine for coding and decoding messages |
| 1,356,546 | Lyman F. Morehouse | Oct 26 1920 | Ciphering system |
| 1,356,592 | John H. Bell | Oct 26 1920 | Telegraph system |
| 1,356,701 | Angustus J. Eaves | Oct 26 1920 | Secret telegraphic system |
| 1,364,078 | Albert C. Crehore | Jan 4 1921 | Telegraphic alphabet or code |
| 1,364,725 | João N. Correia | Jan 4 1921 | Telegraph system |
| 1,367,311 | A. R. Fergusson | Feb 1 1921 | Means for mechanical indexing |
| 1,367,717 | Paul M. Rainey | Feb 8 1921 | Printing telegraph system |
| 1,369,805 | Baxter P. Hamilton | Mar 1 1921 | Secret communication system |
| 1,370,870 | Petro Zurawecki | Mar 8 1921 | Code reading instrument |
| 1,372,797 | George Bonnell | Mar 29 1921 | Code-book |
| 1,379,551 | Henry C. Gauss | May 24 1921 | Cryptography |
| 1,379,905 | Thomas M. Down | May 31 1921 | Method of analyzing, transmitting, and reconstructing pictures or the like |
| 1,387,261 | Louis Harmuth | Aug 9 1921 | Illustrated code |
| 1,388,049 | Joseph Koffend, Sr. | Aug 16 1921 | Safety-check |
| 1,389,559 | James P. Griffiths | Aug 30 1921 | Coding and decoding device |
| 1,394,439 | Donald Murray | Oct 18 1921 | Code transposing apparatus for telegraph systems |
| 1,395,378 | Richard H. Wilson et al. | Nov 1 1921 | Secret signaling |
| 1,406,775 | Charles M. Swingle | Feb 14 1922 | Mesograph |
| 1,414,496 | Peter G. Beyer | May 2 1922 | Cryptographic typewriter |
| 1,415,106 | Lyman F. Morehouse | May 9 1922 | Ciphering device |
| 1,416,765 | Gilbert S. Vernam | May 23 1922 | Ciphering device |
| 1,420,257 | John H. Hammond, Jr. | Jun 20 1922 | System and apparatus for automatic wave selection |
| 1,420,931 | Edward E. Kleinschmidt | Jun 27 1922 | Keyboard tape perforator |
| 1,426,669 | Ralph E. Pierce | Aug 22 1922 | Ciphering device |
| 1,426,944 | Ernst F. Alexanderson | Aug 22 1922 | Radiosignaling system |
| 1,433,144 | Bernhard Mora | Oct 24 1922 | Code sign translator |
| 1,437,325 | Harry G. Telling | Nov 28 1922 | Mechanical coding and decoding or ciphering apparatus |
| 1,440,510 | Ralph W. Trueblood et al. | Jan 2 1923 | Device for coding and decoding telephotographs |
| 1,440,585 | Hamlet Corrigan | Jan 2 1923 | Check protecting system and keyboard for same |
| 1,441,109 | Allen Newell | Jan 2 1923 | Coding and decoding device |
| 1,441,239 | Charles C. Murray | Jan 9 1923 | Cryptographic marking means |
| 1,442,819 | Ralzemond D. Parker | Jan 23 1923 | Ciphering machine |
| 1,445,605 | Blas C. Silva | Feb 13 1923 | Code |
| 1,454,532 | William E. Beatty | May 8 1923 | Method of and means for secret signaling |
| 1,455,157 | Charles F. Wood | May 15 1923 | Code table |
| 1,460,438 | Ralzemond D. Parker | Jul 3 1923 | Secret communication system |
| 1,461,783 | Ralzemond D. Parker et al. | Jul 17 1923 | Secret communication system |
| 1,463,994 | John H. Hammond, Jr. | Aug 7 1923 | System for the transmission and reception of radiant energy |
| 1,464,086 | William E. Beatty | Aug 7 1923 | Method of and means for secret signaling |
| 1,464,096 | Ralph V. Hartley | Aug 7 1923 | Secret signaling |
| 1,465,368 | William J. Shackelton | Aug 21 1923 | Secret signaling system |
| 1,470,594 | David E. Branson | Oct 16 1923 | Secret signaling system |

UNITED STATES CRYPTOGRAPHIC PATENTS

(No Model.)

G. STROMDAL.
CRYPTOGRAPH.

No. 546,035.                    Patented Sept. 10, 1895.





Fig. 1.   Fig. 3.   Fig. 4.   Fig. 2.

