PAPER NO. ___



**U.S. DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

[  Martin E. Hellman, et al.  ]
[  222    10/06/77   839,939  ]

Flehr, Hohbach, Test Albritton
and Herbert
160 Sansom St. 15th Floor
San Francisco, Calif.   94104

MAILED
MAILE.
**NOV 14 1978**

GROUP 220

THIS IS A COMMUNICATION FROM THE EXAMINER
IN CHARGE OF YOUR APPLICATION.

COMMISSIONER OF
PATENTS AND TRADEMARKS

☐ This application has been examined.

☐ Responsive to communication filed on _____.

☐ This action is made final.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE _____3_____ MONTH(S),
_____C_____ DAYS FROM THE DATE OF THIS LETTER.

FAILURE TO RESPOND WITHIN THE PERIOD FOR RESPONSE WILL CAUSE THE APPLICATION TO BECOME ABANDONED.
35 U.S.C. 133.

**PART I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited, Form PTO–892.    2. ☐ Notice of Informal Patent Drawing, PTO–948.

3. ☐ Notice of Informal Patent Application,    4. ☐
     Form PTO–152

**PART II   SUMMARY OF ACTION**

1. ☑ Claims _____1-19_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____1-3, 7-13, 17-19_____ are rejected.

5. ☑ Claims _____4-6, 14-16_____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ The formal drawings filed on _____ are acceptable.

8. ☐ The drawing correction request filed on _____ has been   ☐ approved.
                                                                        ☐ disapproved.

9. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has
     ☐ been received.                    ☐ been filed in parent application:
     ☐ not been received.                serial no. _____ filed on _____

10. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the
      merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

11. ☐ Other

Form PTO 326 (rev. 11-77)

CYL-F 000418

FORM ... 46-59
5 771 Formerly PTO-1142

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

**PART III**

SERIAL NUMBER 8 _ _ , _ _ _

GROUP ART UNIT 2 _ _

**NOTIFICATION OF REJECTION(S) AND/OR OBJECTION(S) (35 USC 132)**

| | CLAIMS | REASONS FOR REJECTION | REFERENCES | INFORMATION IDENTIFICATION AND COMMENTS |
|---|---|---|---|---|
| 1 | 1, 7, 8 1, 11 | 35 USC 112 | R | (R) TEACHES PUBLIC KEY ENCRYPTION TECHNIQUE, WITH AN ILLUSTRATIVE WORKABLE ALGORITHM EXAMPLE WHICH MEETS THE CLAIM LIMITATIONS |
| 2 | 2, 3, 12, 13 | 35 USC 112 | R | COMMENTS AS ABOVE, TO PRESCRIBE A PUBLIC MINIMAL TO PERFORM THE PUBLIC KEY ENCRYPTION AND AUTHENTICATION TECHNIQUES (COMMENTS), SUCH AS PRESCRIBED (COMMENTS) OF SPECIAL PURPOSE COMPUTERS TO PERFORM THE TRANSFORMATIONS. |
| 3 | 1, 7, 8 10, 11, 14 | 35 USC 112 | | TERMS SUCH AS "EASY TO EFFECT BUT DIFFICULT TO INVERT" ARE ONLY RELATIVE AND COULD APPLY TO A GENERATED CANTO (_____) KEYS. THEY FAIL TO PARTICULARLY POINT OUT AND DISTINCTLY CLAIM THE INVENTION |
| 4 | 1, 2, 3, 11, 12, 13, 17, 18 | | | CLAIMS OF PRESENT APPLICATION DO NOT APPEAR PATENTABLY DISTINCT FROM THOSE OF EARLIER FILED APPLICATION OF DIFFERENT INVENTIVE ENTITY. APPLICANT ARE REQUIRED TO STATE REASONS WHY INTERFERENCE SHOULD NOT BE DECLARED, AND POINT OUT LINES OF DIFFERENCES BETWEEN CLAIMS. |
| 5 | | | | CLAIMS 4-6 AND 14-16 ARE OBJECTED TO FOR DEPENDENCY UPON REJECTED CLAIMS, AND WOULD BE ALLOWABLE IF INDEPENDENTLY REWRITTEN TO INCLUDE THE PATENT LIMITATIONS. |

APPLICANT IS REQUIRED TO INCLUDE PRIOR ART SUBJECT FOR THE TERMS "KNAPSACK PROBLEM" AND THE COPIED THROUGHOUT THE SPECIFICATION IN EXPLAINING THE INVENTION.

* Capital letters representing references are identified on accompanying Form PTO-46-42 (formerly PTO-892).
The symbol "v" between letters represents - in view of -.
The symbol "+" or "&" between letters represents - and -.
A slash "/" between letters represents the alternative - or -.

NOTE  Sections 100, 101, 102, 103, and 112 of the Patent Statute (Title 35 of the United States Code) are reproduced on the back of this sheet.

EXAMINER

TEL. NO. (703) -557 - _ _ _ _

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

CYL-F 000419

TO SEPARATE HOLD TOP AND BOTTOM EDGES, SNAP APART AND DISCARD CARBON

| U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 839,939 | GROUP ART UNIT 222 | ATTACHMENT TO PAPER NUMBER | 5 |

**NOTICE OF REFERENCES CITED**

APPLICANT (S)

*HELLMAN ET AL*

## U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS OF DWG SPEC |
|---|---|---|---|---|---|---|---|
| L | | | | | | | |
| M | | | | | | | |
| N | | | | | | | |
| O | | | | | | | |
| P | | | | | | | |
| Q | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Diffie, et al, "Multi-User Cryptographic Techniques," AFIPS Conference Proceedings, Vol 45, p 109-112 June 8, 1976 |
| S | |
| T | |
| U | |

| EXAMINER P. H. Commer | DATE 10/12/78 |

**813**

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CYL-F 000420



Reprinted
AFIPS — Conference Proceedings
Volume 45
© AFIPS PRESS
Montvale, N. J. 07645

# Multiuser cryptographic techniques*

by WHITFIELD DIFFIE and MARTIN E. HELLMAN
Stanford University
Stanford, California

## ABSTRACT

This paper deals with new problems which arise in the application of cryptography to computer communication systems with large numbers of users. Foremost among these is the key distribution problem. We suggest two techniques for dealing with this problem. The first employs current technology and requires subversion of several separate key distribution nodes to compromise the system's security. Its disadvantage is a high overhead for single message connections. The second technique is still in the conceptual phase, but promises to eliminate completely the need for a secure key distribution channel, by making the sender's keying information public. It is also shown how such a public key cryptosystem would allow the development of an authentication system which generates an unforgeable, message dependent digital signature.

## INTRODUCTION

In a computer network with a large number of users, cryptography is often essential for protecting stored or transmitted data. While this application closely resembles the age old use of cryptography to protect military and diplomatic communications, there are several important differences which require new protocols and new types of cryptosystems. This paper addresses the multiuser aspect of computer networks and presents ways to preserve privacy of communication despite the large number of user connections which are possible.

In a system with n users there are $n^2-n$ pairs who may wish to hold private conversations. The straightforward way to achieve this is to give each pair of users a key in common which they share with no one else. Each user will then have n-1 keys, one for communicating with each other user. Unfortunately, the cost of distributing these keys is prohibitive. A new user must send keys to all other users. Unfortunately, the network cannot be used for this purpose, and an external

* This work was supported by the National Science Foundation under NSF Grant ENG 10173.

secure channel is required. This procedure is comparable to requiring each new telephone subscriber to send a registered letter to everyone else in the phonebook.

Military communications suffer less from this problem for several reasons. Among these are the limitations imposed by the chain of command and the fact that stations change allegiance infrequently. In a computer network designed for business communication, on the other hand, users will regard each other as friends on one matter and as opponents on another. Firms A and B may cooperate on one venture in competition with C, while simultaneously, A and C compete with B on a different endeavor. A must therefore use different keys for communicating with B and C.

One approach to this problem is to assume that the users trust the network. Each user remembers only one key which is used to communicate with a local node. From there the message is relayed from node to node, each of which decrypts it, then reencrypts it in a different key for the next leg of its journey. This process is known as link encryption.[1] When the message reaches the network node closest to its destination, it is sent on to the addressee encrypted in a key shared only by the addressee and that node.

Although this technique requires each user to remember only one key, it has the disadvantage that a message is compromised if any one of the nodes in its path is subverted. In this paper we examine two other ways of allowing secure communication between any pair of users without assuming the integrity of all nodes in the network and without requiring the users to distribute or store large numbers of keys.

The first technique requires no new technology, but imposes a complex initial connection protocol. This is the subject of the second section of this paper. We call the second technique public key cryptography, since most of the secrecy traditionally required for the keys has been removed. This is discussed in section three and represents a radical departure from past cryptographic practices. While it requires further work before it becomes implementable, its simplicity of operation makes it extremely attractive. If a suc-

CYL-F 000421

cal implementation can be developed it should find use in both military and civilian applications.

The fourth section shows how public key cryptography can be used to provide a time and message dependent digital signature which cannot be forged even when past signatures have been seen. This is an example of the general problem of authentication discussed in greater detail in Reference 2, which provides a more general perspective in which public key cryptography can be viewed.

## A PROTECTIVE PROTOCOL

As indicated earlier, a message protected by link encryption will be compromised if any node in the path it follows from the sender to the receiver is subverted. In this section we describe a protocol which guarantees to protect the message unless a large number of nodes are compromised. While many variations are possible, the basic technique is as follows.

A small number m of the network's nodes will function as "key" distribution nodes." Each user has m keys, one for communicating with each of these m nodes. These keys vary from user to user, so while each user must remember only m keys, each of the key distribution nodes remembers n, one for each user of the net. When users A and B wish to establish a secure connection they contact the m key distribution nodes and receive one randomly chosen key from each. These keys are sent in encrypted form using the keys which the users share with the respective nodes. Upon receiving these keys, the conversants each compute the exclusive or of the m keys received to obtain a single key which is then used to secure a private conversation. None of the nodes involved can violate this privacy individually. Only if all m nodes are compromised will the security of this connection fail.

It might be objected that any key distribution node acting alone can prevent all communication by mischievously sending out different keys to each of the parties, thus bringing network operations to a halt. The users, however, can easily protect themselves against this threat. If communication using the composite key fails, its use as a key is abandoned, and the components are exchanged one by one, in clear, for comparison. If any key fails to agree, the node which issued it is blacklisted. Finally, on conclusion of this process, the users repeat the request for keys to the nodes which passed the previous test.

Alternatively, the component keys can be compared by the use of one way functions[3,5] without ever being transmitted in clear. Loosely speaking, a function f is called a one-way function if it is easy to compute in the forward direction, but given any output, it is computationally infeasible to find an input which produces it. In referring to a task as computationally infeasible, we have in mind that it cannot be done in

fewer than a finite but astronomical number of operations, say $2^{100}$. For practical purposes, this is equivalent to being incomputable. As shown in Reference 2, a one way function can easily be obtained from a secure cryptosystem.

If communication fails using the composite key, the users send the images of the individual keys under a public one-way function. If the image received does not agree with that computed by applying f to the key, the node which issued it is guilty of compromise. Since the valid keys have not been publicly revealed in this process, there is no need to request new ones from the uncompromised nodes. Instead the invalid ones are omitted and the remainder xored.

To sum up, this technique requires each user to remember m keys and each key distribution node to remember n keys. Unless all m key distribution nodes are subverted, any two users can establish a private link through use of a set-up protocol usually requiring 2m exchanges (more are required if a key distribution node has been subverted). The next section describes a concept which eliminates much of this overhead and does not require the user to trust any node. This new concept, if successfully implemented, will make the technique described above obsolete.

## PUBLIC KEY CRYPTOGRAPHY

In this section we propose that it is possible to eliminate most of the secrecy surrounding the key used in a communication, and yet to preserve the secrecy of the communication. This is accomplished by giving each user a pair of keys E and D. E is an enciphering key and is public information. D is the corresponding deciphering key, and while this must be kept secret, it need never be communicated, eliminating the need for a secure key distribution channel. Although D is determined by E, it is infeasible to compute D from E.

For reasons of security, generation of this E-D pair is best done at the user's terminal which is assumed to have some computational power. The user then keeps the deciphering key D secret but makes the enciphering key E public by placing it in a central file along with his name and address. Anyone can then encrypt a message and send it to the user, but only the intended receiver can decipher it. Public key cryptosystems can therefore be regarded as multiple access ciphers.

By regularly checking the file of enciphering keys the user can guard against any attempt to alter it surreptitiously. Any such mischief is reported and settled by other authentication means, such as personal appearance.

The crucial feature of a public key system is that it is relatively easy to generate an E-D pair, preferably automatically through a publicly available transformation from a random bit string to E-D, and yet it is computationally infeasible to compute D from E.

CYL-F 000422

At present we have neither a proof that public key systems exist, nor a demonstration system. We hope to have a demonstration E-D pair in the near future, and expect that if the demonstration pair successfully resists attack then we will be able to design an algorithm for automatically generating E-D pairs of a similar kind. In the meantime, the following reasoning is given to help dispel any doubts the reader may have.

A suggestive example is to let the cryptogram, represented as a binary n-vector c equal E m; where m is the message also represented as a binary n-vector, and E is an arbitrary n-by-n invertible matrix. Letting $D = E^{-1}$ we have $m = D c$. Thus both enciphering and deciphering are easily accomplished with about $n!2$ operations. Calculation of D from E, however, involves a matrix inversion which is a harder problem. And it is at least conceptually simpler to obtain an arbitrary pair of inverse matrices than it is to invert a given matrix. Start with the identity matrix I and do elementary row and column operations to obtain an arbitrary invertible matrix E. Then starting with I do the inverse of these same elementary operations in reverse order, to obtain $D = E^{-1}$. The sequence of elementary operations could easily be generated from a random bit string.

Unfortunately, matrix inversion takes only about $n!3$ operations even without knowledge of the sequence of elementary operations. The ratio of "cryptanalytic" time (i.e., computing D from E) to enciphering or deciphering time is thus at most n. To obtain ratios of $10^{16}$ or greater would thus require enormous block sizes. Also, it does not appear that knowledge of the elementary operations used to obtain E from I greatly reduces the time for computing D. And, since there is no roundoff error in binary arithmetic numerical stability is of no consequence in the matrix inversion. In spite of its lack of practical utility, this matrix oriented example is still useful for clarifying the relationships necessary in a public key system.

A more practical direction uses the observation that we are really seeking a pair of easily computed inverse algorithms E and D, but that D must be hard to infer from E. This is not as impossible as it may sound. Anyone who has tried to determine what operation is accomplished by someone else's machine language program knows that E itself (i.e., what E does) can be hard to infer from E (i.e., a listing of E). If the program were to be made purposefully confusing through addition of unneeded variables, statements and outputs, then determining an inverse algorithm could be made very difficult indeed. Of course, E must be complicated enough to prevent its identification from input-output pairs.

Another idea appears more promising. Suppose we start with a schematic of a 100 bit input, 100 bit output circuit which merely is a set of 100 wires implementing the identity mapping. Select 4 points in the circuit at random, break these wires, and insert AND, OR and NOT gates which implement a randomly chosen 4 bit to 4 bit invertible mapping (a 4 bit S box in Feistel's notation).' Then repeat this insertion operation approximately 100 times to obtain an enciphering circuit E. Knowing the sequence of operations which led to the final E circuit allows one to easily design an inverse circuit D. If however the gates are now randomly moved around on the schematic of E to hide their associations into S boxes, an opponent would have great difficulty in reconstructing the simple description of E in terms of S boxes, and therefore would have great difficulty in constructing a simple version of D. His task could be further complicated by using reduction techniques (e.g. Carnaugh maps) or expansion techniques (e.g. $\sim (AB) = \sim A$ or $\sim B$, or expressing a logical variable in terms of previous variables), and by adding additional, unneeded S boxes and outputs.

For ease of exposition, we have described the implementation of a specific key in hardware. In practice, a special purpose simulator is obviously of most interest. The hardware description is also valuable in exemplifying a generally useful idea. To build a good public key cryptosystem one needs easily inverted elementary building blocks and a general framework for describing the concatenation of these elementary blocks. Here the elementary building blocks are S boxes and the general framework is the schematic diagram. The general framework must also hide the sequence of elementary building blocks so that no one other than the designer can easily implement the sequence of inverse elementary operations. Examination will show that the matrix example had a similar structure, except there the general class of transformations obtainable was too small.

While the above arguments only provide plausibility as opposed to proof, we hope they will stimulate additional work on this promising area of research.

## PUBLIC KEY AUTHENTICATION

The purpose of a cryptographic system is to prevent the unauthorized extraction of information from a public (i.e., insecure) channel. The dual problem of authentication is to prevent unauthorized injection of messages into a public channel.

In conventional paper oriented business transactions, signatures provide a generally accepted level of authentication. As electronic communication replaces mail service the need for a digital signature will be strongly felt.

Various types of authentication are now possible, but the development of public key cryptosystems would allow an entirely new dimension.

Currently, most message authentication consists of appending an authenticator pattern, known only to the transmitter and intended receiver, to each message

CYL-F 000423

and encrypting the combination. This protects against eavesdropper being able to forge new, properly authenticated messages unless he has also stolen the key being used. There is no protection against such an eavesdropping thief or against the threat of dispute. That is, the transmitter may transmit a properly authenticated message, later deny this action, and falsely blame the receiver for taking unauthorized action. Or, conversely, the receiver may take unauthorized action, forge a message to itself and then falsely blame the transmitter for these actions. For example, a dishonest stockbroker may try to cover up unauthorized buying and selling for personal gain by forging orders from clients. Or a client may disclaim an order, actually authorized by him, but which is later seen to cause a loss. We will introduce concepts which would allow the receiver to easily verify the authenticity of a message, but which prevent him from generating apparently authenticated messages, thereby protecting against both the threat of eavesdropping thieves and the threat of dispute. Note that these techniques thus provide stronger protection than signatures, voiceprints, etc. which can be forged once seen and are not message dependent.

To obtain an unforgeable digital signature from a public key cryptosystem, the protocol would be as follows: Assume user A wishes to send a message M to user B. The transformed message $C = EbDa(M)$ is sent, where Eb represents the transformation effected by use of B's public enciphering key and Da represents the transformation effected by use of A's secret deciphering key. Upon receipt of C, user B operates first with his secret operation Db and then with the public operation Ea thereby obtaining $EaDb(C) = EaDbEbDa(M) = M$. No one else can extract M because of the need to know Db. By saving the intermediate result $Db(C) = Da(M)$ user B (and only user B) can prove that he received the specific message M from user A. There must be some structure to the message (e.g., it could include a date and time field) to prevent injection of random bit patterns for C, with the hope that the resultant decoded "message", EaDb(C), might cause random mischief such as deletion of files.

Note that since there is no need for a secure channel for distribution of authentication information, we have a public key authentication system. This system protects against, "eavesdropping thieves" and against a dispute as to whether or not an action taken by the receiver was authorized by the transmitter. Similarly, a public key cryptosystem can be used to protect against the other type of dispute in which the transmitter A claims to have issued an order which was not carried out by the receiver B. The transmitter requests that the receiver B send $EaDb(M)$ as a receipt for the message M. By operating on this receipt with his secret operation Da, the transmitter obtains Db(M), which could only have been generated by the receiver, B. Only user A can generate this receipt since it requires knowledge of Da.

While the above discussion centered on message authentication it also applies to user authentication. The implicit message becomes "I am user X and the time is T." Inclusion of the time field prevents an eavesdropper from using old authentication signals to pose as someone else. For reasons noted in Reference 2, such a system deserves to be called a one-way IFF system.

We thus see that public key cryptosystems developed for ensuring the privacy of communications, could also be used to ensure their authenticity. They could therefore be used to fill the need for a digital equivalent of a signature. This need is currently a major barrier to the use of electronic mail for business communications, and provides additional motivation for study of public key cryptosystems.

## ACKNOWLEDGMENT

The authors wish to thank Leslie Lamport of Massachusetts Computer Associates for several valuable discussions. In particular, the technique described in Section 2 was discovered during one of these conversations.

## REFERENCES

1. Baran, Paul, *On Distributed Communications: IX. Security, Secrecy, and Tamper-Free Considerations,* Santa Monica, CA: The Rand Corporation August 1964, (RM-3765-PR).
2. Diffie, Whitfield and Martin E. Hellman, forthcoming paper to be submitted to the *IEEE Transactions on Information Theory.*
3. Evans, Arthur, Jr., William Kantrowitz and Edwin Weiss, "A User Authentication System not Requiring Secrecy in the Computer," *Communications of the ACM,* Vol. 17 No. 8, August 1974, pp. 437-442.
4. Feistel, Horst, "Cryptography and Computer Privacy," *Scientific American,* Vol. 228, No. 5, May 1973, pp. 15-23.
5. Purdy, George B., "A High Security Log-in Procedure," *Communications of the ACM,* Vol. 17, No. 8, August 1974, pp. 442-445.

CYL-F 000424

IN THE UNITED STATES PATENT OFFICE

In re Application:                          )
                                            )
MARTIN E. HELLMAN et al                     )
                                            )
Serial No. 839,939                          )        Group No.  222
                                            )
Filed:  October 6, 1977                     )        Examiner  Howard A. Birmiel
                                            )
For:  PUBLIC KEY CRYPTOGRAPHIC              )        San Francisco, California
      APPARATUS AND METHOD                  )
                                            )        Date:  _Feb. 13, 1979_
                                            )

The Commissioner of Patents
Washington, D. C. 20231

Sir:

        Transmitted herewith is an amendment in the above-identified application.

        _____ No additional fee is required.

        The fee has been calculated as shown below.

### CLAIMS AS AMENDED

| (1) | (2) Claims Remaining After Amendment | (3) | (4) Highest No. Previously Paid For | (5) Present Extra | (6) Rate | (7) Additional Fee |
|---|---|---|---|---|---|---|
| Total Claims | *  18 | Minus | ** 19 = | 0  x | $ 2 | = |
| Independent Claims | *  12 | Minus | 8 = | 4  x | 10 | = 40.00 |
| | | | Total Additional Fee For This Amendment | | | $40.00 |

*   If the entry in column 2 is less than the entry in column 4, write "0" in column 5.

**  If the "Highest Number Previously Paid For" in this space is less than 10, write "10" in this space.

   XXX   Our check No. _10394_ in the amount of $ _40.00_ is enclosed.

   XXX   Please charge any additional fees or credit over-payment to Deposit Acct. No. 06-1300 (Order No. A- 34134/AJT    ).
         A duplicate copy of this sheet is enclosed.

                                        Respectfully submitted,

                                        Aldo J. Test, Reg. No.18,048
                                        FLEHR, HOHBACH, TEST, ALBRITTON
                                          & HERBERT
                                        160 Sansome Street - 15th Floor
                                        San Francisco, CA 94104
                                        (415) 781-1989

CYL-F 000425

FEB 15 1979

-34134

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:     )

MARTIN E. HELLMAN et al    )    Group Art Unit 222

Serial No. 839,939    )    Examiner Howard A. Birmiel

Filed:  October 6, 1977    )    Paper No. 9

For:  PUBLIC KEY CRYPTOGRAPHIC  )
     APPARATUS AND METHOD    )
              )

                    San Francisco, California
                    February 13, 1979

A M E N D M E N T

The Commissioner of Patents and Trademarks
Washington, D. C. 20231

Sir:

      This Amendment is responsive to the Office Action dated
November 14, 1978.  Amendment is requested to be made as follows:

IN THE SPECIFICATION:

Page 1, line 17         After "Background of the Invention"

                   insert --The Government has rights

                   in this invention pursuant to Grant

                   No. ENG-10173 of the National Science

                   Foundation and IPA No. 0005.--

Page 8, line 28         After "the so-called "knapsack

                   problem." insert --Definitions of

                   the knapsack problem exist in the

                   literature, for example, Ellis

                   Horowitz and Sartaj Sahni, "Computing

CYL-F 000426

Partitions with Applications to the
Knapsack Problem", JACM, Vol. 21,
No. 2, April 1974, pp. 277-292; and
O. H. Ibarra and C. E. Kim, "Fast
Approximation Algorithms for the
Knapsack and Sum of Subset Problems",
JACM, Vol. 22, No. 4, October 1975,
pp. 463-468.  The definition used
here is adapted from R. M. Karp,
"Reducibility Among Combinatorial
Problems" in Complexity of Computer
Computations, by R. E. Miller and
J. W. Thatcher, eds., Plenum Press,
New York (1972), pp. 85-104.--

Page 9, line 11                    After "n is larger than one or two
                                   hundred." insert --Thus, it is com-
                                   putationally infeasible to invert
                                   the transformation; such trans-
                                   formations are characterized by the
                                   class of mathematical functions
                                   known as one-way cipher functions.--

IN THE CLAIMS:

    1.   (Amended)   In a [A] method of communicating securely
over an insecure communication channel [comprising the steps] of
the type which communicates a message from a transmitter to a
receiver, the improvement characterized by:
         generating a secret deciphering key [by a] at the
receiver;

-2-

9.2

CYL-F 000427

generating a public enciphering key [by] at the
receiver [from which public enciphering key it is difficult to
generate the secret deciphering key] , such that the secret
deciphering key is computationally infeasible to generate from
the public enciphering key;

transmitting the public enciphering key from the
receiver to the transmitter;

[enciphering a message to be communicated from a
transmitter by transforming the message with the public
enciphering key] receiving the message and the public enciphering
key at the transmitter and generating an enciphered message by
an enciphering transformation, [which] such that the enciphering
transformation is [easy to effect but difficult] computationally
infeasible to invert without the secret deciphering key;

[communicating] transmitting the enciphered message
from the transmitter to the receiver; and

[deciphering] receiving the enciphered message and the
secret deciphering key [by] at the receiver [by] and inverting
said transformation by transforming the enciphered message with
the secret deciphering key to generate the message.

