FILED

FEB 27 1996

RICHARD W. WIEKING
CLERK, U. S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ROGER SCHLAFLY | ) | CIVIL NO. 94-20512 SW |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | ORDER DENYING IN PART AND |
| v. | ) | GRANTING IN PART PKP'S AND |
|  | ) | RSA'S MOTIONS FOR PARTIAL |
| PUBLIC KEY PARTNERS AND RSA | ) | SUMMARY JUDGMENT ON |
| DATA SECURITY INC., | ) | INTERFERENCE WITH CONTRACTUAL |
|  | ) | RELATIONSHIP, UNFAIR BUSINESS |
|  | ) | PRACTICES AND ANTITRUST CLAIMS |
|  | ) |  |
| Defendants. | ) |  |

Plaintiff Roger Schlafly, proceeding pro se, filed this action against Public Key Partners ("PKP") and RSA Data Security, Inc. ("RSA"), seeking a declaration of patent invalidity and non-infringement and alleging violations of antitrust law, interference with contractual relationship, and unfair business practices.  Defendants PKP and RSA now bring motions for summary judgment on Schlafly's antitrust, unfair

business practices and interference with contractual
relationship claims.[1]

## I. BACKGROUND

In 1987, RSA filed a patent infringement action in the
U.S. District Court for the Northern District of Illinois
against Digital Signature and its partners, Mike Markowitz and
Roger Schlafly.  The patent at issue covered data encryption
software that RSA licensed to others.  Ultimately, Digital
Signature, Markowitz, and Schlafly entered into a consent
judgment in which they agreed to an injunction against their
making, using or selling any products implementing the patent.

In 1990, Markowitz joined Information Security
Corporation ("ISC").  Thereafter, ISC began selling Digital
Signature's software and in return Digital Signature (Schlafly
and Markowitz) received royalties on the sales.  In 1993, ISC
entered into an agreement with AT&T permitting AT&T to license
and sell all of ISC's cryptographic software, and in return,
AT&T was obligated to pay royalties to ISC on all products
sold under the agreement.

Also in 1990, RSA and another company formed the
partnership of Public Key Partners ("PKP") for the purpose of
licensing various cryptography patents.  In January of 1994,
PKP learned that Digital Signature's successor in interest,

---

[1] PKP filed a motion for partial summary judgment on Schlafly's
interference with contract relationship, unfair business practices and
antitrust claims.  RSA joined in PKP's motion and filed a separate
motion for partial summary judgment on the antitrust claims.

Information Security Corp. ("ISC") was about to sell products to AT&T for resale.  Consequently, PKP wrote to AT&T and demanded that AT&T cease distribution and marketing because sale of the Digital Signature products by ISC constituted patent infringement and violated the consent judgment.

Schlafly objected to the letter and told PKP to refrain from telling others that Schlafly was infringing patents or violating the consent decree.  PKP wrote back, stating that Schlafly's letter was "defectively vague" and that Schlafly had admitted to infringing numerous patents.

Apparently unable to resolve the matter to his satisfaction, Schlafly filed this action in July of 1994. Schlafly's First Amended Complaint asserts the following claims: (1) libel (First Cause of Action); (2) patent invalidity (Second Cause of Action); (3) patent non-infringement (Third Cause of Action); (4) interference with contractual relationship (Fourth Cause of Action); (5) fraud (Fifth Cause of Action); (6) unfair business practices (Sixth Cause of Action); and (7) antitrust (Seventh Cause of Action).

In January of 1995, RSA moved to dismiss Schlafly's First Amended Complaint.  After hearing the motion, the Court dismissed Schlafly's claims for fraud and libel, but allowed Schlafly to proceed with his claims for patent invalidity, patent non-infringement, interference with contractual relationship, unfair business practices and antitrust violations.

## II. LEGAL STANDARD

For summary judgment, the moving party bears "the initial responsibility of informing the district court of the basis for its motion . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. Id.

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. There may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

## III. DISCUSSION

In their motions for partial summary judgment, Defendants contend that Schlafly cannot maintain his claims for interference with contract relationship, unfair business practices, or antitrust violations. For the reasons set forth below, the Court finds that Defendants are entitled to summary

4

judgment on the interference with contract relationship claim but are not entitled to summary judgment on the unlawful business practices and antitrust claims.

A. **Interference with Contractual Relationship**

In his complaint, Schlafly alleges that Defendants interfered with the contract relationship of Digital Signature and ISC.[2] The elements of a tortious interference with contract relationship claim are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Pacific Gas & Electric Co. v. Bear Stearns and Co., 50 Cal. 3d. 1118, 1126, 270 Cal.Rptr. 1 (1990).

Defendants argue that Schlafly cannot proceed with his claim for interference with contract relationship because he cannot demonstrate any facts to support the elements of actual breach and resulting damage. According to Defendants, there is no evidence that PKP or RSA caused a breach or disrupted the contact between ISC and Digital Signature. Further,

---

[2] Schlafly also asserts that Defendants interfered with the contract entered into by AT&T and ISC. However, Schlafly is not a party to this contract and any interest Schlafly has in the transactions between AT&T and ISC is derived from the contract between ISC and Digital Signature. Thus, Schlafly, as a partner in Digital Signature, can only recover for harm to the relationship between ISC and Digital Signature.

