FILED

Roger Schlafly, Pro Se
PO Box 1680
Soquel, CA  95073
telephone: (408) 476-3550

FEB 22  I 59 PM '96

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

In the United States District Court
for the Northern District of California

ROGER SCHLAFLY, Plaintiff

v.

PUBLIC KEY PARTNERS, and

RSA DATA SECURITY INC., Defendants.

) Case C-94-20512 SW PVT
)
) Brief Regarding Stanford
)   Patent Validity
)
) Feb. 29, 1996
) San José

This brief supports the invalidity of the Stanford patents.

There are pending related motions in the above-captioned case, and in RSA Data v. Cylink/CKC, Case C-95-03256.  Permission to file this brief was granted on Feb. 14, when the cases were partially consolidated, and an anticipatory letter was mailed to the parties on Feb. 15.

This brief addresses some points raised in the papers from the other case, and clarifies some issues.

1

2

3

4  <u>Authorities</u>

5

6  Carl Zeiss Stiftung v. Renishaw PLC, 945 F.2d 1173, 20 USPQ2d 1094,

7      (Fed Cir 1991).

8  In re Glass, 492 F.2d 1228, 181 USPQ 31 (CCPA 1974).

9  In re Wright, 999 F.2d 1557, 27 USPQ2d 1510 (Fed Cir 1993).

10  Newman v. Quigg, 877 F.2d 1575, 11 USPQ2d 1340 (Fed Cir 1989).

11  Patents, Donald Chisum.

12

13

14

15  <u>Contents</u>

16

17  Invalidity Issues Only

18  Distinct Position

19  Evidence

20  Printed Publication

21  Utility and Enablement

22  Trapdoor Knapsack Cracked

23  Conclusion

24

25

26

27

28

BRF REG STAN PAT VALID

## Invalidity Issues Only

For purposes of this brief, plaintiff Schlafly is operating under the Court's order that the only issue which has been consolidated between the two cases is the validity or invalidity of the Stanford patents.

If the Stanford patents are found to be valid, then there will likely also be infringement issues which are common to the two cases.  However, Schlafly is not yet prepared to argue these because: (1) infringement is not mentioned in any of the pending motions in the instant case, (2) no infringement claims have been detailed against Schlafly yet, (3) RSADSI's legal position is significantly different because it has a patent license and is only on the hook for contributory infringement, (4) a protective order bars Schlafly from reviewing the papers regarding infringement in the other case, and (5) the infringement issues are more complicated, and Schlafly believes he can avoid them by proving invalidity.

Therefore, Schlafly requests that infringement in the instant case be argued later, if at all.  When infringement issues are argued, issues of claim construction and statutory subject matter can be argued as well.

## Distinct Position

At the start of this lawsuit, RSADSI was defending the Stanford patents.  Now RSADSI says they are invalid.  Schlafly is happy to

BRF REG STAN PAT VALID

have RSADSI on the same side of this particular issue, but notes that their respective positions are not exactly the same.

Cylink/CKC argues that RSADSI should be barred by estoppel from arguing invalidity. That argument rests on the fact that RSADSI was a licensor of the Stanford patents. But there is no such bar against Schlafly.

RSADSI has chosen not to make an invalidity argument based on nonstatutory subject matter against the Stanford patents, because such an argument would also knock out their own MIT patent. RSADSI is probably also reluctant to argue inoperativeness, because its Schnorr patent is expected to fall on similar grounds. Therefore, the Court should draw no conclusion from RSADSI's failure to fully support Schlafly's arguments.

Evidence

Evidence of patent invalidity that RSADSI has placed on the record may properly be used in support of my motion. By announcing the cases related, the Court has announced its intent to consider all of the available evidence regarding the validity of the Stanford patents. Evidence in the related case does indeed support my motion.

Cylink/CKC had raised a question of admissibility of evidence, and Schlafly contends that this issue has been resolved. (Cylink/CKC argued at the Dec. 6, 1995 hearing that the Stanford validity issues

BRF REG STAN PAT VALID

1   are now purely matters of law.)  Regardless, RSADSI has filed

2   affidavits making all of the necessary Diffie-Hellman and Hellman-

3   Merkle evidence admissible.

4

5   <u>Printed Publication</u>

6

7   Cylink/CKC relies heavily on a literal interpretation of the term

8   "printed publication" in 35 USC 102(b).  The term was introduced by

9   the 1836 patent law, and has not been changed.  The term now seems

10  rather quaint in the light of all the technologies used to

11  communicate modern research.  The courts have instead focussed on

12  whether there was an enabling disclosure which was accessible to the

13  public before the critical date.  If there was such a disclosure,

14  recent courts have always invalidated the patent.

15

16  The record shows that the Diffie-Hellman inventors gave three public

17  lectures describing their invention more than one year prior to

18  filing the patent application.  (Two were at conferences open to

19  anyone who paid the fee; one was a non-confidential lecture at IBM,

20  which was the major center of non-government cryptological activity

21  at the time.)  The record also shows that the disclosure was

22  enabling.  Cylink/CKC offers no evidence to the contrary, but merely

23  relies on a narrow interpretation of "printed publication".

