ORIGINAL

1   KARL J. KRAMER (No. 136433)
    JANA G. GOLD (No. 154246)
2   MORRISON & FOERSTER LLP
    755 Page Mill Road
3   Palo Alto, California  94304-1018
    Telephone: (415)813-5600
4
    RAOUL D. KENNEDY (No. 40892)
5   MORRISON & FOERSTER LLP
    345 California Street
6   San Francisco, California 94104-2675
    Telephone:  (415) 677-7000
7
    PATRICK J. FLINN (No. 104423)
8   ALSTON & BIRD
    One Atlantic Center
9   1201 W. Peachtree Street
    Atlanta, Georgia 30306
10  Telephone: (404)881-7000

11  Attorneys for Defendants/Counter-
    Claimants CYLINK CORPORATION, CARO-KANN
12  CORPORATION and STANFORD UNIVERSITY

13

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16  ROGER SCHLAFLY,                    No.   C-94-20512 SW

17              Plaintiff,

18      v.

19  PUBLIC KEY PARTNERS AND RSA DATA
    SECURITY, INC.,
20
                Defendants,
21

22  RSA DATA SECURITY, INC.,          No.   C-96-20094 SW

23              Plaintiff,            DEFENDANTS' MOTION FOR
                                      SUMMARY JUDGMENT ON THE
24      v.                            VALIDITY OF THE DIFFIE-
                                      HELLMAN PATENT
25  CYLINK CORPORATION and CARO-KANN
    CORPORATION, et al.               Date: September 4, 1996
26                                     Time: 10:00 a.m.
                Defendants.           Courtroom:  4
27
                                      Hon. Spencer Williams
28

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW

FILED
JUL 3 1 1996
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1

# TABLE OF CONTENTS

2                                                                          **Page**

3  TABLE OF AUTHORITIES ................................... ii

4  NOTICE OF MOTION AND MOTION ............................. 1

5  MEMORANDUM OF POINTS AND AUTHORITIES .................... 1

6  Introduction ........................................... 1

7  Background Facts ....................................... 2

8  ARGUMENT ............................................... 4

9  I.   SUMMARY JUDGMENT SHOULD BE GRANTED
        WHEN, AS A MATTER OF LAW, THE
10      CHALLENGER CANNOT PROVE BY CLEAR AND
        CONVINCING EVIDENCE THAT THE PATENT
11      CLAIMS ARE INVALID. ............................... 4

12 II.  RSADSI CANNOT CARRY ITS BURDEN OF
        PROVING INVALIDITY. ............................... 5

13
        A.   An Oral Presentation, Even
14           Accompanied by Slides, Is Not a
             "Printed Publication" Under Section
15           102(b)........................................ 6

16      B.   Restricted Distribution of Drafts
             Cannot Constitute a "Printed
17           Publication" Under Section 102(b)............. 8

18 CONCLUSION ............................................. 12

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

Aluminum Co. of America v. Reynolds Metals Co.,
    14 U.S.P.Q. 2d 1170 (N.D. Ill. 1989)  .................. 9,10,11

American Hoist & Derrick Co. v. Sowa & Sons, Inc.,
    725 F.2d 1350 (Fed. Cir.),
    cert. denied, 469 U.S. 821 (1984)  .......................... 4

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)  ...... 5

Avia Group International, Inc. v. L.A. Gear California,
    853 F.2d 1557 (Fed. Cir. 1988)  .......................... 4,5

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 265 (1986)  ........ 5

Eiselstein v. Frank,
    52 F.3d 1035 (Fed. Cir. 1995)  ........................... 2

Ex Parte Gould,
    231 U.S.P.Q. 943 (Bd. Pat. App. & Int. 1986)  .............. 9

In re Bayer,
    568 F.2d 1357 (C.C.P.A. 1978)  ............................ 9

Massachusetts Institute of Technology v. AB Fortia,
    774 F.2d 1104 (Fed. Cir. 1985)  ........................... 8

National Semiconductor Corp. v. Linear Technoloyg Corp,
    703 F. Supp. at 849  .................................. 9,10,11

