Roger Schlafly, Pro Se
PO Box 1680
Soquel, CA  95073
telephone: (408) 476-3550

FILED
SEP 25  3 15 PM '96
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

In the United States District Court
for the Northern District of California

ROGER SCHLAFLY, Plaintiff ) Case C-94-20512 SW PVT
  v. )
PUBLIC KEY PARTNERS, and ) Memo on Claim Construction
RSA DATA SECURITY INC., Defendants. ) Jury Instructions
 )
  and )
 )
RSA DATA SECURITY INC., Plaintiff ) Case C-96-20094 SW PVT
  v. )
Cylink, Caro-Kann, and Stanford ) Sept. 30, 1996

This memorandum is in support of my jury instructions regarding claim construction, and critical of those offered by Cylink and RSADSI.

MEMO CLAIM CONSTRUCT JURY INSTRUCT                                          page 1

Schlafly Instructions

The definition of "key generator" is important because it has a direct bearing on whether RSA key transmittal reads on Diffie-Hellman claim 1. From the specification and file history, it is clear that the invention is a method for generating a new key, not transmitting an existing key.

The term "computationally infeasible" is crucial for understanding the scope and validity of Hellman-Merkle claims 1-6. The specification defines it using the phrase "existing computational methods and equipment". It is clear enough that "equipment" means general-purpose digital computers of a speed and capacity that was available in 1977. But it is a little ambiguous as to what is meant by "methods". It could refer to the low-level computer methods that were available in 1977, such as using computer processors to add numbers by loading them into registers, using memory devices to store intermediate results, using compilers and operating systems to translate and execute a program, etc. Or it could refer to high-level algorithms that might be used to attack the cryptosystem. The former interpretation is consistent with common usage of the term "infeasible" in computational complexity theory, which the inventors specifically rely on in the patent and in their cited papers. The latter interpretation would be rather bizarre in terms of either patent law or usage in the art, because it refers to the state of the world's knowledge. Researchers in complexity theory try to prove theorems about what is or is not possible to compute, not about what we know how to compute.

Likewise, a patent claim should serve as an objective notice to the world about what is the boundary of the invention, and should not depend on extrinsic knowledge or the lack thereof.

Here is an example of this type of claim construction confusion. Suppose I invented an extraordinarily strong rope, and patented it by claiming an "unbreakable rope". The examiner would be very unlikely to allow such a claim because claiming a negative in this way is almost always considered "indefinite", but suppose for the sake of argument that I defined unbreakable in the specification as meaning that no one knows how to break it, and the patent office allows the patent. Then interpreting the scope of the claim becomes rather silly. My rope might only satisfy the claim because it was kept secret during patent prosecution, and no one knew how to break it because no one knew about it. Likewise, I might argue that a competitor's product infringes, whether it can be broken or not, just because it is a new product and therefore no one knew how to break it at the time of my patent application. The courts would surely find such a claim interpretation to be indefinite. (More reasonable claims for such a rope would be in terms of the quantity of force required to break it.)

When there are two possible claim interpretations, a valid one is to be preferred over an invalid one. Therefore, I believe the latter interpretation of "infeasible" (depending on world knowledge, described above) should be rejected because it leads to indefinite claims.

(I am hoping that the meaning of "infeasible" will become clearer after the tutorial and expert testimony, so I will not elaborate further here.)

Cylink Instructions

Cylink instruction no. 2 overstates the law. The obvious exceptions to its general rule are the means-plus-function claims, step-plus-function claims, and the reverse doctrine of equivalents. Since only one of these exceptions is detailed in Cylink's instructions, I believe that no. 2 is misleading. The statement in instruction no. 1 makes the point adequately.

The definitions in instruction no. 3 are all reasonably consistent with the specification. My inclination is to let Cylink define these terms, because I believe that the Hellman-Merkle claims are invalid anyway, no matter how the claims are interpreted. If the claims are interpreted broadly, then the "Multiuser" paper is invalidating prior art under 35 USC 102(b). If "infeasible" is defined narrowly, then the patent is not enabled and invalid under 35 USC 112-1. If we use a contorted definition which includes the trapdoor knapsack and not "Multiuser", then the claims are indefinite under 35 USC 112-2.

