

ORIGINAL

1  ROBERT T. HASLAM (Bar No. 071134)
   ROBERT D. FRAM (Bar No. 126750)
2  SARAH  E. MITCHELL (Bar No. 187053)
   HELLER EHRMAN WHITE & McAULIFFE
3  525 University Avenue
   Palo Alto, California  94301-1900
4  Telephone (415) 324-7000

**FILED**

JUL 23 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

268 cy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROGER SCHLAFLY, | Case No. CV-94-20512-SW (EAI) |
| Plaintiff, | |
| v. | DECLARATION OF SARAH E. MITCHELL IN SUPPORT OF RSA DATA SECURITY, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NON-INFRINGEMENT CLAIM |
| PUBLIC KEY PARTNERS, a partnership, and RSA DATA SECURITY, INC., a California corporation, | |
| Defendants. | |

I, Sarah E. Mitchell, declare:

1.    I am an attorney at HELLER EHRMAN WHITE & McAULIFFE and

counsel of record for Defendant RSA DATA SECURITY, INC. ("RSA")

herein and I have personal knowledge concerning the facts set

forth below.  If called upon to testify, I would and could testify

competently thereto.

2.    The exhibits attached hereto are excerpts from the

prosecution history of United States Patent No. 4,405,829 [the RSA

Patent].

3.     Attached hereto as Exhibit A is a true and correct copy of an Office Action of the United States Patent and Trademark Office dated December 15, 1978.

4.     Attached hereto as Exhibit B is a true and correct copy of an amendment that was filed with the United States Patent and Trademark Office dated May 15, 1979.

5.     Attached hereto as Exhibit C is a true and correct copy of the United States Patent and Trademark Office Examiner's Interview Summary Record dated August 6, 1979.

6.     Attached hereto as Exhibit D is a true and correct copy of an Office Action of the United States Patent and Trademark Office dated August 6, 1979.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on July 23, 1997, at Palo Alto, California.


*Sarah E Mitchell*

Sarah E. Mitchell

Declaration of Sarah E. Mitchell in Support of RSA DATA SECURITY, INC'S
Motion for Summary Judgment
Case no. CV-94-20512-SW (EAI)

2

A

PAPER NO. 5



**U.S. DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

**MAILED**
DEC 15 1978

[ ...ronald L. Rivest, et. al.
...   11/14/77   960,586 ]

Arthur A. Smith, Jr.
Mass. Institute of Technology
Room E19-702
Cambridge, Mass.   02139

THIS IS A COMMUNICATION FROM THE EXAMINER
IN CHARGE OF YOUR APPLICATION.

COMMISSIONER OF
PATENTS AND TRADEMARKS

☑ This application has been examined.

☐ Responsive to communication filed on _____ .

☐ This action is made final.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE _____ 3 _____ MONTH(S)
_____ DAYS FROM THE DATE OF THIS LETTER.

FAILURE TO RESPOND WITHIN THE PERIOD FOR RESPONSE WILL CAUSE THE APPLICATION TO BECOME ABANDONED.
35 U.S.C. 133

**PART I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited, Form PTO—892.     2. ☐ Notice of Informal Patent Drawing, PTO—948.

3. ☐ Notice of Informal Patent Application,     4. ☐
     Form PTO—152

**PART II   SUMMARY OF ACTION**

1. ☑ Claims _____ 1-33 _____ are pending in the application.

     Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____ 1-33 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ The formal drawings filed on _____ are acceptable.

8. ☐ The drawing correction request filed on _____ has been ☐ approved.
                                                                              ☐ disapproved.

9. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has
     ☐ been received.                    ☐ been filed in parent application:
     ☐ not been received.                serial no. _____ filed on _____

10. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the
      merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11, 453 OG. 213.

