FILED

AUG 2 9 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROGER SCHLAFLY, | ) | CIVIL NO. 94-20512 SW |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING RSA'S MOTION FOR |
| | ) | SUMMARY JUDGMENT ON PLAINTIFF'S |
| v. | ) | NON-INFRINGEMENT CLAIM AND |
| | ) | GRANTING DEFENDANTS' MOTION FOR |
| PUBLIC KEY PARTNERS AND RSA | ) | SUMMARY JUDGMENT ON PLAINTIFF'S |
| DATA SECURITY, INC., | ) | ANTITRUST AND UNFAIR BUSINESS |
| | ) | PRACTICES CLAIMS |
| Defendants. | ) | |
| | ) | |

Plaintiff Roger Schlafly proceeds pro se in this action he initiated against Defendant Public Key Partners ("PKP") and RSA Data Security, Inc. ("RSA"). In his Amended Complaint, Schlafly asserted the following claims: (1) libel; (2) patent invalidity; (3) patent non-infringement; (4) interference with contractual relationship; (5) fraud; (6) unfair business practices; and (7) antitrust violations.

In response to the Amended Complaint, Defendants moved to dismiss all of Schlafly's claims. This Court granted the motion as to Schlafly's claims for fraud and libel. Thereafter, the Court granted summary judgment for Defendants on Schlafly's claims of interference with contractual relationship and patent invalidity.

COPIES MAILED TO
PARTIES OF RECORD

Now, RSA moves for summary judgment on Schlafly's claim of non-infringement of U.S. Patent No. 4,405,829 (the "RSA patent"). Additionally, PKP moves for summary judgment on Schlafly's antitrust and unfair business practices claims because Schlafly has failed to produce any evidence to support his allegations.[1]

For the reasons set forth below, the Court GRANTS RSA's motion for summary judgment on non-infringement and PKP's motion for summary judgment on Schlafly's antitrust and unfair business practices claims.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. Id.

---

[1] RSA joins in PKP's motion for summary judgment on the antitrust and unfair business practices claims.

1    Once the moving party demonstrates that there is no genuine

2    issue of material fact, the nonmoving party must designate

3    "specific facts showing that there is a genuine issue for trial."

4    Id. at 324.  The nonmoving party must "make a showing sufficient to

5    establish the existence of an element essential to that party's

6    case, and on which that party will bear the burden of proof at

7    trial."  Id. at 322.  There may be no genuine issue of material

8    fact if "the evidence is of insufficient caliber or quantity to

9    allow a rational finder of fact" to find for the nonmoving party.

10   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

11

12                              DISCUSSION

13   **A. Schlafly's Non-infringement Claim**

14       Schlafly alleges that during the prosecution of the RSA patent

15   the inventors stated that "there are no mathematical algorithms in

16   the applicants' claims."  Schlafly further contends that due to this

17   statement Defendants are barred by the doctrine of file wrapper

18   estoppel from asserting that the RSA patent covers the use of the

19   "RSA algorithm."[2]

20       The doctrine of file wrapper estoppel, or prosecution history

21   estoppel, precludes a patent owner from obtaining a claim

22   construction that would include subject matter surrendered during

23   the prosecution of the patent.  Hughes Aircraft Co. v. United

24   States, 717 F.2d 1351, 1362 (Fed. Cir. 1983).  "The estoppel

25   _____

26       [2] It is not entirely clear what Schlafly means when he refers to
     the "RSA algorithm."  However, the Court will assume for purposes of
     this motion that Schlafly is referring to the series of mathematical
27   calculations or transformations recited in the RSA patent.

28                                   3

1  applies to claim amendments to overcome rejections based on prior

2  art and to arguments submitted to obtain the patent."  Id.

3  (internal citations omitted).  The rationale of the doctrine is

4  that once a broader scope of interpretation for a claim is

5  disclaimed during the prosecution of a patent, the patent owner is

6  not entitled to reinstate the broader scope.  Coleco Industries v.

7  United States Intern., 573 F.2d 1247, 1257 (C.C.P.A. 1978).

8       However, all changes and arguments made during the prosecution

9  of a patent do not result in estoppel.  "There is no all-

10  encompassing rule that estoppel results from all claim changes, or

11  all arguments, whatever their cause or purpose."  Pall Corp. v.

12  Micron Separations, Inc., 66 F.3d 1211, 1220 (Fed. Cir. 1995),

13  cert. denied, 117 S.Ct. 1243 (1997).  Thus, the arguments must be

14  viewed in context to determine whether prosecution history estoppel

15  applies.  Read Corp. v. Portec, Inc., 970 F.2d 816, 824-25 (Fed.

