IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SPENCER WILLIAMS, JUDGE

309 *ocy*

| | | |
|---|---|---|
| ROGER SCHLAFLY, | ) | NO.  C 94-20512 SW |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CA |
| | ) | THURSDAY |
| -VS- | ) | JULY 17, 1997 |
| | ) | |
| PUBLIC KEY PARTNERS, | ) | PAGES 1 - 10 |
| | ) | |
| DEFENDANT. | ) | |

**FILED**

**ORIGINAL** NOV - 7 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

APPEARANCES:
  FOR THE PLAINTIFF:        ROGER SCHLAFLY
                           P.O. BOX 1680
                           SOQUEL, CA  95073
                   BY:     ROGER SCHLAFLY
                           IN PRO PER

  FOR THE DEFENDANT:        HELLER EHRMAN WHITE
                             & MCAULIFFE
                           525 UNIVERSITY AVENUE,
                           PALO ALTO, CA  94301-1900
                   BY:     ROBERT T. HASLAM
                           ATTORNEY AT LAW


  COURT REPORTER:           TONYA C. NEGD, CSR #11486

        COMPUTERIZED TRANSCRIPTION BY TURBOCAT

1  JULY 17, 1997                              10:10 A.M.

2          THE CLERK:  ALL RISE.  THE UNITED STATES

3  DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

4  IS NOW IN SESSION, THE HONORABLE SPENCER WILLIAMS

5  PRESIDING.

6          THE COURT:  PLEASE BE SEATED.

7          THE CLERK:  CALLING CASE NUMBER C 94-20512 SW,

8  ROGER SCHLAFLY VERSUS PUBLIC KEY PARTNERS, ET AL.

9  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

10         THE COURT:  PLEASE INTRODUCE YOURSELVES FOR

11 THE RECORD.

12         MR. SCHLAFLY:  MY NAME IS ROGER SCHLAFLY AND

13 I'M THE PLAINTIFF.

14         THE COURT:  GOOD MORNING MR. SCHLAFLY.

15         MR. HASLAM:  BOB HASLAM FOR PUBLIC KEY

16 PARTNERS AND RSA DATA SECURITY.

17         THE COURT:  YOU'LL BE CARRYING THE BURDEN

18 TODAY?

19         MR. HASLAM:  I'LL BE DOING THE ARGUMENT, I

20 THINK HE HAS THE BURDEN.

21         THE COURT:  ALL RIGHT, FINE.

22         I'D LIKE TO TAKE THE SCHNORR (PHONETIC) PATENT

23 FIRST, THAT ISSUE FIRST, AND MR. SCHLAFLY HAVE YOU BEEN

24 -- WHAT'S THE BASIS OF YOUR SUIT?  YOU HAVEN'T BEEN

25 THREATENED HAVE YOU, WITH A LAWSUIT ON THIS?

1              AREN'T YOU PREMATURE?

2              MR. SCHLAFLY:  NO, BECAUSE I THINK THAT WHAT I

3    HAVE DONE IS PRACTICED ADDITIONAL SIGNATURE ALGORITHM

4    AND DEFENDANTS HAVE ARGUED, PROFESSOR SCHNORR HAS ARGUED

5    IT, AND DEFENDANTS HAVE IMPLIED THAT THE SCHNORR PATENT

6    COVERS ADDITIONAL SIGNATURE ALGORITHM.

7              THE COURT:  THEY SAY THEY DON'T CARE IF YOU

8    INFRINGE IT OR NOT.

9              MR. SCHLAFLY:  THIS IS WHAT THEY'RE APPARENTLY

10   SAYING NOW.  THIS IS NEWS TO ME.  IF THEY HAD SAID THAT

11   THREE YEARS AGO MAYBE WE COULD HAVE SAVED SOME TROUBLE.

12             THE COURT:  DECIDE THE CASE AS OF RIGHT NOW --

13   THINGS CHANGE DURING TRIAL OR PROCESS.  IF THEY'RE NOT

14   THREATENING YOU AND THEY NOW SAY, "WE DON'T CARE," IS IT

15   STILL NECESSARY TO CHALLENGE THE VALIDITY OF THAT

16   PATENT?

17             MR. SCHLAFLY:  IF THEY'RE REALLY SAYING THEY

18   DON'T CARE, THEN NO, I GUESS IT'S NOT NECESSARY, BUT

19   WE'VE HAD THIS ISSUE ON THE TABLE FOR THREE YEARS.  IF

20   THAT'S WHAT THEY'RE SAYING, I'D LIKE TO GET THAT ON THE

21   RECORD SO THAT'S DEFINITELY KNOWN THAT THAT'S WHAT

22   THEY'RE SAYING.

23             THE COURT:  WELL, MR. HASLAM, DO YOU BELIEVE

24   WHAT'S HAPPENED SO FAR CONSTITUTES A THREAT OR A

25   CHALLENGE?

1       MR. HASLAM:  NO, AND I THINK THE COURT'S RIGHT

2  THERE.  NOT ONLY DID THERE HAVE TO HAVE BEEN A THREAT AT

3  THE TIME THE LAWSUIT WAS FILED, BUT IT'S JURISDICTIONAL

4  AND IT HAS TO CONTINUE ALL THE WAY THROUGH, AND I'M NOT

5  SURE WE EVER HAVE HAD A CONCRETE PRODUCT GO FORWARD BY

6  MR. SCHLAFLY, BUT PUTTING THAT ASIDE, THESE COPIED

7  TOGETHER STATEMENTS MADE SOMETIME, I GUESS NOW SIX OR

8  SEVEN YEARS AGO, BY PROFESSOR SCHNORR, BUT PROFESSOR

