# United States Court of Appeals for the Federal Circuit

98-1005

ROGER SCHLAFLY,

Plaintiff-Appellant,

v.

CARO-KANN CORPORATION,

Plaintiff,

v.

PUBLIC KEY PARTNERS,

Defendant-Appellee,

and

RSA DATA SECURITY, INC.,

Defendant-Appellee.

**FILED**

**MAY 2 8 1998**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

311

# Judgment

**ON APPEAL from the**  United States District Court for the
Northern District of California
**in CASE NO(S).**  C-94 20512

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:*

AFFIRMED.

*ENTERED BY ORDER OF THE COURT*

DATED **APR 2 9 1998**

COSTS: AGAINST, APPELLANT.
         PUBLIC KEY
PRINTING---------------$131.49
TOTAL-----------------$131.49
         RSA DATA
PRINTING---------------$1,302.72
TOTAL-----------------$1,302.72

ISSUED AS A MANDATE: May 20, 1998

A True Copy.

Attest: *May 20, 1998*

*Linda R. Purdie*

Deputy Clerk



MAY 2 8 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record. This disposition will appear in tables published periodically.

# United States Court of Appeals for the Federal Circuit

98-1005

ROGER SCHLAFLY,

Plaintiff-Appellant,

v.

CARO-KANN CORPORATION,

Plaintiff,

v.

PUBLIC KEY PARTNERS,

Defendant-Appellee,

and

RSA DATA SECURITY, INC.,

Defendant-Appellee.

---

Decided: April 29, 1998

---

MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

MICHEL, Circuit Judge.

Roger Schlafly appeals the decisions of the United States District Court for the Northern District of California (1) granting defendants Public Key Partners' ("PKP's") and RSA Data Security, Incorporated's ("RSA's") (collectively, "defendants'") motion for protective order, <u>Schlafly v. Public Key Partners</u>, C-94 20512 SW (PVT), slip op. at 4 (N.D. Cal. July 19, 1995); (2) denying Schlafly's motion to compel production of documents, Transcript of Hearing on Motion to Compel, at 11 (N.D. Cal. July 21, 1997); (3) denying Schlafly's motion for summary judgment that defendants are estopped from asserting United States Patent No. 4,405,829 (the "'829 patent") against him and that the '829 patent is invalid as not directed to statutory subject matter under 35 U.S.C. § 101 (1994), <u>Schlafly v. Public Key Partners</u>, C-94 20512 SW (PVT), slip op. at 2, 7, 11 (N.D. Cal. Aug. 22, 1997); and (4) granting defendants' motion for summary judgment on Schlafly's antitrust and state unfair business practices claims, <u>Schlafly v. Public Key Partners</u>, C-94 20512 SW (PVT), slip op. at 2 (N.D. Cal. Aug. 29, 1997). This appeal was submitted for our decision on the briefs on April 1, 1998, without oral argument.

We hold that (1) Schlafly is precluded from appealing the 1995 protective order because of his failure to object to the magistrate judge's decision within the time provided under Fed. R. Civ. P. 72(a); (2) the magistrate judge did not abuse his discretion in denying Schlafly's motion to compel production of documents in 1997; (3) the district court did not err in refusing to estop RSA from enforcing the '829 patent against Schlafly and in holding that the claims of the patent had not been shown to be directed to non-statutory subject matter; and (4) the district

court did not err in dismissing Schlafly's antitrust and state unfair business practices claims on summary judgment. We therefore affirm the decision of the district court.

## BACKGROUND

In 1994, defendants learned that Information Security Corporation was planning to sell products developed by Schlafly to American Telephone & Telegraph Company, Inc. ("AT&T") for resale by AT&T. Defendants believed that the sale of these products violated the terms of the consent judgment between RSA and Schlafly involving the latter's alleged infringement of the '829 patent. Consequently, PKP wrote to AT&T and demanded that AT&T cease distribution and marketing of the products. Several months later, Schlafly wrote to PKP and demanded that PKP refrain from telling others that he had breached the consent judgment or had infringed the '829 patent. PKP wrote back, stating that Schlafly's letter was "defectively vague" and that he had admitted to infringing numerous patents. Schlafly, slip op. at 5 (Aug. 22, 1997).