Inventor
Georg Stromdal
by Richardson
attys.

Attest

B



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 860,586 | 12-14-77 | Ronald L. Rivest, et al. | |

Arthur A. Smith, Jr.
Mass. Institute of Technology
Room E19-722
Cambridge, Mass.   02139

| EXAMINER |
|---|
| H.A. Birmiel |

| ART UNIT | PAPER NUMBER |
|---|---|
| 222 | 10 |

DATE MAILED:

### EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, attorney, agent)  representing applicant:

(1) _MR. LAPPIN_ (3) _____

(2) _____ (4) _____

AUG 6 1979

Date of interview _____

Type: ☑ Telephonic   ☐ Personal (copy is given to applicant).        GROUP 220

Exhibit shown or demonstration conducted:   ☐ Yes   ☐ No.

Agreement ☑ was reached with respect to some or all of the claims in question.   ☐ was not reached.

Claims discussed: _1-33, 34-35_____

Identification of prior art discussed: _____

_____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _____

_APPLICANTS' ATTORNEY AGREED TO AMEND THE_
_CLAIMS TO REFLECT THAT THE MATHEMATICAL_
_TRANSFORMATIONS WERE PERFORMED UPON "SIGNALS"_
_TO BETTER DEFINE THE SAME IN LIGHT OF THE_
_35USC101 REJECTION WHICH IS WITHDRAWN._
_CLAIMS 34-35 ARE TO BE AMENDED TO_
_REMOVE MULTIPLE DEPENDENCY._

(A fuller necessary description and any available copy of amendments that the examiner agreed would render the claims allowable, or where no copy of the amendments is available, a summary thereof, is attached.)

*Howard A. Birmiel*

☐ It is not necessary for applicant to supplement the information on this form or to submit a separate record of the substance of the interview.   HOWARD A. BIRMIEL
EXAMINER

APPLICANTS, ATTORNEYS AND AGENTS ARE REMINDED OF THEIR RESPONSIBILITY TO PROMPTLY FILE A RECORD WITH AN INDICATION OF THE SUBSTANCE OF THE INTERVIEW AS REQUIRED BY 37 CFR 1.133(b) AND SECTION 713.04 OF THE MANUAL OF PATENT EXAMINING PROCEDURE. (See reverse side for text of Section 713.04.)

PTOL-413 (rev. 9/78)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER



$80.00 - 10.7 \ 6e\cdot22\hat{c}$

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

```
--------------------------------
In the matter of the application of    :
                                       :
Ronald L. Rivest, Adi Shamir and       :
Leonard M. Adleman                     :
                                       :      Examiner:  H.A. Birmiel
Serial No:  860,586 ✓                  :
                                       :
Filed:  December 14, 1977              :      Group Art Unit:  222
                                       :
For:  CRYPTOGRAPHIC COMMUNICATIONS     :
      SYSTEM AND METHOD                :
--------------------------------
```

**RECEIVED**

**MAY 23 1979**

**GROUP 220**

AMENDMENT A

Hon. Commissioner of Patents
Washington, D.C.  20231

Dear Sir:

This paper is responsive to the Office Action of December 15, 1978.  Please amend the above-referenced application as follows:

IN THE CLAIMS:

Add the following claims:

34.  A system according to claims 1 or 2 or 3 or 4 or 5 or 6 or 7 or 8 or 9 or 10 or 11 or 12 or 13 or 14 or 15 or 16 or 17 or 28 or 29 or 30 wherein at least one of said transforming means comprises:

a first register means for receiving and storing a first digital signal representative of said word-to-be-transformed,

a second register means for receiving and storing a second digital signal representative of the exponent of the equivalence relation defining said transformation,

a third register means for receiving and storing a third digital signal representative of the modulus of the equivalency relation defining said transformation, and

-7-

an exponentiation by repeated squaring and multiplica-
tion network coupled to said first, second and third register
means, said network including:

    A.  an output register means for receiving and storing
        a first multiplier signal and for applying said
        first multiplier signal to a first multiplier input
        line,

    B.  selector means for successively selecting each of
        the bits of said second digital signal as a
        multiplier selector signal,

    C.  means operative for each of said multiplier selec-
        tor signals for selecting as a second multiplier
        signal either the contents of said output register
        means or the contents of said first register means,
        and for said second applying multiplier signal to a
        a second ultiplier input line, said selection being
        dependent on the binary value of the successive
        bits of said second digital signal, and

    D.  modulo multiplier means operative in step with said
        selector means and responsive to said first and
        second multiplier signals on said first and second
        multiplier input lines for successively generating
        first multiplier signals and for transferring said
        first multiplier signals to said output register
        means, said first multiplier signal initially being
        representative of binary 1, and thereafter being
        representative of the modulo product of said first
        and second multiplier signals, where the modulus of
        said modulo product corresponds to said third digi-
        tal signal.