Cancel Claim 2.

3.   (Amended)  In a [A] method of communicating securely
over an insecure communication channel as in Claim 1 wherein the
step of:

[enciphering a message] receiving the message and
generating an enciphered message is performed by computing the
dot product of the message, represented as a vector, and the
public enciphering key, represented as a vector, to represent
the enciphered message.

Cancel Claim 4.

Cancel Claim 5.

-3-

CYL-F 000428

Cancel Claim 6.

Cancel Claim 7.

8. (Amended)  <u>In a</u> [A] method of [allowing a transmitter to authenticate a receiver's identity] <u>communicating securely over an insecure communication channel</u> as in Claim [7] <u>23</u> wherein the step of:

authenticating the receiver's identity includes the receiver [communicating] <u>transmitting</u> a representation of the message to the transmitter.

9. (Amended)  <u>In a</u> [A] method of [providing a receipt for a communicated message comprising the steps of] <u>communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by</u>:

generating a secret key [by] <u>at</u> the transmitter;

generating a public key [by] <u>at</u> the transmitter, [from which public key it is difficult to generate the secret key] <u>such that the secret key is computationally infeasible to generate from the public key;</u>

<u>receiving the message and the secret key at the transmitter and</u> generating a receipt [by] <u>at</u> said transmitter by transforming a representation of the message with the secret key, [which transformation is difficult to effect without the secret key and easy to validate with] <u>such that the receipt is computationally infeasible to generate from</u> the public key;

[communicating] <u>transmitting</u> the message, <u>public key</u> and the receipt from [said] <u>the</u> transmitter to [a] <u>the</u> receiver;

<u>receiving the message, public key and the receipt at the receiver and</u> transforming said receipt [by said receiver] with the public key to [obtain the] <u>generate a</u> representation of the message; and

-4-

CYL-F 000429

validating the receipt [by said receiver] by comparing the similarity of the message to the representation of the message generated from the receipt.

10.   (Amended)   In a [A] method of [providing a receipt for a communicated message comprising the steps of] communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret key [by] at the transmitter;

generating a public key [by] at the transmitter, [from which public key it is difficult to generate the secret key] such that the secret key is computationally infeasible to generate from the public key;

receiving the message and the secret key at the transmitter and generating a message-receipt [by] at said transmitter by transforming a representation of the message with the secret key, [which transformation is difficult to effect without the secret key and easy to validate with] such that the message-receipt is computationally infeasible to generate from the public key;

[communicating] transmitting the message-receipt and the public key from [said] the transmitter to [a] the receiver;

receiving the message-receipt and the public key at the receiver and transforming the message-receipt [by said receiver] with the public key; and

validating the [receipt by said receiver] transformed message-receipt by checking for redundancy [in the transformed message-receipt].

-5-

CYL-F 000430

11.   (Amended)   In an [An] apparatus for communicating securely over an insecure communication channel [comprising] of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key [by a] at the receiver;

means for generating a public enciphering key [by] at the receiver, [from which public enciphering key it is difficult to generate said secret deciphering key] such that the secret deciphering key is computationally infeasible to generate from the public enciphering key;

means for transmitting the public enciphering key from the receiver to the transmitter;

means, for enciphering a message [by a] at the transmitter, having an input connected to receive said public enciphering key, having another input connected to receive said message, and having an output that generates an enciphered message that is a transformation of said message with said public enciphering key, [which] such that the enciphering transformation is [easy to effect but difficult] computationally infeasible to invert without the secret deciphering key;

[communication means having an input connected to receive said enciphered message and having an output that generates said enciphered message] means for transmitting the enciphered message from the transmitter to the receiver; and

means, for deciphering said enciphered message [by] at the receiver, having an input connected to receive said enciphered message [from the output of said communication means], having another input connected to receive said secret deciphering key, and having an output for generating said message by inverting said transformation with said secret deciphering key.

-6-

CYL-F 000431

Cancel Claim 12.

13.   (Amended)   <u>In an</u> [An] apparatus for communicating securely over an insecure communication channel as in Claim 11 wherein said transformation is performed by computing the dot product of said message, represented as a vector, and said public enciphering key, represented as a vector, to represent said enciphered message.

Cancel Claim 14.

Cancel Claim 15.

Cancel Claim 16.

Cancel Claim 17.

Cancel Claim 18.

Cancel Claim 19.

Add the following new claims:

20.   In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret deciphering key at the receiver by generating an n dimensional vector $\underline{a}'$, the elements of vector $\underline{a}'$ being defined by

$$a_i' > \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1,2,\ldots n$$

where n is an integer;

-7-

97

CYL-F 000432

generating a public enciphering key at the receiver by generating an n dimensional vector $\underline{a}$, the elements of vector $\underline{a}$ being defined by

$$a_i = (w * a'_i \bmod m) + km \quad \text{for } i = 1, 2, \dots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;

transmitting the public enciphering key from the receiver to the transmitter;

receiving the message and the public enciphering key at the transmitter and generating an enciphered message by computing the dot product of the message, represented as a vector $\underline{x}$ with each element being 0 or 1, and the public enciphering key, represented as the vector $\underline{a}$, to represent the enciphered message S being defined by

$$S = \underline{a} \quad * \quad \underline{x}$$

transmitting the enciphered message from the transmitter to the receiver; and

receiving the enciphered message and the secret deciphering key at the receiver and transforming the enciphered message with the secret deciphering key to generate the message by computing

$$S' = 1/w * S \bmod m$$

and letting $x_i = 1$ if and only if

$$[S' - \sum_{j=i+1}^{n} x_j * a_j] \geq a'_i$$

and letting $x_i = 0$ if

$$[S' - \sum_{j=i+1}^{n} x_j * a'_j] < a'_i$$

for i = n, n-1, ... 1.

-8-

CYL-F 000433

21. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret deciphering key at the receiver by generating an n dimensional vector $\underline{a}'$, the elements of vector $\underline{a}'$ being defined by

$$a_i' > \ell \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1,2,\dots n$$

where $\ell$ and n are integers;

generating a public enciphering key at the receiver by generating an n dimensional vector $\underline{a}$, the elements of vector $\underline{a}$ being defined by

$$a_i = (W * a_i' \mod m) + km \quad \text{for } i = 1,2,\dots n$$

where m and w are large integers, w is invertible modulo m and k is an integer;

transmitting the public enciphering key from the receiver to the transmitter;

receiving the message and the public enciphering key at the transmitter and generating an enciphered message by computing the dot product of the message, represented as a vector $\underline{x}$ with each element being an integer between 0 and $\ell$, and the public enciphering key, represented as the vector $\underline{a}$, to represent the enciphered message S being defined by

$$S = \underline{a} * \underline{x};$$

transmitting the enciphered message from the transmitter to the receiver; and

-9-

CYL-F 000434

receiving the enciphered message and the secret deci-
phering key at the receiver and transforming the enciphered
message with the secret deciphering key to generate the message
by computing

$$S' = 1/_m \quad S \mod m$$

and letting $x_i$ be the integer part of

$$[S' - \sum_{j=i+1}^{n} x_j * a_j'] / a_i'$$

for i = n, n-1, ... 1.

22. In a method of communicating securely over an
insecure communication channel of the type which communicates a
message from a transmitter to a receiver, the improvement char-
acterized by:

generating a secret deciphering key at the receiver
by generating an n dimensional vector $\underline{a}'$, the elements of vector
$\underline{a}'$ being relatively prime and n being an integer;

generating a public enciphering key at the receiver by
generating an n dimensional vector $\underline{a}$, the elements of vector $\underline{a}$
being defined by

$$a_i = \log_b a_i' \mod m \quad \text{for } i = 1,2 \ldots n$$

where b and m are large integers and m is a prime number such
that $m > \prod_{i=1}^{n} a_i'$ ;

transmitting the public enciphering key from the re-
ceiver to the transmitter;

receiving the message and the public enciphering key
at the transmitter and generating an enciphered message by
computing the dot product of the message, represented as a
vector $\underline{x}$, and the public enciphering key, represented as the
vector $\underline{a}$, to represent the enciphered message S being defined by

$$S = \underline{a} * \underline{x} \quad ;$$

-10-

CYL-F 000435

of vector $\underline{a}$ being defined by

$$a_i = (w * a_j' \bmod m) + km \quad \text{for } i = 1, 2, \ldots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;

means for transmitting the public enciphering key from the receiver to the transmitter;

means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and having an output that generates an enciphered message that is a transformation of the message with the public enciphering key by computing the dot product of the message, represented as a vector $\underline{x}$ with each element being 0 or 1, and the public enciphering key, represented as the vector $\underline{a}$, to represent the enciphered message S being defined by

$$S = \underline{a} * \underline{x}$$

means for transmitting the enciphered message from the transmitter to the receiver; and

means for deciphering the enciphered message at the receiver, having an input connected to receive the enciphered message, having another input connected to receive the secret deciphering key, and having an output for generating the message by inverting the transformation with the secret deciphering key by computing

$$S' = 1/w * S \bmod m$$

and letting $x_i = 1$ if and only if

$$\left[ S' - \sum_{j=i+1}^{n} x_j * a_j \right] \geq a_i'$$

and letting $x_i = 0$ if

$$\left[ S' - \sum_{j=i+1}^{n} x_j * a_j \right] < a_i'$$

for $i = n, n-1, \ldots 1$

-12-

CYL-F 000436

transmitting the enciphered message from the trans-
mitter to the receiver; and

receiving the enciphered message and the secret de-
ciphering key at the receiver and transforming the enciphered
message with the secret deciphering key to generate the message
by computing

$$S' = b^S \mod m$$

and letting $x_i = 1$ if and only if the quotient of $S'/a_i$ is
an integer and letting $x_i = 0$ if the quotient of $S'/a_i$ is not
an integer.

23. In a method of communicating securely over an
insecure communication channel as in Claim 1, further comprising:

authenticating the receiver's identity to the trans-
mitter by the receiver's ability to decipher the enciphered
message.

24. In an apparatus for communicating securely over
an insecure communication channel of the type which communi-
cates a message from a transmitter to a receiver, the improve-
ment characterized by:

means for generating a secret deciphering key at the
receiver by generating an n dimensional vector $\underline{a}'$, the elements
of vector $\underline{a}'$ being defined by

$$a_i' > \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1, 2, \ldots n$$

where n is an integer;

means for generating a public enciphering key at the
receiver by generating an n dimensional vector $\underline{a}$, the elements

-11-

CYL-F 000437

25.   In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key at the receiver by generating an n dimensional vector $\underline{a}'$, the elements of vector $\underline{a}'$ being defined by

$$a'_i \; > \; \ell \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1, 2, \ldots n$$

where $\ell$ and n are integers;

means for generating a public enciphering key at the receiver by generating an n dimensional vector $\underline{a}$, the elements of vector $\underline{a}$ being defined by

$$a_i = (w * a'_i \bmod m) + km \quad \text{for } i = 1, 2 \ldots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;

means for transmitting the public enciphering key from the receiver to the transmitter;

means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and having an output that generates an enciphered message that is a transformation of the message with the public enciphering key by computing the dot product of the message, represented as a vector $\underline{x}$ with each element being an integer between 0 and $\ell$, and the public enciphering key, represented as the vector $\underline{a}$, to represent the enciphered message S being defined by

$$S = \underline{a} * \underline{x} \quad ;$$

means for transmitting the enciphered message from the transmitter to the receiver; and

CYL-F 000438

means for deciphering the enciphered message at the receiver, having an input connected to receive the enciphered message, having another input connected to receive the secret deciphering key, and having an output for generating the message by inverting the transformation with the secret deciphering key by computing

$$S' = 1/w * S \bmod m$$

and letting $x_i$ be the integer part of

$$[S' - \sum_{j=i+1}^{n} x_j * a_j'] / a_i'$$

for i = n, n-1,... 1.

25. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key at the receiver by generating an n dimensional vector $\underline{a}'$, the elements of vector $\underline{a}'$ being relatively prime and n being an integer;

means for generating a public enciphering key at the receiver by generating an n dimensional vector $\underline{a}$, the elements of vector $\underline{a}$ being defined by

$$a_i = \log_b a_i' \bmod m \quad \text{for i = 1, 2, ... n}$$

where b and m are large integers and m is a prime number such that

$$m > \prod_{i=1}^{n} a_i' \quad ;$$

means for transmitting the public enciphering key from the receiver to the transmitter;

means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and

-14-

CYL-F 000439

having an output that generates an enciphered message that is a
transformation of the message with the public enciphering key
by computing the dot product of the message, represented as a
vector $\underline{x}$ with each element being 0 or 1, and the public enci-
phering key, represented as the vector $\underline{a}$, to represent the
enciphered message S being defined by

$$S = \underline{a} * \underline{x} \quad ;$$

   means for transmitting the enciphered message from the
transmitter to the receiver; and

   means for deciphering the enciphered message at the
receiver, having an input connected to receive the enciphered
message, having another input connected to receive the secret
deciphering key, and having an output for generating the message
by inverting the transformation with the secret deciphering key
by computing

$$S' = b^S \mod m$$

and letting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an
integer and letting $x_i = 0$ if the quotient of $S'/a_i$ is not an
integer.

   27.  In an apparatus for deciphering an enciphered
message that is received over an insecure communication channel
having an input connected to receive the enciphered message
that is enciphered by an enciphering transformation in which a
message to be maintained secret is transformed with a public
enciphering key, having another input connected to receive a
secret deciphering key, and having an output for generating the
message, characterized by:

   means for inverting the enciphering transformation
having an input connected to receive the enciphered message,
another input connected to receive the secret deciphering key,
and an output for generating the inverse of the enciphered
message; and

CYL-F 000440

means for generating the message having an input connected to receive the inverse of the enciphered message and an output for generating the message;

said secret deciphering key being computationally infeasible to generate from the public enciphering key, and said enciphering transformation being computationally infeasible to invert without the secret deciphering key.

28.  In an apparatus for deciphering an enciphered message that is received over an insecure communication channel as in Claim 27 wherein:

said means for inverting the enciphering transformation includes means for computing

$$S' = 1/w * S \bmod m \quad ; \text{ and}$$

said means for generating the message includes means for setting $x_i$ equal to the integer part of

$$[S' - \sum_{j=i+1}^{n} x_j * a_i'] / a_i' \quad \text{for } i = n, n-1, \ldots 1$$

where m and w are large integers and w is invertible module m, where S' is the inverse of the enciphered message S being defined by the enciphering transformation

$$S = \underline{a} * \underline{x}$$

where the message is represented as an n dimensional vector $\underline{x}$ with each element $x_i$ being an integer between 0 and $\ell$, where $\ell$ is an integer, and where the public enciphering key is represented as an n dimensional vector $\underline{a}$, the elements of $\underline{a}$ being defined by

$$a_i = (w * a_j' \bmod m) + km \quad \text{for } i = 1, 2, \ldots n$$

where k and n are integers and the secret deciphering key is m, w, and $\underline{a}'$, where $\underline{a}'$ is an n dimensional vector, the elements of $\underline{a}'$ being defined by

$$a_i' > \ell \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1, 2, \ldots n$$

29.  In an apparatus for deciphering an enciphered message that is received over an insecure communication channel

-16-
16 C

CYL-F 000441

as in Claim 27 wherein:

said means for inverting the enciphering transform-
ation includes means for computing

$$S' = b^S \mod m \quad ; \text{ and}$$

said means for generating the message includes means
for setting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an
integer and setting $x_i = 0$ if the quotient of $S'/a_i$ is not an
integer, where b and m are large integers and m is a prime
number such that

$$m > \prod_{i=1}^{n} a_i'$$

where n is an integer and the secret deciphering key is b,m, and
$\underline{a}'$, where $\underline{a}'$ is an n dimensional vector with each element $a_i'$
being relatively prime, and where S' is the inverse of the
enciphered message S being defined by the enciphering trans-
formation

$$S = \underline{a} * \underline{x}$$

where the message is represented as an n dimensional vector $\underline{x}$
with each element $x_i$ being 0 or 1, and the public enciphering
key is represented as the n dimensional vector $\underline{a}$, the elements
of $\underline{a}$ being defined by

$$a_i = \log_b a_i' \mod m \quad \text{for } i = 1,2,\ldots n \ .$$

31. In an apparatus for enciphering a message that is
to be transmitted over an insecure communication channel having
an input connected to receive a message to be maintained secret,
having another input connected to receive a public enciphering
key, and having an output for generating the enciphered message,
characterized by:

means for receiving the message and converting the
message to a vector representation of the message;

-17-

107

CYL-F 000442



means for receiving the public enciphering key and converting the public enciphering key to a vector representation of the public enciphering key; and

means for generating the enciphered message by computing the dot product of the vector representation of the message and the vector representation of the public enciphering key, having an input connected to receive the vector representation of the message, having another input connected to receive the vector representation of the public enciphering key, and having an output for generating the enciphered message.

CYL-F 000443



R E M A R K S

Applicants note the allowance of Claims 4, 5, 6, 14, 15 and 16.  These claims have been rewirtten in independent form and are submitted herewith as Claims 20, 21, 22, 24, 25 and 26. Claim 7 has been rewirtten as Claim 23 and made dependent upon Claim 1.  Claims 1, 3, 8, 9, 10, 11 and 13 have been amended to more clearly distinguish over the art of record.  Claims 27, 28, 29 and 30 have been added to claim the enciphering and deciphering apparatus separately from the entire system.

The Examiner has rejected Claims 1, 2, 7, 8, 9 and 10 under 35 USC 102 in view of Diffie and Hellman "MULTIUSER CRYPTOGRAPHIC TECHNIQUES", AFIPS - Conference Proceedings, Vol. 45, pages 109-112, 1976.  Claims 1, 7, 8, 9 and 10 have been revised and have been combined with Claim 2 and are now believed by applicants to distinguish the invention from the teaching of this reference.  Claim 2 has been cancelled.

Specifically, the amended Claims 1, 8, 9 and 10 and rewritten Claim 23 call for a secret deciphering key that is computationally infeasible to generate from the public enciphering key.  The matrix inversion example suggested in the reference is not a workable algorithm for a public key system having a secret deciphering key that is computationally infeasible to generate from the public enciphering key.  As discussed by the reference, matrix inversion has a ratio of "cryptanalytic" time (i.e., computing D from E) to enciphering or deciphering time of at most n, where n is the dimension of the matrix.  Thus, to obtain a ratio of $10^6$ or greater (to insure computational infeasibility) would require n to be greater than or equal to $10^6$.  This, however, requires a matrix of such large size as to

-19-

$1C$

CYL-F 000444



make such an implementation unworkable. In recognition of this, the reference stated that at that time there was no proof that public key systems exist, nor a demonstration system. The matrix inversion example suggested in the reference does not meet the claim limitation of a secret deciphering key that is computationally infeasible to generate from the public enciphering key.

The Examiner has rejected Claims 11, 12, 17, 18 and 19 on the same reference under 35 USC 102 and 35 USC 103 as obvious to provide apparatus to perform the techniques taught by the reference. Claim 11 has been amended and is believed to distinguish over the reference for the same reasons set forth with respect to Claims 1, 8, 9 and 10. More particularly, Claim 11 has been amended to require that the secret deciphering key is computationally infeasible to generate from the public enciphering key. Claims 12, 17, 18 and 19 have been cancelled.

The Examiner also rejects Claims 1, 2, 3, 7, 8, 10, 11, 12, 13, 17, 18 and 19 under 35 USC 112 for failing to particularly point out and distinctly claim the invention. The Examiner states that terms such as "easy to effect but difficult to invert" are only relative and could apply to most generated cryptographic cipher keys. The Examiner's point is well taken with respect to the terms "easy to effect but difficult to invert" and that language has been replaced by the requirements that the secret deciphering key is computationally infeasible to generate from the public enciphering key and that the transformation is computationally infeasible to invert without the secret deciphering key. The term "computationally infeasible" is defined at page 9, lines 11-16 of the specification. Transformations that satisfy the requirement that they are computationally infeasible to invert are commonly known and have been characterized by the class of mathematical functions known

-20-

CYL-F 000445

believe these differences and the claims distinguish the claims of the present invention from those of an earlier filed application to a different inventive entity.  For these reasons, an interference should not be declared.

The Examiner objected to Claims 4, 5, 6, 14, 15 and 16 for dependency upon rejected claims.  Claims 4, 5, 6, 14, 15 and 16 have been rewritten independently to include their parent limitations, and as rewritten as Claims 20, 21, 22, 24, 25 and 26 respectively are deemed to be allowable.

The Examiner requested applicants to provide prior art support for the terms "knapsack problem" and their usage throughout the specification in explaining the invention.  Definitions of the knapsack problem exist in the literature, for example Ellis Horowitz and Sartaj Sahni, "Computing Partitions with Applications to the Knapsack Problem", JACM, Vol. 21, No. 2, April 1974, pages 277-292; and O. H. Ibarra and C. E. Kim, "Fast Approximation Algorithms for the Knapsack and Sum of Subset Problems", JACM, Vol. 22, No. 4, October 1975, pages 463-468.  The definition used here is adapted from R. M. Karp, "Reducibility Among Combinatorial Problems", appearing in Complexity of Computer Computations by R. E. Miller and J. W. Thatcher, editors, Plenum Press, New York (1972) pages 85-104.

New Claims 27, 28, 29 and 30 have been added to claim the enciphering and deciphering apparatus separately from the entire system.  The substance of these claims was described previously in the specification and in Claims 11, 15, 16 and 13 respectively.

-22-

CYL-F 000446

as one-way cipher functions.  Prior references to this class of
mathematical functions may be found in Evans, Kantrowitz and
Weiss, "A User Authentication Scheme Not Requiring Secrecy in
the Computer", Communications of the ACM, Vol. 17, No. 8,
pp. 437-442, August 1974 and in Purdy, "A High Security Log-In
Procedure", Communications of the ACM, Vol. 17, No. 8, pp.
442-445, August 1974.  Thus, it is submitted that the claims
are definite and clearly define the invention.

The Examiner questions the patentable distinction
between the claims of the present invention and those of an
earlier filed application to a different inventive entity.  The
Examiner requests applicants to state reasons why interference
should not be declared and point out lines of differences
between the claims.  The earlier filed application calls for the
exchange of information between the transmitter and receiver
before a secure cipher key can be generated; the present in-
vention allows the receiver (or transmitter in Claims 9 and 10)
independently to generate the cipher keys before any inform-
ation is exchanged between the transmitter and receiver.  The
earlier filed application calls for the generation of the ident-
ical secure cipher key at both the transmitter and receiver,
so only one key is generated that exists at both the trans-
mitter and receiver and that is used to perform both enciphering
and deciphering; the present invention requires two non-identical
cipher keys, one for enciphering and the other for deciphering.
The earlier filed application does not make public the cipher
key nor transmit the cipher key over the insecure communi-
cation channel; the present invention calls for a public enci-
phering key or public key which may be made public or trans-
mitted over the insecure communication channel.  Applicants

-21-

CYL-F 000447

In view of the foregoing amendments to the claims and discussion, applicants submit that the application is now in condition for allowance.

Respectfully submitted,

FLEHR, HOHBACH, TEST,
ALBRITTON & HERBERT,
Attorneys for Applicants

By _____
Aldo J. Test, Reg. No.18,048

telephone: 415-781-1989

I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL SERVICE AS
FIRST CLASS MAIL IN AN ENVELOPE ADDRESSED TO: COMMIS-
SIONER OF PATENTS AND TRADEMARKS, WASHINGTON, D.C.
20231, on____3/13/79

ALDO J. TEST   REG. 18,048

SIGNED_____

DATE_____2/13/79

-23-

CYL-F 000448



PAPER NO. 1.

**U.S. DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address    COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

⌈ Martin E. Hellman, et., al. ⌉
230        10/6/77    939,939

Flehr, Hohbach, Test, Albritton
and Herbert
160 Sansome St. 15th Flr.
San Francisco CA.    94104

MAILED
MAY 7 1979
GROUP 220

THIS IS A COMMUNICATION FROM THE EXAMINER
IN CHARGE OF YOUR APPLICATION.

COMMISSIONER OF
PATENTS AND TRADEMARKS

☐ This application has been examined.
☑ Responsive to communication filed on _2/15/79_.
☑ This action is made final.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE ___3___ MONTH(S)
___ DAYS FROM THE DATE OF THIS LETTER.

FAILURE TO RESPOND WITHIN THE PERIOD FOR RESPONSE WILL CAUSE THE APPLICATION TO BECOME ABANDONED.
35 U.S.C. 133

**PART I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited, Form PTO–892.    2. ☐ Notice of Informal Patent Drawing, PTO–948.

3. ☐ Notice of Informal Patent Application,     4. ☐
        Form PTO–152

**PART II    SUMMARY OF ACTION**

1. ☑ Claims _1, 5, 8 – 11, 13, 20 – 30_ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _2, 4-7, 12, 14-19_ have been cancelled.

3. ☑ Claims _20-22, 24-26_ are allowed.

4. ☑ Claims _1, 8-11, 23, 27_ are rejected.

5. ☑ Claims _3, 13, 28, 29_ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ The formal drawings filed on _____ are acceptable.

8. ☐ The drawing correction request filed on _____ has been    ☐ approved.
                                                                    ☐ disapproved.

9. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has
        ☐ been received.
        ☐ not been received.
        ☐ been filed in parent application;
        serial no. _____ filed on _____

10. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the
        merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11, 453 O.G. 213.