1    Defendants claim that Schlafly has to failed to offer any

2    evidence that he was damaged by Defendants' actions.

3        Defendants are correct.  To defeat a motion for summary

4    judgment the non-moving party must set forth sufficient

5    evidence to establish the elements which that party will bear

6    the burden of proof at trial.  Celotex, 477 U.S. at 324.

7    Further, a party opposing a motion for summary judgment may

8    not rely on allegations or denials contained in the pleading,

9    but must provide facts to demonstrate there is a genuine issue

10   for trial.  Anderson, 477 U.S. at 248.  Here, Schlafly has not

11   provided any evidence, but instead, he makes only general

12   unsupported allegations of actual breach, disruption of the

13   contract, and resulting damage.   Therefore, the Court GRANTS

14   Defendants' request for summary judgment on the claim for

15   interference with contract relationship.

16

17   B. Unfair Business Practices

18       Schlafly also contends that PKP has violated California

19   law prohibiting unfair business practices.  Specifically,

20   Schlafly asserts that PKP violated Cal. Bus. & Prof. Code §§

21   17001, 17046, 17048, and 17500.  In response, Defendants argue

22   that Schlafly has not provided evidence of any predicate acts

23   that could form the basis for a claim of unfair business

24   practices.[3]

25   _____

26   [3]  Defendants also assert that Schlafly's unfair business practice
     claims are based upon facts alleged in claims that the Court
27   dismissed, and thus, cannot be relied on by Schlafly.  Defendants'
     argument is without merit.  When the Court dismissed Schlafly's claims

28                                  6

1    California's Unfair Business Practices Act prohibits

2    "unfair, dishonest, deceptive, destructive, fraudulent and

3    discriminatory practices by which fair and honest competition

4    is destroyed or prevented."  Cal. Bus. & Prof. Code § 17001.

5    This language requires a complainant to allege what the

6    defendant's allegedly unlawful practices are and how they are

7    unlawful.  Khoury v. Maly's of California, Inc., 14

8    Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708, 712 (1993).

9    Here, the relevant inquiry is whether Schlafly has

10   provided any evidence to support his assertion that PKP

11   committed unlawful acts.  Schlafly alleges that Defendants

12   deceptively exaggerated the scope of their patents, unfairly

13   negotiated with potential licensors in bad faith, fraudulently

14   promised a reasonable and nondiscriminatory licensing policy,

15   and threatened competitors.

16   On the one hand, Schlafly cannot base his unfair business

17   practices claim on allegations that Defendants unfairly

18   negotiated with potential licensors or maintained a

19   discriminatory licensing policy because he has no proof that

20   Defendants committed these unlawful acts.  Although Schlafly

21   contacted PKP and received information regarding the licensing

22   of PKP's patents, he never applied to PKP for the purpose of

23   obtaining a license.  Additionally, there is no evidence that

24

25   for fraud and libel it did not dismiss the underlying factual
     allegations contained in the complaint.  Although Schlafly cannot
26   maintain his claims for fraud or libel, he can incorporate the factual
     allegations in the fraud and libel sections of the complaint when
27   asserting other claims.

28                              7

PKP or RSA discriminated against Schlafly in their dealings with him.

On the other hand, Schlafly has presented sufficient evidence to create a genuine issue of fact regarding the predicate acts of deceptively exaggerating the scope of the patents and threatening competitors. Schlafly submitted the letter sent by PKP to AT&T accusing ISC of violating the consent judgment. Amended Complaint, Ex. D. Schlafly's also offered a letter from the Commerce Department's National Institute of Standards and Technology that states that a press release made by RSA was potentially misleading and could be interpreted as exaggerating the scope of their patents. Schlafly's Opposition to Motions for Summary Judgment, Ex. DC. Moreover, at this point, the scope of Defendants' patent is in dispute. Until the scope of the patents is determined, genuine issues of fact exist as to whether PKP or RSA exaggerated the scope of their patents or unfairly threatened competitors. Thus, the Court DENIES Defendants' motions for summary judgment on Schlafly's unfair business practices claim.


C. <u>Antitrust</u>

Schlafly's complaint alleges several antitrust violations including: (1) formation of an illegal patent pool, (2) illegal tying of products, (3) advocating a secondary boycott, (4) patent misuse and, (5) illegal price discrimination. In response, RSA and PKP assert that Schlafly

does not have standing to bring an action for the antitrust violations alleged in his complaint.  According to Defendants, because Schlafly is only a software developer and does not compete with RSA in manufacturing and selling software, he does not have standing to bring an antitrust action.

Although the federal antitrust laws contain broad language in setting forth the class of persons who may sue for damages under the antitrust laws, the Supreme Court has limited the scope of antitrust liability by establishing the doctrine of antitrust standing.   <u>Associate General Contractors of California v. California State Council of Carpenters</u>, 459 U.S. 519, 534-535 (1983).  This doctrine requires an evaluation the plaintiff's injury, the alleged wrongdoing of the defendants, and the relationship between them to ascertain whether the causal connection is such that the plaintiff may recover damages under the antitrust laws. <u>Id</u>. at 535.