24

25  While disclosure of some complicated inventions might not be

26  enabling based on an oral lecture or a slide show, the Diffie-

27  Hellman invention has a striking simplicity that allows it to be

28  described in a single slide or a few sentences.

BRF REG STAN PAT VALID

1  In addition to the oral disclosures, the inventors distributed
2  preprints which qualify under the literal meaning of "printed
3  publication" anyway.  There seems to be some confusion about the
4  meaning of "preprint".  Webster's Collegiate Dictionary defines it
5  as "an issue of a technical paper often in preliminary form before
6  its publication in a journal".  Academic researchers commonly
7  distribute preprints to whomever they can as soon as the manuscript
8  is submitted to a journal or presented at a conference.  Usually the
9  preprint is just a xerox or laserprinted copy of the submitted
10  manuscript.

11

12  Thus, Schlafly produced proof of four enabling disclosures of the
13  Diffie-Hellman invention before the critical date.  Three were
14  public lectures, and one was a distributed preprint.  Contrary to
15  Cylink/CKC's assertion, the PTO was not informed of these four
16  disclosures.  The PTO was informed of publication of the NCC and
17  "New Directions" papers.  The former was determined to be not
18  enabling, because it did not disclose exponential key exchange.  The
19  examiner did not know that exponential key exchange was disclosed in
20  the NCC lecture.  The latter was not considered to be prior art
21  because the examiner only knew of submission and publication in the
22  IEEE journal, and did not know the preprint was distributed to the
23  public in August 1976.

24

25  Cylink/CKC tries to poke holes in the 35 USC 102(b) invalidity
26  argument, but common sense supports the argument.  The inventors had
27  a hot result, and they knew it.  They believed it would
28  revolutionize communications, and they spread the word with

BRF REG STAN PAT VALID                                             page 6

1  missionary zeal.  (Their "New Directions" preprint starts with the

2  sentence "We stand today on the brink of a revolution in

3  cryptography.")  Within 2 months of their invention, they had

4  submitted a enabling paper to the IEEE journal and had given three

5  enabling public lectures to experts in the field.  Nothing was

6  marked confidential and they were clearly not being the slightest

7  bit secretive about their invention.  Their preprint was dated

8  August 1976 and the critical date was Sept. 6, 1976.  We don't know

9  exactly how many copies were distributed before the critical date,

10  but at least one was and it seems extremely probable that anyone who

11  attended one of the lectures in June or July of 1976 who requested a

12  copy of the preprint would have received one before the critical

13  date.  Therefore the August 1976 preprint should be considered a

14  printed publication, and so the 35 USC 102(b) statutory bar applies.

15

16  Utility and Enablement

17

18  A patentable invention must have utility.  35 USC 101.  According to

19  the leading patent treatise, "To comply with the utility requirement

20  ... First, it must be operable and capable of use.  It must operate

21  to perform the functions and secure the result intended."  [Chisum,

22  4.01]  For a recent case supporting this view, see Carl Zeiss

23  Stiftung v. Renishaw PLC, 945 F.2d 1173, 1180, 20 USPQ2d 1094, 1100

24  (Fed Cir 1991).  At issue is whether post-filing art may be used to

25  prove lack of utility.

26

27  Closely related is the enablement requirement.  35 USC 112.  "It is

28  apparent that lack of utility because of inoperativeness, and

BRF REG STAN PAT VALID

1   absence of enablement, are closely related grounds of
2   unpatentability."  Newman v. Quigg, 877 F.2d 1575, 1581, 11 USPQ2d
3   1340, 1345 (Fed Cir 1989).  The specification must teach to one of
4   ordinary skill in the relevant art how to make and use the invention
5   in question.  [paraphrasing Chisum 7.05[3].]  The relevant art is
6   art which is reasonably well-known at the filing date.  "Sufficiency
7   must be judged as of the filing date."  In re Glass, 492 F.2d 1228.
8   Cylink/CKC mistakenly relies on this principle to argue that
9   evidence about the breaking of the trapdoor knapsack should be
10  ignored.

11

12  To see Cylink/CKC's error, it is important to distinguish between
13  evidence which proves enablement, and that which disproves
14  enablement.  The former must predate the filing date, but the latter
15  need not.  All of the Cylink/CKC cases cited involve dating evidence
16  which favors enablement, not inoperativeness.  Eg, In re Glass
17  only finds that an applicant could not rely on what occurred
18  in the art after his filing date.

19

20  A recent case which considers both kinds of evidence is In re
21  Wright, 999 F.2d 1557, 27 USPQ2d 1510 (Fed Cir 1993).  Some patent
22  claims for a vaccine were denied for lack of an enabling
23  specification.  The Court would only look at papers favoring
24  enablement which were published before the filing date, but cited an
25  article published five years later as evidence that undue
26  experimentation would have been required to practice the invention.
27  (This double standard may seem unfair or inconsistent, but it is the
28  law and there is a solid rational basis for it.  The different

1  evidence serves different purposes.   Evidence favoring enablement is
2  concerned with whether the specification teaches the invention, and
3  evidence against enablement concerns whether the claims describe the
4  invention.   Applying the same rule to both types of evidence, as
5  Cylink/CKC suggests, would allow patents based on falsehoods just
6  because the falsehoods were believed at one time.   See In re Glass,
7  supra, for another such paradox which works against the inventor.)