Northern Telecom, Inc. v. Datapoint Corp.,
    908 F.2d 931 (Fed. Cir.), cert. denied, 498 U.S. 920 (1990) 5,8

Preemption Devices, Inc. v.
    Minnesota Min. & Manufacturing Co.,
    732 F.2d 903 (Fed. Cir. 1984)  ............................ 9

Regents of the University of California v.
    Howmedica, Inc.,
    530 F. Supp. 846 (D.N.J. 1981),
    aff'd without op., 676 F.2d 687 (3d Cir. 1982)  ........... 7,8

Solarex Corp. v. Arco Solar, Inc.,
    121 F.R.D. 163 (E.D.N.Y. 1988), aff'd, 870 F.2d 642 (Fed. Cir.
    1989)  ................................................... 9

1.

**RULES AND STATUTES**

2   Fed. R. Civ. P. 56 ......................................... 5

3   35 U.S.C.
     § 102(b) ....................................... 1,2,5,6,9,15
4     § 282 ....................................................... 4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **NOTICE OF MOTION AND MOTION**

2          Please take notice that on September 4, 1996, at 10:00 a.m. or

3     as soon thereafter as the matter may be heard, defendants and

4     counter-claimants Cylink Corporation ("Cylink"), Caro-Kann

5     Corporation ("Caro-Kann"), and The Board of Trustees of the Leland

6     Stanford Junior University ("Stanford") (collectively "defendants")

7     will move, and hereby do move, for summary judgment that RSA Data

8     Security, Inc. ("RSADSI") cannot prove by clear and convincing

9     evidence that any of the claims of U.S. Patent No. 4,200,770 (the

10    "Diffie-Hellman Patent") are invalid.

11         **MEMORANDUM OF POINTS AND AUTHORITIES**

12              **Introduction**

13         The sole argument RSADSI has specifically articulated to

14    contest the validity of the Diffie-Hellman patent is that the

15    inventors violated the "printed publication" bar of 35 U.S.C.

16    § 102(b) by disseminating their inventions through oral

17    presentations and prepublication review by colleagues.  Although the

18    Court has previously stated that this assertion raised serious

19    questions, under controlling law, an invention is invalid only if,

20    more than one year prior to filing a patent application, it is

21    generally available in a printed form to anyone interested in the

22    field.  RSADSI cannot prove that in this case.

23         To support its argument, RSADSI points to two separate

24    activities by the inventors.  First, RSASDI points out that there

25    were three oral presentations with slides made by the inventors more

26    than one year before the date of the patent application.  However,

27    as RSADSI's counsel acknowledged at the preliminary injunction

28    hearing, there is no legal precedent for applying the publication

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                    1                    pa120286

1    bar based on an oral disclosure -- the statute prohibits just

2    "printed publications."   Second, RSADSI points out that the

3    inventors circulated drafts of a paper to several colleagues, who,

4    as the inventors expected, treated the drafts as confidential.   Even

5    accepting all of the facts alleged by RSADSI as true, RSADSI's

6    evidence is insufficient under the controlling law to prove by clear

7    and convincing evidence that there was a printed publication,

8    generally accessible to anyone interested in the field.   Therefore,

9    defendants are entitled to summary judgment on RSADSI's invalidity

10   allegations.[1]