I am not waiving my invalidity attacks by conceding these definitions, but rather seeking to avoid retrying patent validity under different definitions. For example, the Federal Circuit might say on appeal that the patents were correctly found to be

MEMO CLAIM CONSTRUCT JURY INSTRUCT                                page 4

invalid under the Judge's claim construction, but remand the case anyway for validity analysis under some other claim construction. The chances of this are minimized if this Court uses a claim construction close to what Cylink requests.

The main ambiguities in Cylink's definitions are in connection with "key generator" and "computationally infeasible", as argued above. I would like to come out of the Markman hearing with a more precise meaning for these two terms.

My only minor quibble with Cylink's definitions is the distinction between technology and "ordinary life". For some of us, there is not much of a distinction. (This is a joke!)

Cylink's instructions 4 and 5 contain fairly accurate statements of the means-plus-function law under 35 USC 112. My main disagreement with Cylink is that RSADSI and I contend that the method claims at issue are step-plus-function claims, and subject to the same 35 USC 112 limitations.

RSADSI Instructions

RSADSI's jury instructions seem rather long and complicated, but most of its document consists of a recitation of the support in the patent specifications for the claimed elements of the inventions. Based on a Sept. 16 meeting of the parties, I expect that we will be able to stipulate nearly all of this in a separate document.

The biggest difference between the Cylink and RSADSI instructions is in the interpretation of 35 USC 112-6,

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

RSADSI argues that all of the claims are subject to the limitations of 112-6, and that the jury should have its attention drawn to specific embodiments so that it will interpret the range of equivalents narrowly.

Cylink argues that the method claims at issue are not subject to 112-6 limitations. It prefers to give a blanket instruction on how 112-6 applies to apparatus claims.

RSADSI's claim construction is a little narrower than I would argue, but since RSADSI is on my side, I will let RSADSI argue it with Cylink.

Possible Compromise

The obvious compromise is to let Cylink define the terms, with ambiguities clarified as necessary; stipulate the structures and acts in the specifications supporting the claims; and use textbook

MEMO CLAIM CONSTRUCT JURY INSTRUCT                          page 6

language to explain the legal effect of claims, 112-6, equivalence, etc.

The one legal issue where we cannot compromise is whether the method claims (eg, Hellman-Merkle claim 1) are subject to the limitations of 35 USC 112-6. My position is that Diffie-Hellman claims 1-7 and Hellman-Merkle claims 1-6 are all subject to 35 USC 112-6 limitations. We will need the Court to rule on this point.

I will be urging the Court to construe the claims as precisely as possible. It will simplify the later arguments on validity and infringement.

Dated:   Sept. 24, 1996

By: _____/signature/_____

Plaintiff, Roger Schlafly, Pro Se

MEMO CLAIM CONSTRUCT JURY INSTRUCT

```
                    CERTIFICATE OF SERVICE
 1                  ======================

 2  Schlafly v. Public Key Partners and RSA Data Security Inc.
    Case No. C-94-20512-SW, (PVT).
 3  Filed on July 27, 1994, San Jose, Calif.

 4  The undersigned hereby certifies that he caused a copy of:

 5          Memo on Claim Construction Jury Instructions

 6  to be served this date by First Class Mail upon the

 7  persons at the place and address stated below which is

 8  the last known address:

 9          Thomas R. Hogan
            60 S Market St Ste 1125
10          San Jose, CA 95113

11          Jana G. Gold
            Morrison et al
12          755 Page Mill Rd
            Palo Alto, CA 94304
13
            Robert D. Fram
14          Heller et al
            525 University Ave
15          Palo Alto, CA 94301

16  and to be emailed to the following:

17          Patrick Flinn, pflinn@alston.com
            Jana Gold, jgold@mofo.com
18          Karl J. Kramer, kkramer@mofo.com
            Robert Haslam, rhaslam@hewm.com
19
    I declare under penalty of perjury under the laws of the State
20
    of California that the foregoing is true and correct.
21
    Executed in Soquel, Calif. at the date below.
22

23
    Dated:     Sept. 24, 1996
24

25  By: _____

26  Plaintiff, Roger Schlafly, Pro Se

27

28
```