11. ☐ Other

Form PTO 326 (rev. 11/77)

CYL-F 000076

FORM PTO 46-59
(3-77) Formerly PTO-1142

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

PART III | SERIAL NUMBER 86-C,586 | GROUP ART UNIT 222

## NOTIFICATION OF REJECTION(S) AND/OR OBJECTION(S) (35 USC 132)

| | CLAIMS (11) | REASONS FOR REJECTION (12) | REFERENCES (13) | INFORMATION IDENTIFICATION AND COMMENTS (14) |
|---|---|---|---|---|
| 1 | 1-33 | 35 USC 101 | R | TAKEN IN LIGHT OF THE PRIOR ART PUBLIC KEY TEACHINGS OF (R), THE INSTANT INVENTION AS CLAIMED LIES IN A PARTI-CULAR ALGORITM WHICH IS EMPLOYED TO IMPLEMENT THE PUBLIC KEY CRYPTOGRAPHY SCHEME. WHERE THE INVENTION LIES IN THE ALGORITHM (and before in this) |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| 5 cont'd | AS THE CLAIMS DEFINE, THE SAME DOES NOT FALL WITHIN THE STATUTORY CATEGORIES OF INVENTION DEFINED BY 35 USC 101, AS IN PARKER V FLOOK, 198 USPQ 193, A~ GOTTSCHALK v BENSON, 175 USPQ 673. |
| 6 | APPLICANT'S CITATIONS OF PRIOR ART HAVE BEEN CONSIDERED AND THOSE FELT TO BE PERTINENT HAVE BEEN MADE OF RECORD. |

* Capital letters representing references are identified on accompanying Form PTO 46-42. (Formerly PTO-892)
The symbol "." between letters represents - in view of -.
The symbol "+" or "&" between letters represents + and +.
A slash "/" between letters represents the alternative - or -.

NOTE: Sections 100, 101, 102, 103, and 112 of the Patent Statute (Title 35 of the United States Code) are reproduced on the back of this sheet.

EXAMINER | TEL. NO. (703) -557- 2877

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

-2-

CYL-F 000077

TO SEPARATE HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISC   CARBON

| | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER | |
|---|---|---|---|---|---|
| | | 860,586 | 222 | | 5 |

### NOTICE OF REFERENCES CITED

APPLICANT (S)   RIVEST ET AL

#### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 3,657,476 | 4-72 | Aiken | 178 | 22 | |
| B | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

#### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB CLASS | PERTINENT SHT DWG | PP SPEC |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

#### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | "New Directions in Cryptography", Diffie et al, IEEE Transactions on Information Theory, Vol IT-22, no. 6, Nov. 1976, p644-654, again 178/22 |
| S | "Theory of Numbers", Stewart, MacMillan Co, 1952, p133-135 |
| T | Diffie et al, "Multi User Cryptographic Techniques", AFIPS-Conference proceedings, Vol. 45, p109-112, June 8, 1976, 178/22 |
| U | |

| EXAMINER | DATE | |
|---|---|---|
| Howard A. Birmiel | 12/3/78 | |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

CYL-F 000078

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

```
----------------------------------------
In the matter of the application of     :
                                        :
Ronald L. Rivest, Adi Shamir and        :
Leonard M. Adleman                      :
                                        :       Examiner:  H.A. Birmiel
Serial No:  860,586                     :
                                        :
Filed:  December 14, 1977               :       Group Art Unit:  222
                                        :
For:  CRYPTOGRAPHIC COMMUNICATIONS      :
      SYSTEM AND METHOD                 :
----------------------------------------
```

RECEIVED

MAY 23 1979

GROUP 220

AMENDMENT A

Hon. Commissioner of Patents
Washington, D.C.  20231

Dear Sir:

This paper is responsive to the Office Action of December 15, 1978.  Please amend the above-referenced application as follows:

IN THE CLAIMS:

Add the following claims:

34.  A system according to claims 1 or 2 or 3 or 4 or 5 or 6 or 7 or 8 or 9 or 10 or 11 or 12 or 13 or 14 or 15 or 16 or 17 or 28 or 29 or 30 wherein at least one of said transforming means comprises:

a first register means for receiving and storing a first digital signal representative of said word-to-be-transformed,

a second register means for receiving and storing a second digital signal representative of the exponent of the equivalence relation defining said transformation,

a third register means for receiving and storing a third digital signal representative of the modulus of the equivalency relation defining said transformation, and

-2-

an exponentiation by repeated squaring and multiplica-
tion network coupled to said first, second and third register
means, said network including:

A.  an output register means for receiving and storing
    a first multiplier signal and for applying said
    first multiplier signal to a first multiplier input
    line,

B.  selector means for successively selecting each of
    the bits of said second digital signal as a
    multiplier selector signal,