16  Cir. 1992).

17       Here, the patent examiner rejected the claims of the RSA

18  patent application as being directed to non-statutory subject

19  matter under 35 U.S.C. § 101 and stated that the claimed invention

20  "lies" in a particular algorithm.  Office Action, Dec. 15, 1978.  In

21  response, the applicants' attorney argued that the claims included

22  equivalence relations and not algorithms as defined in Gottschalk

23  v. Benson, 409 U.S. 63 (1972).  In making this argument, the

24  applicants' attorney stated "there are no mathematical algorithms in

25  the applicants' claims."  The applicants' attorney also argued that

26  "even assuming that . . . the process steps herein 'directly or

27  indirectly recite process steps which are themselves calculations,

28
                                   4

1  formulae, or equations . . . it is clear that the applicants' claims
2  in no way wholly preempt any such calculations, formulae or
3  equations." Amendment, May 15, 1979. The examiner subsequently
4  withdrew the non-statutory objection after the applicants' attorney
5  agreed to amend the claims "to reflect that the mathematical
6  transformations were performed upon 'signals' to better define the
7  same in light of the 35 U.S.C. § 101 rejection." Examiner
8  Interview Summary Record, Aug. 6, 1979.

9      Based on this record, Schlafly seeks a determination that the
10  RSA patent does not cover the use of the "RSA algorithm." Schlafly
11  acknowledges, however, that interpreting the patent in this manner
12  is nonsensical. In fact, Schlafly refers to the argument that the
13  claims do not contain algorithms as "mathematical gobbledygook."
14  Nevertheless, Schlafly contends that such a determination is
15  compelled by the prosecution history because the patent examiner
16  must have accepted the applicants' argument regarding equivalence
17  relations "at face value."

18      After carefully considering the relevant portions of the
19  prosecution history, the Court finds Schlafly's assertions
20  unpersuasive. Even if the Court assumes that the examiner accepted
21  the applicants' argument, file wrapper estoppel would not apply.
22  The applicants argued that the claims contained only equivalence
23  relations. If the examiner accepted this at face value then the
24  examiner also accepted the proposition that the "RSA algorithm,"
25  which was set forth in the claims, constitutes an equivalence
26  relation. As such, even if the examiner believed the applicants'
27  arguments, the RSA equivalence relation would be covered by the
28

1   patent.   In other words, the applicants did not surrender a broad

2   claim construction for a narrow one.   Rather, the applicants'

3   argument merely redefined the subject matter of the claims while

4   retaining all of the elements of the original claims.   Thus, even

5   if the examiner accepted the "mathematical gobbledygook" at face

6   value, nothing was disclaimed by the applicants and estoppel would

7   not apply.

8        Further, the more logical conclusion is that the examiner

9   withdrew his non-statutory objection because the claimed invention

10   uses mathematical calculations for a specific practical application

11   but does not wholly preempt a mathematical formula.   The

12   prosecution history reveals that the examiner withdrew his

13   objection after the applicants' attorney agreed to clarify the

14   claims so that the mathematical transformations were performed upon

15   "signals."   This demonstrates that the examiner was concerned about

16   the process described in the claims and the practical application

17   of the invention and did not accept the applicants' argument "at

18   face value."   This conclusion is also consistent with this Court's

19   August 22, 1997 order in which the Court found that the RSA patent

20   contained statutory subject matter.

21        In sum, Schlafly requests that the Court rigidly apply the

22   file wrapper estoppel doctrine and ignore the logical

23   interpretation of the RSA patent.   However, the Court finds that

24   the inventors of the RSA patent did not surrender or disclaim the

25   use of the RSA algorithm.   Further, the Court concludes that the

26   examiner did not rely on the argument made by the applicants'

27   attorney when he allowed the claims.   Therefore, the Court GRANTS

28                                        6

1  RSA's motion for summary judgment on Schlafly's claim of non-

2  infringement.

3      **B. Schlafly's Antitrust and Unfair Business Practices Claims**

4      In 1990, RSA and Caro-Kann Corporation ("CKC"), which is a

5  wholly-owned subsidiary of Cylink Corporation, formed Public Key

6  Partners ("PKP").  In forming the partnership, RSA and CKC gave PKP

7  exclusive licensing rights to several patents relating to public

8  key cryptography.  Thereafter, PKP was the exclusive licensor of

9  the patents until the partnership was dissolved in September 1995.