9  SCHNORR WAS NOT THE ONE WHO HAD THE RIGHT TO ENFORCE THE

10  PATENT AT THE TIME THIS LAWSUIT WAS FILED, THAT WAS PKP,

11  AND THE ONLY EVIDENCE THAT I THINK EXISTS AND IN ANY

12  EVENT, THE ONLY EVIDENCE IN THE RECORD TODAY IS THAT

13  EXCHANGE THAT WAS PROVOKED BY MR. SCHLAFLY WRITING

14  SAYING, STOP SAYING WHATEVER IT IS YOU'RE SAYING ABOUT

15  ME AND THE LETTER BACK SAYING GIVE US THE INFORMATION

16  ABOUT WHAT YOU THINK IT IS.  THAT'S THE SUM TOTAL OF

17  WHAT THIS RECORD IS THAT EXISTS.  I DON'T THINK THAT'S A

18  THREAT AND IT CLEARLY DOES NOT, I THINK, OBJECTIVELY

19  ARGUE FOR THE NEED FOR THE COURT TO ACT.

20       ALSO, I THINK IF WE LOOK AT WHERE WE ARE

21  TODAY, PKP HAS BEEN DISSOLVED AS THE COURT IS AWARE OF

22  FROM THE PRIOR PROCEEDINGS, AND THE RIGHTS TO THE PATENT

23  NOW, OF COURSE THE PATENT NOW WITH RSA NOT PKP WHO IS

24  THE PARTY WHO IS NAMED AS THE DEFENDANT.  SO, WE DON'T

25  HAVE TODAY A RIPE CASE FOR CONTROVERSY.  THERE WAS ONE I

1   THINK THE COURT POINTED OUT BACK IN 1994 WHEN THIS SUIT

2   WAS FILED.

3           THE COURT:  IF ONE COMES OUT HE CAN CHALLENGE

4   IT, IT'S NOT REALLY AN ISSUE.

5           MR. HASLAM:  I THINK --

6           THE COURT:  IS THAT A CLEAR ENOUGH STATEMENT

7   MR. SCHLAFLY, THAT THEY'RE NOT PURSUING YOU ON THAT ONE

8   AND THERE'S NO NEED TO CHALLENGE IT AT THIS TIME.  IT'S

9   PRETTY CLEAR ISN'T IT?

10          MR. SCHLAFLY:  WELL, JUST BECAUSE THE PATENT

11  GOT TRANSFERRED FROM PKP TO RSA, I DON'T THINK IT MAKES

12  ANY DIFFERENCE IN THIS CASE SINCE THEY'RE BOTH PARTIES

13  TO THIS CASE.  THERE'S CERTAINLY A LOT OF PEOPLE IN

14  INDUSTRY THAT HAVE COME TO THE CONCLUSION THAT RSA IS

15  THREATENING THAT THE SCHNORR PATENT COVERS THE DSA.  I'M

16  NOT THE ONLY ONE WHO COMES TO THE CONCLUSION.  IF THEY

17  WANT TO SAY ON THE RECORD TODAY, THAT IT DOESN'T COVER

18  RSA, THEN THE SCHNORR --

19          THE COURT:  THEY SAY THEY'RE NOT PURSUING YOU

20  NOW.  THEY'RE NOT RAISING ISSUES NOW.  THEY'RE NOT

21  CHALLENGING THE PATENT NOW.  THERE MAY BE A LOT OF

22  PATENTS OUT THERE THAT MAY HAVE SOME VALIDITY, BUT WE

23  CAN'T SAY WHETHER THEY'RE VALID OR NOT UNLESS THERE'S A

24  REAL ISSUE INVOLVED IN AN INFRINGEMENT TRIAL.  THIS DOES

25  NOT SEEM TO EXIST IN THIS PARTICULAR PATENT, THEY SAY

1   THAT THE APPROPRIATE TIME, UNLESS IT'S EXPIRED BY THE

2   TIME IT COMES UP --

3             MR. SCHLAFLY:  WELL, IF THEY SENT OUT A LETTER

4   THAT SAYS -- THEY SENT OUT A LETTER TO ONE OF MY

5   CUSTOMERS SAYING YOU NEED TO GET A LICENSE TO THIS

6   SCHNORR PATENT, THAT SEEMS TO BE A FAIRLY DIRECT THREAT

7   TO ME.

8             THE COURT:  AND WHAT DOES -- DID YOU GET A

9   COPY OF THAT LETTER?

10            MR. SCHLAFLY:  YEAH.  YEAH, IT'S IN THE

11  EVIDENCE.

12            THE COURT:  YEAH.  WHAT'S YOU'RE RESPONSE TO

13  THAT MR. HASLAM?

14            MR. HASLAM:  I'M NOT SURE WHAT LETTER

15  MR. SCHLAFLY IS REFERRING TO.  I ASSUME IT'S THE

16  CORRESPONDENCE WITH AT&T WHICH WAS PROFITED BY THE

17  CONCERNS ABOUT WHETHER MR. SCHLAFLY HAD VIOLATED THE

18  CONSENT JUDGMENT WHICH IS INDEPENDENT OF ANY PATENT

19  INFRINGEMENT.  REGARDLESS OF WHETHER THE WORLD HAD THE

20  RIGHT TO PRACTICE, MR. SCHLAFLY BY VIRTUE OF CONSENT

21  JUDGMENT WAS PRECLUDED FROM PRACTICING INDEPENDENT OF

22  THE PATENT, BUT THE CORRESPONDENCE WITH AT&T WAS A VERY

23  GENERAL ONE, YOU MAY WANT TO DO SOMETHING, YOU MAY NEED

24  TO MODIFY YOUR LICENSE, AND IT WAS AN OFFER TO SIT DOWN

25  AND NEGOTIATE THE LICENSE WHICH I THINK IS FAR LESS

1  FEDERAL CIRCUIT FOUND IN SHELL, WHICH DID NOT RAISE A

2  CASE OR CONTROVERSY, AND MUCH MORE AMBIGUOUS THAN WHAT

3  THE COURT IN BP CHEMICALS FOUND WAS NOT A SUFFICIENT

4  THREAT TO A THIRD PARTY TO LET SOMEBODY IN.

5  MR. SCHLAFLY'S POSITION BRING THE CASE.  SO, IF THAT IS

6  THE PEG ON WHICH HE WANTS TO HANG A THREAT, THAT, I

7  THINK THE FEDERAL CIRCUIT HAS SAID IS THE THING YOU WANT