Later in 1994, Schlafly, appearing pro se, filed a complaint in the Northern District of California alleging the invalidity of many of defendants' patents, including the '829 patent and United States Patent No. 4,995,082 (the "'082 patent"), and alleging violation of federal antitrust laws and state unfair business practices laws. In 1995, defendants successfully petitioned the court for a protective order to prevent the disclosure of proprietary information to Schlafly. The protective order provided a two-tiered organization of confidential information. Schlafly had access to the first tier entitled "CONFIDENTIAL

BUSINESS INFORMATION PROTECTED BY COURT ORDER," but Schlafly had no access to the second tier entitled "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" because of his status as a non-attorney litigant and a direct competitor of the defendants.

In granting the protective order, the magistrate judge reasoned that ordinarily, the "ATTORNEY'S EYES ONLY" limitation protects confidential information from possible misuse by the opposing party, yet allows access to opposing counsel for litigation purposes.  Here, however, because Schlafly was appearing pro se, the court recognized that the limitation would essentially bar Schlafly from seeing certain evidence at all.  The court analyzed whether such a protective order was necessary and determined that, because Schlafly and defendants were direct competitors, the protective order was warranted.  The district court, however, recommended to Schlafly that he either obtain legal representation or that he retain an "independent expert consultant" who would be allowed to have access to the information designated "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" and be able to advise Schlafly accordingly.  See Schlafly, slip op. at 2 (July 19, 1995).  Schlafly, however, obtained neither legal counsel nor an independent expert consultant.

In 1997, Schlafly filed, inter alia, a motion to compel defendants to produce certain documents.  The magistrate judge, however, denied the motion holding that the discovery requests were overly broad and that Schlafly did not carry his burden to tailor his discovery requests with "reasonable particularity" under Fed. R. Civ. P. 34.

98-1005                            4

Schlafly also filed a motion for summary judgment that the '829 patent was invalid for failure to claim statutory subject matter under 35 U.S.C. § 101 (1994), and a motion for a declaration of noninfringement of the '082 patent. RSA opposed Schlafly's motion on the '829 patent and filed a counter-motion for summary judgment. RSA also filed a counter-motion for dismissal of Schlafly's claims relating to the '082 patent for absence of an actual case or controversy. Schlafly, slip op. at 5 (Aug. 22, 1997). PKP, joined by RSA, moved for summary judgment on Schlafly's antitrust and state unfair business practices claims for failure to produce any evidence to support his allegations. Schlafly, slip op. at 2 (Aug. 29, 1997). The district court denied Schlafly's motion and granted RSA's motion regarding the validity of the '829 patent, and the district court dismissed Schlafly's claim on noninfringement of the '082 patent for lack of an actual case or controversy.[1] See Schlafly, slip op. at 2 (Aug. 22, 1997). Subsequently, the district court granted PKP's motion for summary judgment on Schlafly's antitrust and unfair business practices claims. See Schlafly, slip op. at 2 (Aug. 29, 1997). Schlafly timely appealed to this court. We have subject matter jurisdiction under 28 U.S.C. § 1338 (1994).

## DISCUSSION

### I. The Discovery Orders

Schlafly asserts that one reason the court denied his summary judgment motions is that the earlier adverse discovery decisions prevented him from

---

[1]     Schlafly has not argued for reversal of the decision of the district court relating to the '082 patent.

obtaining relevant documents he needed to prevail on summary judgment.
Hence, we address these decisions.

### A.   The Protective Order

Schlafly argues that the protective order entered on August 29, 1995, is
unfair because the category "CONFIDENTIAL -- ATTORNEY'S EYES ONLY"
prohibited Schlafly from looking at the specified documents, even though he was
acting as his own attorney.   We review matters not within our exclusive
jurisdiction, such as matters relating to discovery, under the applicable law of the
regional circuit in which the district court sits, in this case the Ninth Circuit. <u>See</u>
<u>Serrano v. Telular Corp.</u>, 111 F.3d 1578, 1584, 42 USPQ2d 1538, 1543 (Fed.
Cir. 1997).