35. A method according to claims 18 or 19 or 20 or 21 or 22 or 23 or 24 or 25 or 26 or 27 or 31 or 32 or 33 wherein at least one of said transforming means comprises the steps of:

receiving and storing a first digital signal in a first register, said first digital signal being representative of said word-to-be-transformed,

receiving and storing a second digital signal in a second register, said second digital signal being representative of the exponent of the equivalence relation defining said transformation,

receiving and storing a third digital signal in a third register, said third digital signal being representative of the modulus of the equivalency relation defining said transformation, and

exponentiating said first digital signal by repeated squaring and multiplication using said second and third digital signals, said exponentiating step including the substeps of:

    A.  receiving and storing a first multiplier signal in an output register, and applying said first multiplier signal to a first multiplier input line,

    B.  successively selecting each of the bits of said second digital signal as a multiplier selector, and

    C.  for each of said multiplier selectors, selecting as a second multiplier signal either the contents of said output register or the contents of said first register, and for applying said second multiplier signal to a second multiplier output line, said selection being dependent on the binary value of the successive bits of said second digital signal,

    D.  for each of said multiplier selectors, generating

-2-

said first multiplier signal in a modulo
multiplier in response to the first and second
multiplier signals on said first and second
multiplier input lines, and for transferring said
generated first multiplier signal to said output
register, said first multiplier signal initially
being representative of binary 1 and thereafter
being representative of the modulo product of said
first and second multipliers, where the modulus of
said modulo product corresponds to said third digi-
tal signal.

REMARKS:

The applicants' attorney gratefully acknowledges the
Examiner's efforts extended at the interview of March 2, 1979.

Initially, it is noted that new claims 34 and 35 have
been added.  These claims are directed to cover applicants'
invention in the form shown in Fig. 3.  As agreed to by the
Examiner at the interview, Fig. 3 clearly has sufficient hardware
to support allowable claims.  Accordingly, it is submitted that
claims 34 and 35 are at least allowable combined with the claims
from which they depend.

In the Office Action, all of claims 1-33 were rejected
under 35 U.S.C. 101 as being directed to non-statutory subject
matter.  Issue is taken with that position.

In the rejection, the Examiner states that "the present
invention as claimed lies in a particular algorithm which is
employed to implement the public key cryptography scheme of
Diffie and Hellman (reference R).  However, there are no mathe-
matical algorithms in the applicants' claims.

The expressions in the applicants' claims which include

-7-

the symbol "$\equiv$" denote the well-known equivalence relation:
congruence modulo m, for integers.  The symbol "$\equiv$" merely is a
shorthand notation (invented by Gauss in 1801) for expressing
this equivalence relation to relate sets of numbers shown on
either side of that symbol, in effect establishing a set of con-
ditions between the related integers, or signals representative
thereof.  In Van Norstrand's Scientific Encyclopedia (Van
Norstrand Reinhold Company, 1976, page 64), this equivalence
relation is defined as follows:

> Two elements a, b of a ring are
> congruent modulo m, written
> a $\equiv$ b (mod m), if there exist
> elements p, q, r in the ring
> such that a = mp+r, b = mq+r

Also see Stewart, B.M., Theory of Numbers, MacMillan Company, New
York, 1952, pages 111, 112 (copy enclosed).  Thus, the symbol "$\equiv$"
is a symbol for "congruence", not arithmetic or mathematical
"equality", and the fact that the equivalence relation of the
form

$$A \equiv B^C (\text{mod } n)$$

is in the claims does not introduce a mathematical formula or
algorithm to the claims but rather describes a relationship
between two signals, e.g. the message and ciphertext.  More par-
ticularly, in the applicants' claims, the message M and the
ciphertext C are related by the transformation performed by the
encoding means and the ciphertext C is related to the receive
message word M' by the transformation performed by the decoding
emans.  The claims include a description of these relationships,
but do not specify any algorithms for effecting the transfor-
mations.