11. ☐ Other

Form PTO 46-94 (rev. 5/77)

CYL-F 000449

Serial No.   332,939                                             -2-

Claims 1, 8-11, 23 and 27 are rejected under 35 USC
103 as obvious over Diffie et al (newly cited) in view of
Evans, Jr. et al.  Diffie et al teaches the claimed techni-
ques of public key cryptography and authentication, while
Evans, Jr. et al teaches several suggested functions utili-
zable in producing a cryptographic transformation which is
computationally infeasible to invert.  It would be obvious
in Diffie et al to utilize either of such algorithmic trans-
formations taught by Evans, Jr. to produce such "computat-
ionally infeasible to invert" public key encoding functions
as would be required by the Diffie et al teachings.

While applicants' arguments point to the failure of
the Diffie et al article orginally cited to sufficiently
disclose a workable function within the framework of appli-
cants' definition of "computationally infeasible to in-
vert" it is the position of the examiner that the Evans,
Jr. et al article, cited by applicants, does provide suffi-
cient teachings of such functions, which would be obvious
to implement in a public key system.

Claims 3, 13, 28 and 29 are objected to for dependency
upon rejected claims and would be allowable if rewritten to
include their parent limitations.

Claims 20-22, and 24-26 are allowed.

The amendatory material relative to the knapsack
problem which applicants direct be inserted at page 8 of
the specification is objected to as comprising new matter,
and cancellation of the same is required.  However, the
citation of such art is deemed to overcome the rejection.

This action is made FINAL.

HABirmiel:cmw
(703)  557-2898
4/23/79

*Howard A. Birmiel*

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

CYL-F 000450

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

| SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|
| 839,939 | 222 | 10 |

APPLICANT(S)

Hellman et al

## U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS DWG | PP SPEC |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| ✓ R | "New Directions in Cryptography", Diffie et al, IEEE Transactions on Information Theory, Vol IT22, No. 6, Nov 76, p644-654 |
| S | "A User Authentication Scheme Not Requiring Secrecy in the Computer", Evans, et al, Communications of the ACM, Aug 74, Vol 17, No 8, p437-442 |
| ✓ T | "A High Security Log-On Procedure", Purdy, Communications of the ACM, Aug 74, Vol 17, No 8, p442-445 |
| U | |

EXAMINER

Howard A Birmiel

DATE 4/18/79

116

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CYL-F 000451

RECEIVED

AUG 2 1979

GROUP 220

IN THE UNITED STATES PATENT & TRADEMARK OFFICE

In re application of:        )
                             )
MARTIN E. HELLMAN et al      )      Group No. 222
                             )
Serial No. 839,939           )      Paper No. 11
                             )
Filed: October 6, 1977       )      Examiner Howard A. Birmiel
                             )
For:  PUBLIC KEY CRYPTOGRAPHIC )
      APPARATUS AND METHOD     )

                                    San Francisco, California

                                    August 1, 1979

REQUEST FOR EXTENSION OF TIME

The Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

        The undersigned attorneys for the applicants in the
above identified application hereby request that the period for
response to the Office Action of May 7, 1979 be extended sixty
days to October 7, 1979.

        The reason for this request is that the undersigned
has been unable to contact the inventors.  The undersigned is
also going on a month's vacation and will not return to the
office until August 27, 1979.  This extension will enable counsel
to have sufficient time to confer with the inventors and prepare
an appropriate response.

-1-

CYL-F 000452

No previous extension has been requested in this application.

It is requested that the granting of this extension of time be acknowledged on the duplicate copy of this Request provided herewith.

Respectfully submitted,

FLEHR, HOHBACH, TEST,
ALBRITTON & HERBERT,
Attorneys for Applicants

By _____
Aldo J. Test, Reg. No.18,049

telephone: 415-781-1989

Request granted
60 days to expire Oct 5 1979

MAYNARD R. WILBUR
EXAMINER
GROUP ART UNIT 222

-2-

CYL-F 000453

RECEIVED

OCT 18 1979

GROUP 220

OCT 9 1979

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:                    )
                                         )
MARTIN E. HELLMAN et al                  )        Group No. 222
                                         )
Serial No. 839,939                       )        Examiner Howard A. Birmiel
                                         )
Filed: October 6, 1977                   )        Paper No. 12
                                         )
For: PUBLIC KEY CRYPTOGRAPHIC            )
     APPARATUS AND METHOD                )
                                         )

San Francisco, California

October 4, 1979

# A M E N D M E N T

The Commissioner of Patents and Trademarks
Washington, D. C. 20231

Sir:

       This Amendment is responsive to the Office Action

dated May 7, 1979.  Amendment is requested to be made as follows:

IN THE CLAIMS:

       1.   (Twice Amended)  In a method of communicating

securely over an insecure communication channel of the type which

communicates a message from a transmitter to a receiver, the

improvement characterized by:

       [generating a secret deciphering key at the receiver;]

       providing random numbers at the receiver;

       generating from said random numbers a public enciphering

key at the receiver;

       generating from said random numbers a secret deciphering

key at the receiver such that the secret deciphering key is

directly related/and computationally infeasible to generate from
          to

the public enciphering key;

-1-

CYL-F 000454

[transmitting] communicating the public enciphering key from the receiver to the transmitter;

[receiving] processing the message and the public enciphering key at the transmitter and generating an enciphered message by an enciphering transformation, such that the en-ciphering transformation is easy to effect but computationally infeasible to invert without the secret deciphering key;

transmitting the enciphered message from the trans-mitter to the receiver; and

[receiving] processing the enciphered message and the secret deciphering key at the receiver [and inverting said transformation by transforming] to transform the enciphered message with the secret deciphering key to generate the message.

3.  Cancel Claim 3 and rewrite in independent form as Claim 31:

17.31.  In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver the improvement char-acterized by:

generating a secret deciphering key at the receiver;

generating a public enciphering key at the receiver, such that the secret deciphering key is computationally infeasible to generate from the public enciphering key;

transmitting the public enciphering key from the receiver to the transmitter;

processing the message and the public enciphering key at the transmitter by computing the dot product of the message, represented as a vector, and the public enciphering key, repre-sented as a vector, to represent the enciphered message, such that the enciphering transformation is easy to effect but comp-utationally infeasible to invert without the secret deciphering key;

CYL-F 000455

transmitting the enciphered message from the trans-
mitter to the receiver;

and processing the enciphered message and the ~~ciphered~~
secret deciphering key at the receiver and inverting said trans-
formation by transforming the enciphered message with the secret
deciphering key to generate the message.

4~~2~~. (Twice amended)  In a method of providing a
digital signature for a communicated message comprising the
steps of [communicating securely over an insecure communication
channel of the type which communicates a message from a trans-
mitter to a receiver, the improvement characterized by:

generating a secret key at the transmitter;]
providing random numbers at the transmitter ~~receiver~~;
generating from said random numbers a public key at
the transmitter[,];

generating from said random numbers a secret key at
the transmitter such that the secret key is directly related to
and computationally infeasible to generate from the public key;

[receiving] processing the message to be transmitted
and the secret key at the transmitter [and generating] to generate
a digital signature [receipt] at said transmitter by transforming
a representation of the message with the secret key, such that the
digital signature is computationally infeasible to generate from
the public key;

communicating the public key to the receiver;
transmitting the message [public key] and the [receipt]
digital signature from the transmitter to the receiver;

receiving the message [public key] and the digital
signature [receipt] at the receiver and transforming said [receipt]
digital signature with the public key to generate a representation
of the message; and

-3-

CYL-F 000456

validating the digital signature [receipt] by comparing
the similarity of the message to the representation of the message
generated from the digital signature [receipt].

_message_ 5

17. (Twice Amended) [In a] A method of providing a
digital signature
receipt for a communicated message comprising the steps of:
[communicating securely over an insecure communication channel
of the type which communicates a message from a transmitter to a
receiver, the improvement characterized by:]

providing random numbers at the transmitter;

[generating a secret key at the transmitter;]

generating from said random numbers a public key at
the transmitter[,]:

generating from said random numbers a secret key at
the transmitter such that the secret key is directly related
to and computationally infeasible to generate from the public key;

[receiving] processing the message and the secret key
at the transmitter and generating a message-[receipt] digital
signature at said transmitter by transforming a representation
of the message with the secret key, such that the message-[receipt]
digital signature is computationally infeasible to generate from
the public key;

communicating the public key to the receiver;

transmitting the message-[receipt and the public key]
digital signature from the transmitter to the receiver;

[receiving] processing the message-[receipt] digital
signature and the public key at the receiver and transforming
the message-[receipt] digital signature with the public key; and

validating the transformed message-[receipt] digital
signature by checking for redundancy.

-4-

/ 3 ! /

CYL-F 000457

6

~~1.~~   (Twice Amended)   In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

[means for generating a secret deciphering key at the receiver;]

means for generating random information at the receiver;

means for generating from said random information a public enciphering key at the receiver, means for generating from said random information a secret deciphering key such that the secret deciphering key is directly related to and computationally infeasible to generate from the public enciphering key;

means for [transmitting] communicating the public enciphering key from the receiver to the transmitter;

means[,] for enciphering a message at the transmitter[,] having an input connected to receive said public enciphering key, having another input connected to receive said message, and [having an output that generates an enciphered message that is a transformation of] serving to transform said message with said public enciphering key, such that the enciphering transformation is computationally infeasible to invert without the secret deciphering key;

means for transmitting the enciphered message from the transmitter to the receiver; and

means[,] for deciphering said enciphered message at the receiver[,] having an input connected to receive said enciphered message, having another input connected to receive said secret deciphering key and [having an output for generating] serving to generate said message by inverting said transformation with said secret deciphering key.

CYL-F 000458

Cancel Claim 13 and rewrite as independent Claim 32:

/5 32.   In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key at the receiver;

means for generating a public enciphering key at the receiver, such that the secret deciphering key is computationally infeasible to generate from the public enciphering key;

means for transmitting the public enciphering key from the receiver to the transmitter;

means for enciphering a message at the transmitter having an input connected to receive said public enciphering key and having another input connected to receive said message and serving to transform said message by computing the dot product of said message, represented as a vector, and said public enciphering key, represented as a vector, to represent said enciphered message, such that the enciphering transformation is computationally infeasible to invert with/the secret deciphering key;

means for transmitting the enciphered message from the transmitter to the receiver;

and means for deciphering said enciphered message at the receiver, said means having an input connected to receive said enciphered message and having another input connected to receive said secret deciphering key and serving to generate said message by inverting the transformation with said secret deciphering key.

Cancel Claim 27.

Rewrite Claim 28 in independent form as Claim 33.

-6-

CYL-F 000459

33.  An apparatus for deciphering an enciphered message that is received over an insecure communication channel including

means for receiving the enciphered message that is enciphered by an enciphering transformation in which a message to be maintained secret is transformed with a public enciphering key, and means for receiving a secret deciphering key to generate the message by inverting the enciphering transformation;

means for generating the message having an input connected to receive the inverse of the enciphered message and an output for generating the message;

said secret deciphering key being computationally infeasible to generate from the public enciphering key, and said enciphering transformation being computationally infeasible to invert without the secret deciphering key in which

said means for inverting the enciphering transformation includes means for computing

$$S' = 1/w * S \bmod m; \text{ and}$$

said means for generating the message includes means for setting $x_i$ equal to the integer part of

$$\left[ S' - \sum_{j=i+1}^{n} x_j * a_j' \right] / a_i' \quad \text{for } i = n, n-1, \ldots 1$$

where m and w are large integers and w is invertible modulo m, where S' is the inverse of the enciphered message S being defined by the enciphering transformation

$$S = \underline{a} * \underline{x}$$

where the message is represented as an n dimensional vector $\underline{x}$ with each element $x_i$ being an integer between 0 and $\ell$, where $\ell$ is an integer, and where the public enciphering key is represented as an n dimensional vector $\underline{a}$, the elements of $\underline{a}$ being defined by

CYL-F 000460

$$a_i = (w * a_j' \mod m) + km \text{ for } i = 1,2,...n$$

where k and n are integers and the secret deciphering key is
m, w and $\underline{a}'$, where $\underline{a}'$ is an n dimensional vector, the elements
of $\underline{a}'$ being defined by

$$a_i' > \ell \sum_{j=1}^{i-1} a_j \quad \text{for } i = 1,2...n$$

Cancel Claim 29 and rewrite in independent form as
Claim 34.

34. An apparatus for deciphering an enciphered
message that is received over an insecure communication channel
including

means for receiving the enciphered message that is
enciphered by an enciphering transformation in which a message to
be maintained secret is transformed with a public enciphering
key, and means for receiving a secret deciphering key to generate
the message by inverting the enciphering transformation;

means for generating the message having an input
connected to receive the inverse of the enciphered message and
an output for generating the message;

said secret deciphering key being computationally
infeasible to generate from the public enciphering key, and said
enciphering transformation being computationally infeasible to
invert without the secret deciphering key in which

said means for inverting the enciphering transformation
includes means for computing

$$S' = b^S \mod m; \text{ and}$$

said means for generating the message includes means
for setting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an
integer and setting $x_i = 0$ if the quotient of $S'/a_i$ is not an
integer, where b and m are large integers and m is a prime
number such that

$$m > \prod_{i=1}^{n} a_i'$$

135

CYL-F 000461

-8-

where n is an integer and the secret deciphering key is b,m, and $\underline{a}'$, where $\underline{a}'$ is an n dimensional vector with each element $a_i'$ being relatively prime, and where S' is the inverse of the enciphered message S being defined by the enciphering transformation

$$S = \underline{a} * \underline{x}$$

where the message is represented as an n dimensional vector $\underline{x}$ with each element $x_i$ being 0 or 1, and the public enciphering key is represented as the n dimensional vector $\underline{a}$, the elements of $\underline{a}$ being defined by

$$a_i = \log_b a_i' \mod m \quad \text{for } i = 1,2,\ldots n$$

CYL-F 000462

R E M A R K S

Claims 3, 13, 28 and 29 have been rewritten in independent form as Claims 31-34 respectively. The claims include all the limitations of the parent claims and are, therefore, deemed to be allowable.

The allowance of Claims 20-22 and 24-26 is noted.

Claims 1, 9, 10 and 11 have been amended to more clearly define over the art cited. Claim 27 has been cancelled. It is assumed in view of the fact that Claim 30 was not rejected on the basis of art and has been indicated as being pending, that it stands allowed.

Referring now to the amended claims and more particularly Claim 1, it has been amended to clearly set forth that there are provided random numbers from which is generated 1) a public enciphering key made available to the public and 2) a secret deciphering key which is directly related to but computationally infeasible to generate from the public enciphering key. The public key is made generally available to the public and is used by the transmitter in an enciphering transformation such that it is easy to effect but computationally infeasible to invert without the deciphering key. The transmitted message is then received and processed with the related secret deciphering key to decipher the message. Clearly, this is not suggested by the combination of references relied upon by the Examiner. The Diffie and Hellman publications, both June and November, do not show a workable transformation for a public key system having a secret deciphering key that is computationally infeasible to generate from the public enciphering key. As discussed by the reference, matrix inversion has a ratio of "cryptanalytic" time to enciphering or deciphering time of at most n, where n is the dimension of the matrix. Thus, to obtain a ratio of $10^6$ or

-10-

CYL-F 000463

greater (to ensure computational infeasibility) would require n to be greater than or equal to $10^6$. This, however, requires a matrix of such large size as to make such an implementation unworkable. In recognition of this, the reference states that at that time there was no proof that a public key system exists nor a demonstration system. The matrix inversion example suggested in the reference does not meet the claims limitation of a secret deciphering key that is computationally infeasible to generate from the public enciphering key.

It is submitted that the teaching of these articles fails to teach under 35 U.S.C. 102 or 103. The Examiner suggests combining with the teaching of this reference the publication of Evans, Jr. Evans teaches a one-way function that is not easy to invert by anyone. However, Evans does not teach how to construct a function which is computationally infeasible to invert without having at hand a secret cryptographic key.

In applicants' Claim 1, as revised, the steps set forth are clearly not shown in the combination of references. The claim calls for providing random numbers at the receiver, generating from said random numbers both a public enciphering key and a secret deciphering key which is directly related to and computationally infeasible to generate from the public enciphering key. Clearly, this is not suggested by Evans, Jr. nor thought by the cited articles. The remainder of the steps of the claim are clearly not shown in the prior art. They are at most merely suggested as desired by the primary reference. Clearly then, Claim 1 distinguishes over the art cited.

Claim 8 is dependent upon Claim 23 and is deemed patentable for the reasons which will be set forth with respect thereto. Claim 9 is directed to a system for providing digital signatures in which the signature can be validated by comparing the similarity of the message to the representation of the

CYL-F 000464

message generated by the digital signature but in which the digital signature cannot be reproduced without having at hand the secret deciphering key which is only available at the transmitter. Thus, a message which need not be secure, the receipt of which must be authenticated, can be transmitted, the receiver can decipher the message and can also verify or validate that the message has been signed without having the secret deciphering key at hand.  However, he is not able to reproduce the digital signature for any message other than that sent and signed by the transmitter.  Only the sender can produce new digital signatures.

Claim 9 relies upon the same inventive concept as Claim 1 in that there is generated from random numbers at the receiver both a public key which can be communicated insecurely to the receiver and a secret key which is never communicated but retained by the transmitter only to be used at a later date to produce digital signatures, yet the receiver can validate the signature by observing the combination of digital data which is received.

Claim 11 is an apparatus claim and is deemed to clearly define over the references in that it calls for the generation from random information of a public enciphering key and a secret deciphering key which is directly related to and computationally infeasible to generate from the public enciphering key.  The claim calls for the transmitter enciphering the message with the public key by a transformation, a transmitter for transmitting the information and means at the receiver for receiving the enciphered message and employing the deciphering key to decipher and reconstitute the message by inverting.  Clearly, this is not suggested by the prior art in that the prior art does not show means for

-12-

/·/-2

CYL-F 000465

providing a function which is infeasible to generate or reverse without having at hand a deciphering key which is directly related to the public enciphering key only known to the receiver.

Claim 23 is dependent from Claim 1 and deemed to be allowable for the same reason.  Claim 8, dependent on Claim 23, is also deemed to be allowable for the same reasons as set forth with respect to Claim 23.

Claim 27 has been cancelled and Claim 30 is deemed to be allowable since it was not rejected on the basis of prior art.

In view of the foregoing, favorable action is respectfully requested.

Respectfully submitted,

FLEHR, HOHBACH, TEST, ALBRITTON AND HERBERT

By _____
Aldo J. Test, Reg. No. 18,048

Telephone: (415) 781-1989

-13-



RECEIVED

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE  1 8 1979

GROUP 220

In re application of:                    )
MARTIN E. HELLMAN et al                  )
                                         )     Group Art Unit:  222
Serial No.  839,939                      )
                                         )     Examiner:  Howard A. Birmiel
Filed:   October 6, 1977                 )
                                         )     San Francisco, California 94109
For:   PUBLIC KEY CRYPTOGRAPHIC          )
       APPARATUS AND METHOD              )
                                         )     Date: October 4, 1979
                                         )

Commissioner of Patents
  and Trademarks
Washington, D.C. 20231

Sir:

    Transmitted herewith is an amendment in the above-identified application.

    The fee has been calculated as shown below.

## CLAIMS AS AMENDED

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|
| | Claims Remaining After Amendment | | Highest Number Previsouly Paid For | Present Extra | Rate | Additional Fee |
| Total Claims  * | 18 | Minus  ** | 19 | = 0 | x $2 | = |
| Independent Claims * | 16 | Minus  ** | 12 | = 4 | x $10 | = 40.00 |
| | | | **Total Additional Fee For This Amendment** | | | $40.00 |

  * If the entry in column 2 is less than the entry in column 4, write "0" in column 5.

  ** If the "Highest Number Previously Paid For" in this space is less than 10, write "10" in this space.

___    No additional fee is required.

___    Our check No._____ in the amount of $_____ is enclosed.

XXX    Please charge any additional fees or credit over-payment to Deposit Account No. 06-1300 (Order No. A- 34134/AJT ).  A duplicate copy of this sheet is enclosed.

        Respectfully submitted,

        Aldo J. Test   Reg. No. 18,048
        FLEHR, HOHBACH, TEST,
        ALBRITTON & HERBERT
        160 Sansome Street - 15th Floor
        San Francisco, California  94104
        (415) 781-1989

File No.  A-34134/AJT

Form  #1.15
06/79

CYL-F 000467



**U.S. DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:  COMMISSIONER OF PATENTS
AND TRADEMARKS
Washington, D.C. 20231

┌──────────────────────┐
│ Paper No.   13       │

Howard A. Birmiel

022        Oct. 6, 1977      839,939

Martin E. Hellman et al

**NOV 1 3 1979**

PUBLIC KEY CRYPTOGRAPHIC APPARATUS AND METHOD

**GROUP**

Flehr, Hohbach, Test, Albritton and
Herbert
106 Sansome St. 15th Fl.
San Francisco, Calif. 94104

This is a communication from the Examiner in
charge of your application.

Commissioner of Patents
and Trademarks

1.  The communication filed _____ is informal/non-responsive for the reason(s) checked below and should be
    corrected. *APPLICANT IS GIVEN ONE MONTH FROM THE DATE OF THIS LETTER OR UNTIL THE EXPIRATION OF*
    *THE PERIOD FOR RESPONSE SET IN THE LAST OFFICE ACTION (WHICHEVER IS LONGER) WITHIN WHICH TO*
    *CORRECT THE INFORMALITY.*

    ☐ The amendment to claim(s) _____, filed _____, fails to comply with the pro-
      visions of rule 121 and is accordingly held to be non-responsive.  A supplemental paper correcting the informal portions
      and complying with the rule is required.

    ☐ The paper is unsigned.  A duplicate paper or ratification, properly signed, is required.

    ☐ The paper is signed by _____, who is not of record.  A ratification or a new
      power of attorney with a ratification, or a duplicate paper signed by a person of record, is required.

    ☐ The communication is presented on paper which will not provide a permanent copy.  A permanent copy, or a request
      that a permanent copy be made by the Office at applicant's expense, is required.  See M.P.E.P. 714.07.

    ☐ Other

2.  In accordance with applicant's request, *THE PERIOD FOR RESPONSE FROM THE OFFICE ACTION DATED* _____
    _____ *IS EXTENDED TO RUN* _____ *(MONTH(S).*
    No further extension will be granted unless approved by the Commissioner.  Rule 136(a).

    TO FACILITATE PROCESSING
    THROUGH ISSUE-DO NOT FILE
    ADDITIONAL PAPERS UNTIL FORMAL
    NOTICE OF ALLOWANCE (PTOL 85)
    HAS BEEN RECEIVED.

3.  ☐ This application is being forwarded to Abandoned Files Unit in view of:

    a. ☐ The letter of express abandonment which is in compliance with rule 138.

    b. ☐ Applicant's failure to file the response received _____ within the period set.

4.  ☒ All of the claims being allowable, prosecution on the merits is closed in this application and the Notice of Allowance or other
    appropriate communication will be sent in due course, in view of:

    a. ☒ Applicant's communication filed __10/9/79__

    b. ☐ Telephone interview with _____ on _____

    c. ☐ Personal interview with _____ on _____

    d. ☐ An Examiner's Amendment will follow.

    e. ☐ Note attached Notice of References cited, PTO-892.

5.  ☐ Receipt is acknowledged of papers submitted under 35 U.S.C. 119 which papers have been made of record in the file.

6.  ☒ Other PTO 46-106 (Reasons for allowance)

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

CYL-F 000468



OCT.
9
1979

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

Inventor: __MARTIN E. HELLMAN et al__

Serial No. __839,939__

Filed: __October 6, 1977__

Title: __PUBLIC KEY CRYPTOGRAPHIC__

__APPARATUS AND METHOD__

Document Sent: __AMENDMENT__

CERTIFICATE OF MAILING

I hereby certify that a copy of the above identified document is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on __Oct. 4, 1979__ .

FLEHR, HOHBACH, TEST,
ALBRITTON & HERBERT
Attorneys for Applicant(s)

Date: __Oct. 4, 1979__     By _____
                              Aldo J. Test
                           Reg. No. __19,048__

(415) 781-1989

File No. __A-34134/AJT__

Form #1.18
06/79

CYL-F 000469

ATTACHMENT
TO PAPER NO.          13

STATEMENT OF REASONS FOR ALLOWANCE

SERIAL NO.   839,939

The particular limitations of claims 1, 9, 10, and 11 which are relied on as distinguishing over the prior art Evan, Jr. reference are those which recite production of random numbers for generating the public key, which is not directly taught by Evans, Jr.

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

Any comments considered necessary by applicant must be submitted no later than the issue Fee and, to avoid processing delays, should preferably **accompany** the issue Fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

FORM PTO46-106   (3-77)

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

CYL-F 000470

A-34134

IN THE UNITED STATES PATENT & TRADEMARK OFFICE

RECEIVED

NOV 7

In re application of: )

MARTIN E. HELLMAN et al )           Group No. 222   GROUP 220

Serial No. 839,939 )                 Examiner Howard A. Birmiel

Filed:  October 6, 1977 )            Paper No. 13

For:  PUBLIC KEY CRYPTOGRAPHIC )
      APPARATUS AND METHOD )
_____)

                                    San Francisco, California

                                    October 23, 1979


                    SUPPLEMENTAL AMENDMENT


The Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

            This Amendment is supplemental to the Amendment dated

October 4, 1979.  Please make the following changes:

IN THE CLAIMS
Page 3:
Claim 31, line 19     Cancel "ciphered"

Claim 9, line 7       Cancel "receiver"


Page 4:
Claim 10, line 2      Before "digital" insert -- message- --

Page 7:
Claim 33, line 21     After the asterisk (*) cancel "$a_i^*$ " and
second equation
                      substitute therefor -- $a_j^*$ --

                    R E M A R K S

            The above typographical errors were noted when the

Amendment was again reviewed.