The Ninth Circuit enumerated several factors that are to be considered when determining whether the plaintiff has standing to sue for antitrust violations:

1. The specific intent of the alleged conspirators;

2. The directness of the injury;

3. The character of the damages, including risk of duplicative recovery, the complexity of apportionment and their speculative character;

4. The existence of other more appropriate plaintiffs:

5. The nature of the injury.
R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d
139, 146 (9th Cir. 1989).  No single factor is decisive. Id.
Instead, courts must balance the factors to determine whether
a plaintiff has standing.  Id.

1. The Specific Intent of the Alleged Conspirators

Defendants contend that Schlafly has not shown that he
was the target of the alleged antitrust violations.  According
to Defendants, any intent associated the alleged unlawful
conduct could only have been directed at other manufacturers,
patent licensees and RSA software purchasers.  Since Schlafly
does not fall within one of these groups, Defendants assert
that Schlafly could not have been the intended recipient of
the anticompetitive acts.

Defendants argument that the alleged antitrust violations
could not have been directed at software developers is
unavailing.  The intent of an antitrust violator is to prevent
purchasers from buying competing products.  This can be
accomplished by preventing competing products from reaching
the marketplace.  Here, Defendants' alleged unlawful actions
limited Schlafly's ability to get the software he developed to
the marketplace.   Thus, there is sufficient evidence of
specific intent to harm Schlafly.

2. The Directness of the Injury

Defendants assert that any injury sustained by Schlafly
is derived from AT&T and ISC, and is therefore, indirect.
However, Defendants allegedly illegal, anticompetitive control

1   over their patents directly impaired Schlafly's ability, as an

2   independent software developer, to solicit business and

3   generate revenue.  As such, Schlafly's injury is not derived

4   from another party, but "close in the chain of causation" to

5   the asserted unlawful conduct. R.C. Dick, 890 F.2d at 147.

6          3. The Character of the Damages

7          In determining the third factor, the plaintiff's damages

8   are evaluated to determine whether there is potential for

9   duplicative recovery or for difficulty in apportioning

10  damages.  Here, Schlafly could recover for lost royalties that

11  he would have received if the alleged illegal activity had not

12  occurred.  This would not create a risk of duplicative

13  recovery because the amount that AT&T and ISC would have paid

14  for royalties can be deducted from any potential recovery by

15  AT&T or ISC.  Further, permitting Schlafly to recover for lost

16  royalties and manufacturers to recover for their lost profits

17  does not create any unusually difficult apportioning problems.

18         4. The Existence of More Appropriate Plaintiffs

19         Defendants claim that AT&T and ISC are more appropriate

20  plaintiffs.  Accepting the antitrust allegations as true, AT&T

21  and ISC are within the class of injured parties.  However,

22  AT&T and ISC are not in any better position than Schlafly to

23  vindicate the public interest in antitrust enforcement.  Since

24  the alleged restrictions on the market directly impair

25  Schlafly's livelihood, he has significant incentive to seek

26  enforcement of the antitrust laws.  Alternatively, AT&T's

27  limited participation in the market may not be enough to

28                                  11

1   induce AT&T to become enmeshed in a legal battle.  Therefore,

2   if Schlafly is prevented from pursuing his claims there is a

3   danger that the alleged antitrust violations may go

4   unremedied.   See Yellow Pages Cost Consultants v. GTE

5   Directories, 951 F.2d 1158, 1164 (9th Cir. 1991).  Under these

6   circumstances, there are no more appropriate plaintiffs to

7   pursue antitrust claims.

8        5. The Nature of Plaintiff's Claimed Injury

9        The final factor, the nature of the injury, involves a

10  determination of whether the plaintiff suffered the type of

11  injury that Congress sought to redress in forming the

12  antitrust laws.  Associate General Contractors, 459 U.S. at

13  538.  A central interest of the antitrust laws is to protect

14  the economic freedom of participants in the market.  Id.

15  Schlafly asserts that Defendants illegal actions restricted

16  competition and monopolized the cryptography market.  As a

17  result, there is limited access for Schlafly and other

18  software developers to sell their software and services.

19  Thus, Schlafly's injury is "inextricably intertwined" with the

20  injury in the cryptography market and "falls within the area

21  of congressional concern."  Id.

22                    Balancing the Factors

23       In balancing the factors enumerated in R.C. Dick, it is

24  clear that Schlafly's case falls within the intended area of

25  statutory protection.  Accordingly, the Court DENIES

26  Defendants' motions for summary judgment based upon antitrust

27  standing.

28                             12

**IV.  CONCLUSION**

Defendants' motion for partial summary judgment on the interference with contractual relationship claim is GRANTED. Defendants' motions for summary judgment on the unfair business practices and antitrust claims is DENIED.


IT IS SO ORDERED.

DATED: **2/23/96**

SPENCER WILLIAMS
United States District Judge

13