8

9  The Hellman-Merkle enablement situation is similar to In re Wright.
10 Five years after filing and publishing, cryptologists were still
11 trying to figure out ways to make the trapdoor knapsack work, and
12 publishing papers with the conclusion that it does not.

13

14 Also, In re Wright is similar to Hellman-Merkle in another respect.
15 Wright had a vaccine on an obscure chicken virus, but was really
16 trying to get a claim broad enough to cover a hypothetical vaccine
17 on the HIV (AIDS) virus.   Likewise, Hellman-Merkle recites a
18 trapdoor knapsack algorithm, but Cylink/CKC is trying to use it to
19 cover all of public key cryptography.   The Wright claims would not
20 have fared any better if someone had found an AIDS vaccine in the
21 meantime.

22

23 Trapdoor Knapsack Cracked

24

25 Cylink/CKC's alleged contradiction in Konheim's statements [Reply
26 Memorandum in support of Caro-Kann's motion for preliminary
27 injunction, p. 12, l. 4-11] is not a contradiction at all.   The
28 general knapsack problem was (and still is) thought to be

BRF REG STAN PAT VALID

1   computationally infeasible.  However, the trapdoor knapsacks devised

2   by Hellman-Merkle are special versions of the general knapsack, and

3   have been shown to be insecure.  Decryption is computationally

4   feasible.

5

6   One issue relates to whether a 1977 cryptosystem which was broken in

7   1983 could still have been considered secure in 1977.  Cylink/CKC

8   argues in the affirmative based on the fuzzy english meaning of the

9   word "secure".  But the Hellman-Merkle patent instead uses a more

10  precise mathematical definition in terms of "demonstrably infeasible

11  cryptanalytic time" of more than 1,000,000,000,000,000,000,000,000,

12  000,000 operations.  This criterion was never met in 1977, even

13  though it was a few years later that everyone was convinced that the

14  condition was not met.  Hence the cryptosystem was not secure in

15  1977.

16

17  It might seem that there is a factual dispute here -- after all,

18  Cylink/CKC states that the trapdoor knapsack was secure in 1977 and

19  Schlafly denies it (along with RSADSI's expert).  The difference is

20  that in 1977 the trapdoor knapsack had a certain illusory security

21  which was based on the lack of published attacks.  However, the PTO

22  rightfully rejects claims referring to others' lack of knowledge,

23  and the Hellman-Merkle examiner insisted on claim language using

24  terms like "computationally infeasible" which were defined

25  intrinsically.  Whether or not an algorithm is computationally

26  infeasible to invert is a mathematical question whose answer is

27  independent of the dates the trapdoor knapsack attacks were

28  published.  Thus, the trapdoor knapsack might have had some security

BRF REG STAN PAT VALID

in 1977 against those ignorant of attacks, but it was not secure in the sense of the word as described and claimed in the Hellman-Merkle patent.

Cylink/CKC raises the possibility that some variant of the Hellman-Merkle trapdoor knapsack might still be secure.  This seems very unlikely, in view of the evidence on the record that: (1) Merkle paid off $100 and $1000 bets, (2) the consensus of the published literature is that the trapdoor knapsack has been broken, (3) exhibits give step-by-step instructions on how to break the various variants the trapdoor knapsack, and (4) everyone who has considered implementing the trapdoor knapsack has been convinced of its insecurity, and abandoned it.

But even if there is such a secure variant, the Hellman-Merkle patent still fails for lack of enablement.  "Although not explicitly stated in section 112, to be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation'."  In Re Wright, supra.  The Hellman-Merkle specification certainly does not teach a 1977 cryptologist how to practice a secure public key cryptosystem.  In fact, we have had nearly twenty years of undue experimentation by many of the top experts in cryptology, and they still cannot figure out a way to make the trapdoor knapsack secure.

Admittedly, the burden is on Schlafly (and RSADSI) to give clear and convincing evidence that the invention is inoperative or nonenabled.  Nevertheless, it is notable that Cylink/CKC and its experts are

BRF REG STAN PAT VALID

1  unable to point to *any* way of practicing the trapdoor knapsack

2  securely.   The digital signature nonenablement is even more

3  embarrassing, as Cylink/CKC gives no way to practice it at all based

4  on the specification, much less practice it securely as required by

5  claims 4 and 5.

6

7  Therefore, the Hellman-Merkle patent is invalid for lack of utility

8  and enablement.

9

10  Conclusion

11

12  Schlafly believes that there are no material issues of fact in

13  dispute.   The evidence strongly points to the invalidity of the

14  Stanford patents.   A judicial declaration to that effect will

15  greatly simplify the cases at hand.

16

17

18  Dated:   *Feb 22, 1996*

19

20  By:   _____

21

22  Plaintiff, Roger Schlafly, Pro Se

23

24

25

26

27

28