11        Because RSADSI cannot raise a genuine issue of material fact,

12   summary judgment should be entered against all of RSADSI's claims

13   and defenses that are based upon an allegation that the Diffie-

14   Hellman Patent claims are invalid.

15                          **Background Facts**

16        The Diffie-Hellman Patent relates to advances in cryptography.

17   It was filed with the United States Patent Office on September 6,

18   1977 and granted on April 29, 1980.   [Exh. 1]   Before the Diffie-

19   Hellman inventions, all secret code schemes used a single "key" to

20   encode and decode a message.   [Id., 1:22-29]   Under such systems,

21   parties wishing to communicate over an insecure channel needed to

22   _____

23        [1]   Invalidity under 35 U.S.C. § 102(b) "is a question of law to
     be determined based upon underlying factual determinations."
24   Eiselstein v. Frank, 52 F.3d 1035, 1038 (Fed. Cir. 1995).   In this
     motion, defendants contend that even accepting all facts, and
25   drawing all inferences in favor of RSADSI, RSADSI cannot establish
     clear and convincing evidence sufficient to meet its legal burden.
26   In fact, however, RSADSI's evidence and the inferences to be drawn
     from that evidence are and will be disputed. [See, e.g., Hellman
27   Decl. and Exh. 10 hereto (Diffie Depo.)]   Consequently, if the Court
     denies defendants' motion, any doubt as to the facts relating to
28   RSADSI's "printed publication" defense must be left to the jury to
     resolve.

1   find a way to exchange the secret key before a coded message could

2   be sent.  [Id.]  The exchange of a secret key, however, was always a

3   weakness, since anyone who intercepted the key could decode the

4   secret message.  [Id.]

5        The Diffie-Hellman patent covers what has been called "Diffie-

6   Hellman Public Key Agreement."  [See, e.g., Exh. 2 at 52 (RSADSI's

7   BSAFE User's Manual, Version 2.1)]  As RSADSI admits, "Whitfield

8   Diffie and Martin Hellman invented this, the first true public-key

9   algorithm, in 1976."  [Id.]  With this invention, parties can

10  exchange two different numbers over an insecure channel from which a

11  shared, secret key can be calculated by both.  [Exh. 1, 2:7-22]  An

12  eavesdropper who obtains either or both numbers exchanged publically

13  over the insecure channel would nonetheless be unable to determine

14  the secret key.  [Id.]  The invention revolutionized cryptographic

15  systems by eliminating the security weakness of prior, single

16  exchanged key systems.  [Id.]  Thus, unlike all prior cryptography

17  developed over thousands of years, parties using the Diffie-Hellman

18  method can be completely indifferent to the actions of enemy

19  eavesdroppers -- even if the enemy has all the information

20  exchanged, the message cannot be decoded.

21       Parts of the Diffie-Hellman invention were disclosed in a paper

22  entitled "New Directions in Cryptography."  [Exh. 1 at 1; Exh. 3]

23  The "New Directions" paper was published in the IEEE journal

24  Transactions in Information Theory, in November 1976, 10 months

25  before the patent application was filed.  [Id.]

26       Defendant Caro-Kann now holds exclusive sublicensing rights to

27  the Diffie-Hellman Patent.  [Exh. 4, at 4-5]  At one time, however,

28  RSADSI was a general partner in Public Key Partners ("PKP"), which

1   held exclusive sublicensing rights in the Diffie-Hellman Patent.

2   [Exh. 5]   As a general partner in PKP, RSADSI approved and actively

3   pursued an infringement action against TRW, alleging in a Complaint

4   filed in this Court that the Diffie-Hellman patent "was duly and

5   lawfully issued."   [Exhs. 6 ¶ 8 and 7 (PKP Arb. Testimony at 243-

6   246)]   As a general partner in PKP, RSADSI asserted the validity of

7   the Diffie-Hellman Patent in license negotiations in order to

8   extract payments from third parties.   [Exh 8]   Even today, after PKP

9   was dissolved and RSADSI filed this very action to invalidate the

10  patents, RSADSI continues to tout that its software products include

11  the "patented Diffie-Hellman Public Key Exchange."   [Exh. 9]   Thus,

12  RSADSI has repeatedly acknowledged and relied upon the validity of

13  the Diffie-Hellman Patent.   Finally, no party, including RSADSI, has

14  ever cited any prior art of other inventors alleged to anticipate or

15  render obvious the Diffie-Hellman inventions.