C.  means operative for each of said multiplier selec-
    tor signals for selecting as a second multiplier
    signal either the contents of said output register
    means or the contents of said first register means,
    and for said second applying multiplier signal to a
    a second ultiplier input line, said selection being
    dependent on the binary value of the successive
    bits of said second digital signal, and

D.  modulo multiplier means operative in step with said
    selector means and responsive to said first and
    second multiplier signals on said first and second
    multiplier input lines for successively generating
    first multiplier signals and for transferring said
    first multiplier signals to said output register
    means, said first multiplier signal initially being
    representative of binary 1, and thereafter being
    representative of the modulo product of said first
    and second multiplier signals, where the modulus of
    said modulo product corresponds to said third digi-
    tal signal.

-7-

CYL-F 000084

35.   A method according to claims 18 or 19 or 20 or 21 or 22 or
23 or 24 or 25 or 26 or 27 or 31 or 32 or 33 wherein at least one
of said transforming means comprises the steps of:

receiving and storing a first digital signal in a first
register, said first digital signal being representative of said
word-to-be-transformed,

receiving and storing a second digital signal in a
second register, said second digital signal being representative
of the exponent of the equivalence relation defining said trans-
formation,

receiving and storing a third digital signal in a third
register, said third digital signal being representative of the
modulus of the equivalency relation defining said transformation,
and

exponentiating said first digital signal by repeated
squaring and multiplication using said second and third digital
signals, said exponentiating step including the substeps of:

A.   receiving and storing a first multiplier signal in
an output register, and applying said first
multiplier signal to a first multiplier input line,

B.   successively selecting each of the bits of said
second digital signal as a multiplier selector, and

C.   for each of said multiplier selectors, selecting as
a second multiplier signal either the contents of
said output register or the contents of said first
register, and for applying said second multiplier
signal to a second multiplier output line, said
selection being dependent on the binary value of
the successive bits of said second digital signal,

D.   for each of said multiplier selectors, generating

-7-

CYL-F 000085

said first multiplier signal in a modulo
multiplier in response to the first and second
multiplier signals on said first and second
multiplier input lines, and for transferring said
generated first multiplier signal to said output
register, said first multiplier signal initially
being representative of binary 1 and thereafter
being representative of the modulo product of said
first and second multipliers, where the modulus of
said modulo product corresponds to said third digi-
tal signal.

REMARKS:

The applicants' attorney gratefully acknowledges the
Examiner's efforts extended at the interview of March 2, 1979.

Initially, it is noted that new claims 34 and 35 have
been added.  These claims are directed to cover applicants'
invention in the form shown in Fig. 3.  As agreed to by the
Examiner at the interview, Fig. 3 clearly has sufficient hardware
to support allowable claims.  Accordingly, it is submitted that
claims 34 and 35 are at least allowable combined with the claims
from which they depend.

In the Office Action, all of claims 1-33 were rejected
under 35 U.S.C. 101 as being directed to non-statutory subject
matter.  Issue is taken with that position.

In the rejection, the Examiner states that "the present
invention as claimed lies in a particular algorithm which is
employed to implement the public key cryptography scheme of
Diffie and Hellman (reference P).  However, there are no mathe-
matical algorithms in the applicants' claims.

The expressions in the applicants' claims which include

-8-

the symbol "≡" denote the well-known equivalence relation:
congruence modulo m, for integers.  The symbol "≡" merely is a
shorthand notation (invented by Gauss in 1801) for expressing
this equivalence relation to relate sets of numbers shown on
either side of that symbol, in effect establishing a set of con-
ditions between the related integers, or signals representative
thereof.  In Van Norstrand's Scientific Encyclopedia (Van
Norstrand Reinhold Company, 1976, page 64), this equivalence
relation is defined as follows:

> Two elements a, b of a ring are
> congruent modulo m, written
> a ≡ b (mod m), if there exist
> elements p, q, r in the ring
> such that a = mp+r, b = mq+r

Also see Stewart, B.M., Theory of Numbers, MacMillan Company, New
York, 1952, pages 111, 112 (copy enclosed).  Thus, the symbol "≡"
is a symbol for "congruence", not arithmetic or mathematical
"equality", and the fact that the equivalence relation of the
form

$$A \equiv B^C (\bmod\ n)$$

is in the claims does not introduce a mathematical formula or
algorithm to the claims but rather describes a relationship
between two signals, e.g. the message and ciphertext.  More par-
ticularly, in the applicants' claims, the message M and the
ciphertext C are related by the transformation performed by the
encoding means and the ciphertext C is related to the receive
message word M' by the transformation performed by the decoding
emans.  The claims include a description of these relationships,
but do not specify any algorithms for effecting the transfor-
mations.