10     Schlafly, who develops cryptography software, contends that

11 PKP and its partners committed several unlawful acts for the

12 purpose of stifling competition.  In his Amended Complaint,

13 Schlafly alleges: (1) that RSA and CKC pooled their patents in an

14 attempt to monopolize the market; (2) that PKP falsely stated that

15 it provided licenses on a non-discriminatory basis; (3) that RSA

16 tied its software products with the patent licenses; (4) that PKP

17 and RSA initiated an unlawful boycott; and (5) that PKP exaggerated

18 the scope of the patents.  Schlafly further asserts that by

19 committing these allegedly anti-competitive acts Defendants

20 violated of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 &

21 2, and the California Unfair Business Practices Act, Cal. Bus. &

22 Prof. Code § 17001, et seq.

23         1. Antitrust

24     Defendants correctly point out that for Schlafly to prevail on

25 his Sherman Act claims he must define the relevant market,

26 establish that Defendants possessed market power and show an actual

27 adverse effect on competition.  See, 35 U.S.C. § 271(d) (requiring

28                                    7

1   showing of market power for patent misuse involving refusals to

2   license or tying); Spectrum Sports v. McQuillan, 506 U.S. 447, 456

3   (1993)(holding that plaintiff must prove dangerous probability of

4   achieving monopoly power for attempted monopolization claim); Bhan

5   v. NME Hospitals, Inc., 929 F.2d 1404, 1413-14 (9th Cir. 1991),

6   cert. denied, 502 U.S. 994 (1991) (dismissing claim of unlawful

7   boycott for failure to show actual anti-competitive effects).

8   Defendants also argue, and the Court agrees, that Schlafly has

9   failed to make the requisite showing to on these elements for his

10  claims to survive a motion for summary judgment.

11      In regard to market definition, Schlafly merely states that

12  the markets are the public key cryptography market and the

13  encryption market.  As an initial matter, there can only be one

14  relevant product market.  Moreover, Schlafly does not provide any

15  analysis of economic substitutes or other evidence to support his

16  conclusory statements of the relevant market.

17      To demonstrate market power Schlafly relies on the conclusory

18  allegation that the RSA "is the dominant U.S. vendor of

19  cryptography software, and has monopoly power in that market."

20  Amended Complaint ¶ 81.  Once again, Schlafly fails to submit

21  evidence to support his assertion.  Further, "[a] patent does not

22  of itself establish a presumption of market power in the antitrust

23  sense."  Abbott Laboratories v. Brennan, 952 F.2d 1346, 1354 (Fed.

24  Cir. 1991), cert. denied, 505 S.Ct. 1205 (1992).

25      Schlafly also fails to meet his burden of establishing actual

26  anti-competitive effects.  Schlafly claims that in forming the

27  partnership, Defendants eliminated competition between two

28                                    8

1   technologies.  However, the record is devoid of any evidence

2   demonstrating that combination of the technologies adversely

3   effected competition in the relevant market.  Moreover, the

4   Antitrust Guidelines for the Licensing of Intellectual Property

5   issued by the Department of Justice and the Federal Trade

6   Commission, which Schlafly submitted to the Court, provides that

7   licensing arrangements are generally considered to be pro-

8   competitive.

9        In sum, Schlafly relies on his own estimates, arguments and

10  guesses to support his antitrust claims rather than providing

11  specific facts.  Estimates, arguments and guesses do not, however,

12  create a genuine issue of material fact.  Thus, the Court GRANTS

13  summary judgment in favor of Defendants on Schlafly's antitrust

14  claims.

15       A. Unfair Business Practices

16       California's Unfair Business Practices Act prohibits "unfair,

17  dishonest, deceptive, destructive, fraudulent and discriminatory

18  practices by which fair and honest competition is destroyed or

19  prevented."  Cal. Bus. & Prof. Code § 17001.  To prevail on a

20  unlawful business practices claim a plaintiff must demonstrate that

21  the defendant committed some predicate act that is unfair,

22  unlawful, or fraudulent.

23       Here, Schlafly does not demonstrate the existence of any

24  unfair, unlawful, or fraudulent practice.  Schlafly alleges that

25  Defendants misused their patents and maintained unfair licensing

26  policies.  However, the evidence does not show that RSA or PKP knew

27  that any of the patents were invalid or exaggerated in scope.

28                                      9

1    Further, Schlafly has failed to establish in this litigation that

2    any of the patents are invalid or entitled to narrow

3    interpretations.

4         Schlafly's claims of unfair licensing policies are also without

5    merit.  Schlafly contends that RSA's licensing policy is

6    unreasonable because RSA refuses to license "toolkits" or allow

7    licensees to purchase "toolkit" products from another supplier.

8    However, a patent owner is not required to license his patent.

9    Further, a patentee's exclusive rights are divisible so that a

10   patentee may rent out some rights while retaining others.  As

11   stated by the Supreme Court, "[t]he right to manufacture, the right

12   to sell, and the right to use are each substantive rights, and may

13   be granted or conferred separately by the patentee." <u>Adams v.</u>

14   <u>Burke</u>, 84 U.S. 453, 456 (1873).  Thus, RSA's decision to restrict

15   its licenses and retain the "toolkit" rights to its patents does not

16   constitute an unlawful practice.

17

18                         **CONCLUSION**

19        RSA's motion for summary judgment on non-infringement and

20   Defendants' motion for summary judgment on Schlafly's antitrust and

21   unfair business practice claims are GRANTED.

22

23        IT IS SO ORDERED.

24   DATED: 8/29/97

                              SPENCER WILLIAMS
25                            United States District Judge

26

27

28                              10