8  TO ENCOURAGE WHICH IS RESOLUTION OF THESE KINDS OF

9  DISPUTES.

10          I THINK THE FACT WE'RE HERE IN 1997 AND AT&T

11  HAS NOT BEEN SUED ON THE SCHNORR PATENT SPEAKS VOLUMES

12  AS TO WHETHER OR NOT THAT WAS A THREAT OR WHETHER AT&T

13  TOOK IT AS A THREAT, BECAUSE AT&T, THE PARTY MOST

14  DIRECTLY AFFECTED HASN'T FILED FOR DECLARATORY RELIEF.

15          I THINK WHAT WE HAVE HERE AND I THINK

16  MR. SCHLAFLY CANDIDLY SAID IT, HE WANTS TO BE THE

17  SPOKESMAN FOR THE INDUSTRY HERE.  HE SAYS THE INDUSTRY

18  FEELS THREATENED.  WELL, I DON'T KNOW OF ANY CASE IN THE

19  FEDERAL CIRCUIT, ANY KIND OF GENERALIZED ANXIETY IN THE

20  INDUSTRY GIVES THIS PERSON THE RIGHT TO CHALLENGE THIS

21  PATENT.  THIS IS A CLASSIC CASE OF A PATENT THAT'S OUT

22  THERE THAT PEOPLE HAVE TO TAKE INTO ACCOUNT.  THE

23  FEDERAL CIRCUIT HAS SAID TIME AND AGAIN, THE MERE

24  EXISTENCE OF A PATENT, EVEN IF IT HAPPENS TO HAVE

25  AFFECT, IS NOT ENOUGH TO CHALLENGE IT IN OUR SYSTEM, YOU

1   HAVE TO HAVE THE RIGHT CONTROVERSY AND WE DON'T HAVE IT.

2          THE COURT:  I'LL TAKE IT UNDER SUBMISSION NOW.

3   I THINK THAT THIS MOTION IS PREMATURE.  I ACCEPT THE

4   STATEMENT IF YOU ARE CHALLENGED, THE LAWSUIT COMES, THEN

5   YOU HAVE A RIGHT TO CHALLENGE IT, BUT I THINK IT'S

6   PREMATURE.  IF YOU WANT ME TO RESERVE JUDGMENT I'LL BE

7   GLAD TO DO IT, BUT OTHERWISE I THINK IT'S PREMATURE.

8          MR. SCHLAFLY:  LET ME JUST ADD, JUST A LITTLE

9   RESPONSE TO THAT.  I'M NOT TRYING TO BE A SPOKESMAN FOR

10  THE INDUSTRY.  THE REASON WHY I SAID THAT IS BECAUSE

11  THAT'S PART OF -- THAT'S PART OF MY REASON FOR BRINGING

12  THIS IS THAT I WOULD LIKE TO BE ABLE TO SELL DSA PRODUCT

13  WITHOUT THREATS FROM RSA.  IF THERE ARE PEOPLE OUT IN

14  THE PUBLIC WHO GENERALLY THINK THAT THIS INFRINGES

15  SCHNORR, THAT'S SOMETHING THEY'RE GOING TO BE CONCERNED

16  ABOUT, AND FOR RSA OR PKP TO SEND LETTER TO ONE OF MY

17  CUSTOMERS SAYING YOU NEED A LICENSE TO THE SCHNORR

18  PATENT, I THINK THAT'S ACTUALLY IN SOME WAYS THAT'S MORE

19  OF A THREAT THAN SENDING A LETTER DIRECTLY TO ME BECAUSE

20  IT INTIMIDATES MY CUSTOMERS AND CAUSES ME TO LOSE

21  BUSINESS.

22          MR. HASLAM:  JUST ONE POINT.  I APOLOGIZE FOR

23  NOT HAVING -- US NOT HAVING CITED THIS IN OUR PAPERS,

24  BUT THE LAST COMMENT PROMPTED ME TO THINK OF CYGNUS

25  VERSUS ALZA CASE HANDED DOWN BY THE FEDERAL CIRCUIT

1  SPEAKS DIRECTLY TO THAT POINT, AND I KNOW BECAUSE I WAS

2  COUNSEL IN THAT CASE, BUT THE FACTS OF RECORD THERE WAS

3  EVIDENCE THAT THE EXISTENCE OF THE ALLAPAT CAUSED A

4  BUSINESS PARTNER OF CYGNUS, AFTER THREE OR FOUR YEARS

5  AND MILLIONS OF DOLLARS OF INVESTMENT, TO WALK AWAY FROM

6  ITS PARTNERSHIP OF CYGNUS, AND CYGNUS THEREFORE CAME TO

7  THE COURT AND SAID, I NEED TO CHALLENGE THE PATENT

8  BECAUSE IT'S HAVING ADVERSE AFFECTS ON ME, AND THE

9  FEDERAL CIRCUIT JUDGE LYNCH, ON SEVERAL MOTIONS,

10  ULTIMATELY DETERMINED THAT GIVEN THE FEDERAL CIRCUIT LAW

11  THERE WAS NO CASE OF CONTROVERSY AND THAT CASE WAS

12  DETERMINED ON APPEAL.  AND I THINK THAT, AGAIN WAS FAR

13  FAR CLOSER TO THE KINDS OF FACTS WHICH OF COURSE WOULD

14  LOOK TO SAY MAYBE THERE'S A CASE OR CONTROVERSY.  WE'RE

15  LIGHT YEARS AWAY FROM THAT.  EVEN IF THERE WERE, THERE'S

16  A REAL WORLD OF FACT JUST BY THE EXISTENCE OF THE PATENT

17  IN ALLEGATION AND SOMEBODY TESTIFIED THERE WAS A REAL

18  WORLD AFFECT BASED ON AN EXISTENCE OF A PATENT, FEDERAL

19  CIRCUIT SAID IT'S NOT ENOUGH AND THAT'S THE ANSWER TO

20  SCHLAFLY'S CONCERNS.  IF HE WANTS TO MAKE A PRODUCT AND

21  SELL IT AND PEOPLE ARE CONCERNED WITH ABOUT IT THAT'S

22  THE PRICE WE PAY IN OUR SYSTEM.

23          THE COURT:  MATTER SUBMITTED.

24          NOW ON MR. SCHLAFLY'S MOTION FOR PARTIAL

25  SUMMARY JUDGMENT ON RSA MATTER, DO YOU WISH TO ADD ANY

1    TO WHAT YOU'VE ALREADY PUT IN THE BRIEFS MR. SCHLAFLY?

2              MR. SCHLAFLY:  YEAH, I'D LIKE TO MAKE A

3    STATEMENT ABOUT THAT IF I COULD.