Fed. R. Civ. P. 72(a)[2] provides that when objecting to a magistrate judge's
nondispositive order a party must serve and file objections with the district court
judge within 10 days after service of the order.   Schlafly did not do so.   The Ninth
Circuit has held that "a party who fails to file timely objections to a magistrate
judge's nondispositive order with the district judge to whom the case is assigned
forfeits its right to appellate review of that order."   <u>Simpson v. Lear Astronics</u>
<u>Corp.</u>, 77 F.3d 1170, 1174 (9th Cir. 1995).   It cannot be disputed that Schlafly did

---

[2]      Rule 72. Magistrate Judges; Pretrial Orders

(a) Nondispositive Matters. . . .  Within 10 days after being served with a
copy of the magistrate judge's order, a party may serve and file objections to the
order; a party may not thereafter assign as error a defect in the magistrate
judge's order to which objection was not timely made.

Fed. R. Civ. P. 72(a).

not object to the entry of the protective order within the time allotted by Fed. R. Civ. P. 72(a); therefore, following <u>Simpson</u>, we hold that Schlafly has forfeited his right to appellate review of that order.

Schlafly argues, however, that his status as a <u>pro se</u> litigant entitles him to a more lenient interpretation of the rules. We cannot agree. The plaintiff in <u>Simpson</u> who forfeited his right to appellate review was acting on his own behalf as well. <u>Id.</u> at 1172.

### B.     The Order Denying the Motion to Compel[3]

Schlafly argues that the magistrate judge's July 21, 1997 denial of his motion to compel production of documents should be reversed. Schlafly argues that all of the requested documents, which relate to the PKP partnership and its demise, are relevant and should have been discoverable because they "concerned the PKP patents' validity, scope, licensing, and agreements between the partners to control the patent business. These are all issues that are central to my case. Almost every single document is probably relevant."

Schlafly, however, has the burden to state his discovery requests with reasonable particularity and not to make unreasonably cumulative or duplicative requests such that the burden or expense of complying with the requests outweighs their likely benefit. <u>See</u> Fed. R. Civ. P. 26(b)(2), 34(b). In denying Schlafly's motion to compel, the magistrate judge found that Schlafly was "requesting every single piece of paper that's been produced in four other

---

[3]     Schlafly was represented by counsel in the district court for this motion to compel.

litigations plus an arbitration, many of which -- in fact, all of which have protective orders in those cases, issued by other courts and judges." Transcript of Hearing, at 9 (July 21, 1997).  The magistrate judge, therefore, denied Schlafly's motion, and Schlafly has not shown us that this denial was an abuse of discretion.  We therefore affirm the decision to deny Schlafly's motion to compel.

## II.   The '829 Patent

Schlafly asserts that the '829 patent is unenforceable based on "partnership estoppel" and is invalid under 35 U.S.C. § 101 for claiming nonstatutory subject matter.

### A.   Estoppel

Schlafly asserts that RSA should be estopped from enforcing the '829 patent because its former partner, Cylink, has challenged its validity in another lawsuit.  Schlafly terms his allegation "partnership estoppel."  According to Schlafly, RSA now should not be allowed to enforce its '829 patent "when it had allowed a partner to allege the patent's invalidity in court."  However, when Cylink asserted the invalidity of the '829 patent in court, the partnership had dissolved.  RSA, therefore, did not "allow" Cylink to assert the patent's invalidity; it had no say in the matter.

A patent is presumed valid.  See 35 U.S.C. § 282 (1994).  No judgment has been rendered against RSA invalidating its '829 patent.  Accepting Schlafly's argument would, therefore, give a binding effect to Cylink's unproven allegations and would vitiate the statutory presumption of validity.  This we cannot do.

Because the presumption of validity continues, the burden of proof of the elements of estoppel remains on Schlafly.

Schlafly does not cite any patent decisions dealing with "partnership estoppel." Schlafly's reliance on a 1930 California state court decision based on a failed land agreement, Favali v. Richardson, 285 P. 1062, 1066, 104 Cal. App. 301, 308 (1930), is not persuasive. The state court in Favali held that an estoppel against one partner arose where the other partner made misleading promises to the plaintiff and the plaintiff relied to his detriment. See id. Favali, however, does not support Schlafly's assertion that unproven allegations of patent invalidity by a former partner can support an estoppel barring the patentee from asserting its right to exclude.

The closest doctrine in patent law to Schlafly's "partnership estoppel" is "equitable estoppel," under which a patentee may be estopped from asserting a claim of infringement. Equitable estoppel requires the alleged infringer to prove by a preponderance of the evidence that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on this conduct; and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim. See A. C. Aukerman Co. v. R. L. Chaides Constr. Co., 960 F.2d 1020, 1041, 22 USPQ2d 1321, 1335-36 (Fed. Cir. 1992) (in banc). A finding that a patentee is equitably estopped from asserting a claim is committed to the sound discretion of the trial court. See id. at 1041, 22 USPQ2d at 1335.