It should be noted that there may be many algorithms

-4-

which may be used to obtain the various terms for the relation. For example, the "exponentiation by repeated squaring and multiplication" approach shown by applicants' in the preferred embodiment is but one way of finding terms satisfying the relation. However, applicants do not claim any particular algorithms. In fact, any algorithms which may be used in practicing applicants' invention may readily be used in other applications without being covered by the applicants' claims.

Thus, the applicants' claimed invention does not "lie in an algorithm" which is employed to implement the Diffie and Hellman scheme, as characterized by the Examiner, but rather resides in a step of or means for transforming an input signal to an output signal in a communications system so that the output signal is related to the input signal by the specified equivalency relation, regardless of the particular technique or algorithm employed in performing that transformation.

Moreover, it appears that the §101 rejection would not have even come into play in this case if the expressions of the equivalency relation were not present. This may be seen if it is assumed for the moment that the encoding and decoding (i.e. transforming) means of claim 1 were simple transformation means, for example, digital complimenting or inverter circuits. Then, the claim could have the form:

A cryptographic communications system comprising:

A. a communications channel

B. an encoding means coupled to said channel including means for digitally <u>inverting</u> a transmit message word M to form a ciphertext word C and for transmitting C on said channel

C. a decoding means coupled to said channel and adapted for receiving C from said

-8-

channel and for <u>inverting</u> C to form a
receive message <u>word H'</u>.

This hypothetically claimed system has three basic elements:  a
communication channel and two inverters coupled thereto.   The
inverters perform a "mathematical transformation" on the signal
applied to them.   There is no algorithm specified for performing
the inversion, but only a requirement that the ciphertext be
related to the message by the complementing relation.

Assuming that digital complementing was a suitable
transformation for the invention, and that the claimed structure
satisfied 102 and 103, then there would be no question that the
claims would be allowable.   Section 101 would quite properly not
come into play since there are merely three interconnected hard-
ware elements.   In the present case, the encoding and decoding
means are merely somewhat more complex building blocks than
inverter circuits, where each block performs a transformation on
input signals applied to the block.   As in the hypothetical
claim, there is no particular formula or algorithm specified for
the transformation in the applicants' claims--only that the
resultant signal be related to the input signal by the stated
equivalency relation.

The applicants merely use such a building block.   While
at the present time there may not be any single chip implemen-
tations of that building block available, the block may be
readily built by those skilled in the art, for example by merely
implementing the circuit shown in Fig. 3.   The applicants by
their claims certainly do not preempt the transformation per-
formed by the building block.   For these reasons, the Examiner's
position that the claimed invention "lies in a particular
algorithm" is incorrect.   Accordingly, the rejection should be

-4-

42

reconsidered and withdrawn.

It is also noted that the rejection was applied against claims 1-17 and 28-30 which are system claims, as well as claims 18-27 and 31-33 which are method claims.

Regarding the method claims 18-27 and 31-33, the Examiner stated that the "invention as claimed lies in a particular algorithm . . .", citing Parker v. Flook, 198 U.S.P.Q. 193 and Gottschalk v. Benson, 175 U.S.P.Q. 673. The Examiner appears to use the term "algorithm" synonymously with the term "mathematical formula" found, for example, in the Benson case. The present invention, as claimed, does not fall within the proscribed subject matter of the Benson case, because it does not seek to patent a mathematical formula, and hence does not seek to patent an "algorithm" within the definition of mathematical formula set forth by Benson and Flook. As noted above, the claims 18-27 and 31-33 do not claim mathematical formulae but merely include expressions of an equivalence relation to pose conditions (expressed in Gauss' shorthand notation) on the claimed transformations.

The Court in Flook noted that "the only novel feature of the method is a mathematical formula", 198 U.S.P.Q. at 195. The Court goes on to state in footnote 1 on page 195 that "we use the word "algorithm" in this case as we did in Gottschalk v. Benson, ..., to mean "a procedure for solving a given type of mathematical problem...". The subject matter claimed in the present case is neither a procedure for solving a mathematical problem, nor a hitherto unknown mathematical formula or a sequence of such mathematical formulae, but is instead the application of one or more process steps to establish cryptographic communications and to provide authentication of digital messages.