                         Respectfully submitted,

                         FLEHR, HOHBACH, TEST,
                         ALBRITTON & HERBERT,
                         Attorneys for Applicant


                         By
                           Aldo J. Test, Reg.No.18,048
                           telephone: 415-781-1989

                    //77                    CYL-F 000471



IEEE TRANSACTIONS ON INFORMATION THEORY, VOL. IT-22, NO. 6, NOVEMBER 1976

# New Directions in Cryptography

*Invited Paper*

WHITFIELD DIFFIE AND MARTIN E. HELLMAN, MEMBER, IEEE

*Abstract*—Two kinds of contemporary developments in cryptography are examined. Widening applications of teleprocessing have given rise to a need for new types of cryptographic systems, which minimize the need for secure key distribution channels and supply the equivalent of a written signature. This paper suggests ways to solve these currently open problems. It also discusses how the theories of communication and computation are beginning to provide the tools to solve cryptographic problems of long standing.

## I. Introduction

**W**E STAND TODAY on the brink of a revolution in cryptography. The development of cheap digital hardware has freed it from the design limitations of mechanical computing and brought the cost of high grade cryptographic devices down to where they can be used in such commercial applications as remote cash dispensers and computer terminals. In turn, such applications create a need for new types of cryptographic systems which minimize the necessity of secure key distribution channels and supply the equivalent of a written signature. At the same time, theoretical developments in information theory and computer science show promise of providing provably secure cryptosystems, changing this ancient art into a science.

The development of computer controlled communication networks promises effortless and inexpensive contact between people or computers on opposite sides of the world, replacing most mail and many excursions with telecommunications. For many applications these contacts must be made secure against both eavesdropping and the injection of illegitimate messages. At present, however, the solution of security problems lags well behind other areas of communications technology. Contemporary cryptography is unable to meet the requirements, in that its use would impose such severe inconveniences on the system users, as to eliminate many of the benefits of teleprocessing.

Manuscript received June 3, 1976. This work was partially supported by the National Science Foundation under NSF Grant ENG 10173. Portions of this work were presented at the IEEE Information Theory Workshop, Lenox, MA, June 23-25, 1975 and the IEEE International Symposium on Information Theory in Ronneby, Sweden, June 21-24, 1976.

W. Diffie is with the Department of Electrical Engineering, Stanford University, Stanford, CA, and the Stanford Artificial Intelligence Laboratory, Stanford, CA 94305.

M. E. Hellman is with the Department of Electrical Engineering, Stanford University, Stanford, CA 94305.

The best known cryptographic problem is that of privacy: preventing the unauthorized extraction of information from communications over an insecure channel. In order to use cryptography to insure privacy, however, it is currently necessary for the communicating parties to share a key which is known to no one else. This is done by sending the key in advance over some secure channel such as private courier or registered mail. A private conversation between two people with no prior acquaintance is a common occurrence in business, however, and it is unrealistic to expect initial business contacts to be postponed long enough for keys to be transmitted by some physical means. The cost and delay imposed by this key distribution problem is a major barrier to the transfer of business communications to large teleprocessing networks.

Section III proposes two approaches to transmitting keying information over public (i.e., insecure) channels without compromising the security of the system. In a *public key cryptosystem* enciphering and deciphering are governed by distinct keys, $E$ and $D$, such that computing $D$ from $E$ is computationally infeasible (e.g., requiring $10^{100}$ instructions). The enciphering key $E$ can thus be publicly disclosed without compromising the deciphering key $D$. Each user of the network can, therefore, place his enciphering key in a public directory. This enables any user of the system to send a message to any other user enciphered in such a way that only the intended receiver is able to decipher it. As such, a public key cryptosystem is a multiple access cipher. A private conversation can therefore be held between any two individuals regardless of whether they have ever communicated before. Each one sends messages to the other enciphered in the receiver's public enciphering key and deciphers the messages he receives using his own secret deciphering key.

We propose some techniques for developing public key cryptosystems, but the problem is still largely open.

*Public key distribution systems* offer a different approach to eliminating the need for a secure key distribution channel. In such a system, two users who wish to exchange a key communicate back and forth until they arrive at a key in common. A third party eavesdropping on this exchange must find it computationally infeasible to compute the key from the information overheard. A possible solution to the public key distribution problem is given in Section III, and Merkle [1] has a partial solution of a different form.

A second problem, amenable to cryptographic solution, which stands in the way of replacing contemporary busi-

Copyright © 1976 by The Institute of Electrical and Electronics Engineers, Inc.
Printed in U.S.A. Annals No. 611IT001

CYL-F 000472

ness communications by teleprocessing systems is authentication. In current business, the validity of contracts is guaranteed by signatures. A signed contract serves as legal evidence of an agreement which the holder can present in court if necessary. The use of signatures, however, requires the transmission and storage of written contracts. In order to have a purely digital replacement for this paper instrument, each user must be able to produce a message whose authenticity can be checked by anyone, but which could not have been produced by anyone else, even the recipient. Since only one person can originate messages but many people can receive messages, this can be viewed as a broadcast cipher. Current electronic authentication techniques cannot meet this need.

Section IV discusses the problem of providing a true, digital, message dependent signature. For reasons brought out there, we refer to this as the one-way authentication problem. Some partial solutions are given, and it is shown how any public key cryptosystem can be transformed into a one-way authentication system.

Section V will consider the interrelation of various cryptographic problems and introduce the even more difficult problem of trap doors.

At the same time that communications and computation have given rise to new cryptographic problems, their offspring, information theory, and the theory of computation have begun to supply tools for the solution of important problems in classical cryptography.

The search for unbreakable codes is one of the oldest themes of cryptographic research, but until this century all proposed systems have ultimately been broken. In the nineteen twenties, however, the "one time pad" was invented, and shown to be unbreakable [2, pp. 398–400]. The theoretical basis underlying this and related systems was put on a firm foundation a quarter century later by information theory [3]. The one time pads require extremely long keys and are therefore prohibitively expensive in most applications.

In contrast, the security of most cryptographic systems resides in the computational difficulty to the cryptanalyst of discovering the plaintext without knowledge of the key. This problem falls within the domains of computational complexity and analysis of algorithms, two recent disciplines which study the difficulty of solving computational problems. Using the results of these theories, it may be possible to extend proofs of security to more useful classes of systems in the foreseeable future. Section VI explores this possibility.

Before proceeding to newer developments, we introduce terminology and define threat environments in the next section.

## II. CONVENTIONAL CRYPTOGRAPHY

Cryptography is the study of "mathematical" systems for solving two kinds of security problems: privacy and authentication. A privacy system prevents the extraction of information by unauthorized parties from messages



Fig. 1.  Flow of information in conventional cryptographic system.

transmitted over a public channel, thus assuring the sender of a message that it is being read only by the intended recipient. An authentication system prevents the unauthorized injection of messages into a public channel, assuring the receiver of a message of the legitimacy of its sender.

A channel is considered public if its security is inadequate for the needs of its users. A channel such as a telephone line may therefore be considered private by some users and public by others. Any channel may be threatened with eavesdropping or injection or both, depending on its use. In telephone communication, the threat of injection is paramount, since the called party cannot determine which phone is calling. Eavesdropping, which requires the use of a wiretap, is technically more difficult and legally hazardous. In radio, by comparison, the situation is reversed. Eavesdropping is passive and involves no legal hazard, while injection exposes the illegitimate transmitter to discovery and prosecution.

Having divided our problems into those of privacy and authentication we will sometimes further subdivide authentication into message authentication, which is the problem defined above, and user authentication, in which the only task of the system is to verify that an individual is who he claims to be. For example, the identity of an individual who presents a credit card must be verified, but there is no message which he wishes to transmit. In spite of this apparent absence of a message in user authentication, the two problems are largely equivalent. In user authentication, there is an implicit message "I AM USER X," while message authentication is just verification of the identity of the party sending the message. Differences in the threat environments and other aspects of these two subproblems, however, sometimes make it convenient to distinguish between them.

Fig. 1 illustrates the flow of information in a conventional cryptographic system used for privacy of communications. There are three parties: a transmitter, a receiver, and an eavesdropper. The transmitter generates a plaintext or unenciphered message $P$ to be communicated over an insecure channel to the legitimate receiver. In order to prevent the eavesdropper from learning $P$, the transmitter operates on $P$ with an invertible transformation $S_K$ to produce the ciphertext or cryptogram $C = S_K(P)$. The key $K$ is transmitted only to the legitimate receiver via a secure channel, indicated by a shielded path in Fig. 1. Since the legitimate receiver knows $K$, he can decipher $C$ by operating with $S_K^{-1}$ to obtain $S_K^{-1}(C) = S_K^{-1}(S_K(P)) = P$, the original plaintext message. The secure channel cannot

CYL-F 000473

be used to transmit $P$ itself for reasons of capacity or delay. For example, the secure channel might be a weekly courier and the insecure channel a tel-phone line.

A *cryptographic system* is a single parameter family $\{S_K\}$ of invertible transformations

$$S_K : \{P\} \to \{C\} \qquad (1)$$

from a space $\{P\}$ of plaintext messages to a space $\{C\}$ of ciphertext messages. The parameter $K$ is called the key and is selected from a finite set $\{K\}$ called the keyspace. If the message spaces $\{P\}$ and $\{C\}$ are equal, we will denote them both by $\{M\}$. When discussing individual cryptographic transformations $S_K$, we will sometimes omit mention of the system and merely refer to the transformation $K$.

The goal in designing the cryptosystem $\{S_K\}$ is to make the enciphering and deciphering operations inexpensive, but to ensure that any successful cryptanalytic operation is too complex to be economical. There are two approaches to this problem. A system which is secure due to the computational cost of cryptanalysis, but which would succumb to an attack with unlimited computation, is called *computationally secure*; while a system which can resist any cryptanalytic attack, no matter how much computation is allowed, is called *unconditionally secure*. Unconditionally secure systems are discussed in [3] and [4] and belong to that portion of information theory, called the Shannon theory, which is concerned with optimal performance obtainable with unlimited computation.

Unconditional security results from the existence of multiple meaningful solutions to a cryptogram. For example, the simple substitution cryptogram *XMD* resulting from English text can represent the plaintext messages: now, and, the, etc. A computationally secure cryptogram, in contrast, contains sufficient information to uniquely determine the plaintext and the key. Its security resides solely in the cost of computing them.

The only unconditionally secure system in common use is the *one time pad*, in which the plaintext is combined with a randomly chosen key of the same length. While such a system is provably secure, the large amount of key required makes it impractical for most applications. Except as otherwise noted, this paper deals with computationally secure systems since these are more generally applicable. When we talk about the need to develop provably secure cryptosystems we exclude those, such as the one time pad, which are unwieldly to use. Rather, we have in mind systems using only a few hundred bits of key and implementable in either a small amount of digital hardware or a few hundred lines of software.

We will call a task *computationally infeasible* if its cost as measured by either the amount of memory used or the runtime is finite but impossibly large.

Much as error correcting codes are divided into convolutional and block codes, cryptographic systems can be divided into two broad classes: *stream ciphers* and *block ciphers*. Stream ciphers process the plaintext in small chunks (bits or characters), usually producing a pseudorandom sequence of bits which is added modulo 2 to the bits of the plaintext. Block ciphers act in a pseudo combinatorial fashion on large blocks of text, in such a way that a small change in the input block produces a major change in the resulting output. This paper deals primarily with block ciphers, because this *error propagation* property is valuable in many authentication applications.

In an authentication system, cryptography is used to guarantee the authenticity of the message to the receiver. Not only must a meddler be prevented from injecting totally new, authentic looking messages into a channel, but he must be prevented from creating apparently authentic messages by combining, or otherwise repeating, old messages which he has copied in the past. A cryptographic system intended to guarantee privacy will not, in general, prevent this latter form of mischief.

To guarantee the authenticity of a message, information is added which is a function not only of the message and a secret key, but of the date and time as well; for example, by attaching the date and time to each message and encrypting the entire sequence. This assures that only someone who possesses the key can generate a message which, when decrypted, will contain the proper date and time. Care must be taken, however, to use a system in which small changes in the ciphertext result in large changes in the deciphered plaintext. This intentional error propagation ensures that if the deliberate injection of noise on the channel changes a message such as "erase file 7" into a different message such as "erase file 8," it will also corrupt the authentication information. The message will then be rejected as inauthentic.

The first step in assessing the adequacy of cryptographic systems is to classify the threats to which they are to be subjected. The following threats may occur to cryptographic systems employed for either privacy or authentication.

A *ciphertext only attack* is a cryptanalytic attack in which the cryptanalyst possesses only ciphertext.

A *known plaintext attack* is a cryptanalytic attack in which the cryptanalyst possesses a substantial quantity of corresponding plaintext and ciphertext.

A *chosen plaintext attack* is a cryptanalytic attack in which the cryptanalyst can submit an unlimited number of plaintext messages of his own choosing and examine the resulting cryptograms.

In all cases it is assumed that the opponent knows the general system $\{S_K\}$ in use since this information can be obtained by studying a cryptographic device. While many users of cryptography attempt to keep their equipment secret, many commercial applications require not only that the general system be public but that it be standard.

A ciphertext only attack occurs frequently in practice. The cryptanalyst uses only knowledge of the statistical properties of the language in use (e.g., in English, the letter e occurs 13 percent of the time) and knowledge of certain "probable" words (e.g., a letter probably begins "Dear Sir:"). It is the weakest threat to which a system can be subjected, and any system which succumbs to it is considered totally insecure.

CYL-F 000474

A system which is secure against a known plaintext attack frees its users from the need to keep their past messages secret, or to paraphrase them prior to declassification. This is an unreasonable burden to place on the system's users, particularly in commercial situations where product announcements or press releases may be sent in encrypted form for later public disclosure. Similar situations in diplomatic correspondence have led to the cracking of many supposedly secure systems. While a known plaintext attack is not always possible, its occurrence is frequent enough that a system which cannot resist it is not considered secure.

A chosen plaintext attack is difficult to achieve in practice, but can be approximated. For example, submitting a proposal to a competitor may result in his enciphering it for transmission to his headquarters. A cipher which is secure against a chosen plaintext attack thus frees its users from concern over whether their opponents can plant messages in their system.

For the purpose of certifying systems as secure, it is appropriate to consider the more formidable cryptanalytic threats as these not only give more realistic models of the working environment of a cryptographic system, but make the assessment of the system's strength easier. Many systems which are difficult to analyze using a ciphertext only attack can be ruled out immediately under known plaintext or chosen plaintext attacks.

As is clear from these definitions, cryptanalysis is a system identification problem. The known plaintext and chosen plaintext attacks correspond to passive and active system identification problems, respectively. Unlike many subjects in which system identification is considered, such as automatic fault diagnosis, the goal in cryptography is to build systems which are difficult, rather than easy, to identify.

The chosen plaintext attack is often called an IFF attack, terminology which descends from its origin in the development of cryptographic "identification friend or foe" systems after World War II. An IFF system enables military radars to distinguish between friendly and enemy planes automatically. The radar sends a time-varying challenge to the airplane which receives the challenge, encrypts it under the appropriate key, and sends it back to the radar. By comparing this response with a correctly encrypted version of the challenge, the radar can recognize a friendly aircraft. While the aircraft are over enemy territory, enemy cryptanalysts can send challenges and examine the encrypted responses in an attempt to determine the authentication key in use, thus mounting a chosen plaintext attack on the system. In practice, this threat is countered by restricting the form of the challenges, which need not be unpredictable, but only nonrepeating.

There are other threats to authentication systems which cannot be treated by conventional cryptography, and which require recourse to the new ideas and techniques introduced in this paper. The *threat of compromise of the receiver's authentication data* is motivated by the situation in multiuser networks where the receiver is often the

system itself. The receiver's password tables and other authentication data are then more vulnerable to theft than those of the transmitter (an individual user). As shown later, some techniques for protecting against this threat also protect against the *threat of dispute*. That is, a message may be sent but later repudiated by either the transmitter or the receiver. Or, it may be alleged by either party that a message was sent when in fact none was. Unforgeable digital signatures and receipts are needed. For example, a dishonest stockbroker might try to cover up unauthorized buying and selling for personal gain by forging orders from clients, or a client might disclaim an order actually authorized by him but which he later sees will cause a loss. We will introduce concepts which allow the receiver to verify the authenticity of a message, but prevent him from generating apparently authentic messages, thereby protecting against both the threat of compromise of the receiver's authentication data and the threat of dispute.

## III. PUBLIC KEY CRYPTOGRAPHY

As shown in Fig. 1, cryptography has been a derivative security measure. Once a secure channel exists along which keys can be transmitted, the security can be extended to other channels of higher bandwidth or smaller delay by encrypting the messages sent on them. The effect has been to limit the use of cryptography to communications among people who have made prior preparation for cryptographic security.

In order to develop large, secure, telecommunications systems, this must be changed. A large number of users $n$ results in an even larger number, $(n^2 - n)/2$ potential pairs who may wish to communicate privately from all others. It is unrealistic to assume either that a pair of users with no prior acquaintance will be able to wait for a key to be sent by some secure physical means, or that keys for all $(n^2 - n)/2$ pairs can be arranged in advance. In another paper [5], the authors have considered a conservative approach requiring no new development in cryptography itself, but this involves diminished security, inconvenience, and restriction of the network to a starlike configuration with respect to initial connection protocol.

We propose that it is possible to develop systems of the type shown in Fig. 2, in which two parties communicating solely over a public channel and using only publicly known techniques can create a secure connection. We examine two approaches to this problem, called public key cryptosys-



Fig. 2   Flow of information in public key system.

CYL-F 000475

tems and public key distribution systems, respectively. The first are more powerful, lending themselves to the solution of the authentication problems treated in the next section, while the second are much closer to realization.

A *public key cryptosystem* is a pair of families $\{E_K\}_{K \in \{K\}}$ and $\{D_K\}_{K \in \{K\}}$ of algorithms representing invertible transformations,

$$E_K : \{M\} \to \{M\} \tag{2}$$

$$D_K : \{M\} \to \{M\} \tag{3}$$

on a finite message space $\{M\}$, such that

1) for every $K \in \{K\}$, $E_K$ is the inverse of $D_K$,

2) for every $K \in \{K\}$ and $M \in \{M\}$, the algorithms $E_K$ and $D_K$ are easy to compute,

3) for almost every $K \in \{K\}$, each easily computed algorithm equivalent to $D_K$ is computationally infeasible to derive from $E_K$,

4) for every $K \in \{K\}$, it is feasible to compute inverse pairs $E_K$ and $D_K$ from $K$.

Because of the third property, a user's enciphering key $E_K$ can be made public without compromising the security of his secret deciphering key $D_K$. The cryptographic system is therefore split into two parts, a family of enciphering transformations and a family of deciphering transformations in such a way that, given a member of one family, it is infeasible to find the corresponding member of the other.

The fourth property guarantees that there is a feasible way of computing corresponding pairs of inverse transformations when no constraint is placed on what either the enciphering or deciphering transformation is to be. In practice, the cryptoequipment must contain a true random number generator (e.g., a noisy diode) for generating $K$, together with an algorithm for generating the $E_K - D_K$ pair from its outputs.

Given a system of this kind, the problem of key distribution is vastly simplified. Each user generates a pair of inverse transformations, $E$ and $D$, at his terminal. The deciphering transformation $D$ must be kept secret, but need never be communicated on any channel. The enciphering key $E$ can be made public by placing it in a public directory along with the user's name and address. Anyone can then encrypt messages and send them to the user, but no one else can decipher messages intended for him. Public key cryptosystems can thus be regarded as *multiple access ciphers*.

It is crucial that the public file of enciphering keys be protected from unauthorized modification. This task is made easier by the public nature of the file. Read protection is unnecessary and, since the file is modified infrequently, elaborate write protection mechanisms can be economically provided.

A suggestive, although unfortunately useless, example of a public key cryptosystem is to encipher the plaintext, represented as a binary n-vector $m$, by multiplying it by an invertible binary $n \times n$ matrix $E$. The cryptogram thus equals $Em$. Letting $D = E^{-1}$ we have $m = Dc$. Thus, both enciphering and deciphering require about $n^2$ operations. Calculation of $D$ from $E$, however, involves a matrix inversion which is a harder problem. And it is at least conceptually simpler to obtain an arbitrary pair of inverse matrices than it is to invert a given matrix. Start with the identity matrix $I$ and do elementary row and column operations to obtain an arbitrary invertible matrix $E$. Then starting with $I$ do the inverses of these same elementary operations in reverse order to obtain $D = E^{-1}$. The sequence of elementary operations could be easily determined from a random bit string.

Unfortunately, matrix inversion takes only about $n^3$ operations. The ratio of "cryptanalytic" time (i.e., computing $D$ from $E$) to enciphering or deciphering time is thus at most $n$, and enormous block sizes would be required to obtain ratios of $10^6$ or greater. Also, it does not appear that knowledge of the elementary operations used to obtain $E$ from $I$ greatly reduces the time for computing $D$. And, since there is no round-off error in binary arithmetic, numerical stability is unimportant in the matrix inversion. In spite of its lack of practical utility, this matrix example is still useful for clarifying the relationships necessary in a public key cryptosystem.

A more practical approach to finding a pair of easily computed inverse algorithms $E$ and $D$; such that $D$ is hard to infer from $E$, makes use of the difficulty of analyzing programs in low level languages. Anyone who has tried to determine what operation is accomplished by someone else's machine language program knows that $E$ itself (i.e., what $E$ does) can be hard to infer from an algorithm for $E$. If the program were to be made purposefully confusing through addition of unneeded variables and statements, then determining an inverse algorithm could be made very difficult. Of course, $E$ must be complicated enough to prevent its identification from input-output pairs.

Essentially what is required is a one-way compiler: one which takes an easily understood program written in a high level language and translates it into an incomprehensible program in some machine language. The compiler is one-way because it must be feasible to do the compilation, but infeasible to reverse the process. Since efficiency in size of program and run time are not crucial in this application, such compilers may be possible if the structure of the machine language can be optimized to assist in the confusion.

Merkle [1] has independently studied the problem of distributing keys over an insecure channel. His approach is different from that of the public key cryptosystems suggested above, and will be termed a *public key distribution system*. The goal is for two users, $A$ and $B$, to securely exchange a key over an insecure channel. This key is then used by both users in a normal cryptosystem for both enciphering and deciphering. Merkle has a solution whose cryptanalytic cost grows as $n^2$ where $n$ is the cost to the legitimate users. Unfortunately the cost to the legitimate users of the system is as much in transmission time as in computation, because Merkle's protocol requires $n$

potential keys to be transmitted before one key can be decided on. Merkle notes that this high transmission overhead prevents the system from being very useful in ▮▮▮▮▮▮▮. If a one megabit limit is placed on the setup ▮▮▮▮▮▮'s overhead, his technique can achieve cost ratios of approximately 10 000 to 1, which are too small for most applications. If inexpensive, high bandwidth data links become available, ratios of a million to one or greater could be achieved and the system would be of substantial practical value.

We now ▮▮▮▮▮ a new public key distribution system which has several advantages. First, it requires only one "key" to be exchanged. Second, the cryptanalytic effort appears to grow exponentially in the effort of the legitimate users. And, third, its use can be tied to a public file of user information which serves to authenticate user A to user B and vice versa. By making the public file essentially a read only memory, one personal appearance allows a user to authenticate his identity many times to many users. Merkle's technique requires A and B to verify each other's identities through other means.

The new technique makes use of the apparent difficulty of computing logarithms over a finite field $GF(q)$ with a prime number $q$ of elements. Let

$$Y = \alpha^X \bmod q, \qquad \text{for } 1 \le X \le q - 1, \qquad (4)$$

where $\alpha$ is a fixed primitive element of $GF(q)$, then $X$ is referred to as the logarithm of $Y$ to the base $\alpha$, mod $q$:

$$X = \log_\alpha Y \bmod q, \qquad \text{for } 1 \le Y \le q - 1. \qquad (5)$$

Calculation of $Y$ from $X$ is easy, taking at most $2 \times \log_2 q$ multiplications [6, pp. 398–422]. For example, for $X = 18$,

$$Y = \alpha^{18} = (((\alpha^2)^2)^2)^2 \times \alpha^2. \qquad (6)$$

Computing $X$ from $Y$, on the other hand can be much more difficult and, for certain carefully chosen values of $q$, requires on the order of $q^{1/2}$ operations, using the best known algorithm [7, pp. 9, 575–576], [8].

The security of our technique depends crucially on the difficulty of computing logarithms mod $q$, and if an algorithm whose complexity grew as $\log q$ were to be found, our system would be broken. While the simplicity of the problem statement might allow such simple algorithms, it might instead allow a proof of the problem's difficulty. For now we assume that the best known algorithm for computing logs mod $q$ is in fact close to optimal and hence that $q^{1/2}$ is a good measure of the problem's complexity, for a properly chosen $q$.

Each user generates an independent random number $X_i$ chosen uniformly from the set of integers $[1,2, \cdots, q - 1]$. Each keeps $X_i$ secret, but places

$$Y_i = \alpha^{X_i} \bmod q \qquad (7)$$

in a public file with his name and address. When users $i$ and $j$ wish to communicate privately, they use

$$K_{ij} = \alpha^{X_i X_j} \bmod q \qquad (8)$$

as their key. User $i$ obtains $K_{ij}$ by obtaining $Y_j$ from the public file and letting

$$K_{ij} = Y_j^{X_i} \bmod q \qquad (9)$$

$$= (\alpha^{X_j})^{X_i} \bmod q \qquad (10)$$

$$= \alpha^{X_j X_i} = \alpha^{X_i X_j} \bmod q. \qquad (11)$$

User $j$ obtains $K_{ij}$ in the similar fashion

$$K_{ij} = Y_i^{X_j} \bmod q. \qquad (12)$$

Another user must compute $K_{ij}$ from $Y_i$ and $Y_j$, for example, by computing

$$K_{ij} = Y_i^{(\log_\alpha Y_j)} \bmod q. \qquad (13)$$

We thus see that if logs mod $q$ are easily computed the system can be broken. While we do not currently have a proof of the converse (i.e., that the system is secure if logs mod $q$ are difficult to compute), neither do we see any way to compute $K_{ij}$ from $Y_i$ and $Y_j$ without first obtaining either $X_i$ or $X_j$.