16                              **ARGUMENT**

17  **I.   SUMMARY JUDGMENT SHOULD BE GRANTED WHEN, AS A MATTER OF
        LAW, THE CHALLENGER CANNOT PROVE BY CLEAR AND CONVINCING**
18  **EVIDENCE THAT THE PATENT CLAIMS ARE INVALID.**

19        The Diffie-Hellman Patent claims are presumed to be valid as a

20  matter of law.   35 U.S.C. § 282.   To overcome this presumption,

21  RSADSI carries the burden of proving by clear and convincing

22  evidence that the claims are invalid.   <u>See</u>, <u>e.g.</u>, <u>American Hoist &</u>

23  <u>Derrick Co. v. Sowa & Sons, Inc.</u>, 725 F.2d 1350, 1360 (Fed. Cir.),

24  <u>cert. denied</u>, 469 U.S. 821 (1984).   The presumption shifts "the

25  burden of going forward as well as the burden of proof of facts to

26  the challenger."   <u>Avia Group Int'l, Inc. v. L.A. Gear California</u>,

27  853 F.2d 1557, 1562 (Fed. Cir. 1988) (affirming summary judgment

28  that defendant failed to prove patent invalidity).

1    Summary judgment should be granted if there are no genuinely

2   disputed issues of material fact.  Fed. R. Civ. P. 56.  Because

3   RSADSI carries the burden of proving that the patent claims are

4   invalid, RSADSI's failure to raise a genuine issue of material fact

5   in opposition to this motion requires entry of summary judgment in

6   favor of the defendants.  Celotex Corp. v. Catrett, 477 U.S. 317,

7   322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed. 265 (1986).[2]

8    "[A] nonmovant must do more than merely raise some doubt as to

9   the existence of a fact; evidence must be forthcoming from the

10   nonmovant which would be sufficient to require submission to the

11   jury of the dispute over the fact."  Avia Group, 853 F.2d at 1560.

12   "If the evidence [of the nonmovant] is merely colorable, or is not

13   significantly probative, summary judgment may be granted."  Anderson

14   v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511,

15   91 L.Ed.2d 202 (1986).  Here, RSADSI's evidence falls short.

16   **II.   RSADSI CANNOT CARRY ITS BURDEN OF PROVING INVALIDITY.**

17    The only invalidity defense to the Diffie-Hellman patent that

18   RSADSI has ever specifically articulated is a Section 102(b)

19   defense.  Under 35 U.S.C. § 102(b), a patent claim may be

20   invalidated if the claimed invention was "described in a printed

21   publication in this or a foreign country . . . more than one year

22   prior to the date of the application for patent in the United

23   States."  A document, to serve as a printed publication, must be

24   "generally available."  Northern Telecom, Inc. v. Datapoint Corp.,

25   908 F.2d 931, 936 (Fed. Cir.), cert. denied, 498 U.S. 920 (1990).

26   _____

27    [2]  Because a patent is presumed valid, the patentee has "no

28   obligation to introduce any evidence initially on validity."  Avia
    Group, 853 F.2d at 1562.

1    In its opposition to defendants' motion for preliminary

2  injunction, two of RSADSI's witnesses declared that the inventors

3  had presented material relating to the "New Directions" paper at a

4  conference.   [Exh. 12 (Ingemarrsen Decl. ¶¶ 4,8); Exh. 13 (Konnheim

5  Decl. ¶¶ 4-5)].   Two of RSADSI's witnesses testified that they had

6  obtained a draft of the inventors' paper more than one year prior to

7  the date of the patent application, and that they kept these drafts

8  confidential as the inventors understood they would.   [Exh. 14

9  (Blatman Decl. ¶¶ 3-4); Exh. 12 (Ingemarrsen Decl. ¶ 3); see also

10  Hellman Decl. ¶ 2, 4][3]   Even assuming it is all true and undisputed,

11  such testimony is not sufficient to satisfy the requirements of the

12  printed publication bar under 35 U.S.C. § 102(b).