It should be noted that there may be many algorithms

-4-

86

CYL-F 000087

which may be used to obtain the various terms for the relation.
For example, the "exponentiation by repeated squaring and
multiplication" approach shown by applicants' in the preferred
embodiment is but one way of finding terms satisfying the
relation.  However, applicants do not claim any particular
algorithms.  In fact, any algorithms which may be used in
practicing applicants' invention may readily be used in other
applications without being covered by the applicants' claims.

Thus, the applicants' claimed invention does not "lie
in an algorithm" which is employed to implement the Diffie and
Hellman scheme, as characterized by the Examiner, but rather
resides in a step of or means for transforming an input signal to
an output signal in a communications system so that the output
signal is related to the input signal by the specified equiva-
lency relation, regardless of the particular technique or
algorithm employed in performing that transformation.

Moreover, it appears that the §101 rejection would not
have even come into play in this case if the expressions of the
equivalency relation were not present.  This may be seen if it is
assumed for the moment that the encoding and decoding (i.e.
transforming) means of claim 1 were simple transformation means,
for example, digital complimenting or inverter circuits.  Then,
the claim could have the form:

A cryptographic communications system comprising:

   A.   a communications channel

   B.   an encoding means coupled to said channel
        including means for digitally <u>inverting</u>
        a transmit message word M to form a
        ciphertext word C and for transmitting
        C on said channel

   C.   a decoding means coupled to said channel
        and adapted for receiving C from said

-9-

/

CYL-F 000088

channel and for <u>inverting</u> C to form a
receive message <u>word Ħ'</u>.

This hypothetically claimed system has three basic elements:  a
communication channel and two inverters coupled thereto.  The
inverters perform a "mathematical transformation" on the signal
applied to them.  There is no algorithm specified for performing
the inversion, but only a requirement that the ciphertext be
related to the message by the complementing relation.

Assuming that digital complementing was a suitable
transformation for the invention, and that the claimed structure
satisfied 102 and 103, then there would be no question that the
claims would be allowable.  Section 101 would quite properly not
come into play since there are merely three interconnected hard-
ware elements.  In the present case, the encoding and decoding
means are merely somewhat more complex building blocks than
inverter circuits, where each block performs a transformation on
input signals applied to the block.  As in the hypothetical
claim, there is no particular formula or algorithm specified for
the transformation in the applicants' claims--only that the
resultant signal be related to the input signal by the stated
equivalency relation.

The applicants merely use such a building block.  While
at the present time there may not be any single chip implemen-
tations of that building block available, the block may be
readily built by those skilled in the art, for example by merely
implementing the circuit shown in Fig. 3.  The applicants by
their claims certainly do not preempt the transformation per-
formed by the building block.  For these reasons, the Examiner's
position that the claimed invention "lies in a particular
algorithm" is incorrect.  Accordingly, the rejection should be

-8-

2

CYL-F 000089

reconsidered and withdrawn.

It is also noted that the rejection was applied against claims 1-17 and 28-30 which are system claims, as well as claims 18-27 and 31-33 which are method claims.

Regarding the method claims 18-27 and 31-33, the Examiner stated that the "invention as claimed lies in a particular algorithm . . .", citing Parker v. Flook, 198 U.S.P.Q. 193 and Gottschalk v. Benson, 175 U.S.P.Q. 673. The Examiner appears to use the term "algorithm" synonymously with the term "mathematical formula" found, for example, in the Benson case. The present invention, as claimed, does not fall within the proscribed subject matter of the Benson case, because it does not seek to patent a mathematical formula, and hence does not seek to patent an "algorithm" within the definition of mathematical formula set forth by Benson and Flook. As noted above, the claims 18-27 and 31-33 do not claim mathematical formulae but merely include expressions of an equivalence relation to pose conditions (expressed in Gauss' shorthand notation) on the claimed transformations.