4              THE COURT:  OKAY.

5              MR. SCHLAFLY:  OKAY, THERE ARE ESSENTIALLY TWO

6    ARGUMENTS THAT THE MIT PATENT IS INVALID, AND ISSUES

7    HERE -- WELL, THE FIRST ARGUMENT IS THAT IT'S INVALID

8    BECAUSE IT'S A PATENT ON A MATHEMATICAL FORMULA.  FIRST,

9    I'D LIKE TO SAY IT'S WELL ESTABLISHED THAT THERE IS AN

10   EXCEPTION IN PATENT LAW MATHEMATICAL FORMULAS AND

11   ALGORITHMS ARE NOT PATENTABLE.

12             THE COURT:  BY THEMSELVES.

13             MR. SCHLAFLY:  BY THEMSELVES, RIGHT.  THAT'S

14   THE SUPREME COURT OPINIONS, THE FEDERAL CIRCUIT

15   OPINIONS, PATENT OFFICE GUIDELINES, AND EVEN THE

16   DEFENDANTS HERE THEMSELVES, ATTACK SOME OF THE STANFORD

17   CLAIMS ON THAT BASIS.  NOW, IF YOU LOOK AT WHETHER OR

18   NOT THE MIT PATENT IS A PATENT ON A MATHEMATICAL FORMULA

19   BY ITSELF AS YOU SAY, I THINK THAT IT IS, BECAUSE I

20   THINK THE WAY TO SEE THAT IS TO LOOK AT WHAT IT IS, WHAT

21   THEY REALLY INVENTED.  THE STANFORD PEOPLE INVENTED

22   PUBLIC KEY CRYPTOGRAPHY AND THEY CREATED ALL THOSE

23   NOTIONS THAT WE WENT THROUGH BEFORE:  THE ONE WAY

24   FUNCTION, THE COMPUTATIONAL ABILITY, AND THE DIGITAL

25   SIGNATURES, AND ALL THAT STUFF, AND THEY CREATED THE

1  WHOLE FRAME WORK.

2  THE COURT:  NEW CONCEPT WAS IT?

3  MR. SCHLAFLY:  YEAH, IT WAS A NEW CONCEPT AT

4  THAT TIME, AND THEY PUBLISHED A PAPER AND IN THE PAPER

5  THEY ESSENTIALLY SAID, OKAY, IN ORDER TO MAKE THIS WORK,

6  ALL YOU NEED TO DO IS TO PLUG IN A FORMULA IN THIS CASE

7  THAT HAS THESE PROPERTIES, AND THEN YOU'D HAVE A PUBLIC

8  KEY CRYPTOGRAPHY SYSTEM.  WHAT THE MIT PEOPLE DID, THEY

9  FOUND A FORMULA TO PLUG IN, AND THE FORMULA THEY FOUND

10  WAS A PURELY MATHEMATICAL FORMULA THAT SAID, TAKE TWO

11  BIG PRIME NUMBERS, MULTIPLY THEM TOGETHER, THAT GIVES

12  YOU YOUR PUBLIC KEY.  THEN TO ENCRYPT YOU TAKE SOME

13  MESSAGE, YOU TREAT IT AS A NUMBER, YOU RAISE IT TO SOME

14  PURE WITH RESPECT TO THAT NUMBER WHICH WAS THE PUBLIC

15  KEY, AND THAT GIVES YOU THE ENCRYPTED THING.  IT'S

16  PURELY MATHEMATICAL.  MOST OF THE DESCRIPTIONS OF IT,

17  JUST USE A COUPLE FORMULAS AND THAT'S IT, NO HARDWARE,

18  NO ANYTHING, IT'S PURELY WHAT THEY CONTRIBUTED WAS JUST

19  A PURELY MATHEMATICAL FORMULA.  THEY DIDN'T DO ALL THE

20  OTHER STUFF THAT THE STANFORD PEOPLE DID AND THAT'S WHAT

21  IT IS.

22  NOW, IN THE STANFORD PATENT I ARGUED THAT

23  THOSE WERE NONSTATUTORY TOO, BUT I DIDN'T EMPHASIZE THAT

24  -- SEEMED TO ME STANFORD, WELL THEY INVENTED A

25  COMMUNICATION SYSTEM AND THEY INVENTED THIS OTHER STUFF

1   THAT HAS MORE PHYSICAL ASPECTS TO IT, BUT IN THE CASE OF
2   THE MIT PATENT, ALL IT IS THE FORMULA.
3            NOW, ACCORDING TO THE CASE LAW IN THIS, THE
4   FORMULA CAN BE PART OF A VALID PATENT CLAIM IF THESE
5   COMPLICATED TESTS, WHICH I'M NOT GOING TO CITE, BUT
6   THERE HAS TO BE SOMETHING PHYSICAL, WHICH IS AN
7   INTRINSIC PART OF THE INVENTION, NOT JUST SOMETHING
8   THAT'S TACT ON LATER.  IT HAS TO BE SOMETHING PHYSICAL.
9   THE INVENTION, THE MIT PATENT THERE JUST ISN'T, AND
10  RSA'S ARGUMENT THAT THESE CLAIMS ARE STATUTORY, CHIEFLY
11  RESTS ON THAT THE WORD "SIGNAL" APPEARS IN THE CLAIM.
12  AND I'M SAYING THAT IF A CLAIM BECOMES STATUTORY JUST
13  BECAUSE THE WORD "SIGNAL" IS IN THE CLAIM, THEN THIS
14  EXCEPTION AND PATENT LAW FOR MATHEMATICAL FORMULAS AND
15  ALGORITHMS IS COMPLETELY MEANINGLESS, BECAUSE YOU COULD
16  TAKE ANY OF THE PATENTS THAT HAVE BEEN REJECTED BECAUSE
17  OF MATHEMATICAL FORMULAS AND ALGORITHMS AND JUST INSERT
18  THE WORD "SIGNAL" IN THE CLAIM AND THEN IT BECOMES
19  STATUTORY BY THE RSA ANALYSIS AND THE CLAIM WOULD HAVE
20  THE EXACT SAME SCOPE, AND THE REASON WHY THE ONLY WAY
21  YOU COULD EVER EVALUATE OR USE A FORMULA OR SOME
22  ELECTRONIC GADGET OR SOMETHING, IS TO OPERATE ON
23  SIGNALS.  THAT'S THE WAY ELECTRONIC GADGETS WORK, THEY
24  OPERATE ON SIGNALS.
25            NOW, IT IS TRUE THAT THERE ARE SOME PATENTS