In order to show equitable estoppel, Schlafly must be able to prove each of the above requirements recited in Aukerman. However, he fails all three; he has not demonstrated that anyone made misleading representations that the patent would not be enforced against him or that he relied on any such misrepresentations to his detriment. See Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 776, 34 USPQ2d 1822, 1826 (Fed. Cir. 1995) (equitable estoppel requires misleading conduct to lead the alleged infringer to reasonably infer that the patent owner did not intend to enforce its rights). Quite the contrary, RSA had already sued Schlafly under the '829 patent and had him enjoined from infringement. He, therefore, should have been aware that RSA might later enforce its rights in the '829 patent, for it had done so before. Furthermore, the PKP partnership was dissolved in 1995, and the lawsuit filed by Cylink alleging the invalidity of the '829 patent was filed thereafter. Schlafly, however, filed his lawsuit against RSA and PKP in 1994, prior to the dissolution of the partnership. Therefore, Schlafly could not have relied to his detriment on any later misleading representations made by either RSA or PKP about the patent's validity. Schlafly, therefore, cannot succeed on his assertion of estoppel, and we affirm the holding of the district court in that regard.

## B.   Statutory Subject Matter Under 35 U.S.C. § 101

Schlafly asserts that the '829 patent is invalid for failure to claim statutory subject matter under 35 U.S.C. § 101. Whether a claim is directed to statutory subject matter is a question of law which we review de novo. See Arrhythmia

Research Tech. v. Corazonix Corp., 958 F.2d 1053, 1055, 22 USPQ2d 1033, 1035 (Fed. Cir. 1992).

Schlafly argues that the '829 patent recites only a mathematical formula, and a mathematical formula alone is not patentable. Schlafly further asserts that the claims of the '829 patent preempt all uses of the recited algorithm and hence fail to pass the Freeman-Walter-Abele two-step test for statutory subject matter under section 101. See generally In re Abele, 684 F.2d 902, 214 USPQ 682 (CCPA 1982); In re Walter, 618 F.2d 758, 205 USPQ 397 (CCPA 1980); In re Freeman, 573 F.2d 1237, 197 USPQ 464 (CCPA 1978). The first step of this test is to determine whether a mathematical algorithm is recited directly or indirectly in the claim, and the second step is to determine whether the claimed invention as a whole is no more than the algorithm itself. See In re Alappat, 33 F.3d 1526, 1559, 31 USPQ2d 1545, 1557 (Fed. Cir. 1994) (in banc) (holding that "the proper inquiry in dealing with the so called mathematical subject matter exception to § 101 alleged herein is to see whether the claimed subject matter as a whole is a disembodied mathematical concept, . . . which in essence represents nothing more than a 'law of nature,' 'natural phenomenon,' or 'abstract idea'").

Although Schlafly does not specify what claims of the '829 patent he believes to be invalid, the basis for declaratory judgment jurisdiction rests upon the 1994 letter from PKP to AT&T demanding that AT&T cease distribution and marketing of the products developed by Schlafly. See Schlafly, slip op. at 4 (Aug. 22, 1997). As AT&T was not practicing the method of establishing

cryptographic communications claimed by the method claims of the '829 patent because it was simply reselling the accused products, declaratory judgment jurisdiction, in the absence of other evidence, rests only on the apparatus claims of the '829 patent. See Grain Processing Corp. v. American Maize-Prods. Co., 840 F.2d 902, 906, 5 USPQ2d 1788, 1791 (Fed. Cir. 1988) (holding no "reasonable apprehension" of suit on process claims, but sustaining jurisdiction on product claims).

We therefore address whether the apparatus claims of the '829 patent recite non-statutory subject matter under section 101. Each of the apparatus claims of the '829 patent contains limitations drafted in means-plus-function format. Those limitations are therefore limited according to 35 U.S.C. § 112, ¶ 6 to structure disclosed in the specification and equivalent structures.

This court, in banc, has determined that claims written in means-plus-function format contain statutory subject matter even if functional phrases of the means limitations recite mathematical calculations. See Alappat, 33 F.3d at 1544, 31 USPQ2d at 1558. Therefore, the claims of the '829 patent do not wholly preempt the use of mathematical calculations because the claims are limited to the structure disclosed in the specification and equivalent structures for performing the claimed functions. We therefore affirm the decision of the district court denying Schlafly summary judgment that the '829 patent is invalid.