While some of these steps may be, and in fact are, expressed in part with an equivalence relation (i.e. using Gauss' shorthand notation), that fact does not implicate that those steps are claims to a mathematical formula or algorithm.  In the present case, the applicants' claimed steps do not claim a mathematical formula or algorithm.  This may be better seen if, for example, lines 13 and 14 of claim 18 were changed from "whereby $C \equiv M^e \pmod{n}$" to an equivalent form which reads "by selecting C so that the difference between C and the $e$th power of M is an integer multiple of n."  Clearly, there is no "algorithm" in this form of the claim.  It does not matter how C is selected.  For example, C may be selected by "trial-and-error", or alternatively by "exponentiation-by-repeated-squaring" (as in the applicants' preferred embodiment) or some other method.  The exponentiation-by-repeated-squaring approach is of course considerably more efficient in terms of hardware implementation.  But is is important to note that <u>the claims are independent of any particular method (or algorithm)</u> for finding the terms to satisfy the relation.  All that matters is that these terms be found -- by any method or algorithm.  This same reasoning is applicable to all of claims 1-33.  Thus, the claimed invention is not a proscribed "algorithm" within 35 U.S.C. 101.

The CCPA cases which have evolved in the face of <u>Benson</u> and <u>Flook</u> (and which have not been reversed), cases such as <u>In re Chatfield</u>, 191 USPQ 730 (CCPA 1976), <u>In re Freeman</u>, 197 USPQ 464 (CCPA 1978), and <u>In re Johnson, et al.</u>, 200 USPQ 199 (CCPA 1978), clearly support the proposition that the invention claimed herein is patentable under 35 U.S.C. 101.  The Johnson decision (which was handed down after the Office Action herein) is particularly informative since it follows (in time and substance) the <u>Flook</u>

decision.  In <u>Johnson</u>, the CCPA states:

> "[I]t is clear after Flook that
> the board's conclusion that patent
> protection is proscribed for all
> inventions algorithmic in character
> is overbroad and erroneous."
> (200 USPQ at 205)

The CCPA in <u>Johnson</u> further went on to solidify the

definition of an algorithm, citing Chatfield, wherein they

stated:

> "The Supreme Court carefully
> supplied a definition of the par-
> ticular algorithm before it, i.e.,
> [a] procedure for solving a given
> type of mathematical problem.
>
> "The broader definition of
> algorithm is a step-by-step pro-
> cedure for solving a problem or
> accomplishing some end.... It is
> axiomatic that inventive minds seek
> and develop solutions to problems
> and step-by-step solutions often
> attain the status of patentable
> invention.  It would be unnecessarily
> detrimental to our patent system to
> deny inventors patent protection on
> the sole ground that their contribution
> could be broadly termed an 'algorithm'."
> (200 USPQ at 206-207)

The CCPA then went on to review the two step analytical

approach taken in <u>Freeman</u> to determine whether or not the claims

before it were patentable.  The Court of Customs and Patent

Appeals in <u>Freeman</u> dealt with method claims similar in form to

the method claims rejected in the present case.  The CCPA's ana-

lysis in that decision is directly applicable here.  In <u>Freeman</u>,

the Court set forth a two-step analysis for determination of

whether a claim is directed to non-statutory subject matter as a

whole, in light of Benson:

> "First, it must be determined
> whether the claim directly or

indirectly recites an 'algorithm'
in the Benson sense of that term,....

"Second, the claim must be further
analyzed to ascertain whether in
its entirety it wholly preempts that
algorithm." (197 USPQ at 471)

In <u>Freeman</u>, the Court noted that every process may be characterized as a "step-by-step procedure...for accomplishing some end" and that therefore, it would be "absurd" to interpret the Supreme Court's view as encompassing all such processes. Even if that "absurd" interpretation were taken, in the present case, as discussed above, the rejected claims are not "algorithmic", in spite of the fact that the claims include an equivalence relation. That equivalence relation only expresses conditions on a transformation. The conditions expressed by that equivalence relation may not be characterized as "a step-by-step procedure...for accomplishing some end". Thus, the present rejection should be reconsidered and withdrawn for the same reasons cited in Freeman.

Even assuming that according to the first step of <u>Freeman</u> analysis, the process steps herein "directly or indirectly recite process steps which are themselves calcula-tions, formulae, or equations" (which in applicants' opinion they do not), it is clear that the applicants' claims in no way wholly preempt any such calculations, formulae or equations. This may be seen, for example, by the fact that a congruency equivalence relation is found in the cipher system disclosed by the Stewart reference (copy enclosed with the applicants' prior art statement), but Stewart's approach is clearly not within the scope of the applicants' claims. Thus, the second step of the <u>Freeman</u> analysis leads to the inevitable conclusion that the claims herein clearly fall squarely within the <u>Johnson</u> analysis

-14-

and the present claims should be allowed.