If $q$ is a prime slightly less than $2^b$, then all quantities are representable as $b$ bit numbers. Exponentiation then takes at most $2b$ multiplications mod $q$, while by hypothesis taking logs requires $q^{1/2} = 2^{b/2}$ operations. The cryptanalytic effort therefore grows exponentially relative to legitimate efforts. If $b = 200$, then at most 400 multiplications are required to compute $Y_i$ from $X_i$, or $K_{ij}$ from $Y_i$ and $X_j$, yet taking logs mod $q$ requires $2^{100}$ or approximately $10^{30}$ operations.

## IV. ONE-WAY AUTHENTICATION

The problem of authentication is perhaps an even more serious barrier to the universal adoption of telecommunications for business transactions than the problem of key distribution. Authentication is at the heart of any system involving contracts and billing. Without it, business cannot function. Current electronic authentication systems cannot meet the need for a purely digital, unforgeable, message dependent signature. They provide protection against third party forgeries, but do not protect against disputes between transmitter and receiver.

In order to develop a system capable of replacing the current written contract with some purely electronic form of communication, we must discover a digital phenomenon with the same properties as a written signature. It must be easy for anyone to recognize the signature as authentic, but impossible for anyone other than the legitimate signer to produce it. We will call any such technique *one-way authentication*. Since any digital signal can be copied precisely, a true digital signature must be recognizable without being known.

Consider the "login" problem in a multiuser computer system. When setting up his account, the user chooses a password which is entered into the system's password directory. Each time he logs in, the user is again asked to provide his password. By keeping this password secret from all other users, forged logins are prevented. This,

CYL-F 000477

however, makes it vital to preserve the security of the password directory since the information it contains would allow perfect impersonation of any user. The problem is further compounded if system operators have legitimate reasons for accessing the directory. Allowing such legitimate accesses, but preventing all others, is next to impossible.

This leads to the apparently impossible requirement for a new login procedure capable of judging the authenticity of passwords without actually knowing them. While appearing to be a logical impossibility, this proposal is easily satisfied. When the user first enters his password $PW$, the computer automatically and transparently computes a function $f(PW)$ and stores this, not $PW$, in the password directory. At each successive login, the computer calculates $f(X)$, where $X$ is the proffered password, and compares $f(X)$ with the stored value $f(PW)$. If and only if they are equal, the user is accepted as being authentic. Since the function $f$ must be calculated once per login, its computation time must be small. A million instructions (costing approximately $0.10 at bicentennial prices) seems to be a reasonable limit on this computation. If we could ensure, however, that calculation of $f^{-1}$ required $10^{30}$ or more instructions, someone who had subverted the system to obtain the password directory could not in practice obtain $PW$ from $f(PW)$, and could thus not perform an unauthorized login. Note that $f(PW)$ is not accepted as a password by the login program since it will automatically compute $f(f(PW))$ which will not match the entry $f(PW)$ in the password directory.

We assume that the function $f$ is public information, so that it is not ignorance of $f$ which makes calculation of $f^{-1}$ difficult. Such functions are called one-way functions and were first employed for use in login procedures by R. M. Needham [9, p. 91]. They are also discussed in two recent papers [10], [11] which suggest interesting approaches to the design of one-way functions.

More precisely, a function $f$ is a *one-way function* if, for any argument $x$ in the domain of $f$, it is easy to compute the corresponding value $f(x)$; yet, for almost all $y$ in the range of $f$, it is computationally infeasible to solve the equation $y = f(x)$ for any suitable argument $x$.

It is important to note that we are defining a function which is not invertible from a computational point of view, but whose noninvertibility is entirely different from that normally encountered in mathematics. A function $f$ is normally called "noninvertible" when the inverse of a point $y$ is not unique, (i.e., there exist distinct points $x_1$ and $x_2$ such that $f(x_1) = y = f(x_2)$). We emphasize that this is not the sort of inversion difficulty that is required. Rather, it must be overwhelmingly difficult, given a value $y$ and knowledge of $f$, to calculate any $x$ whatsoever with the property that $f(x) = y$. Indeed, if $f$ is noninvertible in the usual sense, it may make the task of finding an inverse image easier. In the extreme, if $f(x) = y_0$ for all $x$ in the domain, then the range of $f$ is $\{y_0\}$, and we can take any $x$ as $f^{-1}(y_0)$. It is therefore necessary that $f$ not be too degenerate. A small degree of degeneracy is tolerable and, as discussed later, is probably present in the most promising class of one-way functions.

Polynomials offer an elementary example of one-way functions. It is much harder to find a root $x_0$ of the polynomial equation $p(x) = y$ than it is to evaluate the polynomial $p(x)$ at $x = x_0$. Purdy [11] has suggested the use of sparse polynomials of very high degree over finite fields, which appear to have very high ratios of solution to evaluation time. The theoretical basis for one-way functions is discussed at greater length in Section VI. And, as shown in Section V, one-way functions are easy to devise in practice.

The one-way function login protocol solves only some of the problems arising in a multiuser system. It protects against compromise of the system's authentication data when it is not in use, but still requires the user to send the true password to the system. Protection against eavesdropping must be provided by additional encryption, and protection against the threat of dispute is absent altogether.

A public key cryptosystem can be used to produce a true one-way authentication system as follows. If user $A$ wishes to send a message $M$ to user $B$, he "deciphers" it in his secret deciphering key and sends $D_A(M)$. When user $B$ receives it, he can read it, and be assured of its authenticity by "enciphering" it with user $A$'s public enciphering key $E_A$. $B$ also saves $D_A(M)$ as proof that the message came from $A$. Anyone can check this claim by operating on $D_A(M)$ with the publicly known operation $E_A$ to recover $M$. Since only $A$ could have generated a message with this property, the solution to the one-way authentication problem would follow immediately from the development of public key cryptosystems.

One-way message authentication has a partial solution suggested to the authors by Leslie Lamport of Massachusetts Computer Associates. This technique employs a one-way function $f$ mapping $k$-dimensional binary space into itself for $k$ on the order of 100. If the transmitter wishes to send an $N$ bit message he generates $2N$, randomly chosen, $k$-dimensional binary vectors $x_1, X_1, x_2, X_2, \cdots, x_N, X_N$ which he keeps secret. The receiver is given the corresponding images under $f$, namely $y_1, Y_1, y_2, Y_2, \cdots, y_N, Y_N$. Later, when the message $m = (m_1, m_2, \cdots, m_N)$ is to be sent, the transmitter sends $x_1$ or $X_1$ depending on whether $m_1 = 0$ or 1. He sends $x_2$ or $X_2$ depending on whether $m_2 = 0$ or 1, etc. The receiver operates with $f$ on the first received block and sees whether it yields $y_1$ or $Y_1$ as its image and thus learns whether it was $x_1$ or $X_1$, and whether $m_1 = 0$ or 1. In a similar manner the receiver is able to determine $m_2, m_3, \cdots, m_N$. But the receiver is incapable of forging a change in even one bit of $m$.

This is only a partial solution because of the approximately 100-fold data expansion required. There is, however, a modification which eliminates the expansion problem when $N$ is roughly a megabit or more. Let $g$ be a one-way mapping from binary $N$-space to binary $n$-space where $n$ is approximately 50. Take the $N$ bit message $m$

CYL-F 000478

Case 5:94-cv-20512-SW   Document 121-4   Filed 11/15/95   Page 62 of 90

and operate on it with $g$ to obtain the $n$ bit vector $m'$. Then use the previous scheme to send $m'$. If $N = 10^4$, $n = 50$, and $s = 100$, this adds $kn = 5000$ authentication bits to the message. It thus entails only a 5 percent data expansion during transmission (or 15 percent if the initial exchange of $y_1, y_2, \cdots, y_N, y_N$ is included). Even though there are a large number of other messages ($2^{N-n}$ on the average) with the same authentication sequence, the one-wayness of $g$ makes them computationally infeasible to find and thus to forge. Actually $g$ must be somewhat stronger than a normal one-way function, since an opponent has not only $m'$ but also one of its inverse images $m$. It must be hard even given $m$ to find a different inverse image of $m'$. Finding such functions appears to offer little trouble (see Section V).

There is another partial solution to the one-way user authentication problem. The user generates a password $X$ which he keeps secret. He gives the system $f^T(X)$, where $f$ is a one-way function. At time $t$ the appropriate authenticator is $f^{T-t}(X)$, which can be checked by the system by applying $f^t(X)$. Because of the one-wayness of $f$, past responses are of no value in forging a new response. The problem with this solution is that it can require a fair amount of computation for legitimate login (although many orders of magnitude less than for forgery). If for example $t$ is incremented every second and the system must work for one month on each password then $T = 2.6$ million. Both the user and the system must then iterate $f$ an average of 1.3 million times per login. While not insurmountable, this problem obviously limits use of the technique. The problem could be overcome if a simple method for calculating $f^{(2^n)}(X)$, for $n = 1,2, \cdots$ could be found, much as $X^8 = ((X^2)^2)^2$. For then binary decompositions of $T - t$ and $t$ would allow rapid computation of $f^{T-t}$ and $f^t$. It may be, however, that rapid computation of $f^n$ precludes $f$ from being one-way.

## V. PROBLEM INTERRELATIONS AND TRAP DOORS

In this section, we will show that some of the cryptographic problems presented thus far can be reduced to others, thereby defining a loose ordering according to difficulty. We also introduce the more difficult problem of trap doors.

In Section II we showed that a cryptographic system intended for privacy can also be used to provide authentication against third party forgeries. Such a system can be used to create other cryptographic objects, as well.

*A cryptosystem which is secure against a known plaintext attack can be used to produce a one-way function.*

As indicated in Fig. 3, take the cryptosystem $\{S_K : \{P\} \to \{C\}_K\}$, $K\in\{K\}$ which is secure against a known plaintext attack, fix $P = P_0$ and consider the map

$$f:\{K\} \to \{C\} \qquad (14)$$



Fig. Secure crypto system used as one-way function

defined by

$$f(X) = S_X(P_0). \qquad (15)$$

This function is one-way because solving for $X$ given $f(X)$ is equivalent to the cryptanalytic problem of finding the key from a single known plaintext-cryptogram pair. Public knowledge of $f$ is now equivalent to public knowledge of $\{S_K\}$ and $P_0$.

While the converse of this result is not necessarily true, it is possible for a function originally found in the search for one-way functions to yield a good cryptosystem. This actually happened with the discrete exponential function discussed in Section III [8].

One-way functions are basic to both block ciphers and key generators. A key generator is a pseudorandom bit generator whose output, the keystream, is added modulo 2 to a message represented in binary form, in imitation of a one-time pad. The key is used as a "seed" which determines the pseudorandom keystream sequence. A known plaintext attack thus reduces to the problem of determining the key from the keystream. For the system to be secure, computation of the key from the keystream must be computationally infeasible. While, for the system to be usable, calculation of the keystream from the key must be computationally simple. Thus a good key generator is, almost by definition, a one-way function.

Use of either type of cryptosystem as a one-way function suffers from a minor problem. As noted earlier, if the function $f$ is not uniquely invertible, it is not necessary (or possible) to find the actual value of $X$ used. Rather any $X$ with the same image will suffice. And, while each mapping $S_K$ in a cryptosystem must be bijective, there is no such restriction on the function $f$ from key to cryptogram defined above. Indeed, guaranteeing that a cryptosystem has this property appears quite difficult. In a good cryptosystem the mapping $f$ can be expected to have the characteristics of a randomly chosen mapping (i.e., $f(X_i)$ is chosen uniformly from all possible $Y$, and successive choices are independent). In this case, if $X$ is chosen uniformly and there are an equal number of keys and messages ($X$ and $Y$), then the probability that the resultant $Y$ has $k + 1$ inverses is approximately $e^{-1}/k!$ for $k = 0,1,2,3, \cdots$. This is a Poisson distribution with mean $\lambda = 1$, shifted by 1 unit. The expected number of inverses is thus only 2. While it is possible for $f$ to be more degenerate, a good cryptosystem will not be too degenerate since then the key is not being well used. In the worst case, if $f(X) = Y_0$ for some $Y_0$, we have $S_K(P_0) = C_0$, and encipherment of $P_0$ would not depend on the key at all!

CYL-F 000479

...we are usually interested in functions whose domain and range are of comparable size, there are exceptions. In the previous section we required a one way function mapping long strings onto much shorter ones. By using a block cipher whose key length is larger than the blocksize, such functions can be obtained using the above technique.

Evans et al [10] propose a different approach to the problem of constructing a one-way function from a block cipher. Rather than selecting a fixed $P_0$ as the input, they use the function

$$f(X) = S_X(X). \qquad (16)$$

This is an attractive approach because equations of this form are generally difficult to solve, even when the family $S$ is comparatively simple. This added complexity, however, destroys the equivalence between the security of the system $S$ under a known plaintext attack and the one wayness of $f$.

Another relationship has already been shown in section IV.

*A public key cryptosystem can be used to generate a one-way authentication system.*

The converse does not appear to hold, making the construction of a public key cryptosystem a strictly more difficult problem than one-way authentication. Similarly, a public key cryptosystem can be used as a public key distribution system, but not conversely.

Since in a public key cryptosystem the general system in which $E$ and $D$ are used must be public, specifying $E$ specifies a complete algorithm for transforming input messages into output cryptograms. As such a public key system is really a set of *trap-door one-way functions*. These are functions which are not really one-way in that simply computed inverses exist. But given an algorithm for the forward function it is computationally infeasible to find a simply computed inverse. Only through knowledge of certain *trap-door information* (e.g., the random bit string which produced the $E$–$D$ pair) can one easily find the easily computed inverse.

*Trap doors* have already been seen in the previous paragraph in the form of trap-door one-way functions, but other variations exist. A *trap-door cipher* is one which strongly resists cryptanalysis by anyone not in possession of *trap-door information* used in the design of the cipher. This allows the designer to break the system after he has sold it to a client and yet falsely to maintain his reputation as a builder of secure systems. It is important to note that it is not greater cleverness or knowledge of cryptography which allows the designer to do what others cannot. If he were to lose the trap-door information he would be no better off than anyone else. The situation is precisely analogous to a combination lock. Anyone who knows the combination can do in seconds what even a skilled locksmith would require hours to accomplish. And yet, if he forgets the combination, he has no advantage.

*A trap-door cryptosystem can be used to produce a public key distribution system.*

For $A$ and $B$ to establish a common private key, $A$ chooses a key at random and sends an arbitrary plaintext-cryptogram pair to $B$. $B$, who made the trap-door cipher public, but kept the trap-door information secret, uses the plaintext-cryptogram pair to solve for the key. $A$ and $B$ now have a key in common.

There is currently little evidence for the existence of trap-door ciphers. However they are a distinct possibility and should be remembered when accepting a cryptosystem from a possible opponent [12].

By definition, we will require that a trap-door problem be one in which it is computationally feasible to devise the trap door. This leaves room for yet a third type of entity for which we shall use the prefix "quasi." For example a *quasi one-way function* is not one-way in that an easily computed inverse exists. However, it is computationally infeasible even for the designer, to find the easily computed inverse. Therefore a quasi one-way function can be used in place of a one-way function with essentially no loss in security.

Losing the trap-door information to a trap-door one-way function makes it into a quasi one-way function, but there may also be one-way functions not obtainable in this manner.

It is entirely a matter of definition that quasi one-way functions are excluded from the class of one-way functions. One could instead talk of one-way functions in the wide sense or in the strict sense.

Similarly, a quasi secure cipher is a cipher which will successfully resist cryptanalysis, even by its designer, and yet for which there exists a computationally efficient cryptanalytic algorithm (which is of course computationally infeasible to find). Again, from a practical point of view, there is essentially no difference between a secure cipher and a quasi secure one.

We have already seen that public key cryptosystems imply the existence of trap-door one-way functions. However the converse is not true. For a trap-door one-way function to be usable as a public key cryptosystem, it must be invertible (i.e., have a unique inverse.)

## VI. COMPUTATIONAL COMPLEXITY

Cryptography differs from all other fields of endeavor in the ease with which its requirements may appear to be satisfied. Simple transformations will convert a legible text into an apparently meaningless jumble. The critic, who wishes to claim that meaning might yet be recovered by cryptanalysis, is then faced with an arduous demonstration if he is to prove his point of view correct. Experience has shown, however, that few systems can resist the concerted attack of skillful cryptanalysts, and many supposedly secure systems have subsequently been broken.

In consequence of this, judging the worth of new systems has always been a central concern of cryptographers. During the sixteenth and seventeenth centuries, mathematical arguments were often invoked to argue the strength of cryptographic methods, usually relying on counting methods which showed the astronomical number

CYL-F 000480

...ple keys. Though the problem is far too difficult to ...d to test by such simple methods, even the noted al...ist Cardano fell into this trap [2, p. 145]. As systems ...ose strength had been so argued were repeatedly bro...e, the notion of giving mathematical proofs for the se...rity of cryptosystems fell into disrepute and was replaced by ...ertification via cryptanalytic assault.

During this century, however, the pendulum has begun ...o swing back in the other direction. In a paper intimately ...onnected with the birth of information theory, Shannon [1] showed that the one time pad system, which had been in use since the late twenties offered "perfect secrecy" (a ...orm of unconditional security). The provably secure systems investigated by Shannon rely on the use of either a key whose length grows linearly with the length of the message or on perfect source coding and are therefore too unwieldy for most purposes. We note that neither public key cryptosystems nor one-way authentication systems can be unconditionally secure because the public information always determines the secret information uniquely among the members of $n$ finite set. With unlimited computation, the problem could therefore be solved by a straightforward search.

The past decade has seen the rise of two closely related disciplines devoted to the study of the costs of computation: computational complexity theory and the analysis of algorithms. The former has classified known problems in computing into broad classes by difficulty, while the latter has concentrated on finding better algorithms and studying the resources they consume. After a brief digression into complexity theory, we will examine its application to cryptography, particularly the analysis of one-way functions.

A function is said to belong to the complexity class $P$ (for polynomial) if it can be computed by a deterministic Turing Machine in a time which is bounded above by some polynomial function of the length of its input. One might think of this as the class of easily computed functions, but it is more accurate to say that a function not in this class must be hard to compute for at least some inputs. There are problems which are known not to be in the class $P$ [13, pp. 405-425].

There are many problems which arise in engineering which cannot be solved in polynomial time by any known techniques, unless they are run on a computer with an unlimited degree of parallelism. These problems may or may not belong to the class $P$, but belong to the class $NP$ (for nondeterministic, polynomial) of problems solvable in polynomial time on a "nondeterministic" computer (i.e., one with an unlimited degree of parallelism). Clearly the class $NP$ includes the class $P$, and one of the great open questions in complexity theory is whether the class $NP$ is strictly larger.

Among the problems known to be solvable in $NP$ time, but not known to be solvable in $P$ time, are versions of the traveling salesman problem, the satisfiability problem for propositional calculus, the knapsack problem, the graph coloring problem, and many scheduling and minimization problems [13, pp. 363-404], [14]. We see that it is not lack

of interest or effort which has prevented people from finding solutions in $P$ time for these problems. It is thus ...trongly believed that at least one of these problems must not be in the class $P$, and that therefore the class $NP$ is strictly larger.

Karp has identified a subclass of the $NP$ problems, called $NP$ complete, with the property that if any one of them is in $P$, then all $NP$ problems are in $P$. Karp lists 21 problems which are $NP$ complete, including all of the problems mentioned above [14].

While the $NP$ complete problems show promise for cryptographic use, current understanding of their difficulty includes only worst case analysis. For cryptographic purposes, typical computational costs must be considered. If, however, we replace worst case computation time with average or typical computation time as our complexity measure, the current proofs of the equivalences among the $NP$ complete problems are no longer valid. This suggests several interesting topics for research. The ensemble and typicality concepts familiar to information theorists have an obvious role to play.

We can now identify the position of the general cryptanalytic problem among all computational problems.

*The cryptanalytic difficulty of a system whose encryption and decryption operations can be done in $P$ time cannot be greater than $NP$.*

To see this, observe that any cryptanalytic problem can be solved by finding a key, inverse image, etc., chosen from a finite set. Choose the key nondeterministically and verify in $P$ time that it is the correct one. If there are $M$ possible keys to choose from, an $M$-fold parallelism must be employed. For example in a known plaintext attack, the plaintext is encrypted simultaneously under each of the keys and compared with the cryptogram. Since, by assumption, encryption takes only $P$ time, the cryptanalysis takes only $NP$ time.

We also observe that the general cryptanalytic problem is $NP$ complete. This follows from the breadth of our definition of cryptographic problems. A one-way function with an $NP$ complete inverse will be discussed next.

Cryptography can draw directly from the theory of $NP$ complexity by examining the way in which $NP$ complete problems can be adapted to cryptographic use. In particular, there is an $NP$ complete problem known as the knapsack problem which lends itself readily to the construction of a one-way function.

Let $y = f(x) = a \cdot x$ where $a$ is a known vector of $n$ integers $(a_1, a_2, \cdots, a_n)$ and $x$ is a binary $n$-vector. Calculation of $y$ is simple, involving a sum of at most $n$ integers. The problem of inverting $f$ is known as the knapsack problem and requires finding a subset of the $\{a_i\}$ which sum to $y$.

Exhaustive search of all $2^n$ subsets grows exponentially and is computationally infeasible for $n$ greater than 100, or so. Care must be exercised, however, in selecting the parameters of the problem to ensure that shortcuts are not possible. For example if $n = 100$ and each $a_i$ is 32 bits long, $y$ is at most 39 bits long, and $f$ is highly degenerate; re...

CYL-F 000481

on the average only $2^{n}$ tries to find a solution, and more trivially, if $a_j \cdots$ then inverting $f$ is equivalent to finding the binary decomposition of $x$. This example demonstrates both the great promise and considerable shortcomings of contemporary complexity theory. The theory only tells us that the knapsack problem is probably difficult in the worst case. There is no indication of its difficulty for any particular array. It appears, however, that choosing the $\{a_i\}$ uniformly from $\{1, 2, \ldots, 2^{n-1}\}$ results in a hard problem with probability one as $n \to \infty$.

Another potential one way function, of interest in the analysis of algorithms, is exponentiation mod $q$, which was suggested to the authors by Prof. John Gill of Stanford University. The one-wayness of this function has already been discussed in Section III.

## VII. HISTORICAL PERSPECTIVE

While at first the public key systems and one-way authentication systems suggested in this paper appear to be unportended by past cryptographic developments, it is possible to view them as the natural outgrowth of trends in cryptography stretching back hundreds of years.

Secrecy is at the heart of cryptography. In early cryptography, however, there was a confusion about what was to be kept secret. Cryptosystems such as the Caesar cipher (in which each letter is replaced by the one three places further on, so A is carried to D, B to E, etc.) depended for their security on keeping the entire encryption process secret. After the invention of the telegraph [2, p. 191], the distinction between a general system and a specific key allowed the general system to be compromised, for example by theft of a cryptographic device, without compromising future messages enciphered in new keys. This principle was codified by Kerchoffs [2, p. 235] who wrote in 1881 that the compromise of a cryptographic system should cause no inconvenience to the correspondents. About 1960, cryptosystems were put into service which were deemed strong enough to resist a known plaintext cryptanalytic attack, thereby eliminating the burden of keeping old messages secret. Each of these developments decreased the portion of the system which had to be protected from public knowledge, eliminating such tedious expedients as paraphrasing diplomatic dispatches before they were presented. Public key systems are a natural continuation of this trend toward decreasing secrecy.

Prior to this century, cryptographic systems were limited to calculations which could be carried out by hand or with simple slide-rule-like devices. The period immediately after World War I saw the beginning of a revolutionary trend which is now coming to fruition. Special purpose machines were developed for enciphering. Until the development of general purpose digital hardware, however, cryptography was limited to operations which could be performed with simple electromechanical systems. The development of digital computers has freed it from the limitations of computing with gears and has allowed the search for better encryption methods according to purely cryptographic criteria.

The failure of numerous attempts to demonstrate the soundness of a cryptographic system, by mathematical proof led to the pessimism of certification by cryptanalytic attack, set down by Kerchoffs [2, p. 234] in the last century. Although some general rules have been developed, which aid the designer in avoiding obvious weaknesses, the ultimate test of a system is still the system by skilled crypt analysts under the most favorable conditions (e.g., a chosen plaintext attack). The development of computers has led for the first time to a mathematical theory of algorithms which can begin to approach the difficult problem of estimating the computational difficulty of breaking a cryptographic system. The position of mathematical proof may thus come full circle and be reestablished as the best method of certification.

The last characteristic which we note in the history of cryptography is the division between amateur and professional cryptographers. Skill in production cryptanalysis has always been heavily on the side of the professionals, but innovation, particularly in the design of new types of cryptographic systems, has come primarily from the amateurs. Thomas Jefferson, a cryptographic amateur, invented a system which was still in use in World War II [2, pp. 192–195], while the most noted cryptographic system of the twentieth century, the rotor machine, was invented simultaneously by four separate people, all amateurs [2, pp. 415, 120, 422, 424]. We hope this will inspire others to work in this fascinating area in which participation has been discouraged in the recent past by a nearly total government monopoly.