13        **A. An Oral Presentation, Even Accompanied by Slides, Is
           Not a "Printed Publication" Under Section 102(b).**
14

15    Section 102(b) bars disclosure of an invention in a "printed

16  publication" more than one year prior to filing a patent

17  application.   Under the express language of the statute an oral

18  presentation of the invention is not prohibited in the least.[4]   As

19  RSADSI's counsel candidly admitted at the hearing on the preliminary

20  injunction, there is no legal precedent for imposing a statutory bar

21  ────────────────────

22    [3] A third declarant, Professor Konnheim, cannot even remember
     when he got the draft and thus provides no evidence that he received
23   the paper before the statutory bar date.

24    [4] Indeed, the Patent Office granted the patent claims after
     review of a patent office record that disclosed that the "New
25   Directions" paper had been presented at a conference more than one
     year prior to the date of the application.   The cover of the "New
26   Directions" paper, which was a part of the record in the patent
     examination, discloses that "portions of this work were presented at
27   the IEEE Information Theory Workshop, Lenox, MA, June 23-25, 1975
     and the IEEE International Symposium on Information Theory in
28   Ronneby, Sweden, June 21-24, 1976."   [Exh. 3]

1   based on the inventor's oral disclosures.   [Exh. 11 at 66:16-18 ("I

2   do not contend that the law says that mere oral presentations are

3   alone sufficient")]   Thus, conference presentations, speeches and

4   slide shows about an invention cannot violate the restrictions of

5   102(b).  Regents of the Univ. of California v. Howmedica, Inc., 530

6   F. Supp. 846, 860 (D.N.J. 1981), aff'd without op., 676 F.2d 687 (3d

7   Cir. 1982).

8        The Howmedica case is directly on point.   In Howmedica, the

9   inventors of an artificial knee presented a lecture and slides to at

10  least thirty persons at a conference of the California Medical

11  Association.   530 F. Supp. at 849-850.   The slides showed pictures

12  and drawings of the inventions, including the essential elements of

13  the patent claims.   Id. at 850.   However, there were no written

14  descriptions of the invention available at the lecture, and the

15  public did not have access to the slides themselves.   Id.   The Court

16  held that there had been no printed publication, reasoning that:

17              the projection of the slides at the lecture was
                limited in duration and could not disclose the
18              invention to the extent necessary to enable a
                person of ordinary skill in the art to make or
19              use the invention.   In this regard, it is
                important to note that the public did not have
20              access to the slides prior to the critical date,
                and that no prints of the slides were made prior
21              to said date.   Therefore, there is no evidence
                that the "publication" was disseminated or
22              otherwise made available to the extent that
                persons interested in the information could
23              locate it and put to use the essentials of the
                claimed invention.
24

25        Id. at 860.

26        The facts here, even according to the witnesses presented by

27  RSADSI in opposition to defendants' motion for preliminary

28

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                              7                        pa120286

1   injunction, are virtually identical to the facts in <u>Howmedica</u>.

2   Although RSADSI's declarants claim to have seen a slideshow with

3   transparencies, neither one requested or received copies of

4   transparencies.  [Exh. 13 (Konheim Decl. ¶ 5); Exh. 12 (Ingemarsson

5   Decl. ¶¶ 5, 9)].  The inventors did not make the slides available

6   during or after the presentations.  [Hellman Decl. ¶ 3; Exh. 10

7   (Diffie Depo. at 47:2-7)].  As in <u>Howmedica</u> there is no evidence

8   that the inventors made a printed copy of their paper available at

9   any of the presentations.[5]  [Exh. 14 (Blatman Decl. ¶ 6); Hellman

10  Decl. ¶ 3; Exh. 10 (Diffie Depo. at 45:25-46-3; 82:10-11)].  As in

11  <u>Howmedica</u>, these facts cannot establish a "printed publication."