The Court in Flook noted that "the only novel feature of the method is a mathematical formula", 198 U.S.P.Q. at 195. The Court goes on to state in footnote 1 on page 195 that "we use the word "algorithm" in this case as we did in Gottschalk v. Benson, ..., to mean "a procedure for solving a given type of mathematical problem...". The subject matter claimed in the present case is neither a procedure for solving a mathematical problem, nor a hitherto unknown mathematical formula or a sequence of such mathematical formulae, but is instead the application of one or more process steps to establish cryptographic communications and to provide authentication of digital messages.

-9-

CYL-F 000090

While some of these steps may be, and in fact are, expressed in part with an equivalence relation (i.e. using Gauss' shorthand notation), that fact does not implicate that those steps are claims to a mathematical formula or algorithm. In the present case, the applicants' claimed steps do not claim a mathematical formula or algorithm. This may be better seen if, for example, lines 13 and 14 of claim 18 were changed from "whereby C ≡ M$^e$ (mod n)" to an equivalent form which reads "by selecting C so that the difference between C and the $e$th power of M is an integer multiple of n." Clearly, there is no "algorithm" in this form of the claim. It does not matter how C is selected. For example, C may be selected by "trial-and-error", or alternatively by "exponentiation-by-repeated-squaring" (as in the applicants' preferred embodiment) or some other method. The exponentiation-by-repeated-squaring approach is of course considerably more efficient in terms of hardware implementation. But is is important to note that <u>the claims are independent of any particular method (or algorithm)</u> for finding the terms to satisfy the relation. All that matters is that these terms be found -- by any method or algorithm. This same reasoning is applicable to all of claims 1-33. Thus, the claimed invention is not a proscribed "algorithm" within 35 U.S.C. 101.

The CCPA cases which have evolved in the face of <u>Benson</u> and <u>Flook</u> (and which have not been reversed), cases such as <u>In re Chatfield</u>, 191 USPQ 730 (CCPA 1976), <u>In re Freeman</u>, 197 USPQ 464 (CCPA 1978), and <u>In re Johnson</u>, <u>et al.</u>, 200 USPQ 199 (CCPA 1978), clearly support the proposition that the invention claimed herein is patentable under 35 U.S.C. 101. The Johnson decision (which was handed down after the Office Action herein) is particularly informative since it follows (in time and substance) the <u>Flook</u>

-9-

decision.   In <u>Johnson</u>, the CCPA states:

> "[I]t is clear after Flook that
> the board's conclusion that patent
> protection is proscribed for all
> inventions algorithmic in character
> is overbroad and erroneous."
> (200 USPQ at 205)

The CCPA in <u>Johnson</u> further went on to solidify the
definition of an algorithm, citing Chatfield, wherein they
stated:

> "The Supreme Court carefully
> supplied a definition of the par-
> ticular algorithm before it, i.e.,
> [a] procedure for solving a given
> type of mathematical problem.
>
> "The broader definition of
> algorithm is a step-by-step pro-
> cedure for solving a problem or
> accomplishing some end.... It is
> axiomatic that inventive minds seek
> and develop solutions to problems
> and step-by-step solutions often
> attain the status of patentable
> invention.  It would be unnecessarily
> detrimental to our patent system to
> deny inventors patent protection on
> the sole ground that their contribution
> could be broadly termed an 'algorithm'."
> (200 USPQ at 206-207)

The CCPA then went on to review the two step analytical
approach taken in <u>Freeman</u> to determine whether or not the claims
before it were patentable.  The Court of Customs and Patent
Appeals in <u>Freeman</u> dealt with method claims similar in form to
the method claims rejected in the present case.  The CCPA's ana-
lysis in that decision is directly applicable here.  In <u>Freeman</u>,
the Court set forth a two-step analysis for determination of
whether a claim is directed to non-statutory subject matter as a
whole, in light of Benson:

> "First, it must be determined
> whether the claim directly or

-16-

CYL-F 000092

indirectly recites an 'algorithm'
in the Benson sense of that term,....