1   THAT HAVE BEEN UPHELD UNDER THIS MATHEMATICAL ALGORITHM

2   ANALYSIS WHICH INVOLVES SIGNALS AND THE SIGNAL WAS KIND

3   OF CONSIDERED AS SOMETHING PHYSICAL, BUT EXAMPLES OF

4   THOSE ARE PATENTS ON SYSTEMS INVOLVING SEISMIC SIGNALS

5   OR ELECTROCARDIOGRAM SIGNALS, BUT THE DIFFERENCE IN

6   THOSE CASES IS THAT THE SEISMIC -- IS THAT THOSE SIGNALS

7   AND THOSE PATENTS ARE MEASURING SOMETHING PHYSICAL.  THE

8   SEISMIC SIGNAL IS MEASURING THE MOVEMENTS OF THE GROUND,

9   THE ELECTROCARDIOGRAM IS MEASURING HUMAN HEART BEATS,

10  AND THAT THOSE NUMBERS THAT ARE THEN PLUGGED INTO SOME

11  FORMULA OR PART OF SOME SYSTEM THERE, THOSE NUMBERS ARE

12  REPRESENTING PHYSICAL ENTITIES OF SOME KIND.  IN THE

13  CASE OF THE MIT PATENT, THE NUMBERS THAT ARE BEING

14  PLUGGED INTO THEIR FORMULA ARE NOT MEASUREMENTS OF

15  SOMETHING PHYSICAL, THEY'RE NOT MEASUREMENTS OF ANYTHING

16  AT ALL, THEY'RE JUST BITS.  COMPUTERS STORE INFORMATION

17  AS BITS, THE ZEROS AND ONES.  AND FOR THE RSA FORMULA,

18  YOU JUST TAKE A BUNCH OF THOSE ZEROS AND ONES AND

19  ASSEMBLE THEM TOGETHER TO MAKE SOME NUMBER OUT OF IT AND

20  PLUG IT INTO A FORMULA, BUT THAT NUMBER YOU GET IS NOT A

21  MEASURE OF ANYTHING, MUCH LESS SOMETHING PHYSICAL, AND

22  SO THAT FORMULA IS AS PURE MATHEMATICAL FORMULA PATENT

23  AS ANY OF THE CASES.  IT'S A MORE PURELY MATHEMATICAL

24  PATENT THAN MOST OF THE PATENTS THAT HAVE GOTTEN

25  REJECTED FOR BEING MATHEMATICAL ALGORITHMS.  SO FOR

1   THOSE REASONS I THINK THIS PATENT SHOULD BE REJECTED FOR

2   BEING A -- IS BECAUSE WHAT THE PATENT IS COVERING IS

3   PURELY MATHEMATICAL FORMULA AND THERE'S ALSO AN ESTOPPEL

4   ARGUMENT, BUT MAYBE IT WOULD BE BETTER IF I LET THE

5   OTHER SIDE ADDRESS WHAT I JUST SAID.

6           THE COURT:  IF THERE IS NO ADDITIONAL PROCESS

7   FOR A MACHINE OR AN UNUSUAL PROCESS MATTER, IF IT HAS A

8   PROCESS, DOES IT TAKE IT BEYOND THE FORMULA, THE FORMULA

9   PRODUCED IF IT'S A PROCESS BY WHICH THE MACHINE IS

10  OPERATED?

11          MR. SCHLAFLY:  IF THEY INVENTED A PROCESS THAT

12  DOES SOMETHING PHYSICAL.  FOR EXAMPLE, THE SUPREME COURT

13  CASE IN THIS, IS A RUBBER CURING PROCESS WHERE THE

14  FORMULA -- THEY PROVED THERE WAS KIND OF A FORMULA,

15  MATHEMATICAL FORMULA ALGORITHM PATENT SORT OF, BY THE

16  HEART OF THE FORMULA -- THE HEART OF THE PATENT WAS

17  DECIDING HOW AND WHEN TO CHANGE THE TEMPERATURE IN SOME

18  RUBBER MOLDING THING, AND THERE IT'S A PROCESS -- IT'S A

19  PHYSICAL PROCESS, BECAUSE IT'S A PROCESS OF MAKING

20  RUBBER.  IF YOU HAVE A PROCESS THAT'S JUST PURELY

21  MATHEMATICAL, IT JUST SAYS TAKE SOME NUMBERS AND PLUG

22  THEM INTO SOME FORMULA AND GET AN OUTPUT NUMBER, THEN

23  THAT'S NOT PATENTABLE.

24          THE COURT:  IN THIS CASE THE PROCESS OF BEING

25  ABLE TO IDENTIFY WHO THE SENDER IS AND DE-CODE IT