## III.    The Antitrust and Unfair Business Practices Claims

Schlafly contends that defendants' partnership and licensing policies violated both sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1994), and

the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17001, 17046, 17048, 17500 (1990).

### A.   Antitrust Claims

In order for Schlafly to prevail on his Sherman Act claims, he must prove that a dangerous probability of RSA or PKP achieving monopoly power exists. He therefore must define a relevant market, establish that defendants possessed market power, and show an actual adverse effect on competition. See Spectrum Sports v. McQuillan, 506 U.S. 447, 456 (1993) (holding that plaintiff must prove a dangerous probability of achieving monopoly power for an attempted monopolization claim under section 2 of the Sherman Act); Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1488-89 (9th Cir. 1991) (holding failure to establish a relevant market defeats a Sherman Act, section 1 claim).

This court applies regional circuit law in determining antitrust issues such as relevant market and market power. See Nobelpharma v. Implant Innovations, Inc., No. 96-1463, 1998 WL 122399, * 8 (Fed. Cir. 1998) (holding, in banc, that "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from antitrust law is . . . a question of Federal Circuit law," but applying regional circuit law to all other aspects of an antitrust allegation). The Ninth Circuit, like all other circuits, reviews a district court's grant of summary judgment de novo, applying the same standards as would a district court. See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). As did

the district court, we agree that Schlafly has failed to make the requisite showing of market power in a relevant market for his claim to survive summary judgment.

Schlafly claims that the relevant market is public key cryptography and cryptography software, with PKP monopolizing the former and RSA the latter. Schlafly, however, does not provide any economic analysis or other evidence to support his mere allegations of relevant market or market power.  There is nothing in the record to indicate that anything was unlawful about defendants' patented inventions, licensing practices, or business partnerships.  See United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966) (distinguishing the willful acquisition or maintenance of monopoly power from its "growth or development as a consequence of a superior product, business acumen, or historic accident").

Schlafly further argues that simply because RSA "is the dominant U.S. vendor of cryptography software," it has market power in the relevant market. Schlafly, however, fails to submit any evidence to support this assertion other than the ownership and licensing of patents.  Mere possession of a patent, or a family of patents, does not establish a presumption of antitrust market power. See Abbott Labs. v. Brennan, 952 F.2d 1346, 1354, 21 USPQ2d 1192, 1199 (Fed. Cir. 1991) (holding "[t]he commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist," citing Grinnell, 384 U.S. at 570-71).  Furthermore, a patentee may lawfully refuse to issue licenses at all.  See 35 U.S.C. § 271(d)(4) (a patentee is not guilty of misuse by virtue of having "refused to . . . use any rights to the patent").

98-1005                                         14

Schlafly contends further that RSA's patent licensing policy is unreasonable because RSA refuses to license "toolkits" or allow licensees to purchase "toolkit" products from another supplier.  However, under 35 U.S.C. § 271(d) (1994):

> No patent owner . . . shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason [that he] . . . (5) conditioned the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned.

Thus, RSA's decision to restrict its licenses and to retain its "toolkit" rights does not constitute an unlawful practice in the absence of proof that it has market power in the relevant market.

We, therefore, affirm the district court's grant of summary judgment to defendants on Schlafly's antitrust claims.

### B.    California Unfair Business Practices

In order for Schlafly to prevail on his unfair business practices claim, he must show that defendants committed some predicate act that is unfair, unlawful, or fraudulent.  See Cal. Bus. & Prof. Code § 17001.

Schlafly contends that defendants misused their patents and maintained unfair and unlawful licensing policies because defendants exaggerated the scope of some of their patents and licensed other patents known to be invalid. The evidence, however, even when viewed in the light most favorable to Schlafly, does not show either that statements about the scope of defendants'

patents were made in bad faith or that defendants knew that any of the patents were invalid.   Furthermore, we note that Schlafly has failed to establish the invalidity of any of these patents during the present litigation.

We therefore affirm the district court's grant of summary judgment in favor of defendants on Schlafly's state unfair business practices claim.

A True Copy.

Attest: *May 20, 1998*

*Linda R. Purdie*

Deputy Clerk

98-1005

16