Furthermore, following the remainder of <u>Johnson</u> reasoning, the CCPA elaborates upon its two part <u>Freeman</u> analysis to determine whether the claims recite mathematical algorithms which are non-statutory.  Under the continuing second step analysis of the CCPA's reasoning, one

> "must determine whether each claim
> as a whole, including all of its
> steps, merely recites a mathematical
> formula or a method of calculation.
> This analysis requires careful
> interpretation of each claim in the
> light of its supporting disclosure
> to determine whether or not it
> merely defines a method of solving
> a mathematical problem.  If it does
> not, then it defines statutory subject
> matter, namely, a 'process'".
> (200 USPQ 208, 209)

The invention in claims 18-27 and 31-33 is not directed to the solution of a mathematical problem, but rather solves the problem of privately transmitting a message over a communications channel and the problem of authentication (i.e. by providing digital signatures) of messages.  The claims include the step of transforming a first signal to a second signal so that the second signal is related to the first by a stated equivalence relation. The method for doing so does not claim mathematical formulae and does not seek patents on a mathematical formula.  Accordingly, the invention claimed herein clearly falls under the CCPA and Supreme Court reasonings.

For these reasons, the rejection of claims 18-27 and 31-33 under 35 U.S.C. 101 should be reconsidered and withdrawn.

With particular regard to system claims 1-17, and 28-30, it is noted that the <u>Benson</u> and <u>Flook</u> cases cited by the Examiner addressed method claims only.  The Supreme Court in

-16-

Benson stated "The question is whether the method described and claimed is a 'process' within the meaning of the Patent Act." 175 USPQ at 674 (emphasis added). Similarly, in Flook, the Supreme Court addressed the question of whether a novel formula "makes an otherwise conventional method eligible for patent protection" 198 USPQ at 196. Thus, in both of the cited cases, the Supreme Court addressed "processes" under 35 U.S.C. 101.

In contrast, the claims 1-17 and 28-30 are all directed to apparatus including means to perform specified functions. Moreover, the claims are clearly supported in the specification by a hardware implementation of the claimed subject matter. Accordingly, the rejection of system claims 1-17 and 28-30 is inappropriate and should be reconsidered and withdrawn.

Moreover, even if the Examiner treats these system claims in the same manner as the method claims 18-27 and 31-33, the rejection should be withdrawn for the reasons discussed above in particular reference to the method claims.

For these reasons, the rejection of claims 1-33 under 35 U.S.C. 101 is inappropriate and should be withdrawn. It is submitted that these claims, as well as new claims 34 and 35 are in condition for allowance and passage to issue is requested.

Respectfully submitted,

KENWAY & JENNEY

By _____
Mark G. Lappin
Reg. No. 26,618

60 State Street
Boston, MA   02109
Tel: (617)227-6300
May 15, 1979

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D. C. 20231.

on ____ MAY 15 1979
(Date of Deposit)

MARK G. LAPPIN
Name of applicant, assignee, or Registered Representative

_____
Signature

MAY 15 1979
Date of Signature

-18-



RECEIVED

MAY 2 3 1979

GROUP 220

May 15, 1979

In re application of   **Ronald L. Rivest, Adi Shamir and**
**Leonard M. Adleman**
Serial No.   860,586

Filed   **December 14, 1977**

For   **CRYPTOGRAPHIC COMMUNICATIONS SYSTEM AND METHOD**

THE COMMISSIONER OF PATENTS
Washington, D.C. 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

☐   No additional fee is enclosed because this application was filed prior to
October 25, 1965 (effective date of Public Law 89-83.)

☐   No additional fee is required.

The fee has been calculated as shown below.

| (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NO. PREVIOUSLY PAID FOR | (5) PRESENT EXTRA | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|
| | | | **CLAIMS AS AMENDED** | | | |
| TOTAL CLAIMS | * 73 | MINUS | ** 33 | = 40 | x $2 | x $80.00 |
| INDEP. CLAIMS | * 10 | MINUS | 10 | = 0 | x $10 | x 0 |
| | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT→ | | | $80.00 |

*If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.
**If the "Highest Number Previously Paid For" IN THIS SPACE is less than 10, write "10" in this space.

☒   A check in the amount of $ 80.00 ⟨⟨⟨ is attached.

☐   Charge $ _____ to Deposit Account No. _____ . A duplicate
copy of this sheet is enclosed.

Please charge any additional fees or credit overpayment to Deposit Account No.
11-575 . A duplicate copy of this sheet is enclosed.

Mark G. Lappin
Reg. No. 26,618

MGL:mrr