## REFERENCES

[1] R. Merkle, "Secure communication over an insecure channel," submitted to *Communications of the ACM*.

[2] D. Kahn, *The Codebreakers, The Story of Secret Writing*. New York: Macmillan, 1967.

[3] C. E. Shannon, "Communication theory of secrecy systems," *Bell Syst. Tech. J.*, vol. 28, pp. 656–715, Oct. 1949.

[4] M. E. Hellman, "An extension of the Shannon theory approach to cryptography," submitted to *IEEE Trans. Inform. Theory*, Sept. 1975.

[5] W. Diffie and M. E. Hellman, "Multiuser cryptographic technique," presented at National Computer Conference, New York, June 7-10, 1976.

[6] D. Knuth, *The Art of Computer Programming, Vol. 2, Seminumerical Algorithms*. Reading, MA: Addison-Wesley, 1969.

[7] ———, *The Art of Computer Programming, Vol. 3, Sorting and Searching*. Reading, MA: Addison-Wesley, 1973.

[8] S. Pohlig and M. E. Hellman, "An improved algorithm for computing algorithms in $GF(p)$ and its cryptographic significance," submitted to *IEEE Trans. Inform. Theory*.

[9] M. V. Wilkes, *Time-Sharing Computer Systems*. New York: Elsevier, 1972.

[10] A. Evans, Jr., W. Kantrowitz, and E. Weiss, "A user authentication system not requiring secrecy in the computer," *Communications of the ACM*, vol. 17, pp. 137–142, Aug. 1974.

[11] G. B. Purdy, "A high security log in procedure," *Communications of the ACM*, vol. 17, pp. 442–445, Aug. 1974.

[12] W. Diffie and M. E. Hellman, "Cryptanalysis of the NBS data encryption standard," submitted to *Computer*, May 1976.

[13] A. V. Aho, J. E. Hopcroft, and J. D. Ullman, *The Design and Analysis of Computer Algorithms*. Reading, MA: Addison-Wesley.

[14] R. M. Karp, "Reducibility among combinatorial problems," in *Complexity of Computer Computations*, R. E. Miller and J. W. Thatcher, Ed. New York: Plenum, 1972, pp. 85–104.

CYL-F 000482



# United States Patent [19]

## Hellman et al.

[11]    4,218,582

[45]    Aug. 19, 1980

[54]    PUBLIC KEY CRYPTOGRAPHIC APPARATUS AND METHOD

[75]    Inventors:    Martin E. Hellman, Stanford; Ralph C. Merkle, Palo Alto, both of Calif.

[73]    Assignee:    The Board of Trustees of the Leland Stanford Junior University, Stanford, Calif.

[21]    Appl. No.: 839,939

[22]    Filed:    Oct. 6, 1977

[51]    Int. Cl.$^2$ ...................................... H04L 9/04
[52]    U.S. Cl. ........................ 178/22; 364/900
[58]    Field of Search .............................. 178/22

[56]    References Cited
PUBLICATIONS

"New Directions in Cryptography," Diffie et al., *IEEE Transactions on Information Theory*, vol. IT22, No. 6, Nov. 1976, pp. 644–654.
"A User Authentication Scheme not Requiring Secrecy in the Computer," Evans, Jr., et al., *Communications of the ACM*, Aug. 1974, vol. 17, No. 8, pp. 437–442.
"A High Security Log-In Procedure," Purdy, *Commu-*

nications of the ACM, Aug. 1974, vol. 17, No. 8, pp. 442–445.
Diffie et al., "Multi-User Cryptographic Techniques," *AFIPS Conference Proceedings*, vol. 45, pp. 109–112, Jun. 8, 1976.

*Primary Examiner*—Howard A. Birmiel

[57]    ABSTRACT

A cryptographic system transmits a computationally secure cryptogram that is generated from a publicly known transformation of the message sent by the transmitter; the cryptogram is again transformed by the authorized receiver using a secret reciprocal transformation to reproduce the message sent. The authorized receiver's transformation is known only by the authorized receiver and is used to generate the transmitter's transformation that is made publicly known. The publicly known transformation uses operations that are easily performed but extremely difficult to invert. It is infeasible for an unauthorized receiver to invert the publicly known transformation or duplicate the authorized receiver's secret transformation to obtain the message sent.

17 Claims, 13 Drawing Figures



U.S. Patent   Aug. 19, 1980   Sheet 1 of 7   4,218,582



FIG. 1

CYL-F 000484



CYL-F 000485



**FIG. 4**



**FIG. 5**



**FIG. 6**

CYL-F 000486



FIG. 7



FIG. 8

CYL-F 000487



FIG. 9



FIG. 10

CYL-F 000488

U.S. Patent     Aug. 19, 1980     Sheet 6 of 7     4,218,582



*FIG. 11*

CYL-F 000489



FIG. 12

FIG. 13

CYL-F 000490


1

4,218,582


2

# PUBLIC KEY CRYPTOGRAPHIC APPARATUS AND METHOD

The Government has rights in this invention pursuant to Grant No. ENG-10173 of the National Science Foundation and IPA No. 0005.

## BACKGROUND OF THE INVENTION

1. Field of Invention

The invention relates to cryptographic systems.

2. Description of Prior Art

Cryptographic systems are widely used to ensure the privacy and authenticity of messages communicated over insecure channels. A privacy system prevents the extraction of information by unauthorized parties from messages transmitted over an insecure channel, thus assuring the sender of a message that it is being read only by the intended receiver. An authentication system prevents the unauthorized injection of messages into an insecure channel, assuring the receiver of the message of the legitimacy of its sender.

Currently, most message authentication consists of appending an authenticator pattern, known only to the transmitter and intended receiver, to each message and encrypting the combination. This protects against an eavesdropper being able to forge new, properly authenticated messages unless he has also stolen the cipher key being used. However, there is little protection against the threat of dispute; that is, the transmitter may later deny this action, and falsely blame the receiver for taking unauthorized action. Or, conversely, the receiver may take unauthorized action, forge a message to itself, and falsely blame the transmitter for these actions. The threat of dispute arises out of the absence of a suitable receipt mechanism that could prove a particular message was sent to a receiver by a particular transmitter.

One of the principal difficulties with existing cryptographic systems is the need for the sender and receiver to exchange a cipher key over a secure channel to which the unauthorized party does not have access. The exchange of a cipher key frequently is done by sending the key in advance over a secure channel such as private courier or registered mail; such secure channels are usually slow and expensive.

Diffie, et al, in "Multiuser Cryptographic Techniques," *AFIPS-Conference Proceedings*, Vol. 45, pp. 109-112, June 8, 1976, propose the concept of a public key cryptosystem that would eliminate the need for a secure channel by making the sender's keying information public. It is also proposed how such a public key cryptosystem could allow an authentication system which generates an unforgeable message dependent digital signature. Diffie presents the idea of using a pair of keys E and D, for enciphering and deciphering a message, such that E is public information while D is kept secret by the intended receiver. Further, although D is determined by E, it is infeasible to compute D from E. Diffie suggests the plausibility of designing such a public key cryptosystem that would allow a user to encipher a message and send it to the intended receiver, but only the intended receiver could decipher it. While suggesting the plausibility of designing such systems, Diffie presents neither proof that public key cryptosystems exist, nor a demonstration system.

Diffie suggests three plausibility arguments for the existence of a public key cryptosystem: a matrix approach, a machine language approach and a logic mapping approach. While the matrix approach can be designed with matrices that require a demonstrably infeasible cryptanalytic time (i.e., computing D from E) using known methods, the matrix approach exhibits a lack of practical utility because of the enormous dimensions of the required matrices. The machine language approach and logic mapping approach are also suggested, but there is no way shown to design them in such a manner that they would require demonstrably infeasible cryptanalytic time.

Diffie also introduces a procedure using the proposed public key cryptosystems, that could allow the receiver to easily verify the authenticity of a message, but which prevents him from generating apparently authenticated messages. Diffie describes a protocol to be followed to obtain authentication with the proposed public key cryptosystem. However, the authentication procedure relies on the existence of a public key cryptosystem which Diffie did not provide.

## SUMMARY AND OBJECTS OF THE INVENTION

Accordingly, it is an object of the invention to allow authorized parties to a conversation (conversers) to converse privately even though an unauthorized party (eavesdropper) intercepts all of their communications.

Another object of this invention is to allow a converser on an insecure channel to authenticate another converser's identity.

Another object of this invention is to provide a receipt to a receiver on an insecure channel to prove that a particular message was sent to the receiver by a particular transmitter. The object being to allow the receiver to easily verify the authenticity of a message, but to prevent the receiver from generating apparently authenticated messages.

An illustrated embodiment of the present invention describes a method and apparatus for communicating securely over an insecure channel, by communicating a computationally secure cryptogram that is a publicly known transformation of the message sent by the transmitter. The illustrated embodiment differs from prior approaches to a public key cryptosystem, as described in "Multiuser Cryptographic Techniques," in that it is both practical to implement and is demonstrably infeasible to invert using known methods.

In the present invention, a receiver generates a secret deciphering key and a public enciphering key, such that the secret deciphering key is difficult to generate from the public enciphering key. The transmitter enciphers a message to be communicated by transforming the message with the public enciphering key, wherein the transformation used to encipher the message is easy to effect but difficult to invert without the secret deciphering key. The enciphered message is then communicated from the transmitter to the receiver. The receiver deciphers the enciphered message by inverting the enciphering transformation with the secret deciphering key.

Another illustrated embodiment of the present invention describes a method and apparatus for allowing a transmitter to authenticate an authorized receiver's identity. The authorized receiver generates a secret deciphering key and a public enciphering key, such that the secret deciphering key is difficult to generate from the public enciphering key. The transmitter enciphers a message to be communicated by transforming the message with the public enciphering key, wherein the trans-

CYL-F 000491

4,218,582

3

formation used to encipher the message is easy to effect but difficult to invert without the secret deciphering key. The enciphered message is then transmitted from the transmitter to the receiver. The receiver deciphers the enciphered message by inverting the enciphering transformation with the secret deciphering key. The receiver's identity is authenticated to the transmitter by the receiver's ability to decipher the enciphered message.

Another illustrated embodiment of the present invention describes a method and apparatus for providing a receipt for a communicated message. A transmitter generates a secret key and a public key, such that the secret key is difficult to generate from the public key. The transmitter then generates a receipt by transforming a representation of the communicated message with the secret key, wherein the transformation used to generate the receipt is difficult to effect without the secret key and easy to invert with the public key. The receipt is then communicated from the transmitter to the receiver. The receiver inverts the transformation with the public key to obtain the representation of the communicated message from the receipt and validates the receipt by comparing the similarity of the representation of the communicated message with the communicated message.

Additional objects and features of the present invention will appear from the description that follows wherein the preferred embodiments have been set forth in detail in conjunction with the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram of a public key cryptosystem that transmits a computationally secure cryptogram over an insecure communication channel.

FIG. 2 is a block diagram of an enciphering device for enciphering a message into ciphertext in the public key cryptosystem of FIG. 1.

FIG. 3 is a block diagram of a multiplier for performing modular multiplications in the deciphering device of FIG. 7, the exponentiator of FIG. 10, and the public key generator of FIG. 11.

FIG. 4 is a detailed schematic diagram of an adder for performing additions in the enciphering device of FIG. 2, the multiplier of FIG. 3, and the public key generator of FIG. 11.

FIG. 5 is a detailed schematic diagram of a comparator for performing magnitude comparisons in the enciphering device of FIG. 2, the multiplier of FIG. 3, the deciphering device of FIG. 7, the divider of FIG. 8, and the alternative deciphering device of FIG. 9.

FIG. 6 is a detailed schematic diagram of a subtractor for performing subtraction in the multiplier of FIG. 3, the deciphering device of FIG. 7, and the dividier of FIG. 8.

FIG. 7 is a block diagram of a deciphering device for deciphering a ciphertext into message in the public key cryptosystem of FIG. 1.

FIG. 8 is a block diagram of a divider for performing division in the invertor of FIG. 7 and the alternative deciphering device of FIG. 9.

FIG. 9 is a block diagram of an alternative deciphering device for deciphering a ciphertext into message in the public key cryptosystem of FIG. 1.

FIG. 10 is an exponentiator for raising various numbers to various powers in modulo arithmetic in the

4

alternative deciphering device of FIG. 9 and the public key generator of FIG. 11.

FIG. 11 is a public key generator for generating the public enciphering key in the public key cryptosystem of FIG. 1.

FIG. 12 is a flow chart for the algorithm of the logarithmic converter of FIG. 11 when $p-1$ is a power of 2.

FIG. 13 is a flow chart for the algorithm for computing the coefficients $(b_j)$ of the expansion

$$x \bmod p_i^{n_i} = \sum_{j=0}^{n_i-1} b_j p_i^j$$

where $0 \le b_j \le p_i-1$, of the logarithmic convertor of FIG. 11, when $p-1$ is not a power of 2.

DESCRIPTION OF THE PREFERRED
EMBODIMENT

Referring to FIG. 1, a public key cryptosystem is shown in which all transmissions take place over an insecure communication channel 19, for example a telephone line. Communication is effected on the insecure channel 19 between transmitter 11 and receiver 12 using transmitter-receiver units 31 and 32, which may be modems such as Bell 201 modems. Transmitter 11 possesses an unenciphered or plaintext message X to be communicated to receiver 12. Transmitter 11 and receiver 12 include an enciphering device 15 and deciphering device 16 respectively, for enciphering and deciphering information under the action of an enciphering key E on line E and a reciprocal deciphering key D on line D. The enciphering and deciphering devices 15 and 16 implement inverse transformations when loaded with the corresponding keys E and D. For example, the keys may be a sequence of random letters or digits. The enciphering device 15 enciphers the plaintext message X into an enciphered message or ciphertext S that is transmitted by transmitter 11 through the insecure channel 19; the ciphertext S is received by receiver 12 and deciphered by deciphering device 16 to obtain the plaintext message X. An unauthorized party or eavesdropper 13 is assumed to have key generator 23 and deciphering device 18 and to have access to the insecure channel 19, so if he knew the deciphering key D he could decipher the ciphertext S to obtain the plaintext message X.

The example system makes use of the difficulty of the so-called "knapsack problem." Definitions of the knapsack problem exist in the literature, for example, Ellis Horowitz and Sartaj Sahni, "Computing Partitions with Applications to the Knapsack Problem", JACM, Vol. 21, No. 2, April 1974, pp. 277–292; and O. H. Ibarra and C. E. Kim, "Fast Approximation Algorithms for the Knapsack and Sum of Subset Problems", JACM, Vol. 22, No. 4, October 1975, pp. 464–468. The definition used here is adapted from R. M. Karp, "Reducibility Among Combinatorial Problems" in Complexity of Computer Computations, by R. E. Miller and J. W. Thatcher, eds., Plenum Press, New York (1972), pp. 85–104. Simply stated, given a one-dimensional knapsack of length S and a vector a composed of n rods of lengths $a_1, a_2, \ldots, a_n$, the knapsack problem is to find a subset of the rods which exactly fills the knapsack, if such a subset exists. Equivalently, find a binary n-vector x of 0's and 1's such that $S=a^*x$, if such an x exists, (* applied to vectors denotes dot product, applied to scalars denotes normal multiplication).

CYL-F 000492

5
4,218,582
6

A supposed solution, x, is easily checked in at most n additions but, to the best of current knowledge, finding a solution requires a number of operations which grows exponentially in n. Exhaustive trial and error search over all $2^n$ possible x's is computationally infeasible if n is larger than one or two hundred. Thus, it is computationally infeasible to invert the transformation; such transformations are characterized by the class of mathematical functions known as one-way cipher functions. A task is considered computationally infeasible if its cost as measured by either the amount of memory used or the computing time is finite but impossibly large, for example, on the order of approximately $10^{30}$ operations with existing computational methods and equipment.

Theory suggests the difficulty of the knapsack problem because it is an NP-complete problem, and is therefore one of the most difficult computational problems of a cryptographic nature. (See for example, A. V. Aho, J. E. Hopcraft and J. D. Ullman, *The Design and Analysis of Computer Algorithms*. Reading, Ma.; Addison-Wesley, 1974, pp. 363–404.) Its degree of difficulty, however, is dependent on the choice of a. If $a = (1, 2, 4, \ldots, 2^{(n-1)})$, then solving for x is equivalent to finding the binary representation of S. Somewhat less trivially, if for all i,

$$a_i > \sum_{j=1}^{i-1} a_j \qquad (1)$$

then x is also easily found: $x_n = 1$ if and only if $S \geq a_n$, and, for $i = n - 1, n - 2, \ldots 1, x_i = 1$ if and only if

$$S \geq \sum_{j=i+1}^{n} x_j * a_j \geq a_i \qquad (2)$$

If the components of x are allowed to take on integer values between 0 and 1 then condition (1) can be replaced by

$$a_i > \sum_{j=1}^{i-1} a_j$$

and $x_i$ can be recovered as the integer part of

$$(S - \sum_{j=i+1}^{n} x_j * a_j)/a_i.$$

Equation (2) for evaluating $x_i$ when $x_i$ is binary valued is equivalent to this rule for $1 = 1$.

A trap door knapsack is one in which careful choice of a allows the designer to easily solve for any x, but which prevents anyone else from finding the solution. Two methods will be described for constructing trap door knapsacks, but first a description of their use in a public key cryptosystem as shown in FIG. 1 is provided. Receiver 12 generates a trap door knapsack vector a, and either places it in a public file or transmits it to transmitter 11 over the insecure channel 19. Transmitter 11 represents the plaintext message X as a vector x of n 0's and 1's, computes $S = a * x$, and transmits S to receiver 12 over the insecure channel 19. Receiver 12 can solve S for x, but it is infeasible for eavesdropper 13 to solve S for x.

In one method for generating trap door knapsacks, the key generator 22, uses random numbers generated by key source 26 to select two large integers, m and w, such that w is invertible modulo m, (i.e., so that m and

w have no common factors except 1) For example, the key source 26 may contain a random number generator that is implemented from noisy amplifiers (e.g., Fairchild μ 709 operational amplifiers) with a polarity detector. The key generator 22 is provided a knapsack vector, a' which satisfies (1) and therefore allows solution of $S' = a' * x$, and transforms the easily solved knapsack vector a' into a trap door knapsack vector a via the relation

$$a_i = w * a'_i, \bmod m \qquad (3)$$

The vector a serves as the public enciphering key E on line E, and is either placed in a public file or transmitted over the insecure channel 19 to transmitter 11. The enciphering key E is thereby made available to both the transmitter 11 and the eavesdropper 13. The transmitter 11 uses the enciphering key E, equal to a, to generate the ciphertext S from the plaintext message X, represented by vector x, by letting $S = a * x$. However, because the $a_i$ may be psuedo-randomly distributed, the eavesdropper 13 who knows a, but not w or m, cannot feasibly solve a knapsack problem involving a to obtain the desired message x.

The deciphering device 16 of receiver 12 is given w, m and a' as its secret deciphering key D, and can easily compute

$$S' = 1/w * S \bmod m \qquad (4)$$
$$= 1/w * \Sigma x_i * a_i \bmod m \qquad (5)$$
$$= 1/w * \Sigma x_i * w * a'_i \bmod m \qquad (6)$$
$$= \Sigma x_i * a'_i \bmod m \qquad (7)$$

If m is chosen so that

$$m > \Sigma a'_i \qquad (8)$$

then (7) implies that S' is equal to $\Sigma x_i * a'_i$ in integer arithmetic as well as mod m. This knapsack is easily solved for x, which is also the solution to the more difficult trap door knapsack problem $S = a' * x$. Receiver 12 is therefore able to recover the plaintext message X, represented as the binary vector x. But, the eavesdropper 13's trap door knapsack problem can be made computationally infeasible to solve, thereby preventing the eavesdropper 13 from recovering the plaintext message X.

To help make these ideas more clear, an illustrative example is given in which $n = 5$. Taking $m = 8443$, $a' = (171, 196, 457, 1191, 2410)$, and $w = 2550$, then $a = (5457, 1663, 216, 6013, 7439)$. Given $x = (0, 1, 0, 1, 1)$ the enciphering device 15 computes $S = 1663 + 6013 + 7439 = 15115$. The deciphering device 16 uses Euclid's algorithm (see for instance, D. Knuth, *The Art of Computer Programming*, vol. II, Addison-Wesley, 1969, Reading Ma.) to compute $1/w = 3950$ and then computes

$$S' = 1/w * S \bmod m \qquad (9)$$
$$= 3950 * 15115 \bmod 8443$$
$$= 3797$$

Because $S' > a_5'$, the deciphering device 16 determines that $x_5 = 1$. Then, using (2) for the a' vector, it determines that $x_4 = 1, x_3 = 0, x_2 = 1, x_1 = 0$ or $x = (0, 1, 0, 1, 1)$, which is also the correct solution to $S = a' * x$.

The eavesdropper, 13 who does not know m, w or a' has great difficulty in solving for x in $S = a * x$ even

CYL-F 000493

though he knows the method used for generating the trap door knapsack vector a. His task can be made infeasible by choosing larger values for n, m, w and a. His task can be further complicated by scrambling the order of the a₁ and by adding different random multiples of m to each of the aᵢ

The example given was extremely small in size and only intended to illustrate the technique. Using n = 100 (which is the lower end of the usable range for high security systems at present) as a more reasonable value, it is suggested that m be chosen approximately uniformly from the numbers between $2^{200}$ + 1 and $2^{202}$ − 1; that w′ be chosen uniformly from the range (1, $2^{100}$); that a₁ be chosen uniformly from ($2^{100}$ + 1, $2*2^{100}$); that a₂ be chosen uniformly from ($3 \times 2^{100}$ + 1, $4*2^{100}$), ... and that aᵢ be chosen uniformly from (($2^{i-1}$−1)* $2^{100}$ + 1, $2^{i}$ * $2^{100}$) and then divided by the greatest common divisor of (w′, m) to yield w.

These choices ensure that (R) is met and that an eaves-dropper 13 has at least $2^{100}$ possibilities for each parameter and hence cannot search over them all.

The enciphering device 18 is shown in FIG. 2. The sequence of integers a₁, a₂, ... aₙ is presented sequentially in synchronization with the sequential presentation of P's and 1's of x₁, x₂, ... xₙ. The S register 41 is initially set to zero. If xᵢ = 1 the S register 41 contents are are added by adder 42 and the result placed in the S register 41. If xᵢ = 0 the contents of the S register 41 are left unchanged. In either event, i is replaced by i + 1 until i = n, in which case the enciphering operation is complete. The i register 43 is initially set to zero and incremented by 1 after each cycle of the enciphering device. Either the adder 42, or a special up counter can be used to increment the i register 43 contents. With the range of values suggested above, the S and i registers 41 and 43 both can be obtained from a single 1024 bit random access memory (RAM) such as the Intel 2102. The implementation of the adder 42 will be described in more detail later, as will the implementation of a comparator 44 required for comparing i and n to determine when the enciphering operation is complete.

The key generator 22 comprises a modulo m multiplier, such as that depicted in FIG. 3, for producing aᵢ = x·aᵢ′ mod m. The two numbers w and aᵢ′ to be multiplied are loaded into the W and A′ registers 51 and 52 respectively, and m is loaded into the M register 53. The product w*aᵢ′ modulo m will be produced in the P register 54 which is initially set to zero. If k, the number of bits in the binary representation of m, is 200, then all four registers can be obtained from a single 1024 bit RAM such as the Intel 2102. The implementation of FIG. 3 is based on the fact that wₐ′ mod m = wₐa′ mod m + 2·w₁a₁′ mod m + 4·w₂a₂′ mod m + ... + 2^(k-1) · w'ₖ₋₁ aₖ₋₁' mod m.

To multiply w times aᵢ′, if the rightmost bit, containing w₀ of W register 51 is 1 then the contents of the A′ register 53 are added to the P register 54 by adder 55. If w₀ = 0, then the P register 54 is unchanged. Then the M and P register contents are compared by comparator 56 to determine if the contents of the P register 54 are greater than or equal to m, the contents of the M register 53. If the contents of the P register 54 are greater than or equal to m then subtractor 57 subtracts m from the contents of the P register 54 and places the difference in the P register 54, if less than m the P register 54 is unchanged.

Next, the contents of W register 51 are shifted one bit to the right and a 0 is shifted in at the left so its contents become $0w_{k-1} w_{k-2} ... w_2 w_1$, so that w is ready for computing $2wₐ′$ mod m. The quantity of $2aᵢ′$ mod m is computed for this purpose by using adder 55 to add a′ to itself, using comparator 56 to determine if the result, $2a′$, is less than m, and using subtractor 57 for subtracting m from $2a′$ if the result is not less than m. The result, $2a′$ mod m is then stored in the A′ register 52. The rightmost bit, containing w₁, of the W register 51 is then examined, as before, and the process repeats.

This process is repeated a maximum of k times or until the W register 51 contains all 0's, at which point wₐ′ modulo m is stored in the P register 54.