12        **B. Restricted Distribution of Drafts Cannot Constitute a**
          **"Printed Publication" Under Section 102(b).**

13

14      To establish that an August draft of the "New Directions" paper

15  was a "printed publication," RSADSI must show by clear and

16  convincing evidence that it was "generally available" such that

17  "anyone could have had access to the documents by the exercise of

18  reasonable diligence."  <u>Northern Telecom, Inc. v. Datapoint Corp.</u>,

19  908 F.2d 931, 936-37 (Fed. Cir.), <u>cert. denied</u>, 498 U.S. 920 (1990)

20  (distribution of 50 copies of a paper did not constitute publication

21  when it was distributed under the understanding that copies would

22  not be disseminated and where members of public did not have direct

23  access to the document).  In considering whether a document

24  _____

25      [5] These facts clearly distinguish this case from <u>Massachusetts
Institute of Technology v. AB Fortia</u>, 774 F.2d 1104 (Fed. Cir.

26  1985), the only case on which RSADSI relies.  In <u>Fortia</u>, the
invention was not only presented orally at a conference, the

27  inventors (1) announced that a final paper existed that disclosed
the invention and (2) distributed the paper at the conference

28  "without restriction."  774 F.2d at 1109.

1    constitutes a publication under 35 U.S.C. 102(b), "the touchstone is

2    public accessibility."  In re Bayer, 568 F.2d 1357, 1359 (C.C.P.A.

3    1978); see also Aluminum Co. of America v. Reynolds Metals Co., 14

4    U.S.P.Q.2d 1170, 1172-73 (N.D. Ill. 1989).  "Limited distribution .

5    . . even to those skilled in the art, does not amount to

6    'publication' under the statute unless the material is otherwise so

7    situated that 'anyone who chooses may avail himself of the

8    information it contains.'"  Solarex Corp. v. Arco Solar, Inc., 121

9    F.R.D. 163, 176 (E.D.N.Y. 1988), aff'd, 870 F.2d 642 (Fed. Cir.

10   1989) (citations omitted).

11        Accordingly, it has long been recognized that limited

12   circulation of a printed paper to friends or colleagues for

13   their review is not a "publication."  Preemption Devices,

14   Inc. v. Minnesota Min. & Mfg. Co., 732 F.2d 903, 906 (Fed. Cir.

15   1984) (dissemination of six copies of brochure to a friend was

16   not "publication" under § 102(b)); Bayer, 568 F.2d at 1361

17   (dissemination of thesis to three members of dissertation

18   committee was not a "publication" under § 102(b)); National

19   Semiconductor Corp. v. Linear Technology Corp., 703 F. Supp.

20   845, 848-49 (N.D. Cal. 1988) (conference articles submitted to

21   IEEE for review was not a "publication" under § 102(b)); Ex

22   Parte Gould, 231 U.S.P.Q. 943, 948 (Bd. Pat. App. & Int. 1986)

23   (distribution of preprint of paper to personnel at Bell labs

24   and elsewhere insufficient to bar patent under § 102(b));

25   Solarex, 121 F.R.D. at 176 (referee's dissemination of paper to

26   colleagues about the merits of the paper does not constitute a

27   printed publication under § 102(b)).

28

1    A paper in restricted circulation is not a "publication"

2  because it is not publicly accessible.  Gould, 231 U.S.P.Q. at

3  947-48.  That is true even where, as here, the restrictions are

4  understood, and not explicit.  Aluminum Co., 14 U.S.P.Q.2d at

5  1171 ("understood, even though silent, limitation on access can

6  be every bit as effective as an express one"); see also

7  National Semiconductor, 703 F.Supp. at 849 (implicit

8  confidentiality).

9    The evidence in this case simply does not measure up to

10  evidence of a printed publication under these authorities.  The

11  inventors circulated a small number of drafts of the "New

12  Directions" paper to colleagues based on a recognized under-

13  standing that the drafts would be maintained in confidence.

14  [Hellman Decl. ¶ 4; Exh. 14 (Blatman Decl. ¶¶ 3-4)][6]  RSADSI

15  presents no evidence to the contrary.

16    Although RSADSI's first declarant, Mr. Blatman, confirmed

17  that he received a copy of a draft of the "New Directions"

18  before the critical date, he testified that

19        It was my practice not to distribute papers
          received from a colleague without first
20        obtaining the author's permission.  In this
          case, I never asked Mr. Diffie for his
21        permission to further distribute the August
          Paper.  I have never given a copy of the August
22        Paper to anyone else.