"Second, the claim must be further
analyzed to ascertain whether in
its entirety it wholly preempts that
algorithm."  (197 USPQ at 471)

In _Freeman_, the Court noted that every process may be
characterized as a "step-by-step procedure...for accomplishing
some end" and that therefore, it would be "absurd" to interpret
the Supreme Court's view as encompassing all such processes.
Even if that "absurd" interpretation were taken, in the present
case, as discussed above, the rejected claims are not
"algorithmic", in spite of the fact that the claims include an
equivalence relation.  That equivalence relation only expresses
conditions on a transformation.  The conditions expressed by that
equivalence relation may not be characterized as "a step-by-step
procedure...for accomplishing some end".  Thus, the present
rejection should be reconsidered and withdrawn for the same
reasons cited in Freeman.

Even assuming that according to the first step of
_Freeman_ analysis, the process steps herein "directly or
indirectly recite process steps which are themselves calcula-
tions, formulae, or equations" (which in applicants' opinion they
do not), it is clear that the applicants' claims in no way wholly
preempt any such calculations, formulae or equations.  This may
be seen, for example, by the fact that a congruency equivalence
relation is found in the cipher system disclosed by the Stewart
reference (copy enclosed with the applicants' prior art
statement), but Stewart's approach is clearly not within the
scope of the applicants' claims.  Thus, the second step of the
_Freeman_ analysis leads to the inevitable conclusion that the
claims herein clearly fall squarely within the _Johnson_ analysis

-17-

CYL-F 000093

and the present claims should be allowed.

Furthermore, following the remainder of <u>Johnson</u> reasoning, the CCPA elaborates upon its two part <u>Freeman</u> analysis to determine whether the claims recite mathematical algorithms which are non-statutory. Under the continuing second step analysis of the CCPA's reasoning, one

> "must determine whether each claim as a whole, including all of its steps, merely recites a mathematical formula or a method of calculation. This analysis requires careful interpretation of each claim in the light of its supporting disclosure to determine whether or not it merely defines a method of solving a mathematical problem. If it does not, then it defines statutory subject matter, namely, a 'process'". (200 USPQ 208, 209)

The invention in claims 18-27 and 31-33 is not directed to the solution of a mathematical problem, but rather solves the problem of privately transmitting a message over a communications channel and the problem of authentication (i.e. by providing digital signatures) of messages. The claims include the step of transforming a first signal to a second signal so that the second signal is related to the first by a stated equivalence relation. The method for doing so does not claim mathematical formulae and does not seek patents on a mathematical formula. Accordingly, the invention claimed herein clearly falls under the CCPA and Supreme Court reasonings.

For these reasons, the rejection of claims 18-27 and 31-33 under 35 U.S.C. 101 should be reconsidered and withdrawn.

With particular regard to system claims 1-17, and 28-30, it is noted that the <u>Benson</u> and <u>Flook</u> cases cited by the Examiner addressed method claims only. The Supreme Court in

-18-

Benson stated "The question is whether the method described and
claimed is a 'process' within the meaning of the Patent Act."
175 USPQ at 674 (emphasis added).  Similarly, in Flook, the
Supreme Court addressed the question of whether a novel formula
"makes an otherwise conventional method eligible for patent
protection" 198 USPQ at 196.  Thus, in both of the cited cases,
the Supreme Court addressed "processes" under 35 U.S.C. 101.

In contrast, the claims 1-17 and 28-30 are all directed
to apparatus including means to perform specified functions.
Moreover, the claims are clearly supported in the specification
by a hardware implementation of the claimed subject matter.
Accordingly, the rejection of system claims 1-17 and 28-30 is
inappropriate and should be reconsidered and withdrawn.

Moreover, even if the Examiner treats these system
claims in the same manner as the method claims 18-27 and 31-33,
the rejection should be withdrawn for the reasons discussed above
in particular reference to the method claims.

For these reasons, the rejection of claims 1-33 under
35 U.S.C. 101 is inappropriate and should be withdrawn.  It is
submitted that these claims, as well as new claims 34 and 35 are
in condition for allowance and passage to issue is requested.