1    BECAUSE YOU HAVE A SECRET NUMBER, IT'S NOT A PATENTABLE

2    PROCESS.   THAT'S JUST A MATHEMATICAL UNDERTAKING THAT

3    HAS NO NEW PROCESS.   IS THAT WHAT YOU'RE SAYING?

4              MR. SCHLAFLY:   IF THEY HAD INVENTED -- IF WHAT

5    THE MIT FOLKS HAD INVENTED WAS SOME BIGGER SYSTEM WHERE

6    THEY INVENTED THE IDENTIFICATION SYSTEM OR THE COMPUTER

7    EQUIPMENT OR SOMETHING ELSE THAT INVOLVED SOMETHING

8    PHYSICAL, THEN IT'S POSSIBLE THAT THAT COULD BE

9    STATUTORY, BUT THAT'S NOT WHAT THEY INVENTED.   THEY JUST

10   INVENTED THE FORMULA THAT PLUGGED INTO THE STANFORD

11   INVENTION.   THE STANFORD PEOPLE INVENTED THE

12   AUTHENTICATION LOGIC AND ALL THAT STUFF.

13             THE COURT:   OKAY, LET'S HEAR FROM THE OTHER

14   SIDE.

15             MR. SCHLAFLY:   OKAY.

16             THE COURT:   MR. HASLAM.

17             MR. HASLAM:   JUST BRIEFLY, I THINK THE

18   FIXATION OF MR. SCHLAFLY ON THE ALGORITHM OR THE

19   MATHEMATICAL CONCEPTS, TO SOME EXTENT I CAN UNDERSTAND

20   WHERE IT COMES FROM, HAVING READ ALL OF THESE, BUT I

21   THINK AL PATH, PERHAPS TO SYNTHESIZE -- IT'S 33 F 3RD,

22   1542, WHERE IT SAYS A CLOSE ANALYSIS OF DEER, FLUKE, AND

23   BENSON REVEALS THAT THE SUPREME COURT NEVER INTENDED TO

24   CREATE AN OVERLY BROAD FOURTH CATEGORY OF SUBJECT MATTER

25   EXCLUDED FROM SECTION 101, RATHER AT THE CORE OF THE

1  COURT'S ANALYSIS IN EACH OF THESE CASES LIES AN ATTEMPT
2  BY THE COURT TO EXPLAIN A RATHER STRAIGHT FORWARD
3  CONCEPT, NAMELY THAT CERTAIN TYPES OF MATHEMATICAL
4  SUBJECT MATTER STANDING ALONE REPRESENT NOTHING MORE
5  THAN ABSTRACT IDEAS UNTIL REDUCED TO SOME TYPE OF
6  PRACTICAL APPLICATION.  I THINK THAT THE COURT'S
7  QUESTIONS I THINK, INDICATE THAT IN THIS CASE, WE'VE
8  GONE FAR BEYOND THE DISCOVERY AND THE ATTEMPT TO PATENT
9  A MATHEMATICAL CONCEPT OR ABSTRACT IDEA.  THE ARGUMENT
10  THAT MR. SCHLAFLY MADE IN PART, ON WHETHER THIS IS
11  REALLY A PROCESS OR A NOVEL AND USEFUL MACHINE, RESTS ON
12  THE FACT THAT IT CAN BE DONE WITH RELATIVELY SIMPLE
13  HARDWARE, BUT THERE'S NOTHING IN THE CASE LAW THAT SAYS
14  THE FACT THAT THIS PATENT CAN BE PRACTICED WITH
15  RELATIVELY STRAIGHT FORWARD DISCRETE OR GENERAL PURPOSE
16  COMPUTERS, SAYS NOTHING ABOUT WHETHER IT'S PATENTABLE.
17          IN ADDITION, WHEN WE LOOK AT WHAT IT IS THAT
18  THE MIT PEOPLE INVENTED, THEY DIDN'T DISCOVER SOME
19  MATHEMATICAL CONCEPT AND ATTEMPT TO TAKE THAT OUT OF THE
20  PUBLIC DOMAIN.  WHAT THEY RECOGNIZED AND INVENTED WAS A
21  RELATIONSHIP BETWEEN SEVERAL THINGS:  THE USE OF
22  FACTORING, THE USE OF OILER'S FUNCTION TO RELATE E AND D
23  WITH C, AND THEN THE FACT THAT IF YOU DID THAT, YOU
24  COULD THEN DO THE DECRYPTION EXPONENTIATION STEP IN N
25  WHICH IS THE PRODUCT OF P AND Q.  BUT THE IMPORTANT