As an example of these operations, consider the problem of computing 7×7 modulo 23. The following steps show the successive contents of the W, A′ and P registers which result in the answer 7×7 = 3 modulo 23.

| i | W (in binary) | A′ | P |
|---|---|---|---|
| 0 | 00111 | 7 | 0 |
| 1 | 00011 | 14 | 0 + 7 = 7 |
| 2 | 00001 | 5 | 7 + 14 = 21 |
| 3 | 00000 | 10 | 21 + 5 = 3 mod 23 |

FIG. 4 depicts an implementation of an adder 42 or 55 for adding two k bit numbers p and z. The numbers are presented one bit at a time to the device, low order bit first, and the delay element is initially set to 0. (The delay represents the binary carry bit.) The AND gate 61 determines if the carry bit should be a one based on p₁ and z₁ both being 1 and the AND gate 62 determines if the carry should be 1 based on the previous carry being a 1 and one of p₁ or z₁ being 1. If either of these two conditions is met, the OR gate 63 has an output of 1 indicating a carry to the next stage. The two exclusive-or (XOR) gates 64 and 65 determine the iᵗʰ bit of the sum, s₁, as the modulo-2 sum of p₁, z₁ and the carry bit from the previous stage. The delay 66 stores the previous carry bit. Typical parts for implementing a comparator 44 and the delay are SN7400, SN7404, and SN7474.

FIG. 5 depicts an implementation of a comparator 44 or 56 for comparing two numbers p and m. The two numbers are presented one bit at a time, high order bit first. If neither the p < m nor the p > m outputs have been triggered after the last bits pₖ and mₖ have been presented, then p = m. The first triggering of either the p < m or the p > m output causes the comparison operation to cease. The two AND gates 71 and 72 each have one input inverted (denoted by a circle at the input). An SN7400 and SN7404 provide all of the needed logic circuits.

FIG. 6 depicts an implementation of a subtractor 57 for subtracting two numbers. Because the numbers subtracted in FIG. 3 always produce a non-negative difference, there is no need to worry about negative differences. The larger number, the minuend, is labelled p and the smaller number, the subtrahend, is labelled m. Both p and m are presented serially to the subtractor 57, low order bit first. AND gates 81 and 83, OR gate 84 and XOR gate 82 determine if borrowing (negative carrying) is in effect. A borrow occurs if either $p_i = 0$ and $m_i = 1$, or $p_i = m_i$ and borrowing occurred in the previous stage. The delay 85 stores the previous borrow state. The iᵗʰ bit of the difference, d₁, is computed as the XOR, or modulo-2 difference, of p₁, m₁ and the borrow bit. The output of XOR gate 82 gives the modulo-2

CYL-F 000494



9

4,218,582

10

difference between $p_i$ and $m_i$, and XOR gate 86 takes the modulo-2 difference of this with the previous borrow bit. Typical parts for implementing these gates and the delays are SN7430, SN7404 and SN7474.

The deciphering device 16 is depicted in FIG. 7. It is given the ciphertext $S$, and the deciphering key consisting of $n$, $m$, and $a'$, and must compute $x$.

To compute $x$, first, $n$, $w$ and $m$ are input to a modulo $m$ inventor 91 which computes $w^{-1} \bmod m$. It then uses the modulo $m$ multiplier 92 to compute $S' = w^{-1} \cdot S \bmod m$. As noted in equations (7) and (8), $S' = a'^T x$, which is easily solved for $x$. The comparator 93 then compares $S'$ with $a'_n$ and decides that $x_n = 1$ if $S' \geq a_n'$ and that $x_n = 0$ if $S' < a_n'$. If $x_n = 1$, $S'$ is replaced by $S' - a_n'$, computed by the subtractor 94. If $x_n = 0$, $S'$ is unchanged. The process is repeated for $a_{n-1}'$ and $x_{n-1}$ and continues until $x_1$ is computed. The $j$ register 95 is initially set to $n$ and is decremented by 1 after each stage of the deciphering process until $j = 0$ results, causing a halt to the process and signifying $x$ is computed. Either the subtractor 94 or a down counter can be used to decrement the contents of the $j$ register 95. The comparator 96 can be used to compare the contents of the $j$ register 95 with zero to determine when to halt the process. The modulo $m$ multiplier 92 is detailed in FIG. 3; the comparator 93 is detailed in FIG. 5; and, the subtractor 94 is detailed in FIG. 6. The modulo $m$ inventor 91 can be based on a well known extended version of Euclid's algorithm. (See for instance, D. Knuth, *The Art of Computer Programming*, Vol. II, Addison-Wesley, 1969, Reading, Ma., p. 302 and p. 315 problem 15.) As described by Knuth, an implementation requires six registers, a comparator, a divider and a subtractor. All of these devices have already been detailed with the exception of the divider.

FIG. 8 details an apparatus for dividing an integer $u$ by another integer $v$ to compute a quotient $q$ and a remainder $r$, such that $0 \leq r \leq v - 1$. First, $u$ and $v$, represented as binary numbers, are loaded into the U and V registers 101 and 102, respectively. Then $v$, the contents of the V register 102, are shifted to the left until a 1 appears in $v_{k-1}$, the leftmost bit of the V register 102. This process can be effected by using the complement of $v_k - 1$ to drive the shift control on a shift register, such as the Signetics 2533, which was initially set to zero. The contents of the up-down counter 103 equal the number of bits in the quotient less one.

After this initialization, $v$, the contents of the V register 102 are compared with the contents of the U register 101 by the comparator 104. If $v > u$ then $q_k$, the most significant bit of the quotient, is 0 and $u$ is left unchanged. If $v \leq u$ then $q_k = 1$ and $u$ is replaced by $u - v$ as computed by the subtractor 105. In either event, $v$ is shifted to the right one bit and the $v > u$ comparison is repeated to compute $q_{k-1}$, the next bit in the quotient.

This process is repeated, with the up-down counter 103 being decremented by 1 after each iteration until it contains zero. At that point, the quotient is complete and the remainder $r$ is in the U register 101.

As an example, consider dividing 14 by 4 to produce $q = 3$ and $r = 2$ with $k = 4$ being the register size. Because $u = 14 = 1110$ and $v = 4 = 0100$ in binary form, the V register 101 is left shifted only once to produce $v = 1000$. After this initialization, it is found that $v \leq u$ so the first quotient bit $q_1 = 1$, and $u$ is replaced by $u - v$; $v$ is replaced by $v$ right shifted one bit and the up-down counter 103 is decremented to zero. This signals that the last quotient bit, $q_n$, is being computed, and that after the pres-

ent iteration the remainder, $r$, is in the U register. The following sequence of register contents helps in following these operations.

| U | V | counter | $q_i$ |
|------|------|---------|-------|
| 1110 | 1000 | 1 | 1 |
| 0110 | 0100 | 0 | 1 |
| 0010 | | halt | |

It is seen that $q = 11$ in binary form and is equivalent to $q = 3$, and that $r = 0010$ in binary form and is equivalent to $r = 2$.

Another method for generating a trap door knapsack vector $a$ uses the fact that a multiplicative knapsack is easily solved if the vector entries are relatively prime. Given $a' = (6, 11, 35, 43, 169)$ and a partial product $P = 2838$, it is easily determined that $P = 6^*11^*43$ because 6, 11 and 43 evenly divide $P$ but 35 and 169 do not. A multiplicative knapsack is transformed into an additive knapsack by taking logarithms. To make both vectors have reasonable values, the logarithms are taken over GF(m), the Galois (finite) field with $m$ elements, where $m$ is a prime number. It is also possible to use non-prime values of $m$, but the operations are somewhat more difficult.

A small example is again helpful. Taking $n = 4$, $m = 257$, $a' = (2, 3, 5, 7)$ and the base of the logarithms to be $b = 131$ results in $a = (80, 183, 81, 195)$. That is $131^{80} = 2 \bmod 257$; $131^{183} = 3 \bmod 257$; etc. Finding logarithms over GF (m) is relatively easy if $m - 1$ has only small prime factors.

Now, if the deciphering device 16 is given $S = 183 + 81 = 264$, it uses the deciphering key D consisting of $m$, $a'$ and $b$, to compute

$$S' = b^S \bmod m \qquad (10)$$
$$= 131^{264} \bmod 257$$
$$= 15$$
$$= 3 \cdot 5$$
$$= a_2'^1 \cdot a_3'^1 \cdot a_1'^0 \cdot a_4'^0$$

which implies that $x = (0, 1, 1, 0)$. This is because

$$b^S = b^{\sum a_i x_i} \qquad (11)$$
$$= b^{(\sum a_i' x_i)} \qquad (12)$$
$$= \pi a_i'^{x_i} \bmod m \qquad (13)$$

However, it is necessary that

$$\prod_{i=1}^{n} a_i' < m \qquad (14)$$

to ensure that $\pi a_i'^{x_i} \bmod m$ equals $\pi a_i'^{x_i}$ in arithmetic over the integers.

The eavesdropper 13 knows the enciphering key E, comprised of the vector $a$, but does not know the deciphering key D and faces a computationally infeasible problem.

The example given was again small and only intended to illustrate the technique. Taking $n = 100$, if each $a_i'$ is a random, 100 bit prime number, then m would have to be approximately 10,000 bits long to ensure that (14) is met. While a 100:1 data expansion is acceptable in certain applications (e.g., secure key distribution over an insecure channel), it probably is not necessary for an opponent to be so uncertain of the $a_i'$. It is even possible to use the first n primes for the $a_i'$, in which case m

**11**

could be as small as 730 bits long when $n=100$ and still meet condition (14). As a result, there is a possible tradeoff between security and data expansion.

In this embodiment, the enciphering device 15 is of the same form as detailed in FIG. 2 and described above. The deciphering device 16 of the second embodiment is detailed in FIG. 9. The ciphertext S and part of the deciphering key D, namely b and m, are used by the exponentiator 111 to compute $P=b^S \bmod m$. As noted in equations (12) to (14) and in the example, P is a partial product of the $\{a_i\}$, also part of the deciphering key D. The divider 112 divides P by $a_i'$ for $i=1, 2, \ldots$ n and delivers only the remainder $r_n$ to the comparator 113. If $r_i = 0$ then $a_i'$ evenly divides P and $x_i=1$. If $r_i \neq 0$ then $x_i=0$. The divider 112 may be implemented as detailed in FIG. 8 and described above. The comparator 113 may be implemented as detailed in FIG. 5 and described above; although, more efficient devices exist for comparing with zero.

The exponentiator 111, for raising b to the S power modulo m, can be implemented in electronic circuitry as shown in FIG. 10. FIG. 10 shows the initial contents of three registers 121, 122 and 123. The binary representation of S ($s_{k-1}s_{k-2} \ldots s_1s_0$) is loaded into the S register 121; 1 is loaded into the R register 122; and the binary representation of b is loaded into the B register 123, corresponding to $i=0$. The number of bits k in each register is the least integer such that $2^k \geq m$. If $k=200$, then all three registers can be obtained from a single 1024 bit random access memory (RAM) such as the Intel 2102. The implementation of multiplier 124, for multiplying two numbers modulo m, has been described in detail in FIG. 3.

Referring to FIG. 10, if the low order bit, containing $s_0$, of the S register 121 equals 1 then the R register 122 and the B register 123 contents are multiplied modulo m and their product, also a k bit quantity, replaces the contents of the R register 122. If $s_0=0$, the R register 122 contents are left unchanged. In either case, the B register 123 is then loaded twice into the multiplier 124 so that the square, modulo m, of the B register 123 contents is computed. This valve, $b^{(2i+1)}$, replaces the contents of the B register 123. The S register 121 contents are shifted one bit to the right and a 0 is shifted in at the left so its contents are now $00s_{k-1} \ldots s_2s_1$.

The low order bit, containing $s_1$, of the S register 121 is examined. If it equals 1 then, as before, the R register 122 and B register 123 contents are multiplied modulo m and their product replaces the contents of the R register 122. If the low order bit equals 0 then the R register 122 contents are left unchanged. In either case, the contents of the B register 123 are replaced by the square, modulo m, of the previous contents. The S register 121 contents are shifted one bit to the right and a 0 is shifted in at the left so its contents are now $000s_{k-1} \ldots s_3s_2 \ldots s_1s_2$.

This process continues until the S register 121 contains all 0's, at which point the value of $b^S$ modulo m is stored in the R register 122.

An example is helpful in following this process. Taking $m=23$, we find $k=5$ from $2^k \geq m$. If $b=7$ and $S=18$ then

$b^S = 7^{18} = 1628413597910449 = 23(70800591213497) + 18$

so $b^S$ modulo m equals 18. This straightforward but laborious method of computing $b^S$ modulo m is used as a check to show that the method of FIG. 10, shown below, yields the correct result. The R register 122 and

**12**

B register 123 contents are shown in decimal form to facilitate understanding.

| $i$ | S (in binary) | R | B |
|---|---|---|---|
| 0 | 10010 | 1 | 7 |
| 1 | 01001 | 1 | 3 |
| 2 | 00100 | 3 | 9 |
| 3 | 00010 | 3 | 12 |
| 4 | 00001 | 3 | 6 |
| 5 | 00000 | 18 | 13 |

The row marked $i=0$ corresponds to the initial contents of each register, $S=18$, $R=1$ and $B=7$. Then, as described above, because the right most bit of S register 121 is 0, the R register 122 contents are left unchanged, the contents of the B register 123 are replaced by the square, modulo 23, of its previous contents ($7^2=49=2\times23+3=3$ modulo 23), the contents of the S register 121 are shifted one bit to the right, and the process continues. Only when $i=1$ and 4 do the rightmost bit of the S register 121 contents equal 1, so only going from $i=1$ to 2 and from $i=4$ to 5 is the R register 122 replaced by RB modulo m. When $i=5$, $S=0$ so the process is complete and the result, 18, is in the R register 122.

Note that the same result, 18, is obtained here as in the straightforward calculation of $7^{18}$ modulo 23, but that here large numbers never resulted.

Another way to understand the process is to note that the B register 123 contains b, $b^2$, $b^4$, $b^8$ and $b^{16}$ when $i=0, 1, 2, 3$ and 4 respectively, and that $b^{18}=b^{16}b^2$, so only these two values need to be multiplied.

The key generator 22 used in the second embodiment is detailed in FIG. 11. A table of n small prime numbers, $p_i$, is created and stored in source 131, which may be a read only memory such as the Intel 2316E. The key source 26, as described above, generates random numbers, $e_i$. The small prime numbers from the source 131 are each raised to a different power, represented by a random number $e_i$ from key source 26, by the exponentiator 132 to generate $p_i^{e_i}$ for $i=1$ to n. The multiplier 133 then computes the product of all the $p_i^{e_i}$ which may be represented as

$$\prod_{i=1}^{n} p_i^{e_i}.$$

The product of all the

$$\frac{e_i}{p_i} = \frac{\prod_{i=1}^{n} e_i}{p_i}$$

then is incremented by one by adder 134 to generate the potential value of m. If it is desired that m be prime, the potential value of m may be tested for primeness by prime tester 135.

Prime testers for testing a number m for primeness when the factorization of $m-1$ is known

$$\left(\text{as here, } m-1 = \prod_{i=1}^{n} p_i^{e_i}\right).$$

are well documented in the literature. (See for instance, D. Knuth, *The Art of Computer Programming*, vol. II, Seminumerical Algorithms, pp. 347–48.) As described in the above reference, the prime tester 135 requires only a means for exponentiating various numbers to

4,218,582

**13**



**14**

various powers modulo $m$, as described in FIG. 10. When a potential value of $m$ is found to be prime, it is output by the public key generator of FIG. 11 as the variable $m$. The $a'$ vector's elements, $a_i'$, can then be chosen to be the $n$ small prime numbers, $p_i$, from source 131

The base, $b$, of the logarithms is then selected as a random number by the key source 26.

The elements of the vector $a$ are computed by the logarithmic convertor 136 as the logarithms, to the base $b$, of the elements of the $a'$ vector over GF($m$). The operation and structure of a logarithmic convertor 136 is described below.

It is well known that if $p$ is prime then

$$z^{p-1} = 1 \pmod{p}, \ 1 \le z \le p-1 \tag{15}$$

Consequently arithmetic in the exponent is done modulo $p-1$, not modulo $p$. That is

$$z^i = z^{i \pmod{p-1}} \pmod{p} \tag{16}$$

for all integers $x$.

The algorithm for computing logarithms mod $p$ is best understood by first considering the special case $p = 2^n + 1$. We are given $\alpha$, $p$ and $y$, with $\alpha$ a primitive element of GF($p$), and must find $x$ such that $y = \alpha^x \pmod{p}$. We can assume $0 \le x \le p-2$, since $x = p-1$ is indistinguishable from $x = 0$.

When $p = 2^n + 1$, $x$ is easily determined by finding the binary expansion $\{b_0, \ldots, b_{n-1}\}$ of $x$, The least significant bit, $b_0$, of $x$ is determined by raising $y$ to the $(p-1)/2 = 2^{n-1}$ power and applying the rule

$$y^{(p-1)/2} \pmod{p} = \begin{cases} +1, \ b_0 = 0 \\ -1, \ b_0 = 1. \end{cases} \tag{17}$$

This fact is established by noting that since $\alpha$ is primitive

$$\alpha^{(p-1)/2} = -1 \pmod{p}, \tag{18}$$

and therefore

$$y^{(p-1)/2} = \alpha^{x(p-1)/2} = (-1)^x \pmod{p}. \tag{19}$$

The next bit in the expansion of $x$ is then determined by letting

$$z = y\alpha^{-b_0} = \alpha^{x_1} \pmod{p} \tag{20}$$

where

$$x_1 = \sum_{i=1}^{n-1} b_i 2^i \tag{21}$$

Clearly $x_1$ is a multiple of 4 if and only if $b_1 = 0$. If $b_1 = 1$ then $x_1$ is divisible by 2, but not by 4. Reasoning as before,

$$z^{(p-1)/4} \pmod{p} = \begin{cases} +1, \ b_1 = 0 \\ -1, \ b_1 = 1. \end{cases} \tag{22}$$

The remaining bits of $x$ are determined in a similar manner. This algorithm is summarized in the flow chart of FIG. 12.

To aid in understanding this flowchart, note that at the start of the $i^{th}$ loop,

$$m = (p-1)/2^{i+1} \tag{23}$$

and

$$z = \alpha^{x_i} \pmod{p} \tag{24}$$

where

$$x_i = \sum_{j=i}^{n-1} b_j 2^j \tag{25}$$

Thus raising $z$ to the $m^{th}$ power gives

$$z^m = \alpha^{x_i m} = \alpha^{[(p-1)/2] \cdot (x_i/2i)} \tag{26}$$
$$= (-1)^{x_i/2i} = (-1)^{b_i} \pmod{p}.$$

so that $z^m = 1 \pmod{p}$ if and only if $b_i = 0$, and $z^m = -1 \pmod{p}$ if and only if $b_i = 1$.

As an example, consider $p = 17 = 2^4 + 1$. Then $\alpha = 3$ is primitive ($\alpha = 2$ is not primitive because $2^8 = 256 = 1$, mod 17). Given $y = 10$ the algorithm computes $x$ as follows (note that $\beta = x^{-1} = 6$ since $3 \times 6 = 18 = 1$, mod 17):

| i | z | β | m | W | $b_i$ |
|---|----|----|---|----|----|
| 0 | 10 | 6  | 8 | 16 | 1  |
| 1 | 9  | 2  | 4 | 16 | 1  |
| 2 | 1  | 4  | 2 | 1  | 0  |
| 3 | 1  | 16 | 1 | 1  | 0  |
| 4 | 1  |    |   | 1  |    |

It thus finds that $x = 2^0 + 2^1 = 3$. This is correct because $\alpha^3 = 3^3 = 27 = 10 \pmod{17}$.

We now generalize this algorithm to arbitrary primes $p$. Let

$$p - 1 = p_1^{n_1} p_2^{n_2} \cdots p_k^{n_k}, \ p_i < p_{i+1} \tag{27}$$

be the prime factorization of $p-1$, where the $p_i$ are distinct primes, and the $n_i$ are positive integers. The value of $x \pmod{p_i^{n_i}}$ will be determined for $i = 1, \ldots, k$ and the results combined via the Chinese remainder theorem to obtain

$$x \pmod{\prod_{i=1}^k p_i^{n_i}} = x \pmod{p-1} \tag{28}$$

since $0 \le x \le p-2$. The Chinese remainder theorem can be implemented in $O(k \log_2 p)$ operations and $O(k \log_2 p)$ bits of memory. (We count a multiplication mod $p$ as one operation.)

Consider the following expansion of $x \pmod{p_i^{n_i}}$.

$$x \pmod{p_i^{n_i}} = \sum_{j=0}^{n_i-1} b_j p_i^j \tag{29}$$

where $0 \le b_j \le p_i - 1$.

The least significant coefficient, $b_0$, is determined by raising $y$ to the $(p-1)/p_i$ power,

$$y^{(p-1)/p_i} = \alpha^{x(p-1)/p_i} = \gamma_i^x = (\gamma_i)^{b_0} \pmod{p}. \tag{30}$$

where

CYL-F 000497

4,218,582

15

$$\eta \cdot y_i = \alpha^{i+1} \quad p_i \pmod{p} \tag{31}$$

is a primitive $p_i^{th}$ root of unity. There are therefore only $p_i$ possible values for $y_i^{(n-1)/p_i} \pmod{p}$, and the resultant value uniquely determines $b_0$.

The next digit, $b_1$, in the base $p_i$ expansion of $x \pmod{p_i^{e_i}}$ is determined by letting

$$z = x \cdot \alpha^{-b_0} \pmod{p_i} \tag{32}$$

where

$$z = \sum_{i=1}^{n} b_i p_i \tag{33}$$

Now, raising $z$ to the $(p-1)/p_i^2$ power yields

$$z^{(p-1)/p_i^2} = \alpha^{(p-1)b_1/p_i} = y_i^{(n-1)/p_i} b_1 \pmod{p} \tag{34}$$

Again, there are only $p_i$ possible values of $z^{(p-1)/p_i^2}$ and the value determines $b_1$. This process is continued to determine all the coefficients, $b_j$.

The flow chart of FIG. 13 summarizes the algorithm for computing the coefficients ($b_j$) of the expansion (29). This algorithm is used k times to compute $x \pmod{p_i^{e_i}}$ for $i = 1, 2, \ldots, k$, and these results are combined by the Chinese remainder theorem to obtain $x$. The function $g_i(w)$ in FIG. 13 is defined by

$$w^{g_i(w)} \equiv \alpha^{(n-1)w/p_i} \pmod{p}, \ g_i(w) \leq p_i - 1, \tag{35}$$

where $y_i$ is defined in (31).

If all prime factors, $\{p_i\}_{i=1}^k$, of $p-1$ are small then the $g_i(w)$ functions are easily implemented as tables, and computing a logarithm over GF(p) requires $0(\log_2 p)^2$ operations and only minimal memory for the $g_i(w)$ tables. The dominant computational requirement is computing $w = z^n$, which requires $0(\log_2 p)$ operations. This loop is traversed

$$\sum_{i=1}^{k} e_i$$

times, and if all $p_i$ are small,

$$\sum_{i=1}^{k} e_i$$

is approximately $\log_2 p_i$. Thus when $p-1$ has only small prime factors it is possible to compute logarithms over GF(p) easily.

As an example, consider $p = 19$, $\alpha = 2$, $\gamma = 10$. Then $p - 1 = 2 \cdot 3^2$ and $p_1 = 2$, $n_1 = 1$, $p_2 = 3$ and $n_2 = 2$. The computation of $x \pmod{p_1^{n_1}} = x \pmod 2$ involves computing $\gamma^{(p-1)/p_1} = \alpha^9 = 512 \equiv 18 \pmod{19}$ so $b_1 = 1$ and $x \pmod 2) = 2^0 = 1$ (i.e., $x$ is odd). Next the flow chart of FIG. 13 is re-executed for $p_2 = 3$ $n_2 = 2$ as follows ($\beta = 10$ because $2 \times 10 = 20 \equiv 1$, mod 19; further $\gamma_2 = \alpha^6 = 7$ and $7^0 = 1$, $7^1 = 7$, and $7^2 = 11 \pmod{19}$ so $g_2(1) = 0$, $g_2(7) = 1$ and $g_2(11) = 2$):

| Z | B | n | J | W | $b_j$ |
|---|---|---|---|---|---|
| 10 | 10 | 6 | 0 | 11 | 2 |
| 13 | 12 | 2 | 1 | 11 | 2 |
| 18 | 18 | 8 | 2 | | |

16

so that $x \pmod{p_2^{n_2}} = x \pmod 9) = 2 \cdot 3^0 + 2 \cdot 3^1 = 8$.

Knowing that $x \pmod 2) = 1$ and that $x \pmod 9) = 8$ implies that $x \pmod{18} = 17$. (Either the Chinese Remainder Theorem can be used, or it can be realized that $x = 8$ or $x = 8 + 9 = 17$ and only 17 is odd.) As a check we find that $2^{17} = 131,072 \equiv 10 \pmod{19}$, so that $v = \alpha^x \pmod{p}$.

It is seen that the logarithmic convertor requires a mod p inverter (for computing $\beta = \alpha^{-1} \pmod{p}$). As already noted, this can be obtained using the extended form of Euclid's algorithm, which requires the use of the divider of FIG. 8, the multiplier of FIG. 3, and the subtractor of FIG. 7. The logarithmic convertor also requires the divider of FIG. 8 (for computing successive values of n), the adder of FIG. 4 (for incrementing j), the modulo p exponentiator of FIG. 10 (for computing W and $\beta^{b_0}$ and for precomputing the $g_i(W)$ table), the modulo p multiplier of FIG. 3 (for computing successive values of Z), and the comparator of FIG. 5 (for determining when $j = N_i$). The logarithmic convertor's use of the Chinese remainder theorem requires only devices which have already been described (the multiplier of FIG. 3 and a modulo m inverter).