23

24

25

26
    _____

27    [6] Blatman, who says that he received a copy of the paper
    unsolicited, was a close colleague of Diffie's, with whom Diffie had
28  previously shared draft papers.  [Exh. 10 (Diffie Dep. at 26:24-
    27:18)]

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                    10                    pa120286

1    [Exh. 14 (Blatman Decl. ¶¶ 3-4)] Compare Aluminum Co., 14

2    U.S.P.Q.2d at 1172-73 (no evidence that any of the 33

3    recipients of paper gave away a copy or shared its contents).

4        RSADSI's second declarant, Mr. Ingemarsson, declared that

5    he received a copy of a draft paper in his capacity as an IEEE

6    reviewer.  [Exh. 12 (Ingemarsson Decl. ¶¶ 3, 8)]  In this

7    capacity, he was indisputably obligated to keep the paper

8    confidential.  See National Semiconductor, 703 F. Supp. at 848-

9    49.

10       RSADSI's third declarant, Professor Konheim (also RSADSI's

11   paid expert), could not recall when he received a copy of the

12   draft paper.  [Exh. 13 (Konheim Decl. ¶ 7)].  His declaration

13   provides no evidence whatsoever that there was a publication

14   before the critical date, only that there "could have" been.

15   As the Court recognized in Aluminum Co., such evidence is

16   insufficient to shoulder the burden of proving publication by

17   clear and convincing evidence:

18           Even when all genuine disputes are resolved in
             Reynolds' favor, as they must be on ALCOA's
19           motion, Reynolds' proof comes up short. . . . .
             [T]he best evidence Reynolds has produced
20           suggests only that the letter might have been
             accessible.  . . . More importantly, however,
21           the relevant question is not what "could have"
             been done, but what actually was done.  Even if
22           the "could have" statements are credited, they
             do not prove Reynolds' case.
23

24   14 U.S.P.Q.2d at 1173 (emphasis in original).

25       RSADSI's best evidence, gleaned after months of investi-

26   gation, is insufficient as a matter of well-established law to

27   prove the inventions were disclosed in a printed publication

28   before the critical date.  RSADSI's counsel conceded as much at

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                              11                        pa120286

1   the preliminary injunction hearing, admitting that RSADSI's

2   argument requires at least "an extension of district court

3   cases." [Exh. 11 at 28:14-15] In fact, RSADSI's argument is

4   not an "extension" of the existing law, it is contrary to it.

5   The authorities explicitly permit oral presentations and

6   restricted circulation of draft papers to colleagues. These

7   acts do not constitute a "printed publication" and cannot

8   invalidate the patent claims.

9                          **CONCLUSION**

10      The law governing this Court's examination of the 102(b)

11  defense that RSADSI raises is unambiguous: to be a "printed

12  publication" the invention must be described in a printed form that

13  is generally available to the audience of interested persons.

14  RSADSI has acknowledged that its best evidence would require the

15  Court to change the express statutory language and ignore precedents

16  to prohibit actions that the current law allows. This Court must

17  reject this invitation, and rule that RSADSI's evidence is

18  insufficient to defeat summary judgment.

19      RSADSI cannot point to any genuine issue of material fact to

20  support any of its allegations that the Diffie-Hellman patent claims

21

22

23

24

25

26

27

28

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                    12                    pa120286

1   are invalid.  Summary judgment should be entered against all of

2   RSADSI's claims and defenses based upon those allegations.

3        Dated: July 31, 1996

4                                    MORRISON & FOERSTER LLP
                                     ALSTON & BIRD

5

6                                    By: _____

7                                        Karl J. Kramer

8                                    Attorneys for Defendants/
                                     Counter-Claimants CYLINK
9                                    CORPORATION, CARO-KANN
                                     CORPORATION and STANFORD
10                                   UNIVERSITY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUMMARY JUDGMENT MOTION:
DIFFIE-HELLMAN PATENT VALIDITY
C-96-20094 SW                            13                          pa120286