Respectfully submitted,

KENWAY & JENNEY

By _____
Mark G. Lappin
Reg. No. 26,618

60 State Street
Boston, MA   02109
Tel: (617)227-6300
May 15, 1979

I hereby certify that this correspondence is being
deposited with the United States Postal Service as first
class mail in an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231.

on MAY 15 1979
(Date of Deposit)

MARK G. LAPPIN
Name of applicant, assignee, or
Registered Representative

Signature

MAY 15 1979
Date of Signature

CYL-F 000095



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 860,586 | 12-14-77 | Ronald L. Rivest, et al. | |

Arthur A. Smith, Jr.
Mass. Institute of Technology
Room E19-722.
Cambridge, Mass.   02139

| EXAMINER | |
|---|---|
| H.A. Birmiel | |
| ART UNIT | PAPER NUMBER |
| 222 | 1C. |
| DATE MAILED: | |

### EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, attorney, agent) representing applicant:

(1) _M.L. LAPPIN_          (3) _____

(2) _____          (4) _____

Date of interview _____

AUG 6 1979

Type: ☑ Telephonic   ☐ Personal (copy is given to applicant).

GROUP 220

Exhibit shown or demonstration conducted:   ☐ Yes   ☐ No.

Agreement ☑ was reached with respect to some or all of the claims in question.   ☐ was not reached.

Claims discussed: _1-33   34-35_

Identification of prior art discussed: _____

_____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _____

_APPLICANTS' ATTORNEY AGREED TO AMEND THE CLAIMS TO REFLECT THAT THE MATHEMATICAL TRANSFORMATIONS WERE PERFORMED UPON "SIGNALS" TO BETTER DEFINE THE SAME IN LIGHT OF THE 35USC101 REJECTION WHICH IS WITHDRAWN, CLAIMS 34-35 ARE TO BE AMENDED TO REMOVE MULTIPLE DEPENDENCY._

(A fuller necessary description and any available copy of amendments that the examiner agreed would render the claims allowable, or where no copy of the amendments is available, a summary thereof, is attached.)

☐ It is not necessary for applicant to supplement the information on this form or to submit a separate record of the substance of the interview.

_Howa A.C.Bu....._

HOWARD A. BIRMIEL
**EXAMINER**

APPLICANTS, ATTORNEYS AND AGENTS ARE REMINDED OF THEIR RESPONSIBILITY TO SUPPLEMENT THE RECORD WITH AN INDICATION OF THE SUBSTANCE OF THE INTERVIEW AS REQUIRED BY 37 CFR 1.133(b) AND SECTION 713.04 OF THE MANUAL OF PATENT EXAMINING PROCEDURE. (See reverse side for text of Section 713.04.)

PTOL-413 (rev. 9/78)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER





**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| ERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 860,586 | 12/14/77 | R.L. Rivest, et al. | |

Arthur A. Smith, Jr.
Mass. Institute of Technology
Room E19-722
Cambridge, Mass.    02139

| EXAMINER |
|---|
| HABirmiel |

| ART UNIT | PAPER NUMBER |
|---|---|
| 222 | 11 |

DATE MAILED:

This is a communication from the examiner in charge of your application.
**COMMISSIONER OF PATENTS AND TRADEMARKS**

AUG 6 1979

GROUP 220

☐ This application has been examined.  ☑ Responsive to communication filed on 5/17/79  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 2 month(s), 0 days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☐ Notice of References Cited, Form PTO-892.    2. ☐ Notice of Informal Patent Drawing, PTO-948.
3. ☐ Notice of Informal Patent Application, Form PTO-152.    4. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims 1-35 _____ are pending in the application.

Of the above, claims 34, 35 _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☑ Claims 1-33 _____ are allowed.

4. ☐ Claims _____ are rejected.

5. ☑ Claims 34, 35 _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ The formal drawings filed on _____ are acceptable.

8. ☐ The drawing correction request filed on _____ has been ☐ approved.  ☐ disapproved.

9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has
☐ been received.  ☐ not been received.  ☐ been filed in parent application, serial no. _____
filed on _____

10. ☑ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

11. ☐ Other

PTOL-326 (rev. 10-78)

**EXAMINER'S FIRST ACTION**

Serial No.   860,586                                    -2-

Claims 34 and 35 are objected to as not complying
with 37 CFR 1.75 as of the filing date of this case.
Specifically, multiple dependent claim practice is not permitted
for applications filed prior to January 24, 1978, and
the claims should be either amended or cancelled.

Claims 1-33 are allowed subject to applicants'
insertion of the word "signal" and the like as discussed in
a telephone interview of July 30. 1979.

HOWARD A. BIRMIEL
EXAMINER
GROUP ART UNIT 222

HABirmiel:lkj
(703) 557-2897
08/01/79

CYL-F 000103