1   THING IS, EXPONENTIATION HASN'T BEEN TAKEN OUT OF PUBLIC

2   DOMAIN.   OILER'S FUNCTION HASN'T BEEN TAKEN OUT OF THE

3   PUBLIC DOMAIN.   WHAT'S BEEN TAKEN OUT OF THE PUBLIC

4   DOMAIN IS THAT RELATIONSHIP WHEN USED IN THE USEFUL

5   PROCESS OR MACHINE FOR ENCRYPTING, SENDING, AND

6   DECRYPTING MESSAGES, OR IN SIGNING FOR IN A DIGITAL

7   SIGNATURE IN A MESSAGE.

8           AND THE FINAL POINT I'D LIKE TO MAKE IS,

9   MR. SCHLAFLY'S DENIGRATION OF THE MIT PATENT IS SIMPLY

10  BEING BITS, BUT ALL OF THESE OTHERS BEING SOME PHYSICAL

11  SIGNAL REPRESENTING SOMETHING.   IN THE COMPUTER THEY'RE

12  ALL BITS.   IN THE PATENT WITH THE RUBBER, WHEN THE

13  ALGORITHM AND MACHINE IS PROCESSING, IT'S PROCESSING IT

14  IN BITS, AND THE MIT PATENT, THAT MESSAGE COULD BE IF

15  YOU WANT TO SEND IT ENCRYPTED, COULD BE THE SIGNAL FROM

16  THE HEART RHYTHM.   IT IS A MESSAGE.   IT IS A PHYSICAL

17  MANIFESTATION OF A PHYSICAL PROCESS OR OBJECT.   IT IS

18  USEFUL INFORMATION WHICH IS DEVELOPED OR HELD BY ONE

19  PERSON SENT TO ANOTHER, AND THERE'S NOTHING IN THE

20  PATENT LAW THAT SAYS BECAUSE IT'S INFORMATION IT'S

21  SOMEHOW -- THAT INFORMATION WHICH IS IN THE FORM OF

22  SIGNALS, SOMEHOW LOSES PATENTABILITY, WHEN INFORMATION

23  WHICH HAPPENS TO BE REPRESENTATIVE OF A HEART SIGNAL,

24  SOMEHOW GETS SOME ELEVATED STATUS.

25           SO, I THINK THE BOTTOM LINE IS THAT THIS

1   PATENT WAS SUBJECT MATTER, AND PATENT CASES AFTER IT SAY

2   SO.  THE CLAIM LANGUAGE IS IMPORTANT WHETHER WE LIKE IT

3   OR NOT, WHETHER WE WANT TO DENIGRATE IT IN MAGIC WORDS I

4   THINK IT WOULD BE ARRHYTHMIA, SCHRADER, AND WARMERDAM.

5   IT'S CLEAR THAT THE FACT, THAT THE SIGNALS ARE THE

6   HALLMARK -- THAT IS THE MAGIC WORD -- IT IS THE HALLMARK

7   OF THE FACT THAT THERE IS SOMETHING HERE THAT IS BEYOND

8   THE MATHEMATICAL IDEA.  IT IS BEING USED IN A USEFUL OR

9   NEW PROCESS --

10          THE COURT:  EVEN THOUGH COMPLETELY ON EXISTING

11  EQUIPMENT --

12          MR. HASLAM:  COMPLETELY --

13          THE COURT:  -- NEW CONCEPTS ARE DEVELOPED TO

14  COVER RESULT WITHOUT HAVING TO BUILD EQUIPMENT OR

15  ANYTHING ELSE.  IT'S STRICTLY TO USE ON EXISTING

16  EQUIPMENT AND THAT'S SUFFICIENT?

17          MR. HASLAM:  I THINK THE SUPREME COURT, AND I

18  KNOW THE FEDERAL CIRCUIT HAS SAID MOST PATENTS ARE A

19  COMBINATION OF OLD IDEAS.  IT'S USING ABC AND D, ALL OF

20  WHICH ARE IN A PRIOR ART IN A NEW AND USEFUL WAY.  SO

21  THE FACT THAT IT HAPPENS TO BE SOMETHING THAT THEY

22  DISCOVERED, CAN BE RUN ON A GENERAL PURPOSE COMPUTER

23  WORK OR WITH SHIFT REGISTERS OR REGISTERS AND

24  COMMUNICATION NETWORKS DOESN'T MATTER.  I MEAN HE HAS

25  CONCEDED -- HE SAYS NOW, I'M NOT SURE HE DID EARLIER --

1    THE VALIDITY OF THE STANFORD PATENTS.  STANFORD PATENTS

2    WERE ALL RUN ON EQUIPMENT THAT EXISTED LONG BEFORE THE

3    INVENTION OF THE STANFORD PATENT, WHATEVER THAT

4    INVENTION WAS.  I MEAN THE DISCRETE ELEMENTS, THEY

5    DIDN'T INVENT THE DISCRETE ELEMENTS.  THE MEMORY AND THE

6    BARREL SHIFTERS AND THE ADDERS AND SUBTRACTORS, IT WAS

7    ALL PREEXISTING.  WHAT THEY INVENTED WAS SOME NARROW WAY

8    OF PRACTICING SOMETHING THAT THEY CAME UP WITH ON THAT

9    PREEXISTING EQUIPMENT.  AND I ALSO THINK, TO THE EXTENT

10   THAT WE GO BEYOND THE SIGNALS AND WE GO TO ALLAPAT, THE

11   FACT IS THAT THESE CLAIMS DO DESCRIBE USEFUL MACHINES,

12   AND THE FACT IT CAN BE DONE WITH SIMPLE EXISTING

13   TECHNOLOGY, DOESN'T TAKE AWAY FROM PATENTABILITY.  I

14   MEAN ALLAPAT WENT THROUGH AND SAID, WHEN THEY PLUGGED IN

15   THE PHYSICAL ELEMENTS FROM THE SPECIFICATION OF THE

16   CLAIM, YOU HAD BARREL SHIFTERS AND THOSE KINDS OF

17   THINGS, AND THEY SAID IT'S A NEW AND USEFUL MACHINE

18   WHICH IS WHAT ALLAPAT SAYS, WHEN YOU GO BEYOND A PURE

19   MATHEMATICAL CONCEPT, A NEW AND USEFUL MACHINE OR

20   PROCESS, YOU HAVE WHAT IS CALLED FOR IN SECTION 101.

21           THE COURT:  THANK YOU.

22           YOU'RE RESPONSE?

23           MR. SCHLAFLY:  YEAH, JUST BRIEFLY.  I THINK

24   MR. HASLAM HERE IS MISREADING ALLAPAT.  TO SAY JUST

25   BECAUSE SOMETHING IS PRACTICAL, OR JUST BECAUSE

1    SOMETHING IS NEW AND USEFUL, THAT MAKES IT STATUTORY.

2    THERE IS REQUIREMENT -- ALL PATENTS HAVE TO BE NEW AND

3    USEFUL, AND THEY HAVE TO BE PRACTICAL.  THAT'S A

4    REQUIREMENT ANYWAY, AND THAT HAS NOTHING TO DO WITH THE

5    MATHEMATICAL ALGORITHM EXCEPTION.

6              SUBSEQUENT TO ALLAPAT, SOME AL PATS HAVE BEEN

7    KNOCKED OUT FOR BEING MATHEMATICAL ALGORITHMS.

8    WARMERDAM WAS ONE, STATE STREET BANK WAS ANOTHER.

9    NOBODY DENIED THAT THOSE INVENTIONS WERE PRACTICAL, OR

10   NEW OR USEFUL.  IT WAS -- AND THAT'S JUST NOT THE

11   STANDARD THAT'S APPLIED.  THE STANDARD THAT'S APPLIED,

12   ARE THE INVENTOR'S KIND OF MATHEMATICAL ALGORITHM OR

13   ABSTRACT IDEA.

14             THE COURT:  THANK YOU.  VERY WELL BRIEFED AND

15   WELL ARGUED, AND SOMETIMES -- ACTUALLY, MANY TIMES, IT'S

16   MORE PRODUCTIVE IF THE PARTIES CAN WORK IT OUT

17   THEMSELVES RATHER THAN RELY UPON A COURT.  HOWEVER, I

18   THINK WE HAVE ENOUGH BRIEFING ON IT, TO RULE OR MAKE A

19   DECISION.  WE'LL DO SO AS SOON AS WE CAN, UNLESS WE GET

20   WORD YOU'VE COME TO A SETTLEMENT BY YOURSELVES, WHICH I

21   RECOMMEND.

22             THAT'S ALL.  ANYTHING ELSE?  THANK YOU.

23             THE CLERK:  COURT IS NOW ADJOURNED.  ALL RISE.

24             (PROCEEDING ENDED AT 10:35 A.M.)

25

## REPORTER'S CERTIFICATE

I, THE UNDERSIGNED COURT REPORTER FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF PROCEEDINGS HAD ON THE WITHIN-ENTITLED AND NUMBERED CAUSE ON THE DATE HEREINBEFORE SET FORTH; AND I DO FURTHER CERTIFY THAT THE FOREGOING TRANSCRIPT HAS BEEN PREPARED BY ME.

_Tonya Negd_
TONYA C. NEGD, CSR# 11486