In the first method of generating a trap door knapsack vector, a very difficult knapsack problem involving a vector a was transformed into a very simple and easily solved knapsack problem involving a', by means of the transformation:

$$a_i' = 1/w^* a_i \bmod m \tag{36}$$

A knapsack involving a could be solved because it was transformable into another knapsack involving a' that was solvable. Notice, though, that is does not matter why knapsacks involving a' are solvable. Thus, rather than requiring that a' satisfy (1), it could be required that a' be transformable into another knapsack problem involving a'', by the transformation:

$$a_i'' = 1/w^* a_i' \bmod m' \tag{37}$$

where a'' satisfies (1), or is otherwise easy to solve. Having done the transformation twice, there is no problem in doing this a third time; in fact, it is clear that this process may be iterated as often as desired.

With each successive transformation, the structure in the publicly known vector, a, becomes more and more obscure. In essence, we are encrypting the simple knapsack problem by the repeated application of a transformation which preserves the basic structure of the problem. The final result a appears to be a collection of random numbers. The fact that the problem can be easily solved has been totally obscured.

The original, easy to solve knapsack vector can meet any condition, such as (1) which guarantees that it is easy to solve. For example it could be a multiplicative trap door knapsack. In this way is it possible to combine both of the trap door knapsack methods into a single method, which is presumably harder to break.

It is important to consider the rate of growth of a, because this rate determines the data expansion involved in transmitting the n dimensional vector x as the larger quantity S. The rate of growth depends on the method of selecting the numbers, but in a "reasonable" implementation, with $n = 100$, each $a_i$ will be at most 7 bits larger than the corresponding $a_i'$, each $a_i'$, will be at most 7 bits larger than $a_i''$, etc., etc. Each successive stage of the transformation will increase the size of the

CYL-F 000498

17

4,218,582

18

problem by only a small, fixed amount. If we repeat the transformation 20 times, this will add at most 140 bits to each $x_i$. If each $a_i$ is 200 bits long to begin with, then they need only be 340 bits long after 20 stages. The knapsack vector, for $n = 100$, will then be at most 34 kilobits in size.

Usual digital authenticators protect against third party forgeries, but cannot be used to settle disputes between the transmitter 11 and receiver 12 as to what message, if any, was sent. A true digital signature is also called a receipt because it allows the receiver 12 to prove that a particular message M was sent to it by the transmitter 11. Trap door knapsacks can be used to generate such receipts in the following manner.

If every message M in some large fixed range had an inverse image $x$, then it could be used to provide receipts. Transmitter 11 creates knapsack vectors $b$ and $b'$ such that $b'$ is a secret key, such as an easily solved knapsack vector, and that $b$ is a public key, such as is obtained via the relation

$$b_i = w^* b'_i \bmod m \qquad (38)$$

Vector $b$ is then either placed in a public file or transmitted to receiver 12. When transmitter 11 wants to provide a receipt for message M, transmitter 11 would compute and transmit $x$ such that $b^*x = M$. Transmitter 11 creates $x$ for the desired message M by solving the easily solved knapsack problem.

$$M = 1/w^* M \bmod m \qquad (39)$$
$$= 1/w^* \Sigma x_i^* b_i \bmod m \qquad (40)$$
$$= 1/w^* \Sigma x_i^* w^* b'_i \bmod m \qquad (41)$$
$$= \Sigma x_i^* b'_i \bmod m \qquad (42)$$

The receiver 12 could easily compute M from $x$ and, by checking a date/time field (or some other redundancy in M), determine that the message M was authentic. Because the receiver 12 could not generate such an $x$, since it requires $b'$ which only the transmitter 11 possesses, the receiver 12 saves $x$ as proof that transmitter 11 sent message M.

This method of generating receipts can be modified to work when the density of solutions (the fraction of messages M between 0 and $\Sigma b_i$ which have solutions to $b^*x = M$) is less than 1, provided it is not too small. The message M is sent in plaintext form, or encrypted as described above if eavesdropping is a concern, and a sequence of related oneway functions $y_1 = F_1(M)$, $y_2 = F_2(M)$, ... are computed. The transmitter 11 then tries to obtain an inverse image, $x$, for $y_1$, $y_2$, ... until one is found and appends the corresponding $x$ to M as a receipt. The receiver 12 computes $M' = b^*x$ and checks that $M' = y_i$ where $i$ is within some acceptable range.

The sequence of one-way functions can be as simple as:

$$F_i(M) = F_i(M) + i \qquad (43)$$

or

$$F_i(M) = F(M + i) \qquad (44)$$

where $F(*)$ is a one-way function. It is necessary that the range of $F(*)$ have at least $2^{100}$ values to foil trial and error attempts at forgery.

It is also possible to combine the message and receipt as a single message-receipt datum. If the acceptable range for $i$ is between 0 and $2^J - 1$ and the message is J

bits long then a single message, $J + 1$ bits long, can represent both the message and $i$. The transmitter 11 checks for a solution to $b^*x = S$ for each of the $2^i$ values of S which result when, for example, the first J bits of S are set equal to the message and the last $i$ bits of S are unconstrained. The first such solution $x$ is conveyed to the receiver 12 as the message-receipt. Receiver 12 recovers S by computing the dot product of the public key $b$ and the message-receipt combination $x$, and retaining the first J bits of S thus obtained. The authenticity of the message is validated by the presence of appropriate redundancy in the message, either natural redundancy if the message is expressed in a natural language such as English, or artificial redundancy such as the addition of a date-time field in the message.

Redundancy is used here in the sense of information theory [Claude E. Shannon, "The Mathematical Theory of Communication", Bell System Technical Journal, Vol. 27, p. 379 and p. 623, 1948] and complexity theory [Gregory J. Chaitin "On the Length of Programs for Computing Finite Binary Sequences", Journal of the Association for Computing Machinery, Vol. 13, p. 547, 1966] to measure the structure (deviation from complete randomness and unpredictability) in a message. A source of messages possesses no redundancy only if all characters occur with equal probability. If it is possible to guess the characters of the message with a better than random success rate, the source possesses redundancy and the rate at which a hypothetical gambler can make his fortune grow is the quantitative measure of redundancy. [Thomas M. Cover and Roger C. King, "A Convergent Gambling Estimate of the Entropy of English", Technical Report #22, Statistics Department, Stanford University, Nov. 1, 1976]. Humans can easily validate the message by performing a redundancy check (e.g., determine if the message is grammatically correct English). By simulating the gambling situation, it is possible for a machine to validate whether or not a message possesses the redundancy appropriate to its claimed source.

There are many methods for implementing this form of the invention. Part of the deciphering key D could be public knowledge rather than secret, provided the part of D which is withheld prevents the eavesdropper 13 from recovering the plaintext message X.

Variations on the above described embodiment are possible. For example, in some applications, it will prove valuable to have the $i^{th}$ receiver of the system generate a trap door knapsack vector $a^{(i)}$ as above, and place the vector or an abbreviated representation of the vector in a public file or directory. Then, a transmitter who wishes to establish a secure channel will use $a^{(i)}$ as the enciphering key for transmitting to the $i^{th}$ receiver. The advantage is that the $i^{th}$ receiver, once having proved his identity to the system through the use of his driver's license, fingerprint, etc., can prove his identity to the transmitter by his ability to decipher data encrypted with enciphering key $a^{(i)}$. Thus, although the best mode contemplated for carrying out the present invention has been herein shown and described, it will be apparent that modification and variation may be made without departing from what is regarded to be the subject matter of this invention.

What is claimed is:

1. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

CYL-F 000499

4,218,582



**19**

providing random numbers at the receiver;

generating from said random numbers a public enciphering key at the receiver;

generating from said random numbers a secret deciphering key at the receiver such that the secret deciphering key is directly related to and computationally infeasible to generate from the public enciphering key;

communicating the public enciphering key from the receiver to the transmitter;

processing the message and generating an enciphered key at the transmitter and the public enciphering key at the transmitter by an enciphering transformation, such that the enciphering transformation is easy to effect but computationally infeasible to invert without the secret deciphering key;

transmitting the enciphered message from the transmitter to the receiver; and

processing the enciphered message and the secret deciphering key at the receiver to transform the enciphered message with the secret deciphering key to generate the message.

2. In a method of communicating securely over an insecure communication channel as in claim 1, further comprising:

authenticating the receiver's identity to the transmitter by the receiver's ability to decipher the enciphered message.

3. In a method of communicating securely over an insecure communication channel as in claim 2 wherein the step of:

authenticating the receiver's identity includes the receiver transmitting a representation of the message to the transmitter.

4. In a method of providing a digital signature for a communicated message comprising the steps of:

providing random numbers at the transmitter;

generating from said random numbers a public key at the transmitter;

generating from said random numbers a secret key at the transmitter such that the secret key is directly related to and computationally infeasible to generate from the public key;

processing the message to be transmitted and the secret key at the transmitter to generate a digital signature at said transmitter by transforming a representation of the message with the secret key, such that the digital signature is computationally infeasible to generate from the public key;

communicating the public key to the receiver;

transmitting the message and the digital signature from the transmitter to the receiver;

receiving the message and the digital signature at the receiver and transforming said digital signature with the public key to generate a representation of the message; and

validating the digital signature by comparing the similarity of the message to the representation of the message generated from the digital signature.

5. A method of providing a message digital signature receipt for a communicated message comprising the steps of:

providing random numbers at the transmitter;

generating from said random numbers a public key at the transmitter;

generating from said random numbers a secret key at the transmitter such that the secret key is directly

**20**

related to and computationally infeasible to generate from the public key;

processing the message and the secret key at the transmitter and generating a message-digital signature at said transmitter by transforming a representation of the message with the secret key, such that the message-digital signature is computationally infeasible to generate from the public key;

communicating the public key to the receiver;

transmitting the message-digital signature from the transmitter to the receiver;

processing the message-digital signature and the public key at the receiver and transforming the message-digital signature with the public key; and

validating the transformed message-digital signature by checking for redundancy.

6. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating random information at the receiver;

means for generating from said random information a public enciphering key at the receiver, means for generating from said random information a secret deciphering key such that the secret deciphering key is directly related to and computationally infeasible to generate from the public enciphering key;

means for communicating the public enciphering key from the receiver to the transmitter;

means for enciphering a message at the transmitter having an input connected to receive said public enciphering key, having another input connected to receive said message, and serving to transform said message with said public enciphering key, such that the enciphering transformation is computationally infeasible to invert without the secret deciphering key;

means for transmitting the enciphered message from the transmitter to the receiver; and

means for deciphering said enciphered message at the receiver having an input connected to receive said enciphered message, having another input connected to receive said secret deciphering key and serving to generate said message by inverting said transformation with said secret deciphering key.

7. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret deciphering key at the receiver by generating an n dimensional vector a', the elements of vector a', being defined by

$$a_i' > \sum_{j=1}^{i-1} a_j \text{ for } i = 1, 2, \ldots n$$

where n is an integer;

generating a public enciphering key at the receiver by generating an n dimensional vector a, the elements of vector a being defined by

$$a_i = (w \cdot a_i' \bmod m) + km \text{ for } i = 1, 2, \ldots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;

CYL-F 000500

4,218,582

**21**

transmitting the public enciphering key from the receiver to the transmitter;

receiving the message and the public enciphering key at the transmitter and generating an enciphered message by computing the dot product of the message, represented as a vector $x$ with each element being 0 or 1, and the public enciphering key, represented as the vector $a$, to represent the enciphered message $S$ being defined by

$$S = a^* x;$$

transmitting the enciphered message from the transmitter to the receiver; and

receiving the enciphered message and the secret deciphering key at the receiver and transforming the enciphered message with the secret deciphering key to generate the message by computing

$$S' = 1/w * S \bmod m$$

and letting $x_i = 1$ if and only if

$$[S' - \sum_{j=i+1}^{n} x_j * a_j'] \geq a_i'$$

and letting $x_i = 0$ if

$$[S' - \sum_{j=i+1}^{n} x_j * a_j'] < a_i'$$

for $i = n, n-1, \dots, 1$.

8. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret deciphering key at the receiver by generating an $n$ dimensional vector $a'$, the elements of vector $a'$ being defined by

$$a_i' > \sum_{j=1}^{i-1} a_j$$

for $i = 1, 2, \dots, n$

where $l$ and $n$ are integers;

generating a public enciphering key at the receiver by generating an $n$ dimensional vector $a$, the elements of vector $a$ being defined by

$$a_i = (w * a_i' \bmod m) + km \text{ for } i = 1, 2, \dots, n$$

where $m$ and $w$ are large integers, $w$ is invertible modulo $m$ and $k$ is an integer;

transmitting the public enciphering key from the receiver to the transmitter;

receiving the message and the public enciphering key at the transmitter and generating an enciphered message by computing the dot product of the message, represented as a vector $x$ with each element being an integer between 0 and 1, and the public enciphering key, represented as the vector $a$, to represent the enciphered message $S$ being defined by

$$S = a^* x;$$

**22**

transmitting the enciphered message from the transmitter to the receiver; and

receiving the enciphered message and the secret deciphering key at the receiver and transforming the enciphered message with the secret deciphering key to generate the message by computing

$$S' = 1/w * S \bmod m$$

and letting $x_i$ be the integer part of

$$[S' - \sum_{j=i+1}^{n} x_j * a_j'] / a_i'$$

for $i = n, n-1, \dots, 1$.

9. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

generating a secret deciphering key at the receiver by generating an $n$ dimensional vector $a'$, the elements of vector $a'$ being relatively prime and $n$ being an integer;

generating a public enciphering key at the receiver by generating an $n$ dimensional vector $a$, the elements of vector $a$ being defined by

$$a_i = \log_b a_i' \bmod m \text{ for } i = 1, 2, \dots, n$$

where $b$ and $m$ are large integers and $m$ is a prime number such that

$$m > \prod_{i=1}^{n} a_i';$$

transmitting the public enciphering key from the receiver to the transmitter;

receiving the message and the public enciphering key at the transmitter and generating an enciphered message by computing the dot product of the message, represented as a vector $x$, and the public enciphering key, represented as the vector $a$, to represent the enciphered message $S$ being defined by

$$S = a^* x;$$

transmitting the enciphered message from the transmitter to the receiver; and

receiving the enciphered message and the secret deciphering key at the receiver and transforming the enciphered message with the secret deciphering key to generate the message by computing

$$S' = b^{S} \bmod m$$

and letting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an integer and letting $x_i = 0$ if the quotient of $S'/a_i$ is not an integer.

10. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key at the receiver by generating an $n$ dimension vector $a'$, the elements of vector $a'$ being defined by

CYL-F 000501



23   4,218,582   24

$$u_i = \sum_{j=1}^{i} a_j \text{ for } i = 1, 2, \ldots n$$

where n is an integer;
means for generating a public enciphering key at the receiver by generating an n dimensional vector a, the elements of vector a being defined by

$$a_i = (w \cdot a_i \mod m) + km \text{ for } i = 1, 2, \ldots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;
means for transmitting the public enciphering key from the receiver to the transmitter;
means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and having an output that generates an enciphered message that is a transformation of the message with the public enciphering key by computing the dot product of the message, represented as a vector x with each element being 0 or 1, and the public enciphering key, represented as the vector a, to represent the enciphered message S being defined by

$$S = a \cdot x$$

means for transmitting the enciphered message from the transmitter to the receiver; and
means for deciphering the enciphered message at the receiver, having an input connected to receive the enciphered message, having another input connected to receive the secret deciphering key, and having an output for generating the message by inverting the transformation with the secret deciphering key by computing

$$S' = 1/w \cdot S \mod m$$

and letting $x_i = 1$ if and only if

$$[S' - \sum_{j=i+1}^{n} x_j \cdot a_j] \geq a_i'$$

and letting $x_i = 0$ if

$$[S' - \sum_{j=i+1}^{n} x_j \cdot a_j] < a_i'$$

for $i = n, n-1, \ldots 1$.
11. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:
means for generating a secret deciphering key at the receiver by generating an n dimensional vector a', the elements of vector a' being defined by

$$a_i' > l \sum_{j=1}^{i-1} a_j' \text{ for } i = 1, 2, \ldots n$$

where l and n are integers;
means for generating a public enciphering key at the receiver by generating an n dimensional vector a, the elements of vector a being defined by

$$a_i = (w \cdot a_i \mod m_i) - km_i \text{ for } i = 1, 2, \ldots n$$

where m and w are large integers, w is invertible modulo m, and k is an integer;
means for transmitting the public enciphering key from the receiver to the transmitter;
means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and having an output that generates an enciphered message that is a transformation of the message with the public enciphering key by computing the dot product of the message, represented as a vector x with each element being an integer between 0 and l, and the public enciphering key, represented as the vector a, to represent the enciphered message S being defined by

$$S = a \cdot E$$

means for transmitting the enciphered message from the transmitter to the receiver; and
means for deciphering the enciphered message at the receiver, having an input connected to receive the enciphered message, having another input connected to receive the secret deciphering key, and having an output for generating the message by inverting the transformation with the secret deciphering key by computing

$$S' = 1/w \cdot S \mod m$$

and letting $x_i$ be the integer part of

$$[S' - \sum_{j=i+1}^{n} x_j \cdot a_j']/a_i'$$

for $i = n, n-1, \ldots 1$.
12. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:
means for generating a secret deciphering key at the receiver by generating an n dimensional vector a', the elements of vector a' being relatively prime and n being an integer;
means for generating a public enciphering key at the receiver by generating an n dimensional vector a, the elements of vector a being defined by

$$a_i = \log_b a_i' \mod m \text{ for } i = 1, 2, \ldots n$$

where b and m are large integers and m is a prime number such that

$$m > \prod_{i=1}^{n} a_i';$$

means for transmitting the public enciphering key from the receiver to the transmitter;
means, for enciphering a message at the transmitter, having an input connected to receive the public enciphering key, having another input connected to receive the message, and having an output that generates an enciphered message that is a transformation of the message with the public enciphering key by computing the dot product of the message,

CYL-F 000502



25                                    4,218,582                                    26

represented as a vector x with each element being 0 or 1, and the public enciphering key, represented as the vector a, to represent the enciphered message S being defined by

$$S = a \cdot x$$

means for transmitting the enciphered message from the transmitter to the receiver; and

means for deciphering the enciphered message at the receiver, having an input connected to receive the enciphered message, having another input connected to receive the secret deciphering key, and having an output for generating the message by inverting the transformation with the secret deciphering key by computing

$$S' = a' \cdot x \bmod m$$

and letting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an integer and letting $x_i = 0$ of the quotient of $S'/a_i$ is not an integer.

13. In an apparatus for enciphering a message that is to be transmitted over an insecure communication channel having an input connected to receive a message to be maintained secret, having another input connected to receive a public enciphering key, and having an output for generating the enciphered message, characterized by:

means for receiving the message and converting the message to a vector representation of the message;

means for receiving the public enciphering key to a vector representation of the public enciphering key; and

means for generating the enciphered message by computing the dot product of the vector representation of the message and the vector representation of the public enciphering key, having an input connected to receive the vector representation of the message, having another input connected to receive the vector representation of the public enciphering key, and having an output for generating the enciphered message.

14. In a method of communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver the improvement characterized by:

generating a secret deciphering key at the receiver;

generating a public enciphering key at the receiver, such that the secret deciphering key is computationally infeasible to generate from the public enciphering key;

transmitting the public enciphering key from the receiver to the transmitter;

processing the message and the public enciphering key at the transmitter by computing the dot product of the message, represented as a vector, and the public enciphering key, represented as a vector, to represent the enciphered message, such that the enciphering transformation is easy to effect but computationally infeasible to invert without the secret deciphering key;

transmitting the enciphered message from the transmitter to the receiver;

and processing the enciphered message and the secret deciphering key at the receiver and inverting said transformation by transforming the enciphered message with the secret deciphering key to generate the message.

15. In an apparatus for communicating securely over an insecure communication channel of the type which communicates a message from a transmitter to a receiver, the improvement characterized by:

means for generating a secret deciphering key at the receiver;

means for generating a public enciphering key at the receiver, such that the secret deciphering key is computationally infeasible to generate from the public enciphering key;

means for transmitting the public enciphering key from the receiver to the transmitter;

means for enciphering a message at the transmitter having an input connected to receive said public enciphering key and having another input connected to receive said message and serving to transform said message by computing the dot product of said message, represented as a vector, and said public enciphering key, represented as a vector, to represent said enciphered message, such that the enciphering transformation is computationally infeasible to invert without the secret deciphering key;

means for transmitting the enciphered message from the transmitter to the receiver;

and means for deciphering said enciphered message at the receiver, said means having an input connected to receive said enciphered message and having another input connected to receive said secret deciphering key and serving to generate said message by inverting the transformation with said secret deciphering key.

16. An apparatus for deciphering an enciphered message that is received over an insecure communication channel including

means for receiving the enciphered message that is enciphered by an enciphering transformation in which a message to be maintained secret is transformed with a public enciphering key, and means for receiving a secret deciphering key to generate the message by inverting the enciphering transformation;

means for generating the message having an input connected to receive the inverse of the enciphered message and an output for generating the message and said secret deciphering key being computationally infeasible to generate from the public enciphering key, and said enciphering transformation being computationally infeasible to invert without the secret deciphering key in which

said means for inverting the enciphering transformation includes means for computing

$$S' = 1/w * S \bmod m; \text{ and } .$$

said means for generating the message includes means for setting $x_i$ equal to the integer part of

$$\left[ S' - \sum_{j=i+1}^{n} x_j * a_j' \right] / a_i' \text{ for } i = n, n-1, \ldots 1$$

where m and w are large integers and w is invertible modulo m, where S' is the inverse of the enciphered message S being defined by the enciphering transformation

CYL-F 000503

4,218,582



**27**

**28**

$$S = a^x x$$

where the message is represented as an n dimensional vector $x$ with each element $x_i$ being an integer between 0 and 1, where 1 is an integer, and where the public enciphering key is represented as an n dimensional vector a, the elements of a being defined by

$$a_i = t w^k a_i' \mod m 1 + k m \text{ for } i = 1, 2, \ldots n$$

where k and n are integers and the secret deciphering key is m, w and a', where a' is an n dimensional vector, the elements of a' being defined by

$$a_i' > \sum_{j=1}^{i-1} a_j' \text{ for } i = 1, 2, \ldots n$$

17. An apparatus for deciphering an enciphered message that is received over an insecure communication channel including

means for receiving the enciphered message that is enciphered by an enciphering transformation in which a message to be maintained secret is transformed with a public enciphering key, and means for receiving a secret deciphering key to generate the message by inverting the enciphering transformation;

means for generating the message having an input connected to receive the inverse of the enciphered message and an output for generating the message;

said secret deciphering key being computationally infeasible to generate from the public enciphering

key, and said enciphering transformation being computationally infeasible to invert without the secret deciphering key in which

said means for inverting the enciphering transformation includes means for computing

$$S' = b^S \mod m; \text{ and}$$

said means for generating the message includes means for setting $x_i = 1$ if and only if the quotient of $S'/a_i$ is an integer and setting $x_i = 0$ of the quotient of $S'/a_i$ is not an integer, where b and m are large integers and m is a prime number such that

$$m > \sum_{i=1}^{n} a_i'$$

where n is an integer and the secret deciphering key is b,m, and a', where a' is an n dimensional vector with each element a'' being relatively prime, and where S' is the inverse of the enciphered message S being defined by the enciphering transformation

$$S = a^S x$$

where the message is represented as an n dimensional vector $x$ with each element $x_i$ being 0 or 1, and the public enciphering key is represented as the n dimensional vector a, the elements of a being defined by

$$a_i = \log_b a_i' \mod m \text{ for } i = 1, 2, \ldots n$$

* * * * *

CYL-F 000504

## SEARCH NOTES

| | DATE | EX'R |
|---|---|---|
| Spoke w/ chapued re search in 364/arc | 4/79 | HB |

## SEARCHED

| Class | Sub | Date | Ex'r |
|---|---|---|---|
| 178 | 22 | 10/6/78 | HB |
| update | | 4/18/79 | HB |
| 178 | 22 | 10/28/79 | HB |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Ex'r |
|---|---|---|---|
| 178 | 22 | 10/29/79 | HaB |

**PRINT CLAIM(S):**

1

## INDEX OF CLAIMS

| Claim | | Date | | Claim | | Date | |
|---|---|---|---|---|---|---|---|
| Final | Original | | | Final | Original | | |

SYMBOLS

| | | |
|---|---|---|
| ✓ | ................... | Rejected |
| − | ................... | Allowed |
| − (Through numeral) | | Canceled |
| | | Restriction requirement |
| N | ................... | Nonelected invention or species |
| I | ................... | Interference |
| A | ................... | Appeal |
| O | ................... | Objected |

STATUS

Rejected
Allowed
Canceled
Restriction requirement
Nonelected invention or species
Interference
Appeal
Objected

15

CYL-F 000505

# CONTENTS

....ication _13- pnts_ .... papers.

2. _Rule 84    Dec. 21, 1977_
3. _Ltr. Susp & Ex   Feb. 3, 1978_
4. _Prt & Plt to insigne   Sept 21, 1978_
5. _Power to Insp All Copies  Sept 21, 1978_
6. **ACCESS ACKNOWLEDGMENT**    21 SEP 1978
7. _Nat. Ptn & Accept  Nov 9, 1978_
8. _Aviation (3) Nov. 14, 1978_
9. _Amdt (2-4-27)     Feb 15, 1979_
10. _Final Rej (3) May 7, 1979_
11. _Reg. Ext. Time Aug. 2 1979  60 days_
12. _Amdt B    Oct 9, 1979_
13. _Status Lt    NOV 13 1979_
14. _Amdt C (3) Suppl. Oct 26, 1979_
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____
26. _____
27. _____
28. _____
29. _____
30. _____
31. _____
32. _____
33. _____
34. _____
35. _____
36. _____

CYL-F 000506

U. S. GOVERNMENT PRINTING OFFICE    428-660

03-54-N.W.